Bari Klein, Esq. (BK 5784)
Lewis Brisbois Bisgaard & Smith, LLP
199 Water Street - 20th Floor
New York, New York 10038
Telephone: (212) 232-1404
Email: bklein@lbbslaw.com
*Attorney for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CHRISTINE RODRIGUEZ,
SANDRA BURGA, KAREN MALAK,
JAMES TORTORA, LISA BRUNO,             Case No.: 07-CV-9227
JANEEN CAMERON, and
Individually, and for all others similarly situated,

      Plaintiffs,

 -against-

IT'S JUST LUNCH INTERNATIONAL
IT'S JUST LUNCH, INC., and HARRY and
SALLY, INC.

      Defendants.
-----------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANT, IT'S JUST LUNCH AND HARRY and SALLY, INC.'s MOTION TO DISMISS**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 2

ALLEGATIONS CONTAINED IN PLAINTIFFS' COMPLAINT ........................................ 2

ARGUMENT ............................................................................................................................ 4

PLAINTIFFS' COMPLAINT FAILS TO SATISFY THE NECESSARY ELEMENT OF
    ACTUAL-INJURY FOR EACH OF THEIR CAUSES OF ACTION AND
    SHOULD THEREFORE BE DISMISSED ................................................................. 5

PLAINTIFFS' FRAUD CLAIM SHOULD BE DISMISSED AS A MATTER OF LAW ........... 6

PLAINTIFFS' CLAIM PURSUANT TO NEW YORK GENERAL BUSINESS LAW
    SECTION 349 FAILS AS A MATTER OF LAW ...................................................... 7

PLAINTIFFS' CLAIM PURSUANT TO NEW YORK GENERAL BUSINESS LAW
    SECTION 350-a FAILS AS A MATTER OF LAW .................................................... 8

PLAINTIFFS' NEGLIGENT MISREPRESENTATION FAILS AS A MATTER OF
    LAW ............................................................................................................................. 9

PLAINTIFFS' CLAIMS UNDER UNJUST ENRICHMENT FAILS AS A MATTER OF
    LAW ............................................................................................................................. 9

CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bangkok Crafts Corporation v. Capitolo Di San Pietro in Vaticano,*
  331 F. Supp. 2d *247 (S.D.N.Y. 2004) citing Flash Elects. V. Universal Music,*
  312 F. Supp. 2d 379 ...................................................................................................7

*Butvin v. Doubleclick, Inc.,*
  2000 U.S. Dist. LEXIS 8772 (S.D.N.Y. 2000) *citing, Marcus v. At&T Corp.,*
  138 F.3d 46 (2d Cir. 1998)........................................................................................10

*Cohen v. Koenig,*
  25 F.3d 1168 (2d Cir. 1994), *quoted in Chamberlin v. Hartford Financial*
  *Services, Inc.,* 2005 WL 2007894,3, (S.D.N.Y. 2005) .................................................6

*Corcino v. Filstein,* 2006 NY Slip Op 6125 (2006)................................................................8

*FieldCamp v. The City of New York, et. al.,*
  242 F. Supp. 2d 388 (S.D.N.Y. 2003) *citing* ..............................................................4

*Flash Elects v. Universal Music 312 F.Supp. 2d 379, CV01-979-1004*
  WL764584, at *20 (E.D.N.Y. Mar. 31, 2004 ..............................................................4

*Great Earth International Franchising Corp. v. Milks Development,*
  311 F. Supp. 2d *419 (S.D.N.Y. 2004)*........................................................................6

*Hirsch v. Arthur Anderson & Co.,*
  72 F.3d 1085 (2d Cir. 1995)........................................................................................4

*Phillips v. American International Group, Inc.,*
  498 F. Supp. 2d 690 (S.D.N.Y. 2007)..........................................................................9

*Shafran v. Harely-Davidson,*
  2008 U.S. Dist. LEXIS 22494 (S.D.N.Y. 2008)..........................................................5

*Stanat Manufacturing Co., Inc. v. Imperial Metal Finishing Co., Inc.,*
  325 F. Supp. *794* ........................................................................................................6

*Stanat Manufacturing Co., Inc. v. Imperial Metal Finishing Co., Inc.,* 325 F.
  Supp. *794, 796 (E.D.N.Y. 1971, Bernstein v. Misk,*
  948 F. Supp. *228* (a plaintiff "cannot transform what otherwise looks like a
  breach of contract claim into a fraud claim.") ............................................................6

