```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
CHRISTINE RODRIGUEZ, ET AL.,                          :
                                                      :
                        Plaintiffs,                   :
                                                      :
             -against-                                :       REPORT AND RECOMMENDATION
                                                      :
IT'S JUST LUNCH INT'L., ET AL.,                       :       07 Civ. 9227 (SHS)(KNF)
                                                      :
                        Defendants.                   :
                                                      :
------------------------------------------------------X
```
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE SIDNEY H. STEIN, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

A group of current and/or former customers of a matchmaking service (collectively, the "plaintiffs") initiated this action against It's Just Lunch International ("IJLI"), It's Just Lunch, Inc. ("IJL"), and Harry and Sally, Inc. ("H&S") (collectively, the "defendants"). The plaintiffs filed an amended complaint which seeks damages for: 1) fraudulent inducement and misrepresentation; 2) negligent misrepresentation; 3) unjust enrichment; 4) deceptive business acts or practices, in violation of section 349 of the New York General Business Law ("NYGBL"); and 5) false advertising, in violation of NYGBL § 350.

IJLI and H&S have made a motion to dismiss, in lieu of an answer to the plaintiffs' amended complaint. IJL did not respond to the plaintiffs' amended complaint. The plaintiffs opposed the motion to dismiss; it is analyzed below.

## BACKGROUND

The plaintiffs are: Christine Rodriguez and Lisa Bruno, New York residents; Sandra Burga, a California resident; Janeen Cameroon, a Colorado resident; Karen Malak, an Illinois resident; James Tortora, a Florida resident; and Karen McBride, a Texas resident. IJLI is a limited liability company, organized under the laws of Nevada, with its principal place of business in Palm Desert, California. IJLI provides matchmaking services to the public, for profit. IJLI also acts as a corporate franchisor and has licensed franchises to operate in the New York

metropolitan area under the trade name "It's Just Lunch," including one in Manhattan. The plaintiffs assert IJL is a New York corporation that operated an IJLI franchise from April 1993 to February 2002, with its principal place of business in Manhattan. According to the plaintiffs, H&S is the successor IJLI franchise owner in Manhattan, having operated in New York City, as "It's Just Lunch," since February 2002. H&S operates from the same principal place of business, in New York City, as its predecessor, ILJ, once did, and it is owned and managed by Robert and Jill Vandor, who are not parties to the action.

According to the amended complaint, IJLI's alleged deception originates with false marketing messages, intended for prospective clients, which are placed on its matchmaking internet web site. The plaintiffs assert the defendants claim, falsely, to offer "personalized," "sophisticated," and "thoughtful" matchmaking services, through "highly trained experts." However, the plaintiffs contend most of IJLI's staff possess "no experience, training or background whatsoever in the field of matchmaking" and are required to meet monthly matchmaking quotas to remain employed. The plaintiffs maintain IJLI employed a massive scheme to defraud tens of thousands of customers, who paid exorbitant fees for social referral services provided by IJLI that were grossly deficient. Moreover, the plaintiffs allege IJLI's annual $1,500.00 fee is disproportionate to the level of service provided and is "in violation of relevant state laws . . . ."

The plaintiffs maintain it was IJLI's practice to make misrepresentations to prospective clients during their first meeting with an ILJI staff member. For example, prospective clients would be told falsely that: I) IJLI "already has several 'perfect' matches in its database for the client, when in fact no such matches exist"; ii) IJLI "has thousands of available members in the client's city, when in fact there are only hundreds or even fewer members available in that city"; iii) IJLI "has an equal percentage of men and women in its system, when in fact the number of women is grossly disproportionate to the number of men in the system"; iv) IJLI "is 'selective' over who it allows to become members, when in fact [IJLI] accepts *any* and *all* persons who are willing to pay its fees"; and v) IJLI "carefully matches its clients with other members, when in

2

fact the matches are made *at random* and are often done by individuals who have never even met the client." (emphasis in the amended complaint). The plaintiffs contend ILJI made the misrepresentations to induce prospective clients to contracting overpriced social referral services.

The plaintiffs allege that, before a prospective IJLI client executes a contract, the characteristics of prospective matches are exaggerated or misrepresented, including: marital and employment status; age; health; physical appearance; religious and political beliefs; and recreational interests. The plaintiffs assert that, through a "massive and sustained public relations campaign," IJLI touts a high success rate for matches made and boasts its matchmaking services have resulted in thousands of marriages. However, the plaintiffs contend a majority of IJLI clients neither have been matched successfully nor wed as a result of using IJLI's matchmaking services.

