UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
CHRISTINE RODRIGUEZ, SANDRA          :
BURGA, KAREN MALAK, JAMES            :
TORTORA, LISA BRUNO, JANEEN          :
CAMERON, KAREN MCBRIDE,              :
Individually, and for all others similarly :
situated,                            :
                                     :
             Plaintiffs,          :
                                     :
           -against-          :   REPORT & RECOMMENDATION
                                     :
IT'S JUST LUNCH INTERNATIONAL,       :   07 Civ. 9227 (SHS)(KNF)
ITS JUST LUNCH, INC, HARRY           :
and SALLY, INC., RIVERSIDE           :
COMPANY, LOREN SCHLACHET,            :
IJI NEW YORK CITY FRANCHISE,         :
IJL ORANGE COUNTY FRANCHISE,         :
IJL CHICAGO, FRANCHISE, IJL          :
PALM BEACH FRANCHISE, IJL            :
DENVER FRANCHISE, IJL AUSTIN         :
FRANCHISE, IJL LOS                   :
ANGELES-CENTURY CITY                 :
FRANCHISE, and DOES 1-136,           :
                                     :
             Defendants.          :
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE SIDNEY H. STEIN, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

      Plaintiffs Christine Rodriguez ("Rodriguez"), Sandra Burga, Karen Malak ("Malak"), James Tortora, Lisa Bruno ("Bruno"), Janeen Cameron ("Cameron"), and Karen McBride commenced this action, on October 15, 2007, against It's Just Lunch International ("IJLI"), It's Just Lunch, Inc. ("IJL, Inc."), Harry and Sally, Inc. ("H&S"), Riverside Company, Loren Schlachet, and seven IJLI franchises. In an order dated March 11, 2009, your Honor adopted the

1

undersigned's first report and recommendation, and dismissed all the claims asserted by the plaintiffs in their First Amended Complaint, save for unjust enrichment.  With leave of the court, the plaintiffs filed their Second Amended Complaint on April 1, 2009.

On March 30, 2010, your Honor adopted the undersigned's second report and recommendation, and dismissed all the claims asserted by the plaintiffs in their Second Amended Complaint, except their New York General Business Law ("NYGBL") § 349, unjust enrichment and fraudulent inducement causes of action.

Before the Court are: (1) the plaintiffs' motion for partial summary judgment pursuant to Fed. R. Civ. P. 56, regarding their NYGBL § 349 and unjust enrichment causes of actions; and (2) the defendants' cross-motion for partial summary judgment regarding the plaintiffs' NYGBL § 349, unjust enrichment and fraudulent inducement causes of action.  The motions are analyzed below.

## BACKGROUND

IJLI provides dating services to the public, for profit.  IJLI also acts as a corporate franchisor and has licensed franchises to operate in the New York metropolitan area and elsewhere under the trade name "It's Just Lunch."  The plaintiffs allege the defendants engaged in a series of deceptive practices, such as failing to pair members with dates who meet the members' stated preferences and overstating to prospective clients the number of persons available to be matched with them, for dates, in a given area.  The plaintiffs contend that the defendants' alleged deceptions originate with false marketing messages, intended for prospective clients, which are placed on their internet Web site.

The plaintiffs also contend that the defendants claim, falsely, to offer "personalized," "sophisticated," and "thoughtful" matchmaking services, through "highly trained experts." However, according to the plaintiffs, most of the defendants' staff possess "no experience, training or background whatsoever in the field of matchmaking," and are required to meet monthly matchmaking quotas to remain employed. The plaintiffs allege that the defendants employed a massive scheme to defraud tens of thousands of customers, who paid exorbitant fees for social referral services provided by the defendants that were grossly deficient because IJL never matched members based on their stated preferences, and claims to match clients based on the dating expertise of its employees, when matches are actually made at random. Moreover, the plaintiffs maintain that the fees charged by the defendants are disproportionate to the level of service provided, and "violat[ed] relevant [New York] state laws . . ."

Before joining the dating service, prospective clients must be interviewed at an IJLI franchise, by a franchise staff member. The plaintiffs allege that during these interviews, franchise staff members "routinely": (1) claim they have several "perfect matches" in the franchise database for the prospective client, when none exists; (2) overstate the number of clients in the franchise database; (3) overstate the percentage of male clients in the database; (4) claim to match clients carefully, when matches are actually made at random; and (5) claim to have professionals in their database only, although some clients are not professionals.

