UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTINE RODRIGUEZ, SANDRA
BURGA, KAREN MALAK, JAMES
TORTORA, LISA BRUNO, JANEEN
CAMERON, KAREN MCBRIDE and
ANDREW WOOLF, Individually and for all
others similarly situated,

                    Plaintiffs,

        - against -

IT'S JUST LUNCH INTERNATIONAL, IT'S
JUST LUNCH, INC., HARRY and SALLY,
INC., RIVERSIDE COMPANY, LOREN
SCHLACHET, IJL NEW YORK CITY
FRANCHISE, IJL ORANGE COUNTY
FRANCHISE, IJL CHICAGO FRANCHISE,
IJL PALM BEACH FRANCHISE, IJL
DENVER FRANCHISE, IJL AUSTIN
FRANCHISE, IJL LOS ANGELES-CENTURY
CITY FRANCHISE, and DOES 1-136,

                  Defendants.

07-CV-9227 (SHS)

## MEMORANDUM OF LAW OF DEFENDANTS
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR
## CLASS CERTIFICATION

LEWIS BRISBOIS BISGAARD & SMITH LLP
*Attorneys for Defendants*
77 Water Street, 21st Floor
New York, New York  10005
212-232-1300

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ................................................................................................................7

POINT I
PLAINTIFFS CANNOT MEET THE REQUIREMENT OF
RULE 23 AS TO THE NEW YORK SUBCLASSES THEY
ASK THE COURT TO CERTIFY............................................................................7

    A.  Commonality under Rule 23(a) and Predominance under 23(b)(3) ..........................7
    B.  A Class Action is Not the Superior Method to Address the Claims ........................14
    C.  Berkowitz is Not and Adequate Representative of the Subclass .............................14
    D.  Berkowitz's Claim Does not Appear to Be Typical .............................................15
    E.  Plaintiffs Have Not Demonstrated Numerosity....................................................16

POINT II
CERTIFICATION SHOULD BE DENIED AS TO
THE NATIONWIDE CLASSES ............................................................................16

    A.  The Classes Are Not Ascertainable ...................................................................16
    B.  Plaintiffs Have Not Satisfied the Commonality Requirement ...............................17
    C.  Plaintiffs Have Not Satisfied the Typicality Requirement....................................19
    D.  Two Plaintiffs Are Not Adequate Class Representatives ......................................20
    E.  Rule 23(b)(3) Is Not Satisfied Because Individual Issues Predominate...................20
    F.  A Class Action Would Not Be Superior Under Rule 23(b)(3)................................24

CONCLUSION..............................................................................................................25

Defendants (collectively "IJL") submit this Memorandum of Law in Opposition to Plaintiffs' class certification motion. Plaintiffs' motion should be denied because they failed to establish the prerequisites for certification of either of the two putative classes identified in their motion.

Plaintiffs Karen Malak, James Tortora, Janeen Cameron and Lisa Bruno assert claims against IJL for fraud in the inducement and unjust enrichment, alleging that IJL perpetrated a fraud on them as a result of IJL's use of a sales script intended to "dupe tens of thousands of professionals into each paying a thousand dollars or more for what proved to be a valueless social matchmaking service", and seeking to represent a putative "Fraud Class" (Pl. Memo p. 1). The nationwide class is designed to encompass IJL members "who were fraudulently induced to sign a contract and purchase the services of IJL" from October 15, 2001, through the present." (Pl. Memo p. 1). Plaintiff Brad Berkowitz represents the putative "New York Subclass," consisting of New York residents who can assert New York General Business Law § 349 or unjust enrichment claims concerning alleged overcharges (id.). The class would consist of members who paid IJL in excess of one thousand dollars in alleged violation of NY GBL § 394-c (Pl. Mem. p. 1).

Class certification is not appropriate pursuant to Rules 23(a) or 23(b)(3). The most glaring deficiency of the claims is under the latter rule. As to fraud in the inducement and unjust enrichment, individualized proof would be required as to each class member concerning issues such as the content of the representation, whether it was material, whether there was justifiable reliance and damages, whether there was unjust enrichment and as to the applicable defenses. The need to apply the laws of multiple states also renders certification inappropriate. The class is also not identifiable and the named plaintiffs are not adequate representatives. Similarly, the New York Subclass should not be certified because individualized issues necessarily predominate over common issues as to

GBL § 349 and unjust enrichment claims and named plaintiff Brad Berkowitz is not an adequate class representative and his claims are not typical of those of the putative class.

**The Relevant Facts**

The Fraud Class is supposedly appropriate for certification based on plaintiffs' contention that "IJL sales reps were lying when they told each client that they had two to three matches in mind for them because the sales rep had 'no way of knowing…whether or not there were people in that city'" (Pl. Memo p. 9 (italics and citations omitted)). This scheme allegedly was carried out via the use of a uniform sales technique, pursuant to which each IJL employee was required to utter the "exact same words and actions which employees were to use during the interview with a prospective IJL member" (Pl. Mem pp. 2, 5). Plaintiffs contend that there would be no need for any individualized proof on liability with respect to each member of the purported Fraud Class based on the uniformity of IJL's alleged pitches to all class members.

Plaintiffs' assertion that IJL representatives had no way of knowing "whether there were people in that city" with whom to match the prospective member (Pl. Mem p. 9) is demonstrably false. IJL's directors were familiar with the members in their database, as "[a]ll IJL staff were expected to familiarize themselves with their client base in order to be able to communicate accurate information to the potential IJL client and member." *Affidavits of Vandor, Osgood, Anderson and Brown; see also, Brown Dep. pp. 72; 79; 94; 154, lls. 12-15; 10-23; 15-23; 13-23; J. Vandor Dep. pp. 44-46; 135-137;139; 140.* There were daily office matchmaking meetings and the directors would sort through files to hand-select matches based on the member's "general criteria." This process enabled the directors to acquaint and regularly reacquaint themselves with the existing database to assist in the determination whether a prospective member would be suitable to join. *Affs. of Vandor, Osgood, Anderson and Brown; J. Vandor Dep. pp. 58-59, ll. 14-25; 62-65.*

