UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTINE RODRIGUEZ, SANDRA BURGA, KAREN MALAK, JAMES TORTORA, LISA BRUNO, JANEEN CAMERON, KAREN MCBRIDE, ANDREW WOOLF, and BRAD BERKOWITZ, individually and for all others similarly situated, | 07 Civ. 9227 (SHS) |
| | OPINION & ORDER |

                                        Plaintiffs,

                    -against-

IT'S JUST LUNCH, INTERNATIONAL,
IT'S JUST LUNCH, INC., HARRY AND
SALLY, INC., RIVERSIDE COMPANY,
LOREN SCHLACHET, IJL NEW YORK
CITY FRANCHISE, IJL ORANGE
COUNTY FRANCHISE, IJL CHICAGO
FRANCHISE, IJL PALM BEACH
FRANCHISE, IJL DENVER FRANCHISE,
IJL AUSTIN FRANCHISE, IJL LOS
ANGELES-CENTURY CITY FRANCHISE,
and DOES 1–136,

                                        Defendants.

SIDNEY H. STEIN, U.S. District Judge.

    Plaintiffs in this putative class action allege fraud and deceptive business practices by It's Just Lunch International ("IJL"), a provider of personalized matchmaking services that operates nationally through

franchises.[1] Plaintiffs proposed that both a national class of plaintiffs and a New York class of plaintiffs be certified. The proposed representatives of the national class, all of whom paid for IJL's services, claim to have been enticed to do so by means of corporate-mandated misrepresentations repeated by individual IJL employees. (*See* Order dated April 23, 2013, at 1 (Dkt. No. 167).) The proposed representative of the New York class alleges that IJL charged him more than $1,000 for one year of services in violation of the New York General Business laws. The named plaintiffs now move pursuant to Federal Rule of Civil Procedure 23 for the Court to certify classes as to each of their claims. (Dkt. No. 184.)

For the reasons that follow, the Court grants plaintiffs' motion in part and denies it in part. In short, virtually all evidence in the record indicates that during the period at issue, IJL staff relied on a uniform script to inform prospective customers during initial interviews that IJL already had at least two matches in mind for those customers' first dates regardless of whether or not that was true. The proposed national class's fraud claims will substantially rise or fall based on whether that "multiple match" representation was materially misleading. Moreover, plaintiffs have demonstrated that they can attempt to prove their fraud claims through common evidence, including that IJL structured its sales pitch to collect payment from customers immediately after making the "multiple match" representation. Because plaintiffs have demonstrated that Rule

_____

[1] The parties refer to all defendants collectively as "IJL." *See generally* Third Am. Compl. (Dkt. No. 169); Answer & Affirmative Defenses to Pls.' Third Am. Compl. (Dkt. No. 176); Pls.' Mem. of Law in Supp. of Their Mot. for Class Certification for Appointment of Representative & Class Counsel ("Pls.' Mem.") (Dkt. No. 184); Mem. of Law of Defs. in Opp. to Pls.' Mot. for Class Certification ("Defs.' Opp.") (Dkt. No. 188). The Court therefore adopts that convention here, except where otherwise noted. Significantly, defendants do not contend that they should be treated differently *inter se* for purposes of plaintiffs' motion for class certification.

23(a) and (b)(3) are satisfied, the Court certifies a national class with regard to plaintiffs' fraud claims. The Court denies certification of the national class's unjust enrichment claim because given state law variations, plaintiffs have not demonstrated that common questions predominate.

The Court also finds that both the fraud and unjust enrichment claims of the prospective New York class satisfy Rule 23(a) and (b)(3). Whether IJL charged New York customers more than $1,000 during the relevant time period is a question common to that class. The fact that IJL uniformly disclosed the terms of New York's consumer protection law governing dating services means that this Court will be able to assess on a classwide basis whether plaintiffs may prevail notwithstanding IJL's disclosure.

## I.   BACKGROUND

The facts and procedural history of this case are set forth in the Reports and Recommendations of Magistrate Judge Kevin Nathaniel Fox dated April 6, 2012 (Dkt Nos. 155, 156), and in this Court's Memorandum Order dated April 23, 2013, adopting in part and overruling in part Judge Fox's recommendations (Dkt. No. 167). This Court presumes the reader's familiarity with those decisions and the facts set forth in them.

Plaintiffs Lisa Bruno, Karen Malak, James Tortora, Janeen Cameron, and Brad Berkowitz are former IJL customers. Bruno, Malak, Tortora, and Cameron seek to represent a national class of "persons who were or are members of IJL who signed a contract with IJL." (Third Am. Compl. ¶ 56 (Dkt. No. 169).) Those four plaintiffs bring two claims on behalf of the proposed national class: they allege that (1) defendants fraudulently induced plaintiffs to enter into contracts with IJL; and (2) in doing so, defendants unjustly enriched themselves.

Plaintiff Berkowitz seeks to represent a class of individuals who became clients of It's Just Lunch, International; It's Just Lunch, Inc.; and

Harry and Sally, Inc. in New York and who paid more than $1,000 for a year's worth of IJL services.[2] (Third Am. Compl. ¶ 227; Pls.' Mem. at 1, 10–11; Pls.' Reply Mem. of Law in Further Supp. of Their Mot. for Class Certification for Appointment of Representative & Class Counsel ("Pls.' Reply") (Dkt. No. 191) at 15.) Berkowitz alleges on behalf of the proposed New York class that (1) IJL's billing practices violated New York's General Business Law §§ 349 and 394-c; and (2) defendants therefore unjustly enriched themselves.

## II. A NATIONAL FRAUD CLASS AND A NEW YORK FRAUD AND UNJUST ENRICHMENT CLASS SATISFY RULE 23'S REQUIREMENTS BUT A NATIONAL UNJUST ENRICHMENT CLASS DOES NOT.

### A. Rule 23 Standard

A court "may certify a class only after making determinations that each" of the requirements of Federal Rule of Civil Procedure 23 is met. *See In re Initial Pub. Offerings Sec. Litig.* ("*In re IPO*"), 471 F.3d 24, 41 (2d Cir. 2006).

Rule 23(a) provides four prerequisites to class certification: that

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

––––––––––––––––––––––––––

[2] In the Third Amended Complaint plaintiffs purport to allege these New York claims against five defendants: It's Just Lunch, International; It's Just Lunch, Inc.; Harry and Sally, Inc.; Riverside Co.; and Loren Schlachet. (*See* Third Am. Compl. ¶¶ 222, 224.) However, the latter two defendants had already been dismissed from this action. (*See* Stipulation of Dismissal dated June 9, 2009, Dkt. No. 64.)

Fed. R. Civ. P. 23(a).

The Court must also determine prior to certifying a class that "the class satisfies at least one of the three provisions for certification found in Rule 23(b)." *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013). Plaintiffs seek class certification pursuant to Rule 23(b)(3). That rule permits certification only when "questions of law or fact common to class members predominate over any questions affecting only individual members," and when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"To certify a class, a district court must make a definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues, . . . must resolve material factual disputes relevant to each Rule 23 requirement, and must find that each requirement is established by at least a preponderance of the evidence." *See In re U.S. Foodservice*, 729 F.3d at 117 (quotation marks omitted). If both Rule 23(a) and Rule 23(b) are satisfied, the Court may, in its discretion, certify the class. *See In re IPO*, 471 F.3d at 32. The Court proceeds to address each of the applicable Rule 23 requirements with respect to each of the proposed class claims.

## B. National Class Claims

### 1. *The Proposed National Class Meets Each of Rule 23(a)'s Requirements.*

#### a. *The Members of the Proposed National Class Are Sufficiently Numerous.*

"[N]umerosity is presumed" when the proposed national class includes more than forty members. *See Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234, 252 (2d Cir. 2011). Here, that number is greatly exceeded, since more than ten thousand individuals purchased defendants' services annually during each year of the proposed class period. (Ex. 1 to Decl. of John G. Balestriere dated Oct. 4, 2013, at 2, Dkt.

No. 192-1.) On plaintiffs' theory of the case, all of those individuals fall within the proposed class because plaintiffs contend that "IJL and its franchises lied to *all* customers about the services they promised to provide and *none* of them received such services." (*E.g.*, Pls.' Mem. at 25.)

Still, the ultimate determination of whether "the class is so numerous that joinder of all members is impracticable," *see* Fed. R. Civ. P. 23(a)(1), "depends on all the circumstances surrounding the case, not on mere numbers," *see Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). Those circumstances include the "judicial economy arising from the avoidance of a multiplicity of actions." *See Robidoux*, 987 F.2d at 936. Based on that consideration, the Court finds that plaintiffs have demonstrated Rule 23(a)(1)'s numerosity requirement by a preponderance of the evidence as to both the fraud and the unjust enrichment claims of the proposed national class.