*Stevelman v. Alias Research Inc.*,
 174 F.3d 79 (2d Cir. 1999).................................................................................................7

*Weaver v. Chrysler Corporation*,
 172 F.R.D. 96 (S.D.N.Y. 1997).........................................................................................8

### STATE CASES

*CPC International v McKesson Corp.*,
 70 N.Y.2d *268, 519* N.Y.S.2d *804, 514* N.E.2d *116*..........................................................6

*CV01-979*,
 2004 WL. 764584 (E.D.N.Y. Mar 31, 2004).....................................................................7

*P.S. Auctions v. Exchange Mutual Insurance Co.*,
 105 A.D.2d *473, 480* N.Y.S.2d *601*..................................................................................6

*Rocanova*,
 83 N.Y.2d *at 613*...............................................................................................................6

*Smith v. Chase Manhattan Bank, USA, N.A.*,
 293 A.D.2d 598 (2d 2002)...............................................................................................10

*Strishak & Associates, P.C. v. Hewlett Packard Company*,
 300 A.D.2d 608 (2d 2002)................................................................................................6

### FEDERAL STATUTES

Fed. R. Civ. P. 9(b) ..................................................................................................................6

   Fed. R. Civ. P. 9(b) ...............................................................................................................7

### STATE STATUTES

N.Y. Gen. Bus. Law§ 349........................................................................................................6

   *Id.* 7 ..............................................................................................................................6, 7, 8

NY Gen. Bus. Law §349..........................................................................................................3

NY Gen. Bus. Law §350-a.......................................................................................................3

NY GBL § 349 .......................................................................................................................8

N.Y. General Business Law § 349(a) .................................................................................9

## RULES

Federal Rule of Civil Procedure 23 ("Rule 23") ...............................................................10

Rule 9b's ..............................................................................................................................7

Rule 12(b)(6) .....................................................................................................................4, 5

Rule 15 ..................................................................................................................................2

## AUTHORITIES

James WM. Moore ET AL., *Moore's Federal Practice § 12.34[1][b] (3d ed. 1997)* ....................................................................................................................................4

**PRELIMINARY STATEMENT**

Defendants. It's Just Lunch and Harry and Sally, Inc. (collectively referred to as "Defendants"), respectfully submit this memorandum of law in support of their motion, in lieu of answering, to dismiss the claims of plaintiffs, Christine Rodriquez, Sandra Burga, Karen Malak, James Tortora, Lisa Bruno, Janeen Cameron and Karen McBride, individually, and for all other purportedly similarly situated plaintiffs (collectively referred to as "Plaintiffs").

Defendant It's Just Lunch is a Corporate franchise holder, located in Palm Desert, California. Defendant, Harry and Sally, is a franchisee office, located in New York City and currently owned and operated by Robert and Jill Vandor. Defendants are a match-making service which specializes in "first dates." The company originated in 1991 by founder Andrea McGinty and is currently celebrating over 17 years of service in the dating business, with thousands of professional singles as clients.

Plaintiff, Einat Packman, individually, and for all other similarly situated initially filed suit on or about October 16, 2007. Subsequently, Ms. Packman withdrew as a plaintiff in the litigation, and counsel for plaintiff was granted the opportunity by the Court to amend their Complaint pursuant to Federal Rule 15. The instant Amended Complaint and subject of this motion to dismiss was served and filed on or about August 6, 2008.

**ALLEGATIONS CONTAINED IN PLAINTIFFS' COMPLAINT**

Plaintiffs allege that defendants engage in a routine and systematic scheme to defraud by overcharging its clients for its allegedly "superior" matchmaking services, disproportionate to the services actually rendered. Complaint ¶ 2.

To support their allegations plaintiffs do nothing more than piece-meal together various phrases and information contained on defendants' national website, in their training manuals and then go on to attach various unreliable, and unverified internet-related documents to their Complaint in support of their vague and conclusory allegations.