In addition, the plaintiffs maintain IJLI's business practices violate New York laws that regulate social referral services such as those provided by the defendants. For example, the plaintiffs allege that, contrary to New York law, the defendants' franchises located in New York charge clients more than $1,000.00 annually for matchmaking services. The plaintiffs contend the defendants attempt to circumvent the statutory maximum fee, by having their clients execute two contracts contemporaneously: the first requires payment of $1,000.00, for an initial six-month term; the second requires payment of $500.00, a discounted fee for a second six-month term. However, after this practice became known to the Office of the New York Attorney General, in June 2007, IJLI entered into an Assurance of Discontinuance agreement with that office, pursuant to New York Executive Law § 63(15), and ceased the practice.

## DISCUSSION

*Fed. R. Civ. P. 12(c) – Judgment on the Pleadings*

The plaintiffs contend the defendants designated their motion, erroneously, as one made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In their view, the motion should be treated as one seeking judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), because the defendants answered the original complaint and "the allegations in the [amended

complaint] are identical to those made in the original [c]omplaint . . . ." However, the plaintiffs ignore the fact that typically, an amended complaint supercedes the original complaint rendering it of no legal effect. See Washer v. Bullitt Cty., 110 U.S. 558, 562, 4 S. Ct. 249, 250 (1884); Shields v. Citytrust Bancorp, 25 F.3d 1124, 1128 (2d Cir. 1994). In such a circumstance, "the amended complaint [] is the legally effective pleading for Rule 12(b)(6) purposes." Harris v. City of New York, 186 F.3d 243, 249 (2d Cir. 1999).

In any event, the standard for granting a motion for judgment on the pleadings, under Fed. R. Civ. P. 12(c), is identical to that employed when analyzing a Fed. R Civ. P. 12(b)(6) motion. See Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) (citations omitted). In both instances, a court is required to view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the non-moving party, and accept as true all well-pleaded factual allegations within the complaint. See id. Patane v. Clark, 508 F.3d 106, 111 (2d Cir. 2007) (citation omitted). The Court analyzed the motion as it was styled by the movants, IJLI and H&S, as a motion to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6).

*Fed. R. Civ. P. 12(b)(6) – Standard of Review*

At the pleading stage, no obligation is placed on a plaintiff to prove anything, only to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, ___, 127 S. Ct. 1955, 1974 (2007). Moreover, a pleading "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Id. at 1964 (citation omitted). This is so because, at the pleading stage, all that is required is that a party set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," thus affording the adverse party fair notice of what the claim entails and the grounds upon which it rests. Fed. R. Civ. P. 8(a); see also Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (quotations and citations omitted).

When assessing a Fed. R. Civ. P. 12(b)(6) motion, "consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated [ ] by reference, and to matters [about] which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). In addition, a court may consider "documents [ ] the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000) (citation omitted). Moreover, "even if not attached or incorporated by reference, a document upon which [the complaint] *solely* relies and which is *integral to the complaint* may be considered by the court in ruling on such a motion." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (citation and quotation marks omitted) (emphasis and brackets in original).

The instant motion to dismiss includes the following exhibits: (a) a copy of a Wikipedia web page concerning the internet web site located at http://www.consumeraffairs.com; (b) an IJLI staff note regarding a telephone conversation between an unidentified IJLI employee, or IJLI Florida franchisee, and plaintiff James Turtoro; and (c) an undated and unsigned correspondence from an unidentified representative of an IJLI Denver, Colorado, franchise regarding a refund for matchmaking appointments that did not occur.

The exhibits to the motion are not items attached to the complaint. Furthermore, the plaintiffs have not established these documents were known to or possessed by them and relied upon in bringing their suit. See Rothman, 220 F.3d at 88-89. Therefore, the Court has not considered the documents in its analysis of the motion. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (citing Fed. R. Civ. P. 12(b)[6]), cert. denied, Cortec Industries, Inc. v. Westinghouse Credit Corp., 503 U.S. 960, 112 S. Ct. 1561 (1992). However, the Court has considered the exhibits attached to the amended complaint.