The defendants dispute the plaintiffs' allegations, and contend that they do not employ deceptive business practices, as alleged by the plaintiffs, and that IJL has taken steps to ensure that prospective clients are not misled. According to the defendants, the training mechanisms

3

employed by IJL individually, and through its franchises, are designed to prevent its employees from advising prospective clients and members incorrectly about IJL, its franchises and the services they provide.  As part of the required training, employees are provided an "info-call script" to use as a guide when fielding calls from potential clients, as well as "control points," which are short statements drafted by IJL for employees to use as a guide during the in-person interview of a potential client.  The defendants maintain that the purpose of the above-noted guides is to ensure that IJL employees acquire the information they need to determine whether a prospective member is a suitable fit for IJL.  Furthermore, IJL's guidelines ensure that employees explain properly, to prospective clients, IJL's matching process and relay information in a manner that will convey the proper level of expectations that a prospective member should have if he or she decides to join.

     According to the defendants, their employees are trained not to allow anyone to join as a member unless the employee has an idea about with whom he or she will start matching the prospective member.  The defendants aver that all prospective members are "screened" prior to being invited to attend an in-person interview.  Upon learning of a prospective member's specific desires and the characteristics he or she seeks in a date, an IJL staff member will compare the prospective members desires with those of incumbent members.  If the prospective member's desires are not well-suited with those of incumbent members, he or she will be advised that IJL does not have any potential matches.  The defendants maintain that IJL does not promise its clients second dates, love, marriage, or a successful relationship, they simply offer to match IJL members with others.

**UNDISPUTED FACTS**

IJLI, is a Nevada limited liability company with its principal place of business in California. It is a franchisor that grants franchisees the right to operate under its trade name – It's Just Lunch.  IJL Inc., a New York corporation, owned the IJL New York City franchise, in Manhattan, from "about April 1993 until [in] or about February 2002."  H&S, a New York corporation, has owned and operated IJL New York City since "[in] or about February 2002," and is the successor IJLI franchise owner in Manhattan.  H&S is owned and managed by Robert and Jill Vandor, who are not parties to this action.  IJL Orange County is an IJLI franchise "located in" California.  IJL Denver is an IJLI franchise "located in" Colorado.  IJL Austin is an IJLI franchise "located in" Texas.

Pursuant to the provisions of New York Executive Law § 63(15), the New York Attorney General may, in lieu of instituting a civil action or proceeding in connection with New York law(s), enter into an Assurance of Discontinuance ("AOD") with an entity whose act(s) or practice(s) is found by the Attorney General to be violative of New York law.  On June 13, 2007, and July 11, 2007, respectively, IJLI and H&S entered into separate AODs, with the New York Attorney General.[1]  In the AOD agreements, the Attorney General outlined his findings, that several of the practices in which both companies engaged violated NYGBL §§ 394(c)(1)-(6), and 399(c), which are consumer protection laws.  NYGBL § 394(c) places limitations on social referral services contracts, and NYGBL § 399(c) prohibits service providers from placing mandatory arbitration clauses in certain consumer contracts.  The Attorney General found that employees of IJLI and H&S requested that consumers of their social referral services sign more than one contract at the inception of their relationship, for an aggregate fee for services in excess

---

[1] The allegations made by the Attorney General, in the AOD agreements signed by IJLI and H&S, were virtually identical.

of $1,000.00, in violation of NYGBL § 394-c(2), which prohibits a social referral service from requiring a purchaser of its services to pay a cash price in excess of $1,000.00.

In connection with the AODs, IJLI and H&S agreed to pay civil penalties to the state of New York, of $45,000.00 and $6,000.00, respectively. However, by entering into their AOD agreements, IJLI and H&S did not admit the Attorney General's findings; rather, each company maintained that it entered into its AOD agreement to settle the matter and avoid the expense of litigation.

When a new IJL franchise is established, the new franchisee is provided an Operations Manuel by IJL, to enable the franchisee to become familiar with IJL's procedures. In addition to publishing an operations manual, IJLI has also promulgated guidelines and adopted policies for franchisees and their employees to follow. For example, one policy advises employees that, "[d]ishonesty is unacceptable [and w]hen describing a client's match, you must always be truthful."

As part of its social referral services, IJL does not promise to find a marriage partner for its clients, nor does it promise that the first dates it facilitates will lead to second dates. When a prospective client is interested in joining IJL, he or she must participate in an in-take interview conducted by an IJL representative to determine the client's interests. With the exception of Malak and Cameron, each plaintiff understood, at the time he or she joined IJL, that the parties' contract contained no guarantees or warranties by IJL respecting the persons with whom a member might be matched.