Thus, IJL's Inside Sales Representatives ("ISR"), Outside Sales Representatives ("OSR") and Dating Directors ("DD") all worked together to coordinate matches. *See Novotny Dep.* ISRs were responsible to speak with prospective members and set up appointments for OSRs, who met with prospective members to determine whether the member could be accepted.[1]

Also , IJL trains its directors to never accept a new member unless the director believes he or she has some ideas as to potential matches. IJL's common practice is to inform the prospective client in effect: This is what we are going to do today, I am going to find out all about you, who you are, were you came from, about your past relationships and what has worked and what has not, and based on that information, I will be able to tell you if I have what you are looking for, and if I do great, but if I do not then I will have to have you hold off. *Affs. of Vandor, Osgood, Anderson and Brown; see also, Brown Dep. pp. 20-1; 42 ll. 8-17, 2-6; 65-66; 10; 113; 122-125; 165; 167-168, 1. 20, 1. 11; 16-24; 9-13; 7-13; 3-16; 13-25, 1-7; 15-25, 1-20; J. Vandor Dep. pp. 104-5; 122, ll. 21-25.*

It is critical that the evidence relied on by plaintiffs from three disgruntled former IJL employees as to the "script" is of limited import given that they concededly had no contact with the named plaintiffs and therefore they have no knowledge of what representations were made to them and insamuch as most of the named plaintiffs' experiences in terms of the contents of the sales pitches and pertinent communications are at variance with what the former IJL employees described. Moreover, even those former employees did not believe they had defrauded anyone. Cami Craig, Angel Velazquez and Michelle LePage each acknowledged that IJL never advised any of them to defraud a prospective member in order to induce them to become a member. Angel Velasquez, call

---

[1]  IJL provided added protections to avoid any possibility that matches might not be available for members after they joined. It developed a Query system, identifying members who had not been set up in the past three weeks. Former CEO Dolan testified that the "sole function of the query system is to ensure members do not get lost in paper and are matched routinely with other members who match h/her criteria." *Dolan Dep. pp. 219-224; 228-9; 231-245; 253-254.*

center sales team manager, who described the process by which IJL developed a script over time to reflect the knowledge gained from experience working with multiple members and prospective members, did not believe that script was fraudulent or that any manual contained directives to intentionally deceive any actual or potential member. *Velasquez Dep. pp. 81-83.* LePage acknowledged IJL's practices to prevent employees from being dishonest to existing members. *LePage Dep. pp. 57-58; 85; 92.* Craig was directed to use the communications with prospective members to make matches based on the criteria provided. Members who could not be matched were not to be accepted. *Craig Dep. pp. 135; 194-198(e.g.,* call center employees were instructed not to accept "African-American woman" in Florida because there were "no African-American men to date" there, whereas in Atlanta African-Americans of both sexes were plentiful).

Even more critically, the named plaintiffs' experiences were not consistent with the supposedly consistent fraud pattern identified by counsel's legal brief but not actually experienced by their clients. The plaintiffs were not left without any potential reasonable matches, and instead they were provided with viable matches based on the criteria they provided initially as refined by additional criteria after their initial dates. For example, IJL initially advised Plaintiff Malak of six men she might be matched with; that same day, IJL contacted the first two men listed on an intake form. One of those men matched Malak's criteria. Within a week, Malak was matched with another man who matched her criteria. *Osgood Aff. ¶¶ 23, 25-26.*

Similarly for James Tortora, IJL's West Palm Beach office contacted three women within the first week or so Tortora joined and then two more who matched Tortora's criteria. *Brown Aff. ¶¶ 20-22.* Likewise, the day after Plaintiff Cameron joined, IJL contacted her initial date – who met her criteria - and she was then matched with another man within a week based on her feedback about the first date. *Andersen Aff. ¶¶ 20-21.*

Similarly, Plaintiff Bruno admitted that during her interview the IJL representative explained that IJL sought to determine if it could be of service to her. The criteria she provided matched the profiles of the men she was set up with and she understood why those matches were made. *Bruno Dep. pp. 26; 81 ll. 6-25; 82, ll. 2-7.*  A match was contacted and Bruno was set up with men who met her criteria as the focus was honed based on her feedback. *J. Vandor Aff. ¶¶ 38-41.*

Given all of the foregoing, assuming *arguendo* that IJL representatives made representations to Malak, Tortora, Cameron and Bruno at the time they first spoke to IJL that the representatives could think of "at least two or several matches," the determination of whether those representations were false will require individualized inquiries and proof as to each of those four members. The same individualized inquiries would be necessary as to each member of the putative class.

Plaintiffs allege further that every class member was advised at his or her interview of the following details to induce the prospective member to join: (1) the number of IJL's available members in the client's city; (2) the gender ratio; (3) that IJL was selective as to who could become members; and (4) that IJL carefully matched its clients with other members (Pl. Mem. pp. 5-6).

Plaintiffs' attempt to paint a picture of uniform unvarying practices used to defraud the class members is undermined because these supposed misrepresentations were not made to every prospective client. With the exception of Plaintiff Karen Malak, none of the named plaintiffs was told specifically about any statistics, and they denied having relied on any such statistics regarding the number of clients in respective cities or the gender ratio during or after the interview process.