> b.   *Whether IJL Materially Misrepresented Its Services Is a Question Common to the Fraud and Unjust Enrichment Claims of the Proposed National Class.*

To satisfy Rule 23(a)(2)'s commonality requirement, plaintiffs' claims "must depend upon a common contention . . . which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "What matters to class certification is not the raising of common 'questions' — even in droves — but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (alteration omitted).

Plaintiffs contend that "questions of law or fact common to the class," *see* Fed. R. Civ. P. 23(a)(2), include: (1) whether "IJL and its franchises lied to *all* customers about the services they promised to provide"; (2) "whether the sales script and tactics employed by IJL misrepresented IJL's actual services"; and (3) whether the Class members were fraudulently

induced to enter into contracts for matchmaking services." (Pls.' Mem. at 25.) In essence, these three proposed questions are various ways of restating plaintiffs' "core" contention that IJL interviewers misrepresented to each IJL customer that the "interviewer had at least two matches in mind during the intake interview." (Pls.' Reply at 10 n.12.)

As explained below, the Court concludes that plaintiffs have demonstrated that a "common question" exists as to whether defendants materially misrepresented their services to the members of the proposed national class. To reach that conclusion, the Court first resolves the parties' factual dispute over whether IJL in fact told all class members in an initial sales interview that IJL had multiple matches in mind. The Court answers that question in the affirmative, at least for purposes of this class certification motion. That answer in turn will "drive the resolution" of the prospective national class's fraud and unjust enrichment claims under the substantive law that governs those claims. *See Dukes*, 131 S. Ct. at 2551.

      i.    IJL Sales Staff Followed a Uniform Script in Conducting Intakes and Informed Virtually All Prospective Customers that IJL Had Multiple Matches In Mind.

The alleged common issues of fact or law for the claims of the proposed national class revolve around whether or not IJL made substantially uniform representations to the members of the proposed class. The parties dispute whether defendants in fact told all customers during initial interviews that IJL staff had multiple ideas for first dates. The Court must therefore resolve this "material factual dispute" in assessing whether Rule 23(a)(2)'s commonality requirement is met here. *See In re U.S. Foodservice*, 729 F.3d at 117. The relevant evidence before the Court is as follows.

IJL trained all sales staff through a "comprehensive training program that cover[ed] the entire sales process," known as First Date University ("FDU"). (Dep. of Melissa Brown dated Oct. 5, 2010, at 20, 160, Ex. G to

Decl. of Peter T. Shapiro dated Aug. 23, 2013, Dkt. No. 188-8.) IJL provided all FDU attendees with an "'info-call script' to use as a guideline while conversing with" prospective IJL customers. (*E.g.*, Aff. of Pamela Joyce Osgood dated Jan. 14, 2011 at ¶ 12, Ex. D to Shapiro Decl., Dkt. No. 188-5; Brown Dep. at 117.) That script instructed FDU trainees "in all capitals" that they should "NOT DEVIATE FROM THE INFO CALL PRESENTATION." (*See* Brown Dep. at 253.) The script also contained a number of "control points," which, an FDU training manual explained, "are [to be] said verbatim in an interview to establish control" over prospective customers (*Id.* at 117.) One of those control points was that the IJL salesperson, after learning basic demographic data about the prospective customer, was to inform the customer: "Ok, so far I have 3–4 ideas for your first date." (Ex. UU to Decl. of Jon L. Norinsberg dated Feb. 25, 2011, Dkt. No. 154-6, at 68.)

Throughout this litigation, defendants have contended that the "info-call script" and its "control points" were merely "example[s] of how" sales staff "would go about starting off and finishing the" process of interviewing prospective customers (*see* Brown Dep. at 54) and that in practice, salespersons only gave prospective customers accurate information about IJL's services. For instance, defendants maintain, IJL staff will only tell a prospective customer they had ideas for a first date if the staff in fact had such ideas. (*See, e.g.*, Osgood Aff. ¶ 13; Brown Dep. at 49).)

Based on the current record, the Court concludes by a preponderance of the evidence that IJL staff were instructed to, and in fact did, read the control points to all prospective members. Michelle Le Page, a senior coordinator who supervised and trained staff at IJL's national call center, testified that IJL staff routinely "t[o]ld[] people that [IJL] already ha[d] two matches for them . . . even . . . if [IJL] d[i]dn't . . . know if [it] ha[d] two matches for them." (Dep. of Michelle Le Page dated Sept. 30, 2010 at 64, 92, Ex. 1 to Decl. of John G. Balestriere dated July 19, 2013, Dkt. No. 186-1; *see*

*id.* at 30 (Le Page was trained "to stick to that specific script and not veer away from it").) Angel Velasquez, a training and sales manager at the call center, testified that an "important" "sales tactic[]" of IJL's was to "stick to the script and . . . tell" prospective members: "Oh, by the way, I've got three people that I'm thinking for you just off the top of my head." (Dep. of Angel Velazquez dated Sept. 30, 2010 at 42, 73, Ex. 2 to Balestriere Decl. dated July 19, 2013, Dkt. No. 186-1.) Velasquez further testified that IJL sales staff were trained to "accept all members," without regard to whether "there were[] matches available." (*Id.* at 74–75.)

Similarly, Camila Craig, an IJL sales representative, testified that during her training, she was directed that as "part of the script[, w]e had to tell" customers that "we had two or three matches in mind for them . . . and we had to be enthusiastic." (Dep. of Camila Craig dated Nov. 8, 2010, at 224–25, Ex. 3 to Balestriere Decl. dated July 19, 2013, Dkt. No. 186-1.) Craig in fact emphasized at her deposition that IJL sales staff "were informed by [the] corporate [o]ffice" to "take everybody" regardless of whether IJL could "match" those new members. (*Id.* at 260.) Moreover, as this Court has previously noted, each of the proposed representatives of the national class has "provided evidence . . . that the IJL interviewer" informed each plaintiff that the interviewer "had at least two matches in mind during the intake interview." (*See* Order dated April 23, 2013, at 7 (Dkt. No. 167).)

To be sure, defendants' position that IJL's script and its "control points" were only "guidelines" finds some support in the record. But when pressed to give examples of the extent to which salespeople could or did deviate from the script, IJL's witnesses gave only narrow or speculative examples. Melissa Brown, IJL's president, testified that it was "okay" for IJL sales representatives to omit the word "the" from the script, as long as the "message is clear." (Brown Dep. at 137.) When asked for an example of a situation in which she would reject a prospective customer rather than claiming to be able to provide matches, Jill Vandor, co-owner

of the New York IJL franchise at which plaintiff Bruno was a customer,
testified that she would "likely" reject "a 55-year-old [who] came in and
only wanted to date a 30-year-old." (Dep. of Jill Vandor dated Nov. 2,
2010, at 98, Ex. H. to Shapiro Decl., Dkt. No. 188-9.) Notwithstanding that
hypothetical example, Vandor nonetheless also testified that IJL staff
would "essentially say the words" on the script during their initial intakes
with new customers. (*Id.* at 88.) Craig testified that she once initially
turned down a potential customer — a man who "could not complete a
full sentence" — but "ended up taking him" after a supervisor suggested
that she do so. (Craig Dep. at 261.) In short, the evidence in the record that
defendants' salesforce ever diverged from the script is speculative at best.

Finally, defendants contend in passing that plaintiffs have not
established that IJL continues to use a uniform script "today." However,
the evidence to date points in a single direction: during the period at issue,
IJL trained its sales staff to inform all prospective members that the
company had multiple existing members who were matches for the
prospective member.

In light of: (1) the record evidence regarding IJL's uniform sales script;
(2) the standardized procedures for training employees in using that script
to enroll customers; and (3) testimony from senior IJL staff that they in fact
followed that script — with only *de minimis* variations and in unusual
circumstances — the Court concludes based on a preponderance of the
evidence that IJL staff informed all prospective members during the intake
interview that IJL had multiple matches in mind, regardless of the truth of
that statement. The Court now turns to the legal frameworks into which
this factual finding will feed.

> ii. Under New York Choice-of-Law Principles, the Law Governing the Claims of the Proposed National Class Is the Law of Each State in Which IJL Allegedly Made Misrepresentations to Each Prospective Class Member.