Generally, plaintiffs contend that defendants "lie" about the match-making services they offer in that defendants do not "hand-select" its matches based on clients "desires, goals, [or] motivations." Prospective clients are "lied" to during the initial interview process to induce the "client into entering into a contract with IJL." Id. ¶ 10. Plaintiffs further criticize defendants' method of training their employees and classify it as "fraud." Defendants continue to "lie" to plaintiffs concerning the qualifications, i.e., health status, political convictions, etc. during the plaintiffs membership with defendants. Id. ¶ 13, 14.

In their desperate attempt to sway this Court, plaintiffs further rely on and attach as exhibits to their complaint, a myriad of complaints posted on the ever unreliable website ConsumerAffairs.com. ConsumerAffairs.com is a "consumer advocacy and complaints site that defines itself as an "independent consumer news center." ConsumerAffairs.com while free to the reader, generates a profit from advertisements. The site is notorious to maintain close relationships

2

with personal injury lawyers, allowing site users to be contacted by attorneys. (attached hereto as *Exhibit "A."*

In furtherance of defendants' alleged massive scheme to defraud, plaintiffs rely on an Order that was issued by the Attorney General of New York against defendants concerning several violations in contravention of the General Business Liability. Included were violations concerning, social service referral fees and retention of same, plaintiffs right to automatically receive personal information prior to requesting it, right of a party to sue jointly and a persons automatic right to place a contract on hold for up to a year. Of note, defendants did not admit to any findings of the Attorney General and only entered into this Assurance of Discontinuance to avoid the expense of litigation. The Order further provides that nothing contained therein shall be construed to deprive any person, corporation, association or any other entity of any private right under the law. (Attached to Plaintiffs Complaint as Exhibit "D.")

Also included in defendants massive scheme is their way of advertising. Nationally, defendants advertise in business and airline magazines, while locally by way of sample print ads and radio ads. Id. ¶ 62 – 64.

Plaintiffs assert that the corporate office, "IJL" "exercised complete dominion and control over its franchises" Id. ¶ 47, and that it exerts control by implementing a quota system for compensation. Id. 57.

Allegations set forth that Defendants specifically target "busy successful men and woman who want to be in relationships but don't have time to meet people." Id. ¶ 65. The only guidance provided by plaintiffs as to the claims in the instant suit is:

> "Plaintiffs were induced to enter into this contract as a result of misrepresentations made by Defendants on their website, in their advertisements, and in the interview with Plaintiffs. After being set up with several "matches," Plaintiffs realized that Defendants services were grossly deficient and substandard in almost every respect. More importantly, Plaintiffs realized that Defendants has blatantly misrepresented the nature and quality of the services that they provided, as well as the qualifications of other members in the system."

Presently, seven (7) persons filed suit against defendants for actions sounding in fraud. Those claims are: Fraudulent Inducement and Misrepresentation, Deceptive Acts or Practices under NY Gen. Bus. Law §349, False Advertising under NY Gen. Bus. Law §350-a and Unjust Enrichment. Of note, there is not one single reference by or on behalf of any one of the seven (7) plaintiffs concerning how they were materially induced into entering into a contract. Nor is there one single factual allegation by any of the named plaintiffs concerning any particular action or inaction which led to the basis of this lawsuit.[1]

---

[1] It should be noted that after a repeated comprehensive search IJL was able to locate the file of Mr. Tortora. It appears he was filed in Corporate headquarters incorrectly.

In fact, and of particular significance concerning the lack of merit concerning this suit is that as of August 5 of this year, one of the plaintiffs, James Tortora, a.k.a. Jim Tortora was contacted by the West Palm Beach franchisee holder of IJL. Mr. Tortora expressed interest in being matched with another IJL member. (Attached hereto as "Exhibit B.") Mr. Totora, like the rest of the plaintiffs and purported class cannot show actual injury as will be further detailed below.

The fact is that plaintiffs' Complaint consists of nothing more than grousing by "dissatisfied" men and woman who apparently did not find love, who are resultantly disgruntled and looking for someone or something to blame for it. The factual evidence in this matters negates any and all claims instituted herein. Significantly, plaintiffs attempt to ride on the coattail of an Order issued by the Attorney General Office that at best disciplined defendants for breach of contractual protections concerning the cost of Defendants' services. The Attorney General never specifically stated that defendants' practices or procedures are per se "fraudulent." Rather, plaintiffs' contentions reveal that plaintiffs filed suit against defendants because a minimal amount of current[2] and former defendant clients are/were "dissatisfied" with their dating experience. In an effort to bolster a frivolous suit lacking merit, plaintiffs couch their action sounding in fraud. It should be noted however, that plaintiffs cannot establish a breach of contract, a claim not before this Court, not to mention the independent tort of fraud.