*Fraudulent Inducement and Misrepresentation*

In order to establish a cause of action for fraud, under New York law, a plaintiff must demonstrate that "(1) the defendant made a material false representation, 2) the defendant

5

intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Wall v. CSX Transp., Inc., 471 F.3d 410, 415-16 (2d Cir. 2006) (citations omitted). In addition, Fed. R. Civ. P. 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. However, [m]alice, intent, knowledge, and other condition of a person's mind may be alleged generally."

Where fraud is alleged against multiple defendants, a plaintiff must identify, in the complaint, with particularity, "the acts [and] omissions complained of by each defendant." Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000). "General allegations against a group of defendant[s] are insufficient" to satisfy Rule 9(b). Schmidt v. Fleet Bank, No. 96 Civ. 5030, 1998 WL 47827, at *5 (S.D.N.Y. Feb. 4, 1998) (citation omitted). Moreover, "where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987) (citation omitted).

The plaintiffs contend they were fraudulently induced to enter into contracts with the defendants, for overpriced matchmaking services, of poor quality, during interviews conducted by the defendants' personnel, through postings on the defendants' internet web site and via their advertisements. The plaintiffs maintain they relied, to their detriment, upon various material misrepresentations the defendants made and, as a result, suffered monetary damages. The facts alleged by the plaintiffs, in support of their fraud claim, are not defendant-specific; rather, the allegations are made against the defendants collectively. For example, the amended complaint alleges the defendants made material representations; but it fails to identify precisely which defendant made the misrepresentations, what was said and to which plaintiff the statement(s) was made. To satisfy the pleading requirements of Fed. R. Civ. P. 9(b), "a complaint may not simply 'clump [] defendants together in vague allegations.'" Rich v. Maidstone Financial, Inc., No. 98 Civ. 2569, 2002 WL 31867724, at *10 (S.D.N.Y. Dec. 20, 2002) (citation omitted). Instead, the

6

complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) (citing Cosmas v. Hassett, 886 F.2d 8, 11 [2d Cir. 1989]).

In the case at bar, the plaintiffs allege they were induced to enter into matchmaking contracts as a result of misrepresentations made by the defendants on their internet web site, in various advertisements, and during prospective client interviews conducted by the defendants' employees. The plaintiffs assert, in generalized terms, "lies" were spoken, but they fail to identify which of the "lies" applies specifically to the fraud claim; who uttered the "lies;" who heard the lies; when and where the "lies" were stated; how the "lies" deceived a particular plaintiff(s); or how the "lies" caused injury to a particular plaintiff(s). The lack of specificity respecting the multiple "lies" which the plaintiffs allege were uttered by an unidentified representative(s) of the defendants does not comport with the pleading requirements of Fed. R. Civ. P. 9(b).

While the Court is mindful, intent or knowledge may be averred generally, "[i]n order to avoid abuse of the less stringent requirement for pleading [these conditions of a person's mind,] plaintiffs are required to allege facts that give rise to a strong inference of fraudulent intent." Campaniello Imports, Ltd. v. Saporiti Italia S.P.A., 117 F.3d 655, 663 (2d Cir. 1997) (quotation and citations omitted). A strong inference of fraudulent intent may be established; "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006) (quotations and citations omitted). Although, a plaintiff is not required to "plead dates, times and places with absolute precision, [] [a]llegations of scienter and falsity will be sufficient where 'the sources of the information and the information itself are described in detail . . . .'" In re Flag Telecom Holdings, LTD., 308 F. Supp. 2d 249, 260 (S.D.N.Y. 2004) (quoting In re WorldCom, Inc. Sec. Litig., 294 F. Supp. 2d 392, 417 [S.D.N.Y. 2003]). The plaintiffs have not done this.

7

The plaintiffs maintain promises were made to provide "personalized," "sophisticated," and "thoughtful" matchmaking services to them, and the amended complaint contemplates future performance by the defendants of those services. However, "[t]he failure to fulfill a promise to perform future acts is not ground for a fraud action unless there existed an intent not to perform at the time the promise was made." Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994) (citations omitted). The plaintiffs have not included, in their amended complaint, facts that demonstrate the defendants did not intend to perform any particular promise(s). Furthermore, "[a]lthough Rule 9(b) provides that intent and 'other condition of mind' may be averred generally, plaintiffs must nonetheless provide some factual basis for conclusory allegations of intent." Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir. 1987), abrogated on other grounds. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (1986). "[S]peculation and conclusory allegations" will not suffice to meet Fed. R. Civ. P. 9(b)'s pleading requirement. Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995) (quoting Wexner v. First Manhattan Co., 902 F.2d 169, 172 [2d Cir. 1990]). In the circumstance of the instant case, since the plaintiffs have failed to plead sufficiently, facts that either give rise to a strong inference of fraud or demonstrate the defendants did not intend to perform, after promising to render services to the plaintiffs in the future, their claims of fraudulent inducement and misrepresentation are not plausible, because they lack the requisite degree of specificity demanded by Fed. R. Civ. P. 9(b).