## DISCUSSION

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." Id. A motion for summary judgment requests that a district court perform "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250, 106 S. Ct. at 2511.

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of" the record, including, inter alia, depositions, documents, and affidavits or declarations, that "it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); see also Fed. R. Civ. P. 56(c)(1). Once the moving party has met its burden, the non-moving party must "go beyond the pleadings," and provide its own evidence, or make citation to portions of the existing record that show there is a genuine triable issue. Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

To defeat a motion for summary judgment, the non-moving party must come forward with more than "a scintilla of evidence." Anderson, 477 U.S. at 252, 106 S. Ct. at 2512. However, a district court should not make credibility determinations in ruling on a motion for summary judgment, and all justifiable inferences are to be drawn in favor of the non-moving party. See id. at 255, 106 S. Ct. at 2513.

**Plaintiff's Motion for Partial Summary Judgment**

1. **NYGBL § 349**

NYGBL § 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business" in New York. The statute creates a private cause of action for any person injured by a violation of the law. See NYGBL § 349(h). To establish a prima facie case under NYGBL § 349, a plaintiff must show: (1) the defendant's deceptive acts were directed at consumers; (2) the defendant's acts are misleading in a material way; and (3) an injury resulting from the defendant's acts. See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 532 (1995). Additionally, "the transaction in which the consumer is deceived must occur in New York." Goshen v. Mutual Life Ins. Co. of New York, 98 N.Y.2d 314, 324, 746 N.Y.S.2d 858, 863 (2002).

The statute of limitations for a NYGBL § 349 cause of action is three years. See Charles Atlas, Ltd. v. DC Comics, Inc., 112 F. Supp. 2d 330, 334 (S.D.N.Y. 2000); see also New York Civil Practice Law and Rules § 214(2). The plaintiffs[2] concede that Rodriguez's NYGBL § 349 cause of action is time-barred. See Pls.' Mem. of Law in Opp'n to Defs' Cross-Mot. for Summ. J., p.4, n.3, Docket Entry No. 115 ("Since Christine Rodriguez's individual claims accrued on June 22, 2004-and since this action was not filed until October 15, 2007-Ms. Rodriguez's New York claims are indeed time-barred.").

A class-action cannot be maintained unless there is a named plaintiff with a live controversy, both at the time the complaint is filed, and at the time the class is certified.[3] See

---

[2] Bruno, the only other New York plaintiff, would not be able to state a claim under NYGBL § 349, because she was never charged in excess of $1,000.00 by IJL for social referral services, and the plaintiffs do not present an alternative basis under which Bruno may assert a cause of action pursuant to NYGBL § 349.

[3] Although this case has not been certified as a class action, the plaintiffs have made clear, in the submissions supporting the instant motion, that it is their intention to file for class certification once the motion for partial summary judgment has been resolved.

Swan v. Stoneman, 635 F.2d 97, 102 (2d Cir. 1980).  In a circumstance where such a plaintiff does not have a live controversy when the complaint is filed, and continuously thereafter to the point at which a class is certified, an issue of mootness is presented.  Nevertheless, the Second Circuit Court of Appeals has recognized an exception to the mootness doctrine for circumstances which are capable of repetition.  See Muhammad v. City of New York Dept. of Corrections, 126 F.3d 119, 123 (2d Cir. 1997).  This exception is applied only in "exceptional situations . . . to preserve a class action in which some members of the class retain a cognizable interest in the outcome after the claim of the named representative has become moot." Id. (internal quotation marks and citations omitted).  The plaintiffs' reliance on the mootness doctrine exception, in the instant case, is misplaced, as the mootness doctrine exception is intended to be used to allow a party to maintain a class action where a claim was valid at the time the complaint was filed, but became moot by the passage of time, or some other event.  See Gratz v. Bollinger, 539 U.S. 244, 285-86 n.5, 123 S. Ct. 2411, 2436 n.5 (2003).  Since Rodriguez's NYGBL § 349 cause of action was time-barred when the complaint was filed, the plaintiffs are not entitled to summary judgment on their NYGBL § 349 cause of action.