As to the proposed New York Subclass, consisting of New York residents who were allegedly defrauded based on the failure to disclose the members' option  to enter into either a six month contract for $1,000 or two consecutive six month contracts for more than $1,000. In fact, contrary to plaintiffs' allegations, defendants made clear disclosures concerning the provisions of

GBL § 394-c - that New York law does not allow a social service referral business to require and/or force a consumer to enter into a contract with them in excess of $1,000 - to every prospective member prior to contracting. Former Harry & Sally President Robert Vandor explained that the disclosure was made to each prospective member *Vandor Aff. ¶¶ 7-11.* Harry & Sally provided a Notice of Cancellation and the "Dating Service Consumer Bill of Rights"[2], which stated in relevant part, the "Dating Service Consumer Bill of Rights" included the following language - "NO SOCIAL REFERRAL SERVICE CONTRACT SHALL REQUIRE THE PAYMENT BY YOU, THE PURCHASER, OF AN AMOUNT GREATER THAN ONE THOUSAND DOLLARS"; and (3) prospective members were orally advised prior to executing the contract that New York law prohibited "forcing" or "requiring" a consumer to execute a contract for a social service in excess of $ 1,000.00 and that the choice to do so was entirely up to them. *Id. ¶¶ 3; 7-11; Shapiro Dec. Exhs. I and K.*

---

[2] The language set fourth in The Notice of Cancellation and the "Dating Service Consumer Bill of Rights" mimicked the language found in GBL § 394-c. *Vandor Aff. ¶ 7 and supporting documents attached thereto and to the Shapiro Dec.*

## ARGUMENT

## I. PLAINTIFFS CANNOT MEET THE REQUIREMENTS OF RULE 23 AS TO THE NEW YORK SUBCLASSES THEY ASK THE COURT TO CERTIFY

The proposed Subclass asserting claims pursuant to GBL § 349 based on the allegedly deceptive practice of allowing prospective members to enter into two consecutive contracts for which defendants charged more than the statutory limit imposed by GBL § 394-c would have to prove as to all members that: (1) the challenged act or practice was consumer-oriented; (2) the act or practice was materially misleading; and (3) each plaintiff was damaged. *In re Currency Conversion Fee Antitrust Lit,* 230 F.R.D. 303, 310-11 (S.D.N.Y. 2004), *modified on other grounds on reconsideration,* 03 Civ. 2843, 2005 WL 1705285 (S.D.N.Y. July 22, 2005). The allegedly deceptive act, representation or omission must be misleading to a reasonable consumer acting reasonably under the circumstances. *Newman v. RCN Telecom Servs., Inc.,* 238 F.R.D. 57, 74 (S.D.N.Y. 2006); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 26 (1995). The defendant has not violated GBL § 349 if the challenged business practice is known or otherwise disclosed. *Super Glue Corp. v. Avis Rent a Car Sys., Inc.,* 159 A.D.2d 68, 71 (2d Dep't 1990); *Sands v. Ticketmaster-New York, Inc.,* 207 A.D.2d 687, 687 (1st Dep't 1994).

The proposed New York unjust enrichment class would have to prove that defendants benefited at plaintiffs' expense and that equity and good conscience require restitution. *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 579 (2d Cir. 2006).

### A. Commonality under Rule 23(a) and Predominance under 23(b)(3)

As demonstrated below, plaintiffs have not sustained their burden of establishing that each requirement of Rule 23 is satisfied by a preponderance of the evidence. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.,* 546 F.3d 196, 202 (2d Cir. 2008). Most critically, there is no

commonality of issues, and in fact individualized issues, not common issues, predominate such that certification pursuant to Rule 23(b)(3) is inappropriate. *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013). The stringent requirement of predominance of questions common to the class cannot be met due to the numerous individualized inquiries necessary to determine liability as to the claims of the New York Subclasses asserting statutory and common law claims. When, as here, such individualized inquiries are mandated, the predominance requirement is not satisfied. *Dunnigan v. MetLife Ins. Co.*, 214 F.R.D. 125, 138 (S.D.N.Y. 2003).

Class certification is ordinarily denied in GBL § 349 cases based on the predominance of individual issues. *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. at 57 (collecting cases); *Weiner v. Snapple Beverage Corp.*, No. 07 Civ. 8742 (DLC), 2010 WL 3119452, *6 (S.D.N.Y. Aug. 5, 2010). The same result should obtain here as demonstrated below.

The evidence belies plaintiffs' contention that the New York Defendants engaged in a uniform illegal practice. Defendants advised all prospective members about the language of GBL § 394-c, which limits the amount that can be charged to enroll in a social services contract. *R. Vandor Dep. pp. 89-91. See also Vandor Aff.* Putative class representative Brad Berkowitz understood at the time he joined that he was not required to pay in excess of $1,000 to become a member. *Berkowitz Dep. pp. 30, ll. 22-25; 31, ll. 2-7; 37, ll. 14-25; 130-138.* Plaintiffs have not offered competent proof of a misrepresentation or omission likely to mislead Berkowitz or the proposed subclass about the GBL § 394-c requirements and members' payment rights, or as to deception and resulting injury.

A claim predicated on alleged deception resulting from an undisclosed practice fails if the disclosure was actually made or the claim may fail if the plaintiff proceeded despite knowing of the representation. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179 (2d Cir. 1990); *Newman*, 238 F.R.D. at 78 (plaintiffs who continued to pay for internet

service knowing it was slower than advertised barred from recovery under GBL § 349). The existence of such defenses would have to be weighed individually as to each class member, rendering certification inappropriate. *McLaughlin*, 522 F.3d 215, 232-33 (2d Cir. 2008).

In the class action context, certification is not appropriate when some class members confirm that there was no failure to disclose as to them, while others contend that they were deceived. In such cases, an individualized inquiry will be necessary to determine whether each class member was misled, rendering certification inappropriate. *In re IPO*, 471 F.3d 24, 43-44 (2d Cir. 2006); *McCracken v. Best Buy Stores, L.P.*, 248 F.R.D. 162, 167 (S.D.N.Y. 2008).

The decision in *In re Currency Conversion* is on point. The district court there denied certification of a GBL § 349 class because individualized inquiries were necessary to determine whether Citibank failed to disclose its foreign currency conversion fee (where the evidence showed that Citibank's customer agreement disclosed the fee). 230 F.R.D. at 310-11. The court explained what proof of the § 349 claim would entail:

> [E]ach plaintiff must show that Citibank's disclosure of the conversion fees was inadequate, thus deceiving the cardholder into using his Citibank card for foreign purchases when other more economical options were available . . . *Such a showing entails individual inquiries, including an examination of each cardholder's understanding and whether it was justified.*

*Id.* at 311 (emphasis and bracketed material added). *See also, In re IPO*, 471 F.3d at 43 *(*individual inquiries predominated because the evidence that many putative class members knew of the defendant's allegedly fraudulent practice would require individualized determinations as to each putative class member's knowledge and understanding of defendant's practice to determine liability); *Raboin v. Metro. Life Ins. Co.*, 25 A.D.3d 349, 350-51 (1st Dep't 2006); *Morrissey v. Nextel Partners, Inc.*, 72 AD.3d 209, 215 (3d Dep't 2009).