To determine whether plaintiffs' claims are "capable of classwide resolution," *see Dukes*, 131 S. Ct. at 2551, the Court must at this juncture determine the law to be applied to those claims.[3]

IJL argues that Rule 23(a)(2) is not satisfied here even if IJL made uniform representations to all members of the proposed national class. That is so, IJL contends, because plaintiffs' claims "have to be adjudicated under their local state laws." (Defs.' Mem. at 17.) The Court agrees with IJL

---

[3] Plaintiffs cite some support for the proposition that in certain cases, it may be premature for a court to resolve choice of law issues on a motion for class certification. *See, e.g., Maywalt v. Parker & Parsley Petrol. Co.*, 147 F.R.D. 51, 58 (S.D.N.Y. 1993) (citing *In re Crazy Eddie Sec. Litig.*, 135 F.R.D. 39, 41 (E.D.N.Y. 1991)). That may be true if there are "[i]ssues . . . common to the class regardless of the law to be applied." *See In re Crazy Eddie*, 135 F.R.D. at 41. But, in other circumstances, the Court needs to know what law — or laws — it will apply to plaintiffs' claims to determine whether making classwide factual or legal determinations "will resolve an issue that is central to the validity of each one of [plaintiffs'] claims in one stroke." *See Dukes*, 131 S. Ct. at 2551. For that reason, in assessing motions to certify fraud and related claims brought on behalf of national classes, several courts have reached choice of law questions in assessing the Rule 23(a)(2) and 23(b)(3) requirements. *See, e.g., In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002); *Lewis Tree Serv., Inc. v. Lucent Techs., Inc.*, 211 F.R.D. 228, 233 (S.D.N.Y. 2002); *see also In re U.S. Foodservice*, 729 F.3d at 126–27. Given the claims at issue, the Court concludes that it should resolve the choice of law question now. Indeed, this Court earlier reserved the question whether the parties' reliance on New York law would continue to be "appropriate" in resolving any motion for class certification. (*See* Order dated April 23, 2013, at 6.) The time to address the choice of law issue has arrived.

that the laws of the several states must be applied here but finds that the need to conduct such an analysis is not fatal to commonality.

As a federal court sitting in diversity pursuant to the Class Action Fairness Act of 2005, *see* 28 U.S.C. § 1332((d)(2)(A), this Court "applies the choice-of-law rules of the state in which" the Court sits, namely New York. *See Walton v. Morgan Stanley & Co.*, 62 F.2d 796, 798 n.4 (2d Cir. 1980). Plaintiffs' fraud and unjust enrichment claims sound in tort pursuant to New York law. *See AXA Versicherung AG v. N.H. Ins. Co.*, 708 F. Supp. 2d 423, 429 (S.D.N.Y. 2010); *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 148 n.11 (S.D.N.Y. 2008). In tort cases where "conduct-regulating standards are at issue," *see In re Grand Theft Auto*, 251 F.R.D. at 149, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders," *see GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006). The Court sees no reason to depart from that rule and concludes pursuant to New York law that the law to be applied to the proposed national class's fraud and unjust enrichment claims is the law of the state in which IJL allegedly made material misrepresentations to each class member.

  iii. Any Differences Among the Law Applicable to Plaintiffs' Fraud or Unjust Enrichment Claims Do Not Defeat Commonality.

As a "federal court sitting in diversity," this Court unquestionably "has the ability to adjudicate class action litigation that involves the application of numerous state laws." *See Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 79 (E.D.N.Y. 2004). "[D]espite the" possible "existence of state law variations" among plaintiffs' fraud and unjust enrichment claims, those claims "can implicate common issues . . . so long as the elements of the claim[s] . . . are substantially similar." *See id.*

With regard to plaintiffs' fraud claims, although "states vary on whether they require proof of intent as an element in a fraud action . . . all

states require proof of misrepresentation, materiality of misrepresentation and reliance." *See In re Telectronics Pacing Sys., Inc.*, 164 F.R.D. 222, 230 (S.D. Ohio 1995). As the Court has found, *see* Section II.B.1.b.1 *supra*, IJL made substantially uniform representations to all members of the proposed national class. And as the U.S. Supreme Court recently noted, materiality "is judged according to an objective standard." *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013). Litigation of the fraud claims on a classwide basis will therefore "generate common answers apt to drive the resolution of this litigation," *see Dukes*, 131 S. Ct. at 2551, particularly with regard to whether IJL made misrepresentations, and whether those misrepresentations were material.

As for the unjust enrichment claims of the proposed national class, several courts have recognized that "a universal thread throughout all common law causes of action for unjust enrichment" is "a focus on the gains of the defendants." *See Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010); *see also Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 612 (D.S.D. 2004); *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 697 n.40 (S.D. Fla. 2004). Accordingly, there is a question "[c]ommon to all class members and provable on a class-wide basis" as to whether [d]efendants unjustly profited," *see Keilholtz*, 268 F.R.D. at 341, by making representations during each initial intake interview that IJL staff already had multiple matches in mind.

In short, plaintiffs' allegation that IJL staff informed all prospective members that IJL had multiple matches is at the heart of the claims of the proposed national class. At this stage, the Court is satisfied that plaintiffs' fraud and unjust enrichment claims will rise or fall in significant part based on whether IJL's materially uniform representations to the class were materially misleading and whether IJL unjustly profited as a result — issues that in turn can be determined on a classwide basis, and without regard to possible variations in state laws. *See Amgen*, 133 S. Ct. at 1191; *Keilholtz*, 268 F.R.D. at 341. Resolution of these common questions will

therefore "drive the resolution of the litigation." *See Dukes*, 131 S. Ct. at 2551.

> c.   *The Named Plaintiffs' Claims Are Typical of the National Class's Claims.*

"To establish typicality under Rule 23(a)(3), the party seeking certification must show that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux*, 987 F.2d at 936). "When it is alleged that the same unlawful conduct . . . affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936–37. As with Rule 23(a)(2)'s commonality requirement, the typicality requirement is a "guidepost[] for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff[s'] claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *See Dukes*, 131 S. Ct. at 2551 n.5.

As this Court has already found, each of the proposed representatives of the national class has "provided evidence . . . that the IJL interviewer" informed each plaintiff that the interviewer "had at least two matches in mind during the intake interview." (*See* Order dated April 23, 2013, at 7 (Dkt. No. 167).) In denying defendants' motion for summary judgment as to plaintiffs' fraud and unjust enrichment claims, the Court further noted that each of the four proposed class representatives "provided evidence that they relied on defendants' misrepresentations and signed up with IJL as a result." *Id.* The national class representatives' individual claims accordingly mirror those of the class, and the Court finds by a preponderance of the evidence that the proposed representatives of the national class have established typicality. *See In re Flag*, 574 F.3d at 35.

> ### d.   *The Representative Parties and Counsel Will Fairly and Adequately Represent the Class.*

Rule 23(a)(4)'s adequacy requirement "entails inquiry as to whether: 1) plaintiff[s'] interests are antagonistic to the interest of other members of the class and 2) plaintiff[s'] attorneys are qualified, experienced and able to conduct the litigation." *In re Flag*, 574 F.3d at 35 (quotation marks omitted). Defendants do not challenge the adequacy of plaintiffs' choice of counsel, and the Court finds that plaintiffs' attorneys are adequately qualified to represent the proposed class.

As to the representatives' adequacy, the U.S. Court of Appeals for the Second Circuit has described that prong as follows:

> The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent. To satisfy Rule 23(a)(4), the named plaintiffs must possess the same interest[s] and suffer the same injur[ies] as the class members. Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members. Not every conflict among subgroups of a class will prevent class certification—the conflict must be "fundamental" to violate Rule 23(a)(4).

*In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (alterations in original) (citations and quotation marks omitted).

As an initial matter, IJL does not dispute that plaintiffs Bruno, Cameron, Tortora, and Malak have "vigorously pursu[ed]" their representation of the class. *See id.* Indeed, each representative has actively participated in the case since its filing; three have submitted declarations at various intervals and all have been deposed in this action. (Affs. of Karen Malak-Rocush and Lisa Bruno dated Nov. 9, 2009, Exs. A–B to Decl. of John G. Balestriere dated Dec. 15, 2009, Dkt. No. 78-2; Aff. of Lisa Bruno dated July 30, 2010, Ex. B to Decl. of Jon L. Norinsberg dated July 30, 2010,

Dkt. No. 117-2; Affs. of Karen Malak-Rocush and Janeen Cameron dated Feb. 23, 2011, Exs. L–M to Decl. of Jon L. Norinsberg dated Feb. 25, 2011, Dkt. No. 154-5; Dep. of James Tortora dated Sept. 17, 2010, Ex. 6 to Balestriere Decl. dated July 19, 2013; Dep. of Lisa Bruno dated Nov. 4, 2010, Ex. 7 to Balestriere Decl. dated July 19, 2013; Dep. of Janeen Cameron dated Sept. 21, 2010, Ex. 8 to Balestriere Decl. dated July 19, 2013; Dep. of Karen Malak dated Oct. 27, 2010, Ex. L to Shapiro Decl., Dkt. No. 188-13.) Nor does IJL dispute the adequacy of plaintiffs Bruno and Tortora.