Summarily, plaintiffs were never guaranteed love, marriage or devotion. Rather they entered into a contract for a limited amount of time or a certain amount of dates with the understanding that their input was important to arrange a successful match. Plaintiffs were offered and provided with the exact type of service contracted for. All of the claims alleged against defendants are general, conclusory, subjective and open to interpretation, none of the qualities suited for a fraud action. Plaintiffs are required to implement common sense in day to day arms-length transactions and if they unilaterally and unrealistically expected results which were not promised to them that is of no legal consequence to the defendants at bar.

As detailed below, the plaintiffs cannot substantiate a necessary element to each cause of action brought, namely, injury-in-fact and therefore there Complaint must be dismissed.

### **ARGUMENT**

In deciding a motion to dismiss under Rule 12(b)(6), generally, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *FieldCamp v. The City of New York, et. al.*, 242 F. Supp. 2d 388, (S.D.N.Y. 2003) *citing*, 2 James WM. Moore ET AL., *Moore's Federal Practice § 12.34[1][b] (3d ed. 1997); see also Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1088 (2d Cir. 1995). Although the pleading requirements are construed liberally, "liberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists upon

---

[2] Any member since the Agreement between Defandants and the A.G. have not paid more than the rate that the A.G. deemed to be acceptable, and all others seeking a refund have been refunded. The original plaintiff, Ms. Packman paid the reduced fee, and consequently dropped out of action as lead plaintiff.

which relief could be accorded the pleader. If it fails to do so, a motion under Rule 12(b)(6) will be granted." *Id.* 6.

Plaintiffs' Complaint should be dismissed in its entirety as their Complaints fails to state a legally cognizable cause of action or damages stemming from any illegal activity.

### PLAINTIFFS' COMPLAINT FAILS TO SATISFY THE NECESSARY ELEMENT OF ACTUAL-INJURY FOR EACH OF THEIR CAUSES OF ACTION AND SHOULD THEREFORE BE DISMISSED

Summarily, plaintiffs' entire Amended Complaint must be dismissed in the interest of justice as plaintiffs have not adequately plead a cognizable claim recognized under the law.

Actual injury is, in fact, a required element of each of the plaintiffs' claims. Here, the only question before this Court is whether plaintiffs have suffered an existing injury as a result of not finding a life long partner during their membership with defendants. Perhaps this question itself has not been addressed specifically, but the heart of the issue has been definitively decided by several District Courts.

Here, plaintiffs ask this Court to find that they have suffered an "actual-injury," when in fact no injury exists. Whether any person can find love, a soul mate or partner is an unknown and not a question that is ripe for this Court or any other. Plaintiffs have failed to allege or prove any sustainable injury. Pointedly, it is plaintiffs' Complaint which states that the "necessity for this Class Action…." is solely because "dissatisfied IJL clients will not take legal action against IJL…Further, the amount of damages sustained by each IJL client is simply not large enough for these clients to justify their hiring an attorney to commence a lawsuit against IJL." Complaint ¶ 74.

As illustrated above, plaintiffs' allegations are speculative at best, overly broad and not discernable in any way, shape or form. Plaintiffs beg this Court to conclude that everyone who joins a dating service should be matched successfully, essentially a question-answer that is not definable by law and calls for pure speculation. Plaintiffs have not, nor can they argue that defendants promised love, marriage, success or happiness. Defendants merely provide a service to match persons with similar interests. Defendants' successes are advertised by way of existing statistics.

It is well settled that a future injury is not an actual injury. In *Shafran v. Harely-Davidson*, 2008 U.S. Dist. Lexis 22494 (S.D.N.Y. 2008), the Court acknowledged that unless plaintiff can present evidence that is not a "result of perceived and speculative risk of future injury" a case where damages are essential to prove must fail, unless actual damages are pleaded and proven. *Id.* 8, 9.

Here, plaintiffs cannot show any present injury in fact warranting a claim for damages. In fact, plaintiffs at best can argue that their only "actual damage" is not finding a partner, but that would be a future harm that is not recognized by New York Courts.