*Deceptive Acts or Practices -- NYGBL § 349*

NYGBL § 349 prohibits "'[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York].'" See Davis v. Blige, 505 F.3d 90, 96 n.8 (2d Cir. 2007), cert. denied, Blige v. Davis, 129 S.Ct. 117 (2008) (quoting N.Y. Gen. Bus. Law § 349). To state a cause of action for deceptive trade practices under NYGBL § 349, a plaintiff must show: (1) "that the challenged act or practice was consumer-oriented;" (2) "that it was misleading in a material way;" and (3) "that the plaintiff suffered injury as a

8

result of the deceptive act." Stutman v Chemical Bank, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 897 (2000) (citations omitted).

The plaintiffs allege the defendants made material misrepresentations on an internet web site,[1] knowingly, as well as in advertising and during prospective client interviews with them. The plaintiffs assert these misrepresentations were designed to deceive them regarding, inter alia, the defendants' matchmaking services, and did so successfully.

NYGBL § 349 is limited to transactions [that occur within] New York State. See Berkman v. Robert's Am. Gourmet Food, Inc., 16 Misc.3d 1104(A), 841 N.Y.S.2d 825, 2007 WL 1815990, at *5 (N.Y. Sup. Ct. N.Y. Cty. 2007) (citing Goshen v. Mutual Life Ins. of NY, 98 N.Y.2d 314, 746 N.Y.S.2d 858 [2002]).  Therefore, a plaintiff asserting a cause of action under NYGBL § 349 must plead facts which establish consumer deception that occurred solely in New York.  See Goshen, 98 N.Y.2d at 325, 746 N.Y.S.2d at 864 ("to qualify as a prohibited act . . . the deception of a consumer must occur in New York"). Id. at 325, 746 N.Y.S.2d at 864.

Claims made pursuant to NYGBL § 349 "do[ ] not turn on the residency of the parties." Id. Application of "the statute to out-of-state transactions . . . would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to the nationwide, if not global application of [NYGBL] § 349." Id. (citations omitted).  "The origin of any advertising or promotional conduct is irrelevant if the deception itself--that is, the advertisement or promotional package--did not result in a transaction in which the consumer was harmed." Id. at 326, 746 N.Y.S.2d at 864.

Although a NYGBL § 349 claim need not be pleaded with particularity, see Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005) (citations omitted), a plaintiff must, nonetheless, allege that the deceptive act(s) complained of occurred in New York. See Murrin v. Ford Motor Co., 303 A.D.2d 475, 477, 756 N.Y.S.2d 596, 598 (App. Div. 2d Dep't 2003)

---

[1]The plaintiffs attribute to IJLI, specifically, what are alleged to be false statements made on its internet web site, located at http://www.itsjustlunch.com.  Elsewhere in the amended complaint, without explanation, the same statements are attributed, collectively, to the "[d]efendants."

(citation omitted). The amended complaint does not indicate a plaintiff was victimized by a deceptive act(s) that took place within New York. Accordingly, no plausible violation of NYGBL § 349 has been alleged.

*False Advertising -- New York General Business Law § 350*

NYGBL § 350 proscribes "false advertising in the conduct of any business, trade or commerce or in the furnishing of any service" in New York. The plaintiffs allege the defendants violated NYGBL § 350 by publishing various advertisements for their matchmaking services and through postings they made on an internet web site. A plaintiff asserting a claim, pursuant to NYGBL § 350, must "demonstrate that the advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury." Andre Strishak & Assoc., P.C. v. Hewlett Packard Co., 300 A.D.2d 608, 609, 752 N.Y.S.2d 400, 403 (App. Div. 2d Dep't 2002) (citation omitted). NYGBL § 350 is limited solely to transactions that occur within New York.[2] See Berkman, 2007 WL 1815990, at *5. The amended complaint is devoid of facts showing the false advertising alleged by the plaintiffs occurred within New York; Consequently, no plausible NYGBL § 350 claim has been made.