    **2.**    **Unjust Enrichment**

Under New York law, to state a claim for unjust enrichment, a claimant must allege facts establishing that: (1) the defendant benefitted; (2) the benefit came at the plaintiff's expense; and (3) "equity and good conscience require restitution."  Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 586 (2d Cir. 2006).  The theory of unjust enrichment sounds in quasi-contract.  Id.  Therefore, proof of an enforceable contract, either oral

or written, precludes recovery under the theory of unjust enrichment. See Goldman v. Metropolitan Life Ins. Co., 5 N.Y.3d 561, 572, 807 N.Y.S.2d 583, 587 (2005) ("[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.") (citations omitted). The statute of limitations for an unjust enrichment cause of action is three years, if the plaintiff seeks monetary damages. See Kermanshah v. Kermanshah, 580 F. Supp. 2d 247, 263 (S.D.N.Y. 2008) (citations omitted).

Here, the parties entered into written contracts for social referral services. Moreover, the plaintiffs seek to recover monetary damages on their unjust enrichment cause of action. Rodriguez's individual causes of action accrued on June 22, 2004, this action was filed October 15, 2007; as a result, Rodriguez's unjust enrichment cause of action is time-barred. Furthermore, by November 29, 2006, the defendants had agreed with New York's Attorney General to settle their dispute by ceasing to engage in practices the Attorney General found violative of New York Law. Bruno, the only other New York plaintiff, executed her contract with IJL on August 9, 2007. Bruno paid $1,000.00 to IJL, and her contract did not contain the offending terms and conditions that had previously raised the ire of the Attorney General. The plaintiffs have alleged no other basis for finding Bruno's contract void or voidable. For all of the reasons noted above, granting the plaintiffs' motion for summary judgment, on their quasi-contract unjust enrichment cause of action, is not warranted.

### Defendants' Cross-Motion for Partial Summary Judgment

The defendants seek summary judgment on the plaintiffs' NYGBL § 349, unjust

enrichment and fraudulent inducement causes of action. For the reasons explained above, in the analysis of the plaintiffs' summary judgment motion, the only NYGBL § 349 cause of action asserted in this case is time-barred and no viable unjust enrichment cause of action exists. Therefore, it is appropriate to grant the defendants summary judgment on the plaintiffs' NYGBL § 349 and unjust enrichment causes of action.

### 1. Fraudulent Inducement Claim

To state a claim for fraudulent inducement, a plaintiff must allege: (1) the defendant made a false representation knowingly and recklessly; (2) the representation concerned a material fact; (3) the defendant made the misrepresentation with intent to deceive or to induce the plaintiff to act; (4) the plaintiff relied reasonably on the misrepresentation; and (5) the plaintiff suffered damages. See Aetna Cas. & Sur. Co. v. Aniero Concrete, 404 F.3d 566, 580 (2d Cir. 2005).

The defendants contend that they did not "knowingly or recklessly" make any misrepresentations or omissions respecting any material facts. The defendants maintain that each plaintiff was matched according to his or her stated criteria, and none of the plaintiffs was matched without those criteria in mind.[4]

The record reflects that every IJL employee is required to execute a copy of, and honor the IJL policy that states "dishonesty is unacceptable" and, further, that each employee must "always be truthful," when describing a person with whom a client is to be matched. In addition, during

---

[4] The defendants indicated that the affidavits of Jill Vandor, Panela Joyce Osgood, Anna Andersen, and Melissa Brown are attached to the Declaration of Bari Klein, Docket Entry No. 137. However, none of the referenced affidavits is attached to that declaration, nor is any one of them attached to any other document that appears on the docket sheet maintained by the Clerk of Court for this action.

the deposition of Julie Novotny ("Novotny"), the vice president of an unidentified IJL call center, she testified that, "[at IJL,] we never bring a client on board if we don't have matches in what they're looking for. We're never going to say, oh, yeah, come on board, we have everything that you're looking for, if we have nobody." Novotny also testified that, "when someone was brought on board and the matches we originally thought were their matches are not available, we'll refund the client."

The plaintiffs have provided contradictory evidence that supports their contention that the defendants made misrepresentations or omissions, knowingly or recklessly concerning material facts. The plaintiffs have annexed, as exhibits to the complaint, pages from a manual IJLI uses to train "franchise owners and directors." The training manual provides several "control points that are [to be] said in verbatim in an interview" by franchise staff members. For example, following the first control point, which is a sample statement drafted by IJL to guide its employees during their interaction with customers, an interviewer is to state, to a prospective client: "if I have what you're looking for, ill get you started today! If I don't then we just hold off[.]" Following the recitation of the second control point, an interviewer is to state, to a prospective client: "I have 3-4 ideas for your first date." Michelle LePage ("LePage"), a former senior coordinator for IJL, at its Florida Call center, testified during her deposition that, the majority of scripted language employees were directed to recite during an interview with a prospective client was "patently false," and IJL did not always have suitable matches for prospective clients and its employees simply said the same thing to every potential client. In addition, the plaintiffs make citation to the deposition of Angel Velasquez ("Velasquez"), who was the training and sales manager at IJL's

Florida Call center. Velasquez testified that the defendants' employees routinely lied to clients by telling them that IJL had matches, when it in fact did not. Moreover, during Velasquez's deposition, he stated that, contrary to IJL's claim that it screened out certain individuals who did not meet IJL's stated criteria for client candidates, such as the requirement that a client be a professional, the defendants did not screen out anyone, and accepted everyone who applied to use their services.

Disputed issues of material fact exist regarding whether representations made by the defendants to prospective clients were false, and were conveyed to induce prospective clients to purchase the defendants' social referral services. A district court cannot make credibility determinations when considering a summary judgment motion. See Anderson, 477 U.S. at 255, 106 S. Ct. at 2513. Therefore, the disputed facts must be resolved at a trial. Accordingly, awarding the defendants summary judgment, on the plaintiffs' fraudulent inducement cause of action, is neither reasonable or appropriate.

## Fraudulent Concealment

Under New York law, to establish a prima facie claim of fraudulent concealment a plaintiff must demonstrate: "(1) failure to discharge a duty to disclose; (2) an intention to defraud, or scienter; (3) reliance; and (4) damages." TVT Records v. Island Def Jam Music Group, 412 F.3d 82, 90-91 (2d Cir. 2005). The plaintiffs' fraudulent concealment cause of action was asserted, for the first time, in their opposition to the defendants' motion for partial summary judgment on the plaintiffs' fraudulent inducement cause of action. As a general rule, "[a]n opposition to a summary judgment motion is not the place for a plaintiff to raise new claims." 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1183, at 23 n. 9 (3d ed.2004). Courts decline to permit such a pleading because "a claim must be set forth

in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim." See Thomas v. Egan, 1 Fed. Appx. 52, 54 (2d Cir. 2001); see also Greenidge v. Allstate Ins. Co., 446 F.3d 356, 361 (2d Cir. 2006)     (declining to reach the merits of an argument raised for the first time in opposition to summary judgment because the defendant was not provided with sufficient notice).

The plaintiffs assert that the defendants were put on notice of their fraudulent concealment cause of action through the complaint, which, in pertinent part, alleges that the defendants misled prospective clients about the existence of a Florida call center and led prospective clients to believe that IJL had a local presence in areas where it did not have an office. These allegations are located in paragraph 114, subsection (e), of the plaintiffs' Second Amended Complaint, and are inserted among a series of eight false statements and practices about which counsel to the plaintiffs learned during discussions with former IJL employees. Inserting these allegations among a collection of purportedly false statements and practices attributed to IJL did not convey plainly and concisely that the plaintiffs were asserting a fraudulent concealment cause of action. See Fed. R. Civ. P. 8(a)(2). Under these circumstances, the Court is unable to conclude that the defendants had sufficient notice of the plaintiffs' fraudulent concealment theory of liability; accordingly, the plaintiffs' fraudulent concealment cause of action will not be considered in connection with the instant motion. See Costello v. New York State Nurses Ass'n, 783 F. Supp. 2d 656, 678 (S.D.N.Y. 2011) (declining to consider claims raised for the first time in submissions made in opposition to a motion for summary judgment).

**RECOMMENDATION**

For the reasons set forth above, I recommend that the plaintiffs' motion for partial summary judgment, Docket Entry No. 101, be denied with respect to their NYGBL § 349 and unjust enrichment causes of action. I recommend, further, that: (1) the defendants' cross-motion for partial summary judgment, Docket Entry No. 107, be granted with respect to the plaintiffs' NYGBL § 349 and unjust enrichment causes of action, and denied with respect to the plaintiffs' fraudulent inducement cause of action. In addition, I recommend that the court decline to consider the plaintiffs' fraudulent concealment cause of action, as it was raised, for the first time, in the plaintiffs' submissions in opposition to the defendants' cross-motion for partial summary judgment.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Sidney H. Stein, 500 Pearl Street, Room 1010, New York, New York 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Stein. *Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 470 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 58-59 (2d Cir. 1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983).

| | |
|---|---|
| Dated: New York, New York<br>April 6, 2012 | Respectfully submitted,<br><br>*/s/ Kevin Nathaniel Fox*<br>KEVIN NATHANIEL FOX<br>UNITED STATES MAGISTRATE JUDGE |