When there are differing defenses to different class members claim, certification is not appropriate. *In re Fosamax Prods. Liab. Litig.* 248 F.R.D. 389, 401-02 (S.D.N.Y. 2008). One example of this principle pertinent here pertains to the rule that when there is no deception, recovery under GBL § 349 is not available. Berkowitz's deposition testimony reveals how unlikely it is that the class members were uniformly deceived, because he was not deceived at all. Berkowitz received the GBL § 394-c disclosure, was given the opportunity to ask questions and consult an attorney, and knowingly and voluntarily and understanding his ability to waive his statutory rights – and without being coerced and with the right to cancel his membership within three days of signing  -  entered into two consecutive contracts pursuant to which he paid more than $1,000. *Vandor Aff.; Berkowitz Dep.* Assuming that the same disclosures were made to and knowledge possessed by all members of the putative class, none of them can recover under § 349 and there was no unjust enrichment. Alternatively, assuming that some class members received different disclosures, or had greater or lesser understanding of their rights, which is to be expected, individualized inquiries would be necessary to determine liability.

To the extent plaintiffs concede that the disclosure was made but that the members were nevertheless deceived, certification is improper because class-wide proof cannot satisfy "plaintiff's burden in showing that defendant's particular disclosures were inadequate or misleading in a material way as to each member of the proposed class." *In re Currency Conversion,* 230 F.R.D. at 309-10. *See also, Newman,* 238 F.R.D. at 75-76 (refusing to certify § 349 class where individualized inquiry as to what disclosures each customer saw and understood regarding defendant's practices would overwhelm common questions).

Disclosure of a challenged practice may present an absolute bar to a GBL § 349 claim based on alleged non-disclosure. *E.g., Super Glue,* 159 A.D.2d at 71; *Sands,* 207 A.D.2d at 687; *Ludl Elec.*

*Prods., Ltd. v. Wells Fargo Fin. Leasing, Inc.,* 6 A.D.3d 397, 397-98 (2d Dep't 2004); *Wornow v. Register.Com, Inc.,* 8 A.D.3d 59, 60 (1st Dep't 2004) (GBL §349 claim barred by evidence that defendant emailed notice of automatic renewal). Here, an individualized inquiry will be necessary to determine what disclosures the member should have seen or heard given Harry & Sally's practices at the particular time the member joined and whether those disclosures that were actually furnished were sufficient. Thus, certification should be denied because some members may have knowingly joined while others lacked that knowledge. *Solomon v. Bell Atl. Corp.,* 9 A.D.3d 49 (1st Dep't 2004) (decertifying class where individual trials would have been necessary to determine what information class members saw regarding allegedly deceptive practice, including as to defendant's service agreement, which disclosed the supposedly covert practice).

Certification is also inappropriate given the potential applicability to some class members of a defense based on their receipt of a credit or refund, including additional free referrals pursuant to the Attorney General's Assurance of Discontinuance (Shapiro Decl. Exh. A, Article IV). *E.g., Clerk v. Experian Info. Solutions, Inc.,* 245 F. Appx. 818, 822 (7th Cir. 2007)(denying certification of statutory deceptive practices claims based on the necessity for individualized damage assessments including any refunds); *Solomon,* 9 A.D.3d at 55 (certification denied as to GBL § 349 claim based on billing credits given to some customers); *Naftulin v. Sprint Corp. ,* 16 Misc. 3d 1131(A), 2007 N.Y. Slip. Op. 51652 (U), *8, 847 N.Y.S.2d 903 (Sup. Ct. Kings Co. Aug. 27, 2007) (denying certification of GBL § 349 claims because some putative class members received compensation). Defendants were not unjustly enriched as to members who received refunds.

Class certification is particularly improper where – as is the case here – a defendant's disclosures were made orally because individual issues tend to predominate where liability depends on the specific representations made to each plaintiff. *McCracken,* 248 F.R.D. at 168. *See also,*

*Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir. 2002)(affirming denial of class certification as to misrepresentation claim); *In re Scientific Control Corp. Sec. Lit.,* 71 F.R.D. 491, 504-05 (S.D.N.Y. 1976)(refusing to certify fraud class for claim based on purported oral misrepresentations because the Court "must determine what was told to each purchaser . . . to establish what was omitted"). *Cf. Buchanan v. Homeservices Lending LLC*, 11 Civ. 0922, 2013 U.S. Dist. LEXIS 60156, *16 (S.D. Cal. April 25, 2013). Multiple mini-trials would be necessary to determine whether each class member received oral and/or written disclosures, what the content was of those disclosures, what other communications took place about the payment and enrollment process and the extent of the member's understanding or deception.

Disparate damage issues also predominate. Many putative members of this class may not have sustained any injury. Some of the New York members may have affirmatively assented to the proposal for two consecutive contracts and knowingly waived their rights. Others may have remained members for an extended period, and continued to be set up with other members, thereby attaining the full benefit of a longer membership. Others may not have been damaged even if they were allegedly misled because they canceled their memberships and received a full credit or refund or because they received redress pursuant to the Assurance of Discontinuance (Article IV). Shapiro Decl. Exh. K.

The same rationales render individual issues predominant as to the New York Subclass unjust enrichment claims. Plaintiffs have not made a sufficient showing "that the benefits that the members of the plaintiffs' class received were less than what they bargained for" or the benefit to defendants at each class member's expense on a class-wide basis through common evidence without the need for individualized inquiries. *Weiner*, 2010 WL 3119452, *10 (quoting *Vigiletti v. Sears, Roebuck & Co.,* 42 A.D.3d 497, 498 (2d Dep't 2007)). *See also, In re Canon Cameras Lit.,* 237 F.R.D. 357, 359

(S.D.N.Y. 2006); *Smith v. Chase Manhattan Bank, USA, N.A.,* 293 A.D.2d 598, 600 (2d Dep't 2002); *Whalen v. Pfizer, Inc.,* 9 Misc. 3d 1124(A), 862 N.Y.S.2d 812 (Table), 2005 N.Y. Slip. Op. 51779 (U), *4, 2005 WL 2875291, *5 (Sup. Ct. N.Y. County 2005).

With respect to unjust enrichment, in New York the recovery "is based on the amount of benefit retained by the defendant, rather than by a plaintiff's loss." *Swan Media Group Inc. v. Staub,* 11 Civ. 2250, 2012 WL 160073, *5 (S.D.N.Y. Jan. 18, 2012). Determining the alleged unjust benefit retained by IJL would require individualized inquiry concerning whether a member received a full refund, partial refund or whether the member was satisfied with the service and therefore believes he or she received the benefit of the bargain by joining the service.[3]

As with the GBL § 349 claim, an individualized inquiry is required to determine whether the class member received what he or she bargained for under the terms of their arrangements with defendants. Some members benefited from defendants' challenged practices, because they appreciated the discount provided when the member signed two consecutive contracts. *Weiner,* 2010 WL 3119452, *10; *In re Canon Cameras,* 237 F.R.D. at 359-60. Again, the receipt of defendants' disclosure of the terms of § 394-c may bar the claims of some New York members. *See, McCracken,* 248 F.R.D. at 163-65, 168-69 (class certification inappropriate as to contract and unjust enrichment claims based on evidence showed that plaintiffs received a sales receipt and/or terms and conditions describing defendant's allegedly covert automatic renewal policy for magazine subscriptions); *Whalen,* 2005 N.Y. Slip. Op. 51779(U), *4 (denying certification of unjust enrichment claims because an individualized inquiry was necessary to determine whether customers continued purchasing defendant's product despite knowledge of alleged misrepresentations).

---

[3] IJL could also argue that a class-wide resolution of all of the claims herein should not happen because IJL is not one entity liable on all of the class claims, but rather separate entities the liability of each of which would have to be adjudicated.

Plaintiffs ignore the controlling precedents cited above, and instead relies upon several inapposite GBL § 349 cases in which the defendant made no disclosure whatsoever of the challenged practice. For example, in *Jermyn v. Best Buy Stores, L.P.,* 256 F.R.D. 481, 485 (S.D.N.Y. 2009), while defendant had a publicly-stated and advertised price match guarantee policy, defendant's actual internal policy – which was completely undisclosed – was to discourage and deny customers' price match requests. Similarly, in *Dupler v. Costco Wholesale Corp.,* 249 F.R.D. 29, 34-35 (E.D.N.Y. 2008), the defendant failed to disclose its policy of backdating membership renewals to its customers. Here, by contrast, disclosure was made to Berkowitz and the putative class members.

**B.      A Class Action is Not the Superior Method to Address the Claims**

Under Rule 23(b)(3), the Court weighs "in terms of fairness and efficiency, the advantages of a class action against those of alternative available methods of adjudication." *Anwar v. Fairfield Greenwich Ltd.,* 289 F.R.D. 105, 114 (S.D.N.Y. 2013). When conduct may be addressed by the regulatory agencies with jurisdiction, the Court should eschew certification. *Diacakis v. Comcast Corporation,* 11-3002, 2013 U.S. Dist. LEXIS 64523, *28 (N.D. Cal. May 3, 2013). Here, the Attorney General has already acted and obtained a remedy for all New Yorkers who desired redress (Shapiro Decl. Exh. A). Accordingly, plaintiffs have not established that a class action is superior.

**C.      Berkowitz is Not an Adequate Representative of the Subclass**

Class certification is also improper under Rule 23(a)(4) because Berkowitz would not be an adequate class representative due to his insufficient participation and awareness of his role as class representative. Berkowitz admitted that he is "reluctant" to represent the subclass and is unfamiliar with what a class representative is or what his duties to the class encompass. It is evident that it is counsel - not the client Berkowitz - who is actually prosecuting this action and making the key decisions, without meaningful plaintiff participation and involvement. *Berkowitz Dep. pp. 143, ll.*

*10-25; 144, ll. 207; 155, ll. 14-20; 157, ll. 8-12.* See, *Darvin v. International Harvester Co.,* 610 F. Supp. 255, 257 (S.D.N.Y. 1985).

Moreover, if, as shown above, Berkowitz was not deceived, he cannot have been injured in the manner alleged, and he is not an adequate class representative because he is not a member of the class and he lacks constitutional standing; as result, there would be no representative of the putative New York Subclass. *Bailey v. Patterson*, 369 U.S. 31, 32-33 (1962)(plaintiffs "cannot represent a class of whom they are not a part"). Constitutional standing is wanting because it appears that the named plaintiff has not sustained any injury at all. *Hayes v. Wal-Mart Stores, Inc.*, 12-2522, U.S. App. LEXIS 15959, *28-29 (3d Cir. Aug. 3, 2013).

### D.    Berkowitz's Claim Does Not Appear to Be Typical

A class should not be certified when the putative class representative is subject to unique defenses. *In re Flag Telecom Holdings Sec. Lit.,* 574 F.3d 29, 38 (2009); *Newman,* 238 F.R.D. at 78; *In re Currency Conversion,* 230 F.R.D. at 308-09. *E.g., Solomon,* 9 A.D.3d at 55 (named plaintiffs were atypical because they were subject to unique defenses concerning actual disclosure, billing credits, defendant's terms and conditions and the nature and extent of injuries and damages).

Berkowitz read and was aware of the terms pursuant to which he signed two consecutive contracts for $1,300. Berkowitz was advised of his consumer rights prior to signing up and therefore knowingly and freely waived his right to claim he was deceived and he understood he was entitled to waive a statutory right, such as provided by GBL § 394-c. *Berkowitz Dep. pp. 129-138; 165, ll. 14-21.* The other class members may well not have had such knowledge and may not have made such a knowing waiver. If Berkowitz is in fact typical of the class members, none of them would be able to prevail on their state law claims and certification would be a waste of judicial resources.

### E.   Plaintiffs Have Not Demonstrated Numerosity

Plaintiffs' "naked assertion" of numerosity is insufficient to meet their burden on this motion. *Deflumer v. Overton,* 176 F.R.D. 55, 59 (N.D.N.Y. 1997). They do not provide any reasonable basis for an inference that the class is sufficiently numerous that joinder is impractical or that the minimum threshold for certification is met.  Instead of mustering evidence about the class size, plaintiffs blithely argue that the Subclass "easily surpass[] the numerosity hurdle" because the pleading "'alleges that thousands of customers were damaged' when they overcharged (Pl. Mem. p. 15). Because plaintiffs have not reasonably estimated or provided any admissible evidence to establish the number of injured members in support of their pleading, and instead rely on "pure speculation on bare allegations, the motion for class certification fails." *Weissman v. ABC Fin. Services, Inc.,* 203 F.R.D. 81, 84 (E.D.N.Y. 2001).  *Accord, Davidson v. Yeshiva Univ.,* 555 F. Supp. 75, 77 (S.D.N.Y. 1982); *Demarco v. Edens,* 390 F.2d 836, 845 (2d Cir. 1968).[4]

## II.   CERTIFICATION SHOULD BE DENIED AS TO THE NATIONWIDE CLASSES

While the proposed nationwide classes would appear to be sufficiently numerous assuming that they were ascertainable, they fail to meet the commonality, adequacy and typicality requirements of Rule 23(a) and individual issues predominate under Rule 23(b)(3).

### A.   The Classes Are Not Ascertainable

It is plaintiffs' obligation to "demonstrate that there is an 'identifiable class.'" *Shady Grove Ortho. Assoc., P.A. v. Allstate Ins. Co.,* 06-CV-1842, 2013 U.S. Dist. LEXIS 113303, *21 (E.D.N.Y. Aug. 7, 2013). The actual membership of the putative national classes are not ascertainable because they would consist only of those thousands of members who were actually defrauded or as to whom

---

[4]   Berkowitz is not aware of any similarly situated persons. *Berkowitz Dep. p. 149, ll. 4-12.*

IJL's conduct was such that it was unjustly enriched. *Casale v. Kelly*, 257 F.R.D. 396, 406 (S.D.N.Y. 2009). Because the class membership can only be determined by ascertaining whether individual members actually relied and were defrauded, or if recovery on an unjust enrichment theory is possible under the laws of their states, certification should be denied. See Point II(B) below.

### B.    Plaintiffs Have Not Satisfied The Commonality Requirement

The disputed issues in this case cannot be resolved through common proof. *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011)(holding that a rigorous analysis is required as to the Rule 23(a) criteria). Class treatment is inappropriate where, as here, the claim is not subject to class-wide proof and requires numerous individual inquiries. *Id.*. at 2553.

Most critically, commonality is not present here because the putative class members reside in - and did business with IJL in - multiple states (IJL currently operates in 43 states plus the District of Columbia[5]), and their claims would have to be adjudicated under their local state laws.[6] As a result, "variations in state law . . . swamp the common issues." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 743 n. 15 (5th Cir. 1996)(ellipses supplied).

As the Court held in *Lewis Tree Service, Inc. v. Lucent Technologies, Inc.*, certification is not permitted when a fraud claim "would require the application of the laws of fifty states to the claims of the class members, and because the tort of fraud differs meaningfully from one jurisdiction to the next, the application of some uniform substantive law is impossible." 211 F.R.D. at 233. *See also*,

---

[5]   See,  http://www.itsjustlunch.com/locations/?r=1

[6]   The Court's choice of law analysis is governed by New York law, as this is a diversity case. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941); Walton v. Morgan Stanley & Co. Inc., 623 F.2d 796, 798 n.3 (2d Cir. 1980). The state in which the actionable conduct occurred and in which the member was injured would have the most significant relationship to the member's claim and should be applied. When the case at hand concerns laws regulating allegedly fraudulent conduct, the proper body of law to be applied turns on the locus of the tort. *Krock v. Lipsay*, 97 F.3d 640 (2d Cir. 1996); *Lewis Tree Service, Inc. v. Lucent Technologies, Inc.*, 211 F.R.D. 228, 236 (S.D.N.Y. 2002).

*Bridgestone/Firestone, Inc. Tires Product Liability Lit.*, 288 F.3d 1012, 1014 (7th Cir. 2002); *In re Currency Conversion*, 230 F.R.D. at 311-12.

For example, in Florida – where Plaintiff Tortoro dealt with IJL – fraud may be proven three ways: by showing that the misrepresentation was made with actual knowledge of its falsity, or without knowledge either of its truth or falsity, or under circumstances in which the person making it ought to have known, if he did not know, of its falsity. Parker v. State of Fl. Bd. of Regents, 724 So.2d 163 (Fl. 1998). In Colorado – the domicile of Plaintiff Cameron – the law is similar. Pattern jury instructions, CJI 19:1. Under New York law, by contrast, fraud liability arises only when the speaker made a material representation or omission of fact with actual knowledge of its falsity. Eurycleia Partners, LP v. Seward & Kissel LLP, 12 N.Y.3d 553, 559 (2009). The spectrum of such variations across the more than 40 states in which IJL has done business during the proposed class period boggles the mind and makes it incontestable that adjudication on a class basis is not viable.

The same shortcoming dooms the proposed unjust enrichment class. "[V]ariations in state law have generally precluded nationwide class certifications based on unjust enrichment theories." *Kottler v. Deutsche Bank AG*, 05 Civ. 7773, 2010 U.S. Dist. LEXIS 30590, *8 (S.D.N.Y. 2010)(denying certification)(citation omitted). *See also, Casa Orlando Apts., Ltd. v. Federal National Mortgage Ass'n,* 624 F.3d 185, 196 (5th Cir. 2010)("some jurisdictions require the complainant to prove an actual loss or impoverishment"); *Siegel v. Shell Oil Co.,* 256 F.R.D. 580, 584 (N.D. Ill. 2008).

Under the laws of certain states, such as New York, the existence of a contract or the adequacy of legal remedies may bar this equitable claim. Some states require misconduct while others do not. *Id. E.g., Petrello v. White*, 412 F. Supp.2d 215, 233 (E.D.N.Y. 2006)(the existence of a contract bars unjust enrichment claim under New York law); *Melat Pressman & Higbie v Hannon*

*Law Firm*, 287 P.3d 842 (Colo. 2012)(accord). In Florida, the elements of an unjust enrichment claim are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable to retain it without paying the value thereof. *Florida Power Corp. v. City of Winter Park*, 887 So.2d 1237, 1242 (Fla. 2004). Most states, like New York, do not require such "appreciation." See Pt. I(A) above. In Illinois unjust enrichment is a remedy at law, but it is an equitable remedy in Minnesota, New York, Colorado and other states. *In re Baycol Prods. Lit.*, 218 F.R.D. 197, 214 (D. Minn. 2003). *See also, Clay v. Am. Tobacco Co.,* 188 F.R.D. 483, 501 (S.D. Ill. 1999)(describing variances in states' unjust enrichment laws).

### C.    Plaintiffs Have Not Satisfied the Typicality Requirement

Plaintiffs also cannot satisfy the typicality requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3). The typicality requirement is distinct from but "tends to merge" with the Rule 23(a)(2) requirement of commonality since "both serve as guideposts for determining ... whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected." *General Telco. of Southwest v. Falcon,* 457 U.S. 147, 158 n. 13 (1982). For a party to satisfy the typicality requirement, it need not show "that the named plaintiffs' claims are identical to those of the class members but merely that the claims arise from the same course of events." *In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.,* 209 F.R.D. 353, 356 (S.D.N.Y. 2002).

"Given the time horizon of the class period and geographic scope" of the nationwide membership enrollments, "it is difficult to see how there could be a common course of events with respect to the way the [service was] marketed to class members." *Lewis Tree Service, Inc. v. Lucent Technologies, Inc.*, 211 F.R.D. at 234. Given the need to apply multiple states' common laws, "not

every class member will have similar legal arguments to prove the defendants' liability . . ." As a result of the "factual and legal dissimilarity between the claims of the plaintiff[s] and those of the remaining class members," the typicality requirement is not satisfied. *Id.* (brackets added).

### D.      Two Plaintiffs Are Not Adequate Class Representatives

Malak and Cameron are not adequate class representatives and their claims are not typical. Malak terminated her membership prior to her contract expiring because she was dating a non-IJL member whom she subsequently married. *Malak Dep. p. 121.* Cameron received a refund while her membership was active. *Cameron Dep. p. 80.* The existence of such unique issues as to the named plaintiffs which would threaten to become the focus of the litigation supports denial of certification. *Gary Plastic Packaging Corp. v. Merrill Lynch, Fenner, Pierce & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1999).

### E.      Rule 23(b)(3) Is Not Satisfied Because Individual Issues Predominate

Turning to the critical Rule 23(b)(3) criteria, the nationwide class fails because plaintiffs cannot prove that a fraud was committed as to each class member in a uniform way and they cannot prove their unjust enrichment claims without individualized proof. Because Plaintiffs' insistence that the same misrepresentations were made to "each and every" prospective member is belied by the evidence as to the class representatives, it is undeniable that there would be thousands of salient differences among the thousands of class members' experiences. The evidence shows that the scripts used and information disclosed during the enrollment process and immediately thereafter varied greatly.  Only plaintiff Karen Malak testified that IJL advised her of the statistics that alleged to have been part of IJL's uniformly utilized script. While Janeen Cameron testified that she was informed of the number of men in the IJL Denver's office database, she was not given a ratio of men to woman and she did not consider whether the number of men in the database matched her criteria prior to

joining. *Cameron Dep. pp. 57, l. 25; 58, ll. 2-4; 58, ll. 18-21.* The other named plaintiffs never

discussed or relied on any statistics or promises. Bruno did not rely on representations about second

dates or that she would like the matches. *Bruno Dep. pp. 20, ll. 9-13; 34; 35; 87, ll. 6-25; 16-18, 8-*

*23.* Tortora was not told about and did not discuss the ratio of men to women. *Tortora Dep. pp. 147,*

*ll. 11-21; 150-151.* Berkowitz relied only on the commitment that IJL would "give their best efforts"

and he did not believe misrepresentations were made about the quality of women in the database.

*Berkowitz Dep. pp. 110, ll. 21-25; 111, ll. 2-7; 120, ll. 25-25; 121, ll. 2-3.* Further by way of

example, as this Court concluded, former lead plaintiff Christine Rodriquez did not rely on any IJL

representations about appropriate matches. See, April 23, 2013 Memorandum Order p. 7 (Docket

No. 167).

Mini-trials would be necessary to determine whether defendants deliberately gave every

prospective member false information such as about the male to female ratio, the availability of two

to three matches and IJL's selectivity in accepting members. Also, the testimonial evidence shows

that the practices used varied widely at different times and in different offices across the country.

It is critical that the named plaintiffs did not receive uniform representations. "Only if class

members received materially uniform misrepresentations can generalized proof be used to establish

any element of the fraud." *Moore*, 306 F.3d at 1255. "Where there are material variations in the

nature of the misrepresentations made to each member of the proposed class, however, class

certification is improper because plaintiffs will need to submit proof of the statement made to each

plaintiff, the nature of the varying material misrepresentations, and the reliance of each plaintiff

upon those misrepresentations in order to sustain their claims." *Id.* at 1253.

Additionally, even assuming that all of the applicable state common laws would require clear

and convincing evidence of, *inter alia,* intent to defraud and reliance, common issues do not

predominate. *E.g., Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,* 98 F.3d 13, 19 (2d. Cir. 1996)(New York law). Assuming *arguendo* that a script was used for all members for some time period, and that all were told falsely of two or three available matches known to the IJL representative, some members may not have relied on the information in the script. For example, a prospective member may have decided to join because a friend had a positive experience with IJL. Some may not have been listening to the sales pitch. Because individualized mini-trials would be required to determine if a member even has a viable claim, common questions do not predominate. There is also no evidence that IJL still uses the same scripts today, so the proposed class extending to the present would present still more issues that do not predominate.

Critically, the analysis set forth above about the applicable state laws governing plaintiffs' claims is conclusive proof that plaintiffs have not met their burden to show the predominance of common questions pursuant to Rule 23(b)(3).

In sum, liability in the case at bar does not turn on a common course of conduct because "each plaintiff must prove he or she personally received a material misrepresentation, and that his or her reliance on this misrepresentation was the proximate cause of his or her loss." *Moore,* 306 F.3d at 1249-50. *Accord, McLaughlin,* 522 F.3d at 223 (class decertified where claims by smokers about marketing that light cigarettes were healthier because "reliance on the misrepresentation . . cannot be the subject of general proof . . . [as] [ i]ndividualized proof is needed to overcome the possibility that a member of the purported class purchased Lights for some other reason . . .")(brackets added); *Calabrese v. CSC Holdings, Inc.,* 02-CV-5171, 2009 WL 425879, *25 (E.D.N.Y. Feb. 19, 2005); *In re Grand Theft Auto Video Game Consumer Lit.,* 251 F.R.D. 139, 154-55 (S.D.N.Y. 2008).

The proposed unjust enrichment class cannot be certified for the same reasons. The unjust enrichment claim would not be susceptible to generalized proof even if the same laws were applied.

Individualized proof would be required as to the specific representations made to each class member during his or her interview, and whether the class member received the benefit of his or her bargain. *Weiner v. Snapple Beverage Corp.*, 07 Civ. 8742, 2010 WL 3119452, *11 (S.D.N.Y. August 5, 2010) (predominance requirement not satisfied as to unjust enrichment claim because "plaintiffs do not address the issue of how they would prove, on a class-wide basis, whether the benefits that putative class members received were 'less than what they bargained for").

Additionally "the non-reliance and non-damage elements of Plaintiffs' unjust enrichment . . . claims will require individualized proof." *Dungan v. The Academy at Ivy Ridge*, 249 F.R.D. 413, 427 (N.D.N.Y. 2008), *aff'd*, 344 F.Appx. 645, 2009 U.S. App. LEXIS 18798 (2d Cir. 2009). It cannot simply be assumed that each class member received less than what he or she bargained for. *Vigiletti v. Sears, Roebuck & Co.*, 42 A.D.3d 497, 498, 838 N.Y.S.2d 785, 786 (2d Dep't 2007). Some of IJL's members may have been somewhat satisfied, some may have had multiple successful dates and extensive services provided. The damages may also vary person to person, since some may have gotten refunds and others may have received the full benefit of their bargains or a greater part of that benefit than others. Under those circumstances, the extent of IJL's enrichment and whether and to what extent any enrichment was unjust requires individualized proof. Also, because the relief available on an unjust enrichment claim will vary from state to state (see Point II(B)), damages cannot be determined on a class-wide basis. The Court should consider that factor in deciding the instant motion because, "while the fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification, it is nonetheless a factor [to be] considered in deciding whether issues susceptible to generalized proof 'outweigh' individual issues." *McLaughlin*, 522 F.3d at 231 (citations omitted).

**F.     A Class Action Would Not Be Superior Under Rule 23(b)(3)**

A class action involving "tens of thousands" of members would require the Court and the parties to ensure tens of thousands of mini-trials. Judicial economy would not be promoted as certification would not "dispose of larger issues such as reliance, injury, and damages." *McLaughlin*, 522 F.3d at 234. The difficulty of managing a nationwide class action that necessarily entails a myriad of discrete factual inquiries weighs against certification pursuant to Rule 23(b)(3)(D).

The class action vehicle is also not superior because there are state agencies to address any alleged deception that may have been practiced upon consumers in their states, just as the Attorney General did in New York. For example, as to the states in which the named plaintiffs reside, Illinois has the Consumer Fraud & Deceptive Practices Act, 815 ILCS 505/1 *et seq.*, and a consumer can file a complaint with the Illinois Attorney General.[7] In Florida the statute is the Deceptive and Unfair Trade Practices Act, §§ 501.201 *et seq.*, Fla. Stat., enforcement of which rests with the Florida Department of Legal Affairs. In Colorado, there is a Consumer Protection Act, 6-1-101 *et seq.*, pursuant to which the Attorney General Consumer Protection Section and local district attorneys are empowered to protect consumers.[8] Many if not all of the states in which IJL has operated furnish similar protections. Obtaining redress by use of such administrative methods is ideal as to claims such as those involved here which individually involve relatively small amounts. It does not matter whether those agencies have taken action, or whether any claims have been filed, only that those alternative dispute mechanism resolutions are available. *Diacakis v. Comcast Corporation*, 2013 U.S. Dist. LEXIS 64523, *28.

---

[7] See, *www.illinoisattorneygeneral.gov/consumers/filecomplaint.html*

[8] See, http://www.coloradoattorneygeneral.gov/departments/consumer_protection.

Further, to the extent class members may be giving up claims to recover punitive damages for fraud available under certain state laws to recover only the refunds sought on behalf of the class, the class action device may not be a superior means to vindicate those parties' claims.

## CONCLUSION

For the foregoing reasons, because it is patent that plaintiffs have not "affirmatively demonstrate[d] . . . compliance with Rule 23" (*Comcast Corp. v. Behrens,* 133 S.Ct. at 1432 (bracketed material and ellipses supplied)), the Court should deny plaintiffs' motion in its entirety.

Dated: New York, New York
      August 23, 2013

LEWIS BRISBOIS BISGAARD & SMITH LLP

By:      /s/ Peter T. Shapiro
          Peter T. Shapiro
          John Doody
          Bari Klein
          *Attorneys for Defendants*
          77 Water Street, 21st Floor
          New York, NY 10005
          212-232-1300
          peter.shapiro@lewisbrisbois.com
          john.doody@lewisbrisbois.com
          bari.klein@lewisbrisbois.com

## <u>CERTIFICATE OF SERVICE</u>

Peter T. Shapiro, an attorney duly admitted to practice before this Court, certifies that on August 23, 2013, he caused to be served and filed via ECF the defendants' Memorandum of Law.

_____/s/ Peter T. Shapiro_____
Peter T. Shapiro