IJL argues only that issues "unique" to Malak and Cameron "threaten to become the focus of the litigation." *See In re Flag*, 574 F.3d at 40. In particular, IJL observes that "Malak terminated her membership prior to her contract expiring because she was dating a non-IJL member whom she subsequently married." (*See* Defs.' Mem. at 20 (citing Malak Dep. at 121, Dkt. No. 188-13, at 3).) And Cameron "received a refund while her membership was active." (*See id.* (citing Cameron Dep. at 75, 80–81, Dkt. No. 188-14, at 3–5).) Defendants do not, however, endeavor to explain how these facts create any conflicts between Malak and Cameron and the class they seek to represent, let alone why any such conflict would be "fundamental." *See In re Literary Works*, 654 F.3d at 249.

Simply put, neither of defendants' examples is germane to the class claims, which turn on whether IJL made material misrepresentations to plaintiffs that induced them to sign up for IJL's services, and whether IJL unjustly profited as a result. As for the fact that Cameron received a *partial* refund (*see* Ex. B. to Decl. of Anna Andersen dated Jan. 14, 2011, Ex. to Shapiro Decl., Dkt. No. 188-6, at 28), the refund may affect the amount of any monetary recovery but "is not sufficient to defeat class certification." *See Seijas v. Republic of Arg.*, 606 F.3d 53, 58 (2d Cir. 2010) ("[I]t it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification.").

The proposed class representatives have a demonstrated interest in pursuing the class claims, which parallel their own. Accordingly, the

Court finds that Bruno, Cameron, Tortora, and Malak "will fairly and adequately protect the interests of the" proposed national class. *See* Fed. R. Civ. P. 23(a)(4).

> e.   *The Proposed National Class Is Ascertainable.*

Some courts have read into Rule 23 "an 'implied requirement' that the class be ascertainable." *See, e.g., Sykes v. Mel Harris & Assocs.*, 285 F.R.D. 279, 287 (S.D.N.Y. 2012) (quoting *In re IPO*, 471 F.3d at 30)). "Under this requirement, the class must be 'identifiable' such that its members can be ascertained by reference to objective criteria." *Id.* (internal quotation marks omitted).

The Court concludes that any applicable ascertainability requirement is satisfied here. Plaintiffs define the class to include all "individuals . . . who were fraudulently induced to sign a contract and purchased the services of Defendants . . . during the period of October 15, 2001, through the present." (Pls.' Mem. at 1.) On plaintiffs' theory of the case, every customer who joined IJL during that period is a class member. (*See, e.g.,* Pls.' Mem. at 3 (IJL read the script to "*every potential customer*"); Pls.' Reply at 1 (IJL made material misrepresentations to "*all*" those who signed up after October 15, 2001).) The universe of customers that joined IJL after October 15, 2001 is certainly ascertainable through IJL's records and therefore the proposed national class members are ascertainable.

*   *   *

The proposed national class meets all of Rule 23(a)'s requirements for class certification. The Court therefore proceeds to address Rule 23(b).

> **2.   *The Proposed Class Meets the Requirements of Rule 23(b)(3) with Regard to the Fraud but Not the Unjust Enrichment Claims.***

Plaintiffs seek certification of the national class's claims pursuant to Rule 23(b)(3). "To certify a class pursuant to Rule 23(b)(3), plaintiff[s] must

establish: (1) predominance — 'that the questions of law or fact common to class members predominate over any questions affecting only individual members'; and (2) superiority — 'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *In re U.S. Foodservice*, 729 F.3d at 117 (quoting Fed. R. Civ. P. 23(b)(3)).

> ### a.   Issues Common to Plaintiffs' Fraud Claims Predominate over Individual Issues.

Rule 23(b)(3)'s "predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *See id.* at 118 (internal quotation marks omitted). As the Supreme Court recently explained, Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to class proof," only "that common questions *predominate* over any questions affecting only individual class members." *See Amgen*, 133 S. Ct. at 1196 (alterations omitted).

Defendants advance three arguments as to why plaintiffs' fraud claim does not meet the predominance requirement. First, they contend that IJL's representations to each class member "varied greatly." (Defs.' Mem. at 20.) Second, "some members may not have relied on" the sales representatives' representation that IJL had identified multiple matches during the initial interview. (Defs.' Mem. at 22.) Finally, differences in the state laws governing plaintiffs' fraud claims preclude a finding of predominance, IJL argues. The Court addresses IJL's arguments in turn.

> ### i.   IJL Employees' Representations Regarding "Multiple Matches" Were Materially Uniform.

The Second Circuit has held that "fraud claims based on uniform misrepresentations made to all members of the class," unlike those "based on individualized misrepresentations," are "appropriate subjects for class

certification because the standardized misrepresentations may be established by generalized proof." *Moore v. Painewebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002); *see In re U.S. Foodservice*, 729 F.3d at 118. In assessing whether a defendant made "materially uniform misrepresentations," "[n]o particular form of evidentiary proof" is dispositive. *See Moore*, 306 F.3d at 1255.

In contending that IJL's sales pitch "varied greatly," defendants generally rehash arguments the Court has already rejected in finding that plaintiffs have satisfied Rule 23(a)(2)'s commonality requirement as to the fraud claims. Defendants also point out that IJL representatives made representations about the gender ratio of IJL's customer pool to some named plaintiffs but not others. But plaintiffs abjure reliance on such "non-material variations" in the information IJL provided during the initial client interviews. (*See* Pls.' Reply at 10 n.12.) As the Court has already found for purposes of this motion, plaintiffs have demonstrated by a preponderance of the evidence that IJL represented to all applicants that IJL had at least two matches in mind during the intake interview, notwithstanding the fact that IJL accepted all applicants as customers. IJL staff made that core representation to all members of the class in a materially uniform fashion, making the issue appropriate for adjudication on a classwide basis.

    ii.    Plaintiffs Have Demonstrated that They Can Prove Reliance Through Common Evidence.

There is no blanket rule in the Second Circuit that "a fraud class action cannot be certified when individual reliance will be an issue." *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 224 (2d Cir. 2008). Certification may be appropriate as long as plaintiffs can prove reliance "through common evidence (that is, through legitimate inferences based on the nature of the alleged misrepresentations at issue)." *See In re U.S. Foodservice*, 729 F.3d at 120. Whether a plaintiff can "pro[ve] . . . reliance by

[such] circumstantial evidence" must be assessed on a case-by-case basis. *See McLaughlin*, 522 F.3d at 225 & n.7.

"In light of this [Second Circuit] case law, many courts in this Circuit . . . have held that reliance may be proved through circumstantial evidence that plaintiffs would not have purchased a product but for a defendant's uniform misrepresentations . . . about that product." *See Ge v. Pinnacle Performance Ltd.*, 2013 WL 5658790, at *9 (S.D.N.Y. Oct. 17, 2013). For example, the district court in *Seekamp v. It's Huge, Inc.*, 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012), granted plaintiffs' motion for class certification of their common-law fraud claims. Plaintiffs alleged that car dealerships sold an anti-theft security discount (ATSD) to car purchasers after making various representations about the "legality and beneficialness" of that discount. *See id.* at *4. The court acknowledged that "each proposed class member may have opted to purchase the ATSD for different reasons" but concluded that "it [was] equally clear that every plaintiff would have relied on the implicit representation of the ATSD's legality and beneficialness in deciding whether to purchase it." *Id.* at *10.

Here, too, IJL's representation to its prospective customers about multiple matches was "so fundamental," *see Seekamp*, 2012 WL 860364, at *10, that it is reasonable to "infer[]," *see In re U.S. Foodservice*, 729 F.3d at 120, not only that defendants intended for their representations to induce plaintiffs' reliance, but that plaintiffs in fact relied on those representations in becoming IJL customers. The Court so concludes for several reasons.

First, IJL itself believed that the "multiple match" representation was so essential to enticing customers to sign up that IJL designated that representation a "control point" from which sales representatives were instructed "NOT [to] DEVIATE." (*See* Brown Dep. at 117, 253; Ex. UU to Decl. of Jon L. Norinsberg dated Feb. 25, 2011, Dkt. No. 154-6, at 68.) Second, IJL structured its sales pitches to require that immediately after sales staff made the "multiple match" representation, they were to give prospective customers IJL's consumer contract and ask for payment at that

time. (*See* Craig Dep. at 122, 224–25; Ex. UU to Decl. of Jon L. Norinsberg dated Feb. 25, 2011, Dkt. No. 154-6, at 68.) The fact that IJL directed sales representatives to make the "multiple match" representation immediately before soliciting payment from customers evinces the importance IJL placed on the "multiple match" representation as a sales technique. Finally, it is "hard to imagine a reasonable consumer" not being swayed at least in part by IJL touting its supposed matches to those who had sought out IJL to provide them with individuals who they would find compatible. *Cf. Ge*, 2013 WL 5658790, at *10.

The evidence in the record regarding individual class members' reliance on the "multiple match" representation is consistent with the Court's analysis. As the Court previously found, each of the four proposed class representatives "provided evidence that they relied on defendants' misrepresentations and signed up with IJL as a result." (*See* Order dated April 23, 2013, at 7 (Dkt. No. 167).) An additional prospective class member who signed up through IJL's national call center affirmed that she "decided to join" IJL in part "[b]ased on" the sales representative's statement to her "that she already had two men in mind that would be good matches." (*See* Aff. of Dana Bijj dated Feb. 23, 2011, ¶¶ 14–15, Ex. V to Decl. of Jon L. Norinsberg dated Apr. 11, 2011, Dkt. No. 154-7, at 101.)

IJL contends that the fact the Court previously dismissed prospective class representative Christine Rodriguez's fraud claim on the ground that she "ha[d] not proffered sufficient facts to support a conclusion by the finder of fact that [she] relied on IJL's representations that there were appropriate matches in its database for her" (*see* Order dated April 23, 2013, at 7 (Dkt. No. 167)), undermines the ability of plaintiffs to demonstrate reliance through generalized proof. However, the Court dismissed Rodriguez's claim because she failed timely to introduce sufficient evidence regarding her *individual* claim. The distinct question now before the Court is whether plaintiffs as a *class* can establish reliance through "common proof." *See McLaughlin*, 522 F.3d at 225. The record

developed during the class discovery proceedings demonstrates that plaintiffs can do so, for the reasons described above. Moreover, despite years of discovery in this action, defendants' brief cites no evidence that any prospective class member other than Rodriguez did not rely on IJL's "core" representation regarding multiple matches.

      iii.   Variations in States' Fraud Laws Do Not Preclude a Finding of Predominance of Common Issues.

Defendants argue that a single difference in the state laws governing plaintiffs' fraud claims is fatal to plaintiff's ability to demonstrate predominance of common questions over individual ones. In particular, IJL observes that states' laws differ as to whether a plaintiff must show that a defendant had actual knowledge of a statement's falsity, versus constructive knowledge, or knowledge that a statement may not have been true. *See e.g.*, *Eurycleia Partners, LP v. Seward & Kissel LLP*, 12 N.Y.3d 553, 559 (2009) (in New York, fraud "require[s]" "knowledge of" the "falsity" of a representation); *Parker v. State of Fla. Bd. of Regents*, 724 So.2d 163, 168 (Fla. Dist. Ct. App. 1998) (for fraud claims in Florida, "scienter[] can be established" by showing that (1) a "representation was made with actual knowledge of its falsity"; (2) "without knowledge either of its truth or falsity"; or (3) "under circumstances in which the person making it ought to have known . . . of its falsity"); *Squires v. Breckenridge Outdoor Educ. Ctr.*, 715 F.3d 867, 878 (10th Cir. 2013) (quoting *Club Valencia Homeowners Ass'n v. Valencia Assocs.*, 712 P.2d 1024, 1026 (Colo. App. 1985)) (in Colorado, "[t]o establish fraud, a plaintiff must prove . . . the defendant knew the representation was false or was aware that he did not know whether the representation was true or false").

Defendants' argument fails for two reasons. First, "[t]he specter of having to apply different substantive law[s]" does not necessarily "warrant refusing to certify a class." *See Steinberg*, 224 F.R.D. at 79; *see also Ebin v. Kangadis Food Inc.*, — F.R.D. —, 2014 WL 737960, at *8 (S.D.N.Y. Feb. 25, 2014) ("even if [a c]ourt must apply the law of numerous states,

common issues [may] still predominate" with regard to consumer fraud claims), *motion for leave to appeal denied, Ebin v. Kangadis Food, Inc.*, No. 13-4775 (2d Cir. Apr. 15, 2014). "A claim . . . can implicate common issues and be litigated collectively, despite the existence of state law variations, so long as the elements of the claim . . . are substantially similar and any differences fall into a limited number of predictable patterns which can be readily handled by special interrogatories or special verdict forms." *See id. Steinberg*, 224 F.R.D. at 77. The scienter element of states' fraud laws fall into such limited patterns. If necessary, the national class may be divided at a later time into subclasses that correspond to the different scienter requirements. *See* Fed. R. Civ. P. 23(c)(1)(C), (c)(5).

Second, the record indicates that plaintiffs will be able to present proof on a classwide basis regarding the applicable scienter requirements. For example, the parties adduced evidence during discovery regarding whether IJL staff were trained to make the multiple match representation regardless of its veracity. (*See, e.g.* Le Page Dep. at 47; Velasquez Dep. at 106.) Such evidence of IJL's training will allow plaintiffs to attempt to prove scienter on a classwide, as opposed to individual, basis. The variations in state fraud laws' scienter requirement therefore does not create individual issues that predominate over common ones with respect to the fraud claims of the proposed national class.

In short, plaintiffs have demonstrated that: (1) defendants made materially uniform representations to the entire prospective class, *see Moore*, 306 F.3d at 1253, 1255; (2) the materiality of those representations can be demonstrated on a classwide basis, *see Amgen*, 133 S. Ct. at 1191; and (3) the class's reliance on IJL's representations can similarly be demonstrated on a classwide basis through generalized proof, *see McLaughlin*, 522 F.3d at 215. These are issues common to the class regardless of the state fraud law applicable to the class's claims. *See In re Telectronics*, 164 F.R.D. at 230 ("misrepresentation, materiality of misrepresentation and reliance" are elements of all states' fraud laws).

Defendants have simply not identified any individual issues that would predominate over these common issues, and the Court is aware of none. The Court therefore concludes that Rule 23(b)(3)'s predominance requirement is met as to plaintiffs' national fraud class claim.

> b.   *A Class Action Is a Superior Mode of Adjudicating Plaintiffs' Fraud Claims.*

Rule 23(b)(3) instructs that in considering whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," the court is to consider:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Along with the predominance requirement, the superiority requirement "ensures that [a] class will be certified only when it would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *See Cordes & Co. Fin Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007). The Court considers each of Rule 23(b)(3)'s requirements in turn.

First, given the relatively modest amount of monetary damages for each individual plaintiff at issue, the Court finds that the "class members have little interest in controlling the litigation individually" because it would be prohibitively expensive relative to the expected recovery. *See Mazzei v. Money Store*, 288 F.R.D. 45, 65 (S.D.N.Y. 2012).

Second, on the record before the Court, there is only one pending action raising similar claims as plaintiffs', filed in Illinois state court in

September 2013. (*See* Letter from John G. Balestriere dated Oct. 15, 2013, Dkt. No. 193.) Based on this Court's review of the docket in the Illinois case, this action has proceeded much closer to trial than the Illinois case. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("docket sheets are public records of which the court [may] take judicial notice").

The third consideration — the "desirability or undesirability of concentrating the litigation of the claims in" this forum — weighs in favor of certification. One of the four proposed representatives of the national class, Lisa Bruno, is a New York City resident. Defendants It's Just Lunch, Inc., Harry and Sally, Inc., and IJL New York City Franchise, are all located in New York City. The fact that a significant number of class members are located in this jurisdiction makes this forum somewhat more appropriate than others for the litigation of the parties' controversy. Significantly, IJL does not argue that any other forum would be more appropriate.

The fourth factor — "the likely difficulties in managing a class action" — is the only one that defendants contend weighs against certification. Defendants repeat their argument that even after certifying a class, the Court will be left with "a myriad of discrete factual inquiries." (Defs.' Opp. at 24.) For the reasons explained in Section II.B.2.a *supra*, the Court concludes that common issues will predominate over any individual issues, and that this case is manageable as a class action. *See Seijas*, 606 F.3d at 58 (manageability "is an issue peculiarly within a district court's discretion").

Finally, defendants advance an additional argument against the superiority of a class action: that state agencies are equipped to provide IJL's customers with remedies for any unfair or deceptive business practices especially where, as here, the claims at issue here "involve relatively small amounts." (Defs.' Opp. at 24.) But

> Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery.

> Here, substituting a single class action for numerous trials in
> a matter involving substantial common legal issues and
> factual issues susceptible to generalized proof will achieve
> significant economies of time, effort and expense, and
> promote uniformity of decision.

*See In re U.S. Foodservice*, 729 F.3d at 130 (citing *Amchem v. Ortiz*, 521 U.S.
591, 617 (1997)). The Court concludes that plaintiffs have met Rule
23(b)(3)'s superiority requirement as to the fraud claims of the proposed
national class.

> c.   *Plaintiffs Have Not Met Their Burden of Establishing that*
> *Issues Common to Their Unjust Enrichment Claims*
> *Predominate over Individual Issues.*

"[P]laintiffs bear the burden of establishing by a preponderance that
common questions will predominate over individual ones." *See In re U.S.
Foodservice*, 729 F.3d at 117. Plaintiffs have not met their burden as to the
unjust enrichment claims of the proposed national class.

The law applicable to those claims is the state unjust enrichment law
of the jurisdiction where IJL allegedly made material misrepresentations to
each prospective class member. *See* Section II.B.1.b.ii *supra*. Plaintiffs cite a
handful of cases that stand for the proposition that depending on the
"central issue" and the "manner of proof" at issue, "variations among . . .
states' unjust enrichment laws are not material." *See Keilholtz*, 268 F.R.D. at
341; *see also In re Terazosin*, 220 F.R.D. at 697 n.40. Even those courts have
noted that "[l]aws concerning unjust enrichment *do* vary from state to
state." *See Keilholtz*, 268 F.R.D. at 341 (emphasis added); *see also In re
Terazosin*, 220 F.R.D. at 697 n.40 (noting that only some states have an
element of "appreciation"). "Other states only allow a claim of unjust
enrichment when no adequate legal remedy exists." *See Clay v. Am. Tobacco
Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999). Yet other states "preclude unjust
enrichment claims when a valid, express contract governing the subject
matter exists." *See Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Assoc.*,

624 F.3d 185, 196 n.32 (5th Cir. 2010); *accord Petrello v. White*, 412 F. Supp. 2d 215, 233 (E.D.N.Y. 2006) (in New York, "the existence of a written agreement precludes a finding of unjust enrichment").

Plaintiffs have not acknowledged any of these variations in states' unjust enrichment laws or advanced *any* argument as to how they can establish the various elements through classwide proof. The Court therefore concludes that plaintiffs have not met their burden of establishing the predominance of common issues over individual issues relevant to the unjust enrichment claims of the proposed national class.

> d.   *Plaintiffs Have Not Met Their Burden of Establishing that a Class Action Is a Superior Means of Adjudicating the Unjust Enrichment Claims of the Proposed National Class.*

Given the variations in the state laws applicable to the unjust enrichment claims of the proposed national class, the Court concludes that the "likely difficulties in managing a class action," *see* Fed. R. Civ. P. 23(b)(3)(D), compel the conclusion that a national class action is not a superior vehicle for fairly and efficiently adjudicating those claims. *See Haynes v. Planet Automall, Inc.*, 276 F.R.D. 65, 81 (E.D.N.Y. 2011) (holding that Rule 23(b)(3)'s superiority requirement was not met solely because Rule 23(b)(3)(D) was not satisfied).[4]

\*      \*      \*

In light of the evidence in the record and the elements of the laws applicable to the claims of the prospective national class, the Court

---

[4] For similar reasons, "given the number of questions that would remain for individual adjudication," the Court declines to employ Rule 23(c)(4) to certify a class action with respect to particular issues regarding plaintiffs' unjust enrichment claims. *See McLaughlin*, 522 F.3d at 234.

concludes that plaintiffs have satisfied their burden of demonstrating the Rule 23(a) and Rule 23(b)(3) requirements with respect to their fraud claims. The Court therefore certifies a national fraud class defined to include all individuals who signed a membership contract with IJL and purchased IJL's services on or after October 15, 2001.[5]

As for the proposed national class's unjust enrichment claims, plaintiffs have satisfied Rule 23(a) but not Rule 23(b)(3), and they have not sought certification pursuant to either Rule 23(b)(1) or 23(b)(2). The Court therefore denies plaintiffs' request to certify a nationwide class asserting unjust enrichment claims. The Court now turns to plaintiffs' request to certify a separate class[6] as to plaintiffs' New York law claims.

_____

[5] In their motion for class certification, plaintiffs propose a class period based on New York's six year statute of limitations for fraud claims. *See Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 & n.3 (2d Cir. 2013). However, as noted above, *see* Section II.B.1.b.ii, the law applicable to plaintiffs' fraud claims is not necessarily New York law, but "the law of the jurisdiction where the [fraud] occurred," *see GlobalNet*, 449 F.3d at 384. Thus, to the extent that IJL's allegedly offending conduct took place in jurisdictions with statutes of limitations other than six years, the class definitions must take into account those differing periods of limitations.

The Court does not anticipate that any variations in the statutes of limitations will affect the manageability of this case to proceed as a class action. *See In re Linerboard Antitrust Litig.*, 305 F.3d 145, 162 (3d Cir. 2002) (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) ("'As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3).'").

[6] Although plaintiffs describe this proposed class as a "subclass," they do not separate out the New York class because its members have "divergent . . . interest[s]" vis-à-vis the national class, *cf.* Fed. R. Civ. P. 23(c)(4) advisory committee note (1966), nor do they seek to "divide[] the national class "into subclasses," *cf.* Fed. R. Civ. P. 23(c)(5). Instead, the claims of the New York

### C.   New York Fraud and Unjust Enrichment Class Claims

As noted, the proposed New York class is comprised of New Yorkers who paid IJL more than $1,000, allegedly in violation of New York General Business Law ("GBL") §§ 349 and 394-c(2). In addition to violations of those statutes, plaintiffs allege an unjust enrichment claim arising from the same course of conduct by IJL. The Court proceeds to consider each of the requirements of Rule 23(a) and Rule 23(b)(3) with respect to these claims.

### 1.   The Proposed New York Class Meets Each of Rule 23(a)'s Requirements.

#### a.   The Members of the Proposed New York Class Are Sufficiently Numerous.

Defendants have "estimated that" 3,698 "'New York' members . . . paid in excess of $1,000 for his/her membership, inclusive of persons whose statute of limitations has run." (*See* Ex. 1 to Balestriere Decl. dated Oct. 4, 2013, at 3, Dkt. No. 192-1.) Based on defendants' estimate, and the Court's interest in the "judicial economy arising from the avoidance of a multiplicity of actions," *see Robidoux*, 987 F.2d at 936, the Court concludes that the proposed New York "class is so numerous that joinder of all members is impracticable," *see* Fed. R. Civ. P. 23(a)(1); *see also Shahriar*, 659 F.3d at 252.

---

class are supplementary to those of the national class. The Court therefore construes plaintiffs' motion as seeking certification of a separate New York class. *See* Fed. R. Civ. P. 23(c)(4) advisory committee note (1966) ("Two or more classes may be represented in a single action.").

> b.   *Whether IJL Charged New York Customers More than $1,000*
>      *Prior to November 30, 2006 Is a Question Common to the*
>      *Proposed New York Class.*

Plaintiff Berkowitz alleges that until November 29, 2006 IJL and its New York franchises charged clients in excess of $1,000 for one year of services —usually $1,500. (*See* Third Am. Compl. ¶ 18.) Defendants allegedly did so "by urging its clients to simultaneously execute two separate six month agreements (for $1,000.00 and $500.00 respectively.") (*See id.*) Plaintiffs allege that this practice violates GBL § 394-c(2), which provides that "[n]o contract for social referral service shall require payment by the purchaser of such service of a cash price in excess of $1000." By violating that statute, plaintiffs allege, defendants also unjustly enriched themselves. (*See* Third Am. Compl. ¶¶ 238–39.)

The parties do not dispute the following facts: In June 2007, defendants It's Just Lunch International and Harry and Sally, Inc. entered into Assurances of Discontinuance with the Attorney General of New York to resolve an inquiry into defendants' business practices. (*See* Ex. A to Shapiro Decl, Dkt. No. 188-1.) The Attorney General concluded that defendants violated GBL § 394-c(2) by offering New York consumers the "option[]" of entering into either (i) a six-month IJL membership for $1,000 or (ii) two consecutive six-month IJL memberships — the first for $1,000 and the second for $300 to $500. (*See id.* at 10.) Defendants did not admit that their business practices violated state law but agreed to "cease and desist" from "[h]aving a consumer sign more than one contract for an aggregate amount in excess of $1,000.00," except that they could still "sell an additional contract to a consumer at the conclusion of an existing contract with that consumer." (*See id.* at 14.) Defendant Harry & Sally, Inc. discontinued the allegedly offending practice on November 29, 2006. (Aff. of Robert Vandor dated June 18, 2010, Ex. 9 to Balestriere Decl. dated July 19, 2013.)

In light of the undisputed fact that IJL's New York franchises had a policy of charging New York customers more than $1,000 in a single transaction, the Court finds that Rule 23(a)(2)'s commonality requirement is met with respect to both claims of the proposed New York class. The Court proceeds to elaborate as to that finding with respect to each claim.[7]

Plaintiffs bring their claim against defendants for alleged violations of GBL § 394-c(2) pursuant to GBL § 349, which prohibits "[d]eceptive acts or practices in the conduct of any business," *see id.* § 349(a), and which provides that "any person who has been injured by reason of any violation of [§ 349] may bring an action . . . . to recover his actual damages," *id.* § 349(h). The Second Circuit has explained that a "§ 349 claim has three elements: (1) the defendant[s'] challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result." *See Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007). "[A] private action brought under § 349 does not require proof of actual reliance." *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).

The existence of defendants' policy will "generate common answers apt to drive the resolution of" plaintiffs' claims pursuant to section 349. *See Dukes*, 131 S. Ct. at 2551. In particular, plaintiffs will be able to use

---

[7] Although IJL purports to challenge commonality, defendants conflate Rule 23(a)(2) with Rule 23(b)(3)'s stricter predominance requirement. In each of the cases denying class certification of section 349 claims cited by IJL, the court either did not reach the Rule 23(a) requirements or explicitly found that a common question existed pursuant to Rule 23(a)(2). *See, e.g.*, *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *6 (S.D.N.Y. Aug. 5, 2010) (declining to reach Rule 23(a)); *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 75 (S.D.N.Y. 2006) ("some common questions . . . exist"); *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 311 (S.D.N.Y. 2004) ("some common questions . . . exist").

common evidence in support of the first element of a section 349 claim, to show that defendants had a uniform, consumer-directed business practice.

"To prevail on [their] claim for unjust enrichment" pursuant to New York law, plaintiffs will have to "establish (1) that . . . defendants[] benefitted; (2) at . . . plaintiff[s'] expense; and (3) that equity and good conscience require restitution." *See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 579 (2d Cir. 2006). Again, given defendants' admitted policy, Rule 23(a)(2)'s commonality requirement is easily satisfied with respect to the unjust enrichment claim of the prospective New York class. Plaintiffs will be able to use evidence of that policy to attempt to demonstrate on a common basis that defendants benefitted at plaintiffs' expense. *See id.*

> c.   *Berkowitz's Claims Are Typical of the New York Class Claims.*

Berkowitz "allege[s] . . . the same unlawful conduct" as the class that he seeks to represent, namely that IJL's policy of charging New York customers more than $1,000 violated section 394-c(2) and unjustly enriched defendants. *See Robidoux*, 987 F.2d at 936. Rule 23(a)(3)'s typicality requirement is therefore presumptively met.

Defendants contend, however, that Berkowitz is atypical because before paying IJL $1,300, he read and signed a contract that disclosed in full the law, namely that "no social referral service contract shall require the payment . . . of an amount greater than one thousand dollars." (*See* Ex. K to Shapiro Decl., Dkt. No. 188-12; Dep. of Brad Berkowitz dated July 26, 2013, Ex. P to Shapiro Decl., Dkt. No. 188-17, at 30–31, 130–38.) Because the parties agree that defendants made the same disclosure to all members of the prospective New York class pursuant to a form contract, any argument that disclosure to Berkowitz makes him atypical fails. (*See* Dep. of Robert Vandor dated Nov. 3, 2010, Ex. N to Shapiro Decl., Dkt. No. 188-15, at 89–91; Robert Vandor Aff. ¶¶ 3, 9.) The effect of IJL's disclosure on the merits of plaintiffs' claims is not before the Court at this time. *See Amgen*, 133 S.

32

Ct. at 1195 (at the certification stage, "[m]erits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied").

The Court concludes that Berkowitz is typical of the New York class. *See* Fed. R. Civ. P. 23(a)(3).

> d.  *Berkowitz and Proposed Class Counsel Will Fairly and*
> *Adequately Represent the New York Class.*

Defendants do not challenge the adequacy of class counsel, and the Court has found counsel adequate. *See* Section II.B.1.d *supra*.

IJL contests Berkowitz's adequacy as a class representative, however, on two grounds. First, IJL contends that counsel is prosecuting this action "without meaningful plaintiff participation and involvement." (*See* Defs.' Opp. at 14.) In support of that proposition, defendants cite Berkowitz's deposition testimony that he was initially "kind of reluctant" to become a named plaintiff and that he only "[v]aguely . . . understands" the status of the case. (*See* Dep. of Brad Berkowitz dated July 26, 2013, Ex. 2 to Balestriere Decl. dated Oct. 4, 2013, at 143, 157.) However, Berkowitz also testified that he now "think[s] that [he is] doing the right thing by telling [his] story," which is why he decided to become a class representative (*See* Berkowitz Dep. at 157.) On the basis of Berkowitz's testimony and the nature of Berkowitz's claims, the Court concludes that Berkowitz has "an interest in vigorously pursuing the claims of the class." *See In re Literary Works*, 654 F.3d at 249.

Second, IJL contends that if upon evaluation of the merits, Berkowitz's individual claim fails, Berkowitz will lack standing. At that point, the argument goes, Berkowitz would turn out to be unrepresentative of the class. Defendants' attempt to litigate the merits of Berkowitz's claim on this motion for class certification is premature. There is no dispute that based on the factual allegations in the complaint, Berkowitz has Article III

standing. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 264–65 (2d Cir. 2006) (on a motion for class certification, standing is assessed based on the "material allegations of the complaint," which the court "must accept as true"). Berkowitz need not make any further showing as to standing at this stage. Because the ultimate merits of Berkowitz's claim are not relevant to determining whether Berkowitz is an adequate class representative, the Court does not — and indeed is prohibited from — evaluating the merits now. *See Amgen*, 133 S. Ct. at 1195.

In sum, Berkowitz has an interest in vigorously pursuing the claims of the New York class in his capacity as a named plaintiff, and defendants have failed to identify any "fundamental" conflicts between Berkowitz's interests and those of the class. The Court accordingly concludes that Berkowitz meets Rule 23(a)(4)'s adequacy requirement. *See In re Literary Works*, 654 F.3d at 249.

> e.   *The Proposed New York Class Is Ascertainable.*

Plaintiffs have proposed an ascertainable class: individuals who became IJL's clients in New York and who paid more than $1,000 for a year's worth of IJL's services. In discovery, defendants have identified the number of individuals that fall within that definition. (Ex. 1 to Balestriere Decl. dated Oct. 4, 2013, at 3, Dkt. No. 192-1.) The Court concludes that the proposed New York class is ascertainable. *See Sykes*, 285 F.R.D. at 287.

*   *   *

The proposed New York class meets each of Rule 23(a)'s requirements for class certification, with respect both to plaintiffs' section 349 and unjust enrichment claims.

### 2.   **The Proposed New York Class Meets the Requirements of Rule 23(b)(3).**

As with the claims of the national class, plaintiffs seek certification of the claims of the New York Class pursuant to Rule 23(b)(3).

a.   *Issues Common to Plaintiffs' GBL § 349 Claim Predominate over Individual Issues.*

Plaintiffs contend that the "overriding" question in regard to their section 349 claim is whether defendants' former policy of charging more than $1,000 for a year of services violated GBL § 394-c(2). (*See* Pls.' Mem. at 19.) They emphasize that unlike the fraud claims of the national class, reliance is not an element of their section 349 claim. *See Pelman*, 396 F.3d at 511. In support of their position that common issues predominate over any individual ones, plaintiffs principally rely on class certification decisions involving section 349 claims arising out of corporate failures to disclose or allegedly deceptive business practices to consumers at the time of a transaction. *See Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 423 (S.D.N.Y. 2009) (certifying a section 349 class pursuant to Rule 23(b)(3) where plaintiffs alleged that Best Buy failed to disclose a policy "pursuant to which employees aggressively deny customers' legitimate price match requests"); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008) (certifying a section 349 class pursuant to Rule 23(b)(3) in which the "core" claim was whether Costco "adequately disclosed" a renewal policy to its members).

In response, IJL maintains that common issues do not predominate because individualized inquiries will be necessary to determine whether its policy in fact deceived each individual class member. Defendants emphasize that the New York franchises disclosed to all customers that "New York law prohibited 'forcing' or 'requiring' a consumer to execute a contract for a social service in excess of $1,000.00 and that the choice to do so was entirely up to them." (*See* Robert Vandor Aff. ¶ 9.) Defendants rely on cases denying class certification of section 349 claims in which an allegedly deceptive business practice was in fact disclosed to a consumer. *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 311 (S.D.N.Y. 2004) (individual issues predominated over common ones because each class member would have to show that Citibank's "disclosure of . . . conversion fees was inadequate, thus deceiving the

cardholder into using his Citibank card . . . when other more economical options were available").

Plaintiffs have the better of the argument regarding predominance. Their section 349 claim is straightforward: defendants' former policy of charging more than $1,000 for one year's worth of services in New York was *per se* illegal, and therefore "deceptive . . . as a matter of law." (*See* Pls.' Reply at 2; *id.* at 4 ("[I]t was *unlawful* for IJL to charge more than $1,000.00 for a one year social referral contract.").) Because plaintiffs complain that defendants' policy was "illegal . . . in and of itself," its deceptiveness "may be proven on a class-wide level." *See Seekamp*, 2012 WL 860364, at *9 (because reliance is not an element of section 349, common issues regarding the deceptiveness of an insurance product predominated over any individual issues regarding whether class members regarding causation). Crucially, the Court of Appeals of New York has cautioned courts against conflating "reliance" and "causation" with regard to section 349 claims. *See Stutman v. Chemical Bank*, 95 N.Y.2d 24, 30 (2000). To "satisf[y] the causation requirement," "[n]othing more is required" than that a plaintiff suffer a loss "because of defendant[s'] deceptive act." *See id.* Such causation is precisely what plaintiffs have alleged (*see* Third Am. Compl. ¶ 231) and what plaintiffs may attempt to prove through classwide evidence regarding IJL's allegedly illegal policy and plaintiffs' monetary losses. *See Cohen*, 498 F.3d at 126 (describing the elements of a section 349 claim).

Defendants' remaining arguments against the predominance of common issues with regard to plaintiffs' section 349 claims are similarly unavailing. The fact that some prospective New York class members may have received credits or refunds does not preclude certification pursuant to Rule 23(b)(3). *See Seijas*, 606 F.3d at 58 ("that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification").

Whether defendants' disclosure of its policy bars plaintiffs' claims is a merits issue not relevant to predominance, since that disclosure was made uniformly in writing to all members of the prospective class. (*See* Robert Vandor Aff. ¶ 9; Robert Vandor Dep. at 89–91.) Finally, defendants rely heavily on cases denying class certification of fraud claims based on the predominance of individual issues regarding reliance. Those cases are inapposite given the lack of a reliance element applicable to plaintiffs' claims. *See Stutman*, 95 N.Y.2d at 30.

In short, plaintiffs' section 349 claim is that IJL sold its services in New York at an illegal price, causing plaintiffs to suffer economic losses. Plaintiffs can use evidence common to the class to attempt to prove each element of that claim. Rule 23(b)(3)'s predominance requirement is therefore met as to the section 349 claim of the proposed New York class.

> b.   *Issues Common to Plaintiffs' Unjust Enrichment Claim Predominate over Individual Issues.*

Plaintiff's' predominance argument with regard to their New York unjust enrichment claim is similar to that regarding the section 349 claim: plaintiffs will be able to use evidence of defendants' billing practice to demonstrate on a classwide basis that defendants unjustly enriched themselves at the expense of IJL's New York customers. Because IJL's policy was both uniform and illegal, plaintiffs contend, the issue of whether "equity and good conscience require restitution" is one that can be demonstrated on a classwide basis. *See Beth Israel Med. Ctr.*, 448 F.3d at 579. Each element of an unjust enrichment claim can therefore be established through common evidence, and the only individual issues are damages ones. Common issues therefore predominate, plaintiffs urge.

The Court agrees that plaintiffs have demonstrated that common issues predominate with regard to their New York unjust enrichment claim for essentially the reasons they have articulated. Moreover, in every case cited by the parties involving section 349 and unjust enrichment

claims arising out of the same core facts in which the court granted certification of the section 349 claim, the court also granted certification of the unjust enrichment claim. *See Seekamp*, 2012 WL 860364, at *12; *Jermyn*, 256 F.R.D. at 436; *Dupler*, 249 F.R.D. at 47.

Defendants contend, however, that plaintiffs will be unable to demonstrate on a classwide basis that the "benefits . . . [they] received were less than what the[y] . . . bargained for." *See In re Canon Cameras Litig.*, 237 F.R.D. 357, 359 (S.D.N.Y. 2006). The argument is that because IJL disclosed to each prospective New York class member that "no social referral service contract shall require the payment . . . of an amount greater than one thousand dollars," (*see* Ex. K to Shapiro Decl., Dkt. No. 188-12), but class members nonetheless went on to pay a greater price, those class members benefitted from what IJL characterizes as a "discount" price for two consecutive six-month contracts. Defendants again fail to grapple with the nature of plaintiffs' unjust enrichment claim. Plaintiffs argue that because IJL was prohibited from charging what it did, "equity and good conscience" require defendants to disgorge the gains from their illegal pricing. *See Beth Israel Med. Ctr.*, 448 F.3d at 586. The merits of plaintiffs' unjust enrichment claims may rise or fall as a result of IJL's disclosure of its policy. But that merits question is not now before the Court. *See Amgen*, 133 S. Ct. at 1195. Because plaintiffs' evidence of whether equity and good conscience require restitution is common to the class, no individual issues are presented. Plaintiffs have satisfied Rule 23(b)(3)'s predominance requirement with respect to the unjust enrichment claims of the proposed New York class.

    c.   *A Class Action Is a Superior Mode of Adjudicating the New York Plaintiffs' Section 349 and Unjust Enrichment Claims.*

Defendants advance a single argument against the superiority of a class action with regard to the claims of the New York class: the Attorney General of New York has already taken action to cause IJL to cease its former policy of charging more than $1,000 per year in New York. That

argument fails to acknowledge that the assurances of discontinuance signed by IJL and its New York franchises did not provide monetary relief to any customer. (*See* Exs. 3–4 to Balestriere Decl. dated Oct. 4, 2013.) Moreover, the Court is not aware of any ongoing action by the New York Attorney General to provide retrospective monetary relief to the class.

The Court has considered each of the factors relevant to Rule 23(b)(3)'s superiority analysis and concludes that a class action in this district is a superior vehicle for members of the prospective New York class to obtain a remedy for any section 349 violation. The Court is not aware of any pending case raising the same claims. All New York class members' claims arose in New York, and the vast majority of New York class members — 2,880 of 3,898 — were customers of an IJL franchise based in Manhattan, within the Southern District of New York. (Ex. 1 to Balestriere Decl. dated Oct. 4, 2013, at 3, Dkt. No. 192-1.) Given the relatively small amount of money at issue for each class member, individual class members have a minimal interest in prosecuting separate actions. *See Mazzei*, 288 F.R.D. at 65. Finally, the Court is not aware of any difficulties in managing the section 349 or unjust enrichment claims on a classwide basis. The Court determines in its discretion that plaintiffs have established Rule 23(b)(3)'s superiority prong as to both their section 349 and unjust enrichment claims. *See Seijas*, 606 F.3d at 58.

\*      \*      \*

For the foregoing reasons, the Court concludes that plaintiffs have satisfied their burden of demonstrating the requirements of Rule 23(a) and Rule 23(b)(3) with respect to the section 349 and unjust enrichment claims of the proposed New York class. The Court therefore certifies a New York class that includes all individuals who became IJL clients in New York and

who, on or after October 15, 2001, paid more than $1,000 for a year's worth of IJL services.[8]

### III.   APPOINTMENT OF BALESTRIERE FARIELLO AS CLASS COUNSEL

Pursuant to Rule 23(g)(1), "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel." In so doing, the court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Balestriere Fariello has competently prosecuted this action since its initiation, shepherding it through discovery and extensive motion practice, and has handled class actions in the past. (Exs. 10–11 to Decl. of John G. Balestriere dated July 19, 2013, Dkt. Nos. 186-10, -11.) The Court appoints Balestriere Fariello as class counsel to represent both the national fraud class and the New York class.

### IV.   CONCLUSION

For the foregoing reasons, the Court grants plaintiffs' motion for class certification of their: (1) national fraud claims; (2) New York GBL § 394 claims; and (3) New York unjust enrichment claims. The Court denies plaintiffs' motion for certification of their national unjust enrichment

---

[8] The statute of limitations applicable to plaintiffs' section 349 claims bars claims that accrued before October 15, 2004 — three years before plaintiffs filed their complaint. *See Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330, 334 n.7 (S.D.N.Y. 2000); N.Y. C.P.L.R. § 214(2). The statute of limitations applicable to plaintiffs' unjust enrichment claim is six years because plaintiffs "seek[] an equitable remedy." *See Matana v. Merkin*, 2013 WL 3940825, at *13 (S.D.N.Y. July 30, 2013); Third Am. Compl. Prayer for Relief (describing equitable relief plaintiffs seek).

claims. The parties are directed to jointly submit a proposed class notice compliant with Rule 23(c)(2)(B) within 21 days of this Opinion and Order.

Dated:  New York, New York
        May 14, 2014

                                        SO ORDERED:

                                        Sidney H. Stein, U.S.D.J.