The *Shafran* Court rejected plaintiffs' class action suit brought on behalf of 60,000 members who were informed by defendant corporation that a laptop computer containing members' personal information had been lost. Plaintiffs alleged that they would incur present and future monetary costs

5

to prevent identify theft. The Court dismissed plaintiffs' entire Complaint noting that actual injury is an element of "negligence, breach of warranty, unjust enrichment, violation of N.Y. Gen. Bus. Law§ 349, fraudulent misrepresentation, negligent misrepresentation," and other causes of action. *Id.* 7. It should be noted that actual-injury is also a necessary element of false advertising. *Strishak & Associates, P.C. v. Hewlett Packard Company,* 300 A.D.2d 608 (2d 2002).

Following the same principles and rational of the *Shafran* Court and its predecessors, this Court should dismiss plaintiffs' Complaint because they cannot allege or prove an actual injury cognizable under the law. Plaintiffs' claims are all speculative and mandate a guess of future happiness. For these reasons, this Court should parallel the findings of the District Courts concerning "future injury" and dismiss the instant case with prejudice. As with possible future identify theft, here too, plaintiffs cannot prove now or ever that they were not matched appropriately or that more clients would have resulted in a successful match.

Notwithstanding the above, plaintiffs' Complaint is devoid of any specific reference to actual-injury. Plaintiffs merely state in conclusory terms that they paid money for a service and are now dissatisfied with that service and therefore, defendants need to be stopped. For the reasons stated above and the arguments forthcoming, plaintiffs' complaint must be dismissed.

## **PLAINTIFFS' FRAUD CLAIM SHOULD BE DISMISSED AS A MATTER OF LAW**

In the Complaint, Plaintiffs improperly attempt to transform their contract claims against defendants into fraud claims. Court's have long held that litigants may not "dress up" what is essentially a breach-of-contract claim as a fraud action. *See, e.g. Cohen v. Koenig,* 25 F.3d 1168, 1173 (2d Cir. 1994) ("a plaintiff is not allowed to 'dress up'), *quoted in Chamberlin v.Hartford Financial Services, Inc.,* 2005 WL 2007894,3, (S.D.N.Y. 2005), *Stanat Manufacturing Co., Inc. v. Imperial Metal Finishing Co., Inc.,* 325 F. Supp. 794, 796 (E.D.N.Y. 1971, *Bernstein v. Misk,* 948 F.Supp 228, 238 (a plaintiff "cannot transform what otherwise looks like a breach of contract claim into a fraud claim."), *Great Earth International Franchising Corp. v. Milks Development,* 311 F. Supp. 2d 419, 428 (S.D.N.Y. 2004) (same principle).

In *New York University v. Continental Insurance Company*, the Court of Appeals held that the insurer's Complaint failed to state a tort independent of the contract and thereby failed to satisfy the pleading requirements of fraud as well as other causes of action. Specifically, the Court noted that a fraud claim cannot be supported by "conclusory allegations that defendants were engaged in a scheme to receive premium payments without giving any benefit in return (see, e.g., *CPC Intl v McKesson Corp.,* 70 N.Y.2d 268, 285-286, 519 N.Y.S.2d 804, 514 N.E.2d 116, *P.S. Auctions v. Exchange Mut. Ins. Co.,* 105 A.D.2d 473, 475, 480 N.Y.S.2d 601). Moreover, inasmuch as plaintiff has failed to adequately plead a fraud perpetrated against it, "no inference of fraudulent intent can be drawn in this case from the mere complication" of the experiences of other dissatisfied policyholders (see, *Rocanova,* 83 N.Y.2d at 613). Plaintiffs' complaint is nothing more than a compilation of unimpressive, unfounded, unsubstantiated conclusory statements allegedly made by dissatisfied men and woman *in internet postings*. Hardly the stuff of legal proceedings.

The Complaint against defendants also fails to meet stringent federal pleading requirements. Fed. R. Civ. P. 9(b) mandates that "the circumstances constituting fraud ... shall be stated with

6

particularity." To satisfy Rule 9b's particularity requirement, a plaintiff's complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Bangkok Crafts Corporation v. Capitolo Di San Pietro in Vaticano,* 331 F.Supp. 2d *247 (S.D.N.Y. 2004) citing Flash Elects. V. Universal Music* 312 F. Supp. 2d 379, CV01-979, 2004 WL 764584, at *20 (E.D.N.Y. Mar 31, 2004) *(quoting Stevelman v. Alias Research Inc.,* 174 F.3d 79, 84 (2d Cir. 1999)).

Instead of pleading any particularity about defendants, the Complaint merely piece meals information directly out of defendants' training manuals, not based on any named plaintiffs conversations and/or actual occurrences. Plaintiffs have not satisfied the scienter, or intent to defraud requirement, which must be plead to sustain a fraud claim at the outset. See Fed. R. Civ. P. 9(b). "Allegations supporting an inference of fraudulent intent frequently include defendant's event did not occur, and circumstances indicating that the statement was false when made". Id. 15 (internal citations omitted).

The Complaint in this case fails to identify any intent by the Defendants to defraud the public as plaintiffs alleged. The mere fact that a franchisee holder pays corporate headquarters royalties cannot alone establish fraud. That is akin to arguing that because law firms bill clients, they fraudulently bill. Even further, every entity and every person involved in business would be classified a fraud.

In order to affirmatively establish fraud, plaintiffs would have to allege something more, something other than what is contained in their papers. Plaintiffs would essentially have to allege and prove that plaintiffs had no client base, yet knowingly signed up the plaintiffs nevertheless. The mere fact that a date was to short or physically unattractive to a plaintiff, or just not what the client was looking for is not fraud under any definition. Plaintiffs do not factually allege that defendants committed fraud in respect to their day-to-day agenda.

There is absolutely no reference to any specific act of fraud in the lengthy pleadings. Plaintiffs claim that defendants did not listen to their "wants, desires and goals", but have failed to allege anything showing otherwise. Defendants did not guarantee a successful match, love, companionship or anything other than dates, but their best efforts in setting up dates. Plaintiffs were merely told that based on defendants statistics they were "first date specialists." Arguably, it would be close to impossible to show that Defendants are not "specialists" as they have been in the business for over 17 years, and have arranged thousands of first dates. Plaintiffs are playing on words to set forth this frivolous, non actionable suit. Plaintiffs claim that because they did not like the dates they were sent out on, the defendants acted fraudulently. Mere conclusions, which are not enough to set forth a claim for fraud.

## PLAINTIFFS' CLAIM PURSUANT TO NEW YORK GENERAL BUSINESS LAW SECTION 349 FAILS AS A MATTER OF LAW

The purpose of Section 349 of the New York's General Business Law is to protect consumers. To establish a claim under York GBL § 349, defendants must plead and prove that the defendant engaged in consumer-oriented conduct that was materially deceptive and misleading,

7

causing injury. *Corcino v. Filstein*, 2006 NY Slip Op 6125 (2006). On appeal in *Corcino*, the Appellate Court modified the lowers court's order by dismissing the cause of action for deceptive business practice recognizing that plaintiff could not substantiate a claim under GBL § 349 based on defendant's advertisements for penile augmentation surgery since "nothing in the advertisement was shown to be false or misleading, such as a guarantee of results, misleading statistics on success rates or assertion that there were no risks to the procedure." *Id.* 221.

Here, plaintiffs have not adequately plead that any of Defendants' advertisements or statements are misleading or false. Contrary to plaintiffs' contention, attached to their pleadings as "Exhibit E" is a press release proffered by the former Chairman and CEO of It's Just Lunch in response to the allegations set forth by the alleged IJL members located on the consumer oriented website ConsumerAffiars.com. Mr. Dolan's response disputes the validity of the information contained on the internet site. In relevant part, Mr. Dolan substantiated the number of defendants clients and other relevant statistics contested by plaintiff members. Mr. Dolan confirmed that "It's Just Lunch has had almost 200,000 clients, and your website [ConsumerAffairs.com] lists a very small percentage of complaints (less that 1710th of 1 percent), and only a couple of complaints from all of 2005 out of our almost 50,000 then-current clients. In short, It's Just Lunch has had 250 times more marriages that complaints listed on your website." Clearly, Plaintiffs' Complaint falls well short of properly pleading the first necessary element that defendants information is materially false.

Again, plaintiffs have set forth no allegations to properly to sustain a viable action for a violation of GBL § 349. There is no causal connection to any advertisements and client member sign ups. The Complaint fails to allege that one single person signed up as a result of defendants advertisements, nor does the Complaint specifically allege that defendants advertised in New York. In *Weaver v. Chrysler Corporation*, 172 F.R.D. 96, (S.D.N.Y. 1997), the Court dismissed plaintiffs class action seeking relief under NY GBL § 349 holding that a plaintiff "must allege deceptive acts or practices that occurred within New York State." *Id.* 100 citing *Nardella v. Braff*, 62 F. Supp. 1170, 1173 (S.D.N.Y. 1985).

## PLAINTIFFS' CLAIM PURSUANT TO NEW YORK GENERAL BUSINESS LAW SECTION 350-a FAILS AS A MATTER OF LAW

The required elements for a recoverable action for false advertising claims are identical as NY GBL § 349 discussed above. For the reasons discussed in detail above with respect to GBL §349, plaintiffs fail to specify any advertisements or statements that are misleading or false and further relied upon by plaintiffs.

As plaintiffs have failed to demonstrate that they relied on any advertisements then posted at or near the time they joined this claim fails as a matter of law too. Furthermore, it is incredulous to believe that simply because defendants have been successful in matchmaking and arranging marriages that all persons who join would have a same or similar result. The test is whether the advertisement is "likely to mislead a consumer acting reasonably under the circumstances." *Strishak* at 609.

8

## PLAINTIFFS' NEGLIGENT MISREPRESENTATION FAILS AS A MATTER OF LAW

Plaintiffs' claim for Negligent Misrepresentation also fails as a matter of law. To establish a viable claim for negligent misrepresentation, a "special relationship" must be established. Plaintiffs' Complaint fails to establish any type of relationship, not to mention a "special relationship."

Instructive on the subject is *Phillips v. American International Group, Inc.*, 498 F. Supp. 2d 690 (S.D.N.Y. 2007) wherein the Court dismissed plaintiffs' class action suit against a financial institution whereby plaintiffs alleged numerous claims for relief, including but not limited to, breach of contract, fraud and other fraud related claims, violation of N.Y. General Business Law § 349(a) and conspiracy. Specifically, plaintiffs alleged that since defendants failed to disclose penalties, costs and/or charges which precluded them from permanently realizing the benefit of a promised bonus, they were injured.

In analyzing the claim for negligent misrepresentation, the Court recognized that a plaintiff "still must allege facts indicating a 'relationship closer than arm's-length'" for negligent misrepresentation to apply. The Court rejected plaintiffs' argument that a "special relationship" existed because "[d]efendants...held themselves out as experts on annuities" and [p]laintiffs believed and trusted the Defendants and relied upon them and their apparent expertise in purchasing the Bonus Annuity Contracts." Here, plaintiffs' are silent concerning any type of relationship. In fact, the only assertion made by plaintiffs concerning any duty owed by defendants to plaintiffs is a conclusory and senseless sentence found in paragraph 98 of their Complaint which reads:

"Defendants owed Plaintiffs and Class members a duty of care." Complaint ¶ 98.

This alone is not enough. Negligent misrepresentation under New York law insists that a plaintiff show that "defendants had a duty, as a result of a special relationship, to give correct information.' *Id. 17 citing Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 778 (2d Cir. 2003). As noted above, plaintiffs have not alleged any specific allegations in the entirety of their Complaint even hinting the existence of a special relationship. Nor have plaintiffs proffered any supportable allegations that defendants owed them a duty of care, and if so, that any duty was breached ("insufficient allegations to support a claim for "breach of fiduciary" where "[t]he alleged reliance and trust necessary for a finding of such relationship are stated in conclusory fashion...,and defendant's superior knowledge...acquired as a result of its experience in selling...,does not create such a relationship." *Id.* 11

Nothing in plaintiffs' pleadings indicates that the parties were anything more than arms-length parties to a contract and as such, no "special relationship" exists and this claim should be dismissed with prejudice.

## PLAINTIFFS' CLAIMS UNDER UNJUST ENRICHMENT FAILS AS A MATTER OF LAW

Following the same rationale as above, Plaintiffs' claims for unjust enrichment also fail as a matter of law. Plaintiffs' claim for unjust enrichment is similarly fashioned like the rest of their

9

Complaint in that they seek relief which is not only improper but also for which they have not set forth sufficient allegations, as a threshold matter, to maintain such a claim.

Of note, Plaintiffs do not challenge the validity of his/her respective contract(s) with Defendants. In fact, the Complaint is silent as to all aspects of the contract. According to their Complaint, plaintiffs brought this class action "pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") in their representative capacity on behalf of themselves and the Class of all persons similarly situated ("the Class"), defined as follows:

> All persons who were or are members of IJL who signed a contract with IJL during the period of 1993 to October 15, 2007 ("Class Period").
> Complaint ¶ 37.

Notwithstanding the obvious statute of limitations problems with the time frame, it is well settled that in order to succeed on a claim for unjust enrichment, a plaintiff must show that "in absence of a contract, one party nonetheless possess money 'under such circumstances that in equity and good conscience he ought not to retain it, and which ex aequo et bono belongs to another.'" *Butvin v. Doubleclick, Inc.*, 2000 U.S. Dist. Lexis 8772 (S.D.N.Y. 2000) citing, *Marcus v. At&T Corp.*, 138 F.3d 46, 64 (2d Cir. 1998) other citations omitted.

Here, plaintiffs do not contest that they entered into a contract with defendants. In fact plaintiffs summarily concede that there is a contract, yet maintain that "[c]onsiderations of justice and good conscience preclude allowing Defendants to retain any fees paid to them from any Class members. These class members were fraudulently induced to enter into a contract with Defendants, and, in turn, pay fees, and the fees paid far exceed the reasonable value of the services rendered by Defendants." Complaint ¶ 102.

Plaintiffs' should not be able to benefit under the law for a cause of action which is not properly plead. Plaintiffs' do not contest the validity of the contract, which eliminates a claim under the theory of unjust enrichment, a remedy only available to plaintiffs who entered into a contract which is not valid or enforceable. Here the contract is not in dispute, and accordingly, the claim should be dismissed with prejudice.

Arguably, plaintiffs have also failed to properly allege that the Defendants were unjustly enriched notwithstanding that they are barred from recovery based on the concession that the parties have/had a valid and enforceable contract.

To prevail under a theory of unjust enrichment, plaintiff must further "allege that it conferred a benefit upon the defendant, and that defendant will obtain such benefit without adequately compensating plaintiff therefore. *Smith v. Chase Manhattan Bank, USA, N.A.*, 293 A.D.2d 598 (2d 2002). Plaintiffs have failed to adequately allege that the defendants have been unjustly enriched. Disgruntled, "dissatisfied IJL clients" does not amount to "no benefit." Plaintiffs have failed to support that the services promised were not rendered. The mere fact that the plaintiffs were "not satisfied" alone is not enough. There is no specific evidence detailed in the Complaint that the defendants did not render services contracted for. Plaintiffs were matched and sent out on dates.

   Concomitantly, some of the named class members who represent to be injured appear less than truthful. For instance, upon information and belief, named plaintiff, Janeen Cameron entered into a contract on or about September 4, 2007 with A & Y Enterprises LLC (d/b/a "It's Just Lunch") a Colorado franchise of IJL on or about September 4, 2007. Ms. Cameron paid $1600 to receive 12 dates or 12 months, whichever comes later. A review of her matches expresses some concern with her matches, yet also reveal successful matches. Ultimately, Ms. Cameron was pro-rated (*Attached hereto as Defendants' Exhibit "A"*) and IJL returned a portion of her money upon request.

   As stated earlier, plaintiffs Complaint is nothing more than a piecemeal of training documents and public documents found on the internet which have no established credibility or veracity. Dissatisfied plaintiffs do not define an action under unjust enrichment. This claim must be dismissed with prejudice.

## CONCLUSION

   For all the foregoing reasons, Defendants respectfully request this Court grant their Motion to Dismiss, and enter an order dismissing all Plaintiffs' claims with prejudice and without leave to amend.

Dated: New York, New York
   August 29, 2008

                   Respectfully submitted,

                   /Bari Klein, Esq. (BK 5784)
                   Lewis Brisbois Bisgaard & Smith, LLP
                   *Attorney for Defendants*
                   199 Water Street - 20th Floor
                   New York, New York 10038
                   Ph: (212) 232-1404

To: Balestriere Lanza PLLC
   *Attorneys for Plaintiff(s)*
   225 Broadway - Suite 2900
   New York, New York 10007
   *Attn: Jon Norinsberg*