*Negligent Misrepresentations*

Under New York law, the elements of a cause of action for negligent misrepresentation are: "1) the defendant had a duty, as a result of a special relationship, to give correct information; 2) the defendant made a false representation that he or she should have known was incorrect; 3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; 4) the plaintiff intended to rely and act upon it; and 5) the plaintiff reasonably relied on it to his or her detriment." Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000) (citations omitted). Allegations of negligent misrepresentation must be pleaded with particularity, in accordance with the requirements of Fed.

---

[2]"The standard for recovery under [NYGBL] § 350, while specific to false advertising, is otherwise identical to section 349." Goshen, 98 N.Y.2d at 324 n.1, 746 N.Y.S.2d at 863 n.1.

R. Civ. P. 9(b). See Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 583 (2nd Cir. 2005).

The plaintiffs allege the defendants made false and misleading statements to them recklessly and carelessly, without identifying specifically to which plaintiff(s) the statements were made or what the contents of the statements were. The plaintiffs contend the defendants should have known they would rely on these statements. Furthermore, the plaintiffs maintain they did rely on the statements and, as a result, a duty of care owed to the plaintiffs by the defendants was breached. The plaintiffs allege the misleading statements caused them, inter alia, to suffer monetary damages.

To determine whether a negligent misrepresentation claim has been asserted, a court must, at a minimum, be advised of the content of the purported misrepresentation relied upon by a plaintiff. Armed with that information the court can determine whether the statement(s) made was "conclusory and/or constitute[s] mere puffery, opinion[s] of value or future expectation[s]" and thus not actionable. Hydro, 227 F.3d at 21; see also Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187-88 (2d Cir. 2004) (citation omitted) (holding that a negligent misrepresentation claim requires that the alleged false statement(s) be factual and not "promissory or related to future events"). As noted above, the amended complaint does not provide, with specificity, the contents of the misrepresentations alleged to have been made. Similarly, the amended complaint does not establish any special relationship existed between the parties by virtue of their matchmaking service agreements. Thus, the Court cannot conclude, from an analysis of the amended complaint, a plausible negligent misrepresentation cause of action has been asserted.

*Unjust Enrichment*

A claim for unjust enrichment, in New York, has three elements: "(1) [ ] the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 586 (2d Cir. 2006) (quotations and citation omitted). The essence of a cause

of action for unjust enrichment is that "one party possesses money . . . that in equity and good conscience [it] should not have obtained or possessed because it *rightfully belongs to another*." Strong v. Strong, 277 A.D.2d 533, 534, 715 N.Y.S.2d 499, 501 (App. Div. 3rd Dep't 2000) (emphasis in original) (quotation omitted).

A plaintiff may recover for unjust enrichment only if a valid contract does not exist, since unjust enrichment is a quasi-contract claim. See Goldman v. Metro. Life Ins. Co., 5 N.Y.3d 561, 572, 807 N.Y.S.2d 583, 587 (2005). The plaintiffs assert the defendants violated New York consumer fraud laws, including NYGBL §394-c(2), when they entered social referral contracts (matchmaking service contracts) through which they obtained total annual compensation, from their clients, in excess of $1,000. As such, according to the plaintiffs, the contracts were unlawful. In support of their contention, the plaintiffs point to the intervention of New York's Attorney General. As the plaintiffs have alleged the defendants have benefitted improperly, at their expense, by receiving payments, for matchmaking services, to which they were not entitled, under New York law, principles of equity and good conscience dictate that, if the allegations are proven, the plaintiffs recover on their unjust enrichment cause of action. Inasmuch as all that is required of the plaintiffs, at this juncture, is that they provide a short and plain statement articulating a plausible claim for unjust enrichment, see Twombly, 127 S. Ct. at 1975; Fed. R. Civ. P. 8, the Court finds the plaintiffs have met that burden.

## RECOMMENDATION

For the reasons set forth above, it is recommended that, the defendants' motion to dismiss the plaintiffs' amended complaint be granted, except as it relates to the cause of action asserted for unjust enrichment.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Sidney H. Stein,

500 Pearl Street, Room 1010, New York, New York 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Stein. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140, 470 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F. 3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 58-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
      February 17, 2009

Respectfully submitted,

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE