John Balestriere
Jon Norinsberg
Stefan Savic
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:    (212) 374-5401
Facsimile:    (212) 208-2613
john.balestriere@balestrierefariello.com
jon.norinsberg@balestrierefariello.com
stefan.savic@balestrierefariello.com
*Attorneys for Plaintiffs and the Classes*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CHRISTINE RODRIGUEZ, SANDRA BURGA, KAREN MALAK, JAMES TORTORA, LISA BRUNO, JANEEN CAMERON, KAREN McBRIDE, ANDREW WOOLF,** and **BRAD BERKOWITZ,** individually, and for all others similarly situated,<br><br>          Plaintiffs,<br><br>  –against–<br><br>**IT'S JUST LUNCH INTERNATIONAL, IT'S JUST LUNCH, INC., HARRY and SALLY, INC, RIVERSIDE COMPANY, LOREN SCHLACHET, IJL NEW YORK CITY FRANCHISE, IJL ORANGE COUNTY FRANCHISE, IJL CHICAGO FRANCHISE, IJL PALM BEACH FRANCHISE, IJL DENVER FRANCHISE, IJL AUSTIN FRANCHISE, IJL LOS ANGELES-CENTURY CITY FRANCHISE,** and **DOES 1-136**,<br><br>          Defendants. | Index No.: 07-CV-9227 (SHS)(SN)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S APPLICATION FOR AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF COSTS, SERVICE AWARDS, AND APPROVAL OF PAYMENT OF ADMINISTRATIVE COSTS** |

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ....................................................................................1

II.  SOURCE FOR PAYMENT OF FEES AND COSTS ........................................................3

III. SUMMARY OF BENEFITS CONFERRED ON THE CLASS BY THE SETTLEMENT ...........................................................................................................3

IV.  LITIGATION HISTORY AND EFFORTS OF CLASS COUNSEL...........................6

    A. Efforts of Class Counsel Prior to the Filing of First Complaint..........................6

        1. Class Counsel Conducted a Thorough Investigation, Including Interviews of Company Insiders. ..................................................................7

        2. Class Counsel Obtained Training Manuals from Insiders, as Well as Documents from the New York Attorney General's Investigation. ..............8

    B. Efforts of Class Counsel from Filing of Original Complaint through Class Certification. ..................................................................................................8

        1. Class Counsel Participated in 19 Multistate Depositions and a Contentious Years-Long Discovery Process. ....................................................9

        2. Class Counsel Litigated Motions to Dismiss and Successfully Amended Plaintiffs' Complaint.....................................................................11

        3. Class Counsel Litigated a Motion, Cross-Motion, and Supplemental Cross-Motion for Summary Judgment, and Prevailed on IJL's Motion for Reconsideration...............................................................................13

        4. Class Counsel Successfully Moved for Intervention, Preserving the Claims of the New York Class. .........................................................................14

        5. Class Counsel Obtained Class Certification, Litigating Two Motions for Class Certification...................................................................................15

    C. Efforts of Class Counsel Following Class Certification......................................16

        1. Class Counsel Engaged in What Would Become Magistrate Judge-Supervised Settlement Negotiations for Eight Months, and Worked Through Settlement and Notice Concerns with the Court and IJL For Over a Year. ..............................................................................................16

        2. Class Counsel Worked with the Claims Administrator to Create the Notice Plan...............................................................................................20

V.   CLASS COUNSEL'S REQUESTED FEE IS REASONABLE AND SHOULD BE APPROVED. ...............................................................................................................21

    A. Legal Standard....................................................................................................21

B.  Because It Is Difficult to Value the Significant Injunctive Relief Obtained as Part of the Settlement, the Court Should Follow the Lodestar Method in Approving Class Counsel's Attorney's Fees. ...................................................22

C.  The *Goldberger* Factors All Support Class Counsel's Fee Request. ...................23

    1.  The Time and Labor Expended by Class Counsel. ...........................................24

    2.  The Magnitude and Complexities of the Litigation. .......................................25

    3.  The Risk of Litigation. ......................................................................................26

        a.  Risks of Establishing Liability. ..................................................................26

        b.  Risks to Counsel. .........................................................................................27

    4.  The Quality of Representation. ........................................................................28

    5.  The Requested Fee in Relation to the Settlement. .........................................30

    6.  Public Policy Considerations. ...........................................................................30

D.  The Fee Is Reasonable Under Both the Lodestar and Percentage-Of-Recovery Methods. ...............................................................................................32

    1.  The Lodestar Method: the Hourly Rates and Fees Were Reasonable in This Nearly Nine-Year Old Action. ...........................................................32

    2.  The Percentage-of-Recovery Method: the Fee Request Is Reasonable Based on the Up to $69 Million Voucher Settlement and the $4.75 Million Cash Recovery. ..................................................................................34

VI.  CLASS COUNSEL'S EXPENSE REIMBURSEMENT REQUEST SHOULD ALSO BE APPROVED AS REASONABLE. ..............................................................35

VII.  THE REQUESTED SERVICE AWARDS FOR CLASS REPRESENTATIVES ARE REASONABLE UNDER THE CIRCUMSTANCES AND SHOULD BE APPROVED. ............................................................................................................37

VIII.  THE COURT SHOULD ALSO APPROVE PAYMENT OF ADMINISTRATIVE COSTS AND OTHER REASONABLY NECESSARY EXPENDITURES. ...............39

IX.  CONCLUSION ........................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Pipe & Constr. Co. v. Utah,*
  414 U.S. 538 (1974) ........................................................................................ 26

*Beckman v. KeyBank, N.A.,*
  293 F.R.D. 467 (S.D.N.Y. 2013) ........................................................... 33, 35, 38

*Board of Trustees v. JPMorgan Chase Bank, N.A.,*
  No. 09 Civ. 686 (SAS), 2012 WL 2064907 (S.D.N.Y. June 7, 2012) ................................ 34

*Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,*
  504 F.3d 229 (2d Cir. 2007) ................................................................... 34

*City of Burlington v. Dague,*
  505 U.S. 557 (1992) ........................................................................................ 23

*DiFilippo v. Morizio,*
  759 F.2d 231 (2d. Cir. 1985) ............................................................... 28

*Goldberger v. Integrated Resources, Inc.,*
  209 F.3d 43 (2d. Cir. 2000) ........................................................................ passim

*Gunnells v. Healthplan Services, Inc.,*
  348 F.3d 417 (4th Cir. 2003) ............................................................... 27

*In re Agent Orange Prod. Liab. Litig.,*
  818 F.2d 226 (2d Cir. 1987) ............................................................... 26

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.,*
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................................... 35

*In re Bisys Sec. Litig.,*
  No. 04-CIV-3840 JSR, 2007 WL 2049726 (S.D.N.Y. Jul. 16, 2007) ................................ 30

*In re Citigroup Inc. Bond Litig.,*
  No. 08 Civ. 9522 (SHS), 2013 WL 6697822 (S.D.N.Y. Dec. 19, 2013) ............................ 29

*In re EVCI Career Colleges Holding Corp. Sec. Litig.,*
  No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ............................ 33

*In re Excess Value Ins. Coverage Litig.*,
  598 F. Supp. 2d 380 (S.D.N.Y. 2005)...................................................................... 22

*In re Flag Telecom Holdings, Ltd. Securities Litigation*,
  No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ......................... 28

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004)................................................................... 29, 36

*In re Merrill Lynch Tyco Research Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008)............................................................................ 35

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998)............................................................................ 31

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 9
  91 F. Supp. 2d 437 (E.D.N.Y. 2014) ...................................................................... 22

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)................................................................. 33, 35

*In re Texaco, Inc. Shareholder Litig.*,
  20 F. Supp. 2d 577 (S.D.N.Y. 1998)...................................................................... 39

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*,
  724 F. Supp. 160, 163 (S.D.N.Y. 1989) ................................................................ 22

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 01695CM, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ............................ 28

*In re Worldcom Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005)..................................................................... 30

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................. 29, 31

*McReynolds v. Richards-Cantave*,
  588 F.3d 790 (2d Cir. 2009) ................................................................................ 38

*Missouri v. Jenkins*,
  491 U.S. 274 (1989)............................................................................................ 33

*Moore v. PaineWebber, Inc.,*
   306 F.3d 1247 (2d Cir. 2002) ........................................................................... 27

*Morris v. Affinity Health Plan, Inc.,*
   859 F. Supp. 2d 611 (S.D.N.Y. 2012)........................................................... 33, 38

*Rodriguez v. It's Just Lunch, Intern.,*
   07 CIV. 9227, 2013 WL 1749590 (S.D.N.Y. Apr. 23, 2013) ............................. 25

*Sanchez v. MTV Networks,*
   2012 WL 2094047 (S.D.N.Y. Jun. 11, 2012) .................................................... 28

*Shapiro v. JPMorgan Chase & Co.,*
   No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ........ passim

*Silberblatt v. Morgan Stanley,*
   524 F. Supp. 2d 425 (S.D.N.Y. 2007)............................................................... 22

*Staton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) ........................................................................... 22

*Stinson v. City of New York,*
   282 F.R.D. 360 (S.D.N.Y. 2012)....................................................................... 29

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
   396 F.3d 96 (2d Cir. 2005) ............................................................................... 34

**Statutes**
28 U.S.C. § 1712 ................................................................................................ 22

## I.   PRELIMINARY STATEMENT

The Court should approve Class Counsel Balestriere Fariello's application for attorney's fees incurred while prosecuting this action over a period of nearly nine years and obtaining the best possible settlement under the circumstances.  Had Class Counsel not obtained the valuable settlement and, instead, the action proceeded to trial, given IJL's dire financial condition Class Members would have received nothing.  It was only due to Magistrate Judge Netburn's significant assistance and Class Counsel's creativity that a settlement was crafted to provide Class Members serious value while allowing IJL to continue to provide a clearly in-demand service.  And, bluntly, it was only due to the credibility of Class Counsel's assertion that it would continue its unwavering devotion of nearly a decade to prosecute the action through to trial and into bankruptcy that a settlement involving any money—funded by IJL's owners—was able to be obtained at all.

The attorney's fees in the amount of $3,583,703.50 represent the lodestar amount based on hourly rates that this Court has already held as reasonable, without any enhancement, and not accounting for the over 500 hours spent on this matter in 2016. (Declaration of John G. Balestriere ("Balestriere Decl.") ¶ 60.)  The Court should also approve the service fees for each of the named plaintiffs, all of whom shared the personal and intimate details of their lives in helping advance this case, all of whom have been fully involved and deposed in the case, and all of whom have been devoted to this class action for far longer than a typical class representative.  Finally, the Court should approve administration costs, taxable expenses, and other reasonable expenses.

Class Counsel's fee request represents 4.9% of the estimated high end value of about $74 million created by the Settlement Agreement (the "Agreement" or the "Settlement," Dkt. No. 257-2, attached to the Balestriere Decl. as Exhibit A).[1]  This amount is equal to the lodestar of legal services provided to the Class in the over one hundred months since initial investigation began, including eight-and-a-half years of active litigation.  Even if, for example, only 10,000 current clients of IJL (out of a class of over 153,000) were to use the voucher—and it's reasonable to believe they would considering their recent membership purchases with IJL—then the vouchers, which would not cost Class members anything and which would not result in more money to IJL, would be worth $4,500,000, and Class Counsel's fee would still be under 40% of the non-injunctive relief value obtained by the efforts of the Firm.  (Balestriere Decl. ¶ 9.)

The proposed fee is reasonable under both lodestar and percentage-of-recovery analyses.  Class Counsel also seeks reimbursement of $51,982.61 in costs and expenses incurred during this matter, a relatively small amount of expenses incurred in a matter which lasted most of a decade, involved dispositive motions, nearly two dozen depositions around the country, and litigation both in the District Court and the Court of Appeals.  In addition, Class Counsel requests approval of service awards to the five Class Representatives in the amount of $10,000 each, for their atypically significant efforts over the years, including in a settlement process that took a half year and involved mediation before Magistrate Judge Sarah Netburn.  Class Counsel respectfully requests that the Court order the attorney's fees, reimbursement of expenses, and

---

[1] All exhibits referenced herein are attached to the Declaration of John G. Balestriere.

service awards (the "Fee") sought in this Motion.

## II.   SOURCE FOR PAYMENT OF FEES AND COSTS

Attorney's fees, expenses, and administrative costs will be paid by Defendants (collectively, "IJL") from the $4,750,000 Monetary Fund created pursuant to paragraph 2.02 of the Agreement.  The total amount sought for attorney's fees, costs, and expenses which Class Counsel initially seeks will not exceed the actual attorney's fees and expenses incurred by Class Counsel (i.e., Class Counsel seeks a so-called "lodestar multiplier" of 1.0 with no benefit for the risk of the litigation or the years Class Counsel has gone without compensation).  However, after all payments have been made pursuant to the Final Approval Order, Class Counsel respectfully seeks the opportunity to seek an order from the Court for further fees from any amounts remaining in the Monetary Fund for services provided since January 1, 2016, in managing the settlement, and to reward Class Counsel for the risk of investigating and litigating the matter for almost a decade.  If Class Counsel had been paid for the more than 500 hours it has devoted to the Class in the first three months of this year, it would have earned fees in the amount of $183,565.00.  (Balestriere Decl. ¶ 61.)

## III.   SUMMARY OF BENEFITS CONFERRED ON THE CLASS BY THE SETTLEMENT

*Significant Value Created by the Settlement Agreement*

The Settlement Agreement creates significant value for Class Members even for future clients of IJL, and justifies the requested Fee.  Given the changes IJL has agreed to make under the Settlement, the vouchers provided to Class Members, and the

payments to New York Class Members, the Settlement has a value of up to approximately $74 million for Class Members.  This is based on an estimated class size of 153,649 with $4.75 million of the Settlement taking the form of a non-reversionary cash fund.  The vouchers provided to Class Members, which are transferable to non-class members, have an estimated value of $69 million, based on the estimated class size and a value per voucher of $450.  All Class Members who do not opt out will receive these vouchers and New York Class Members will additionally each receive $100 payments.

*The Poor Financial Condition of IJL*

Given the poor financial condition of the Company—as disclosed confidentially, supported by documentation, during settlement discussions and mediation—had the Class proceeded to trial, what limited funds the Company had would likely have been devoted to defense of the action.  (Balestriere Decl. ¶ 12.)  Put another way, a trial judgment of any size would represent a Pyrrhic victory, with the Company going under, with Class Members receiving no money and no vouchers, and with IJL laying off its employees, and not recommitting itself to provide quality services as required pursuant to the Settlement Agreement.

*IJL Makes a Commitment to Honor Client Preferences*

The settlement brings about key changes in the way IJL does its business.  The Company will modify its contracts to include a commitment to honor significant client preferences related to age, religion (religious or not, and, if religious, a particular tradition), and parental status when providing matches to its customers.  (Settlement

Agreement, Ex. A ¶ 2.05.)  This is a new, significant commitment, memorialized in the IJL contract and in the website, which provides Class members one of the key components they have told Class Counsel for years they want:  a match of a specific age range, a specific religious status, and parental status.  (Balestriere Decl. ¶ 18.)  These three client characteristics were easily the ones Class members demanded the most and complained about the most when IJL did not provide them as promised.  None of this would have been possible absent Class Counsel litigating this action from early investigation to the verge of trial, and the seriousness Class Counsel showed in pursuing this action through to trial and into bankruptcy court if needed.

The end result is that the Company is making serious corporate changes which benefit Class Members, and so that IJL can survive and continue to provide a service to the public and pay its employees, all while providing a settlement worth tens of millions to the Class.

*Money to the New York Class, Vouchers to the Entire National Class*

Members of the New York Class who do not opt out will receive $100 from the Monetary Fund no later than 60 days following Final Approval, which will be sent automatically to their address of record.  Upon submission of the claims form—the link to which was distributed with the Class Notice described in paragraphs 3.02 through 3.04—each National Class Member who has not opted-out will be entitled to receive one voucher redeemable for one date, or two dates in certain cities, arranged by IJL in the manner of its ordinary services and in compliance with the provisions of this agreement concerning modification of services.  The vouchers may be transferred to any non-Class

Member who joins IJL.  Thus, anyone who is already an IJL member will receive the date without making any further payment to IJL.  IJL is providing a highly valuable service to anyone who has previously signed up for their service, and without IJL making any money from providing this voucher.

<em>The Settlement is the Best Possible Outcome for the Class</em>

The terms in the Settlement Agreement are more favorable to the Class than if Class Counsel had pursued only monetary awards.  The $4.75 million to be paid by IJL would not have been available after a trial given IJL's financial situation.  Even if it were, and the $4.75 million was split up among the 153,649 members of the National Class—and subtracting the anticipated costs of $187,070 for administration and the $204,100 which the New York Class shall receive—Class Members would only receive about $28.37 each.  (Balestriere Decl. ¶ 10.)  Even taking out the administration and New York Class payments results in $30.91 per class member, barely 2% of the most commonly cited cost of $1,500 for the membership for each Class Member.  (Balestriere Decl. ¶ 11.)  Class Counsel obtained the best possible Settlement.  The Court should approve the requested Fee.

## IV.   LITIGATION HISTORY AND EFFORTS OF CLASS COUNSEL.

### A.  Efforts of Class Counsel Prior to the Filing of First Complaint.

The colossal amount of effort Class Counsel devoted to this litigation began months even before the Firm filed the first pleading.  Prior to initiating this action against IJL on October 15, 2007, Class Counsel conducted multiple interviews, including with company insiders, to confirm IJL's suspected fraud, and sought out and obtained

both internal and publicly-available documents detailing IJL's business practices.  Class Counsel's investigation (and of more than simply websites and discussions with a Class member or two) was crucial to the prosecution of this action.

### 1. Class Counsel Conducted a Thorough Investigation, Including Interviews of Company Insiders.

The Firm's investigation of IJL's business practices began in July 2007 after ConsumerAffairs.com posted an article detailing complaints about IJL's business practices.  (Balestriere Decl. ¶ 14.)  Within a month, the Firm had conducted interviews with two IJL employees, gaining insight into IJL's business and confirming that potentially thousands of IJL customers had been systematically defrauded.  (Balestriere Decl. ¶ 15.)  Specifically, these interviews confirmed that IJL staff had little training or relevant experience, and were made to memorize and follow scripts and so-called "control points" regardless of truth.  (Balestriere Decl. ¶ 17.)  Additionally, these interviews revealed that IJL largely ignored what we learned would become the most important client specifications when making matches: a client's preferences regarding a prospective match's age, religion, and parental status.  (Balestriere Decl. ¶ 18.)  Based on these interviews (which were only the start—Class Counsel would ultimately conduct 34 in-person interviews with IJL customers and former employees, and conduct phone interviews with over 300 interested potential class members) and other complaints publicly available online, Class Counsel concluded that IJL had engaged in a scheme to defraud its customers.  (Balestriere Decl. ¶ 25.)

### 2.   Class Counsel Obtained Training Manuals from Insiders, as Well as Documents from the New York Attorney General's Investigation.

In the weeks following the initial investigation, Class Counsel discovered that IJL had been the subject of an investigation by the New York State Attorney General. (Balestriere Decl. ¶ 20.)  The New York State Attorney General concluded that IJL had systematically violated state laws by charging its New York customers over $1,000 for services provided within a one year period, in violation of New York General Business Law § 349 ("G.B.L. § 349").  (Press Release from New York Attorney General, dated July 6, 2007, Dkt. No. 186-1, Ex. B; Balestriere Decl. ¶ 21.)  Class Counsel obtained public files from that investigation, which confirmed reports of IJL's wrongdoing. (Balestriere Decl. ¶ 22.)

In the early stages of its investigation, Class Counsel also obtained IJL training manuals.  (Balestriere Decl. ¶ 23.)  Those manuals confirmed that IJL employees were trained to follow specific scripts and push sales, even reminding employees that purchasing IJL's services was "an emotional impulse sale" and to "[r]un with this momentum."  (Balestriere Decl. ¶ 24; First Date University Manual, Ex. C, 19.)  Based on the information contained in the training manuals, the New York State Attorney General's determination, and the information obtained from former IJL employees, Class Counsel completed and filed the original complaint on October 15, 2007. (Balestriere Decl. ¶ 26.)

### B.  Efforts of Class Counsel from Filing of Original Complaint through Class Certification.

To get from the filing of the Plaintiff's original complaint to Class Certification

required nearly seven years of work by Class Counsel.  IJL's counsel was relentless in its defense and never willing to consider settlement.   During that time, Class Counsel engaged in a lengthy and contentious discovery process, participated in 19 multistate depositions, overcame two motions to dismiss (Dkt. Nos. 33, 59), thrice amended the complaint (Dkt. Nos. 30, 49, 169), litigated a motion and cross-motion for summary judgment (Dkt. Nos. 101, 107), preserved the New York Class by successfully moving for the intervention of Class Representative Brad Berkowitz (Order, Dkt. No. 167), and prevailed on a disputed Notice of Entry allowing Plaintiffs to inspect IJL's Florida Call Center and obtain photographs.  (Order, Dkt. No. 127; Balestriere Decl. ¶ 37.)  This complex and lengthy litigation justifies the requested Fee.

### 1. Class Counsel Participated in 19 Multistate Depositions and a Contentious Years-Long Discovery Process.

Class  Counsel  traveled  to  out-of-state  depositions,  brought  in  class representatives from out of state, submitted four sets of document demands to IJL, served interrogatories on IJL, IJL Palm Beach Franchises, and non-party witness Andrea McGinty (the founder of IJL), and ultimately produced hundreds of pages of documents and interrogatory responses.  (Balestriere Decl. ¶ 35.)  Discovery lasted several years, largely completed by the end of December 2010, with some discovery extending into 2013, as shown in the following brief summary of certain discovery events:

**Select Summary of Discovery Timeline**

| Date | Dkt. No. | Result |
|------|----------|--------|
| 04/14/2008 | 14 | Order setting discovery deadline of 05/30/2008 |
| 05/12/2008 | 17 | Order setting discovery deadline of 07/31/2008 |
| 05/30/2008 | 21 | Order holding all discovery disputes in abeyance |

| Date | Dkt. No. | Result |
|------|----------|--------|
| 07/30/2008 | 29 | Case referred to magistrate judge for management |
| 01/07/2009 | 41 | Order clarifying that discovery should proceed, that only disputes were held in abeyance |
| 02/17/2009 | 42 | Case management plan entered, setting discovery deadline of 08/17/2009 |
| 06/08/2009 | 63 | Order staying discovery pending resolution of Motion to Dismiss |
| 05/11/2010 | 98 | Order setting discovery deadline of 11/10/2010 |
| 10/27/2010 | 127 | Order extending discovery deadline to 12/06/2010 |
| 12/09/2010 | Minute Entry | Order setting 12/27/2010 as deadline for Andrea McGinty's Interrogatory Responses; Ordered deposition of Jennifer Foster; declined to enforce subpoena on attorney for the Class Jon Norinsberg |
| 04/23/2013 | 167 | Order setting deadline of 06/14/2013 for deposition of Brad Berkowitz |
| 07/03/2013 | 182 | Order setting deadline of 07/26/2013 for deposition of Brad Berkowitz |

On January 24, 2008, Plaintiffs made their first required Rule 26(a) disclosures, submitting 234 pages of documents to opposing counsel.  (Balestriere Decl. ¶ 27.)  IJL made its Rule 26(a) disclosures, consisting of 51 pages of documents, on February 4, 2008.  (Balestriere Decl. ¶ 28.)  Approximately one month later, on March 5, 2008, Plaintiffs submitted their first discovery demands to IJL, which included Plaintiff's First Set of Interrogatories and Requests for Admission, First Request for Documents, and Notices of Deposition for a host of IJL executives.  (Balestriere Decl. ¶ 29.)  On April 21, 2008, IJL submitted its first discovery demands to Plaintiffs, following an April 14, 2008, Court order setting May 30, 2008, as the end of discovery deadline.  (Dkt. No. 14.)  On April 21, 2008, IJL also submitted its responses to Plaintiff's Request for Admissions. Those responses became the subject of a dispute between Class Counsel and IJL, as IJL failed to comply with Fed. R. Civ. P. 36(a) and eventually led Class Counsel to seek the

Court's intervention.  (Dkt. No. 18.)  This dispute was held in abeyance when Class Counsel successfully sought the replacement of Einat Packman as class representative. (Dkt. No. 21.)

Further discovery was then delayed until 2010, as the parties litigated two motions to dismiss and Plaintiffs filed their Amended and Second Amended Complaint.  (*See infra* § IV(B)(2).)  Starting on September 17, 2010, the Parties took 19 depositions.  (Balestriere Decl. ¶¶ 30-31.)  Depositions took place across the country—in California, Florida, Georgia, Illinois, Maryland, New Jersey, and New York—and generated approximately 4,521 pages of testimony.  (Balestriere Decl. ¶ 32.)  All Class Representatives were deposed, and representatives Janeen Cameron and James Tortora traveled to New York to appear for their depositions.  (Balestriere Decl. ¶¶ 33-34.)  In addition to this exhaustive deposition schedule, Class Counsel successfully sought a protective order from the Court to defend against a deposition subpoena served on one of Plaintiffs' counsel.  (Dkt. No. 130, granted by Magistrate Judge Fox at a Dec. 9, 2010, telephone conference, see Minute Entry, dated Dec. 9, 2010.)  Discovery required enormous resources and time to complete.

### 2. Class Counsel Litigated Motions to Dismiss and Successfully Amended Plaintiffs' Complaint.

Motion practice regarding the pleadings was substantial.  IJL first moved to dismiss Plaintiffs' Complaint (Dkt. No. 33) following Plaintiffs' amendment to substitute former plaintiff Einat Packman, who suddenly decided not to proceed with the action (Dkt. No. 28) (by itself a testament to the Class Representatives who have

stuck with this case for years).  The motion was fully briefed on October 20, 2008, when IJL filed its Reply Memorandum of Law.  (Dkt. No. 38.)  Four months later, Magistrate Judge Fox submitted a Report and Recommendation (the "First Report and Recommendation") advising that Judge Stein grant IJL's motion with respect to all claims except for Plaintiffs' claim for unjust enrichment.  (Dkt. No. 43.)  Judge Stein adopted the First Report and Recommendation on March 12, 2009, but allowed Plaintiffs to file a second amended complaint on or before April 1, 2009.  (Dkt. No. 48.)

Plaintiffs filed their Second Amended Complaint on April 1, 2009, asserting claims against IJL Corporate, certain of its franchises, and IJL Corporate's private equity investor, the Riverside Company ("Riverside"), which had dominated IJL's operations (and the party whom Class Counsel indicated during settlement Class Counsel would proceed against in bankruptcy post-trial, if needed).  Riverside (who the parties stipulated to dismiss on June 8, 2009, Dkt. Nos. 62, 64) and IJL moved to dismiss the Second Amended Complaint on May 29, 2009, (Dkt. No. 55) and June 2, 2009, (Dkt. No. 59) respectively.

On February 23, 2010, Magistrate Judge Fox issued another Report and Recommendation (the "Second Report and Recommendation"), again largely ruling against the Plaintiffs, advising that IJL's Second Motion to Dismiss be granted as to all claims except for Plaintiffs' G.B.L. § 349 claim and their claim for unjust enrichment.  On March 30, 2010, Judge Stein held that Plaintiffs sufficiently pleaded claims for a violation of G.B.L. § 349, unjust enrichment, and, contrary to the Second Report and Recommendation, a claim for fraudulent inducement.  (Dkt. No. 90.)

**3. Class Counsel Litigated a Motion, Cross-Motion, and Supplemental Cross-Motion for Summary Judgment, and Prevailed on IJL's Motion for Reconsideration.**

Class Counsel also expended significant time in summary judgment proceedings. On May 19, 2010, Class Counsel moved for summary judgment on Plaintiffs' unjust enrichment and G.B.L. § 349 claims. (Dkt. No. 101.) In response, IJL opposed Plaintiffs' Motion for Summary Judgment and cross-moved for partial summary judgment. (Dkt. No. 107.) Class Counsel and IJL both filed multiple briefs regarding summary judgment in the latter half of 2010 (Dkt. Nos. 114, 115, and 123) and, following a January 3, 2011, telephonic conference with the Court (Dkt. No. 134), IJL moved for summary judgment on Plaintiffs' fraudulent inducement claim. On January 26, 2011, IJL filed its Supplemental Cross-Motion for Summary Judgment on Plaintiffs' fraudulent inducement claim. (Dkt. No. 138.) Briefing continued into March (Dkt. Nos. 142, 148). IJL further complicated the briefing by complaining that documents needed to be filed under seal (Dkt. Nos. 139, 146), an application which the Court denied. (Dkt. No. 147.)

On April 6, 2012, Magistrate Judge Fox issued a Report and Recommendation, again largely against Plaintiffs, advising that Plaintiffs' Motion for Summary Judgment be denied and that IJL's Cross-Motion for Summary Judgment be granted with respect to the G.B.L. § 349 and unjust enrichment claims, and denied with respect to Plaintiff's fraudulent inducement claim. (Dkt. No. 156, "Third Report and Recommendation.") Class Counsel filed Plaintiffs' Objections to the Third Report and Recommendation on April 20, 2012 (Dkt. No. 157), and IJL filed its Objections to the Third Report and Recommendation on April 24, 2012 (Dkt. No. 160.)

This Court issued an order on April 23, 2013, denying Plaintiffs' Motion for Summary Judgment. However, contrary to the Third Report and Recommendation and in line with Class Counsel's arguments, the Court also denied IJL's Cross-Motion for Summary Judgment except as it related to Plaintiff Christine Rodriguez ("Rodriguez"), whose claims were time-barred, and who was replaced by Class Representative Brad Berkowitz. (Dkt. No. 167, the "Summary Judgment Order.")

IJL did not let summary judgment briefing end. On April 25, 2013, IJL noticed an appeal of the Summary Judgment Order. (Dkt. No. 168.) IJL also filed a Motion for Reconsideration, challenging the Summary Judgment Order. (Dkt. No. 171.) IJL then moved to dismiss yet again on the grounds that Plaintiffs had failed to amend the caption; the Court denied this application. (Dkt. No. 175.) After the Motion for Reconsideration was fully briefed on May 30, 2013, the Court also denied IJL's application for reconsideration and declined to certify an interlocutory appeal to the Second Circuit. (Dkt. No. 180.)

After nearly three years of litigation regarding or relating to summary judgment, where IJL filed just about every application it could, Class Counsel successfully defeated IJL's Cross-Motion and Supplemental Cross-Motion for Summary Judgment and pushed the action forward to class certification.

### 4. Class Counsel Successfully Moved for Intervention, Preserving the Claims of the New York Class.

In the midst of the summary judgment litigation, Class Counsel also successfully moved for the intervention of Class Representative Brad Berkowitz, thereby preserving

the claims of the New York Class which would have been left without a representative plaintiff following the dismissal of Rodriguez.  On July 30, 2010, Class Counsel filed a Rule 24 Motion to Intervene (Dkt. No. 118, "Berkowitz's Motion to Intervene"), which was fully briefed by September 15, 2010.  (Dkt. No. 123.)  Recommending against Plaintiffs, Magistrate Judge Fox advised that Berkowitz's Motion to Intervene should be denied in the April 6, 2010, Report and Recommendation.  (Dkt. No. 155, the "Fourth Report and Recommendation.")  After Class Counsel filed Plaintiffs' Objections to the Fourth Report and Recommendation, Judge Stein acted contrary to the Fourth Report and Recommendation and granted Berkowitz's Motion to Intervene on April 23, 2013.  (Dkt. No. 167.)  By prevailing on Berkowitz's Motion to Intervene, Class Counsel preserved Plaintiffs' G.B.L. § 349 and unjust enrichment claims, enabling the New York Class to proceed to certification in this action.

### 5. Class Counsel Obtained Class Certification, Litigating Two Motions for Class Certification.

Class Counsel successfully obtained class certification in this action.  Plaintiffs first moved for class certification on December 15, 2009 (the "First Certification Motion").  (Dkt. No. 76.)  The Court stayed the First Certification Motion on December 23, 2009, pending the resolution of IJL's Motion to Dismiss.  (Dkt. No. 59.)  On March 30, 2010, the Court upheld Plaintiffs' claims of fraudulent inducement, unjust enrichment, and violations of G.B.L. § 349.  (Dkt. No. 90.)  In light of that decision, Class Counsel wrote the Court on April 8, 2010, (Dkt. No. 93) requesting the opportunity to amend the First Certification Motion.   The Court subsequently granted Plaintiffs' request for

amendments (Dkt. No. 93), then voided that order (Dkt. No. 96) pending the resolution of a discovery scheduling dispute and new scheduling order (Letter to Court, dated Apr. 30, 2010, and faxed to opposing counsel and the Court on Apr. 29, 2010, Ex. D). The Court eventually directed that all discovery should be completed before moving again for class certification.

On July 18, 2013, following full discovery, full summary judgment litigation, a successful motion to intervene, and over five years, Class Counsel again moved for class certification.  (Dkt. No. 184.)  On May 14, 2014, the Court certified Plaintiffs' national fraud claim, Plaintiffs' G.B.L. § 349 claim, and Plaintiffs' unjust enrichment claim, and appointed Balestriere Fariello as Class Counsel.  (Dkt. No. 199.)  Class Counsel ensured that thousands of IJL customers could adjudicate their claims and obtain the benefits of a resolution in this action.

### C.  Efforts of Class Counsel Following Class Certification.

Class Counsel continued its vigorous advocacy for the Class following Class Certification.  After the Court certified this class action on May 14, 2014, Class Counsel immediately initiated settlement discussions that would last eight months, involved an unsuccessful application by IJL to the Court of Appeals, significant work with the class action administrator, and multiple conferences with the Court regarding settlement.

> **1. Class Counsel Engaged in What Would Become Magistrate Judge-Supervised Settlement Negotiations for Eight Months, and Worked Through Settlement and Notice Concerns with the Court and IJL For Over a Year.**

Following the Court's May 14, 2014, order granting class certification (Dkt. No.

199), Class Counsel approached IJL to begin settlement negotiations and discussed specific details with IJL within a week.  (Balestriere Decl. ¶ 39.)  On May 28, 2014, IJL, which had not yet made a counteroffer in settlement discussions, filed with the Second Circuit a petition to appeal the class certification order.  (Case No. 14-1787, Dkt. No. 1.)  On June 9, 2014, Class Counsel opposed IJL's petition to appeal.  The Court of Appeals denied the petition on July 10, 2014.  (Dkt. No. 214.)

On May 21, 2014, Class Counsel submitted their request to IJL for updated information concerning member joins for the years 2010, 2011, and 2013 (the "May 21 Request"), to ensure the interests of all class members received consideration during settlement.  (Balestriere Decl. ¶ 40.)  Shortly thereafter, Class Counsel also submitted to IJL a draft of the Notice, requesting comments as the joint Notice was due to the Court by June 4, 2014.  (Balestriere Decl. ¶ 42.)  IJL requested an extension to file this Notice on June 3, 2014 (Dkt. No. 200) and, after discussions concerning content, on June 10, 2014, the parties submitted the Notice to the Court for approval and filed a plan for the distribution of the Notice (the "Notice Plan") on August 12, 2014.   (Dkt. No. 221.)  Following a hearing on August 13, 2014, Class Counsel submitted a revised Notice and Notice Plan to the Court on August 22, 2014 (Dkt. No. 223), and the Court approved both on August 22, 2014.  (Dkt. No. 224.)

On June 13, 2014, IJL responded to the May 21 Request, providing information on member joins crucial to continuing settlement discussions.  (Balestriere Decl. ¶ 43.)  On June 20, 2014, IJL consented to Class Counsel's suggestion to continue settlement discussions before a magistrate judge and in anticipation of continued settlement

discussions, on July 3, 2014, Class Counsel requested updated financial information from IJL.  (Balestriere Decl. ¶ 44.)  After prompting by Class Counsel on July 31, 2014, (Letter from Class Counsel to IJL, dated July 31, 2014, Ex. E), IJL subsequently provided refined join numbers on August 11, 2014, and August 12, 2014.  (Balestriere Decl. ¶ 45.)  Class Counsel followed up on this request at least three more times, requesting a response from IJL on July 14, July 23, and July 31.  (Balestriere Decl. ¶ 46.)

Receiving the requested financial information on August 22, 2014, once Class Counsel reviewed this documents, it became clear that IJL could not sustain a monetary judgment anywhere near in line with the Class's potential damages.  (Balestriere Decl. ¶ 47.)  Such realization prompted Class Counsel to seek alternative means of relief for the Class, which ultimately resulted in the valuable combination of vouchers, injunctive relief, and monetary compensation provided for in the Settlement Agreement.  On July 9, 2014, Class Counsel filed a request for referral to a magistrate judge for mediation (Dkt. No. 211), which this Court approved on July 11, 2014 (Dkt. No. 212).

IJL and Class Counsel—joined in-person by Class Representatives Brad Berkowitz and Lisa Bruno, and, telephonically, by Class Representatives Janeen Cameron, Karen Malak-Rocush, and James Tortora—appeared before Magistrate Judge Netburn on September 15, 2014, for full day settlement discussions.  (Balestriere Decl. ¶ 48; Affidavit of Lisa Bruno, dated Jan. 6, 2016, Ex. F; Affidavit of Brad Berkowitz, dated Jan. 6, 2016, Ex. G.)  At that time, though Class Counsel and IJL had corresponded multiple times concerning settlement, IJL had yet to provide any specifics about the kind of settlement it might consider.  During the settlement discussions, Class Counsel

made plain that if the parties could not achieve a settlement, Class Counsel would continue what was by then its over seven-and-a-half years of advocacy and proceed into trial and, if need be, bankruptcy until final resolution of the dispute.  (Balestriere Decl. ¶ 49.)  After day-long negotiations before Judge Netburn, IJL and Class Counsel had reached a tentative settlement and framework for continuing discussions. (Balestriere Decl. ¶ 50.)  On October 2, 2014, after IJL had had time to consult with its management entity, without which payment of the Monetary Fund would have been impossible, and their insurance providers, the parties settled this action in principle. (Balestriere Decl. ¶ 51.)  Over the next two months, Class Counsel and IJL negotiated the details of the Settlement, exchanging approximately 55 emails and at least ten phone calls.  (Balestriere Decl. ¶ 52.)

Class Counsel has continued to communicate extensively with Class Members following preliminary approval (Balestriere Decl. ¶ 72), for which Class Counsel moved the Court after three Court-conferences where Parties discussed details of the Settlement and the Notices with Judge Stein.  (Balestriere Decl. ¶ 53.)  Since the Notices of Settlement were sent to Class Members on February 25, 2016, Class Counsel attorneys and staff have spent hours each day corresponding with Class Members via email and telephone calls.  (Balestriere Decl. ¶ 73.)  Between February 25 and the filing of this Motion, Class Counsel has exchanged approximately 115 emails and over 470 phone calls with Class Members—an average of over 21 calls every single work day in this five week period—after receiving more than 120 voicemails seeking assistance and explanation of various terms.  (Balestriere Decl. ¶ 74.)  The topics of these conversations

between Class Counsel and Class Members have ranged from the terms of the Settlement Agreement, the upcoming timeline of the action and when Class Members will receive vouchers, how the Parties reached the Settlement, individual rights as a Class Member and how the Settlement may personally affect that Class Member, and even technical help regarding how to submit the claim form to redeem the voucher. (Balestriere Decl. ¶ 75.)

  **2. Class Counsel Worked with the Claims Administrator to Create the Notice Plan.**

  Class Counsel first corresponded with the Heffler Claims Group ("Heffler"), a class action administration company with over 45 years of experience (Page from Heffler Claims Group Website, accessed Mar. 24, 2016, Ex. H), on May 18, 2014, anticipating the necessity of administration services.  (Balestriere Decl. ¶ 54.)  Since that time, Class Counsel has exchanged nearly 450 emails with Heffler, held numerous phone conferences and had two in-person meetings to develop a plan for the notice of certification, settlement, and the distribution of benefits to the Class.  (Balestriere Decl. ¶ 55.)  On August 12, 2014, and August 22, 2014, Class Counsel submitted a Notice Plan to the Court, detailing an email and mail campaign, and the creation of a website, email, and toll-free telephone system to facilitate class member communication.  (Dkt. Nos. 221, 223.)  The anticipated cost of Heffler's services is $187,070, and Heffler will be paid through the Monetary Fund.  (Balestriere Decl. ¶ 56.)  These systems will be used to administer the Settlement and provide benefits to the Class.

  Class Counsel continued to expend significant effort prosecuting this action and

obtaining the best possible settlement for the Class.   The requested Fee should be approved.

## V.   CLASS COUNSEL'S REQUESTED FEE IS REASONABLE AND SHOULD BE APPROVED.

### A. Legal Standard.

Class Counsel requests a reasonable fee based on the results obtained for the Class and the length and complexity of the litigation.   In *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d. Cir. 2000), the Court of Appeals held, "[W]here an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury . . . the attorneys whose efforts created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund."   *Id*. at 47 (citations omitted).   "[W]e hold that both the lodestar and the percentage of the fund methods are available to district judges in calculating attorney's fees in common fund cases."   *Id*. at 50.   Whether a court chooses to use the lodestar method or the percentage-of-recovery method, the court in *Goldberger* recommends assessing the fee under the other method as a "cross check."   *See id*. ("[T]he lodestar remains useful as a baseline even if the percentage method is eventually chosen.   Indeed, we encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage.").   The court also stated:

> Of course, no matter which method is chosen, district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."

*Goldberger*, 209 F.3d at 50 (quoting *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)).   Under any applicable standard, Class Counsel deserves the Fee it seeks here.

**B.  Because It Is Difficult to Value the Significant Injunctive Relief Obtained as Part of the Settlement, the Court Should Follow the Lodestar Method in Approving Class Counsel's Attorney's Fees.**

Class Counsel has earned substantial injunctive relief—essentially solving the key problem Class members complained of and making a better company for the future—but it is difficult to attribute a specific value to such meaningful relief which by itself warrants Class Counsel receiving their lodestar fees.   Because "the value of injunctive relief is difficult to quantify, its value is also easily manipulable."  *In re Excess Value Ins. Coverage Litig.*, 598 F. Supp. 2d 380, 387 (S.D.N.Y. 2005) (quoting *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) (awarding class counsel fees in the "upper end (30%) of the Settlement Value commonly awarded under the percentage method" in an attempt to approximate value of structural changes in a settlement)); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 442 n.4 (E.D.N.Y. 2014) (quoting same) (choosing not to rely on value of injunctive in a "strict mathematical sense" but rather using the purported value as a "relevant circumstance" in determining fees).   The Class Action Fairness Act of 2005 "permits the use of 'a lodestar *with a multiplier method*' in awarding fees where injunctive relief is obtained." *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 432 (S.D.N.Y. 2007) (quoting 28 U.S.C. § 1712(b)(2) and (c)) (denying use of lodestar because no injunctive relief was sought) (emphasis added).   The Supreme Court has determined that in situations regarding

injunctive relief, a lodestar model is better suited than a contingent fee model since it is difficult to value injunctive relief. *City of Burlington v. Dague*, 505 U.S. 557, 566 (1992) ("[t]here would be, to be sure, severe problems of administration in determining the value of injunctive relief, but such problems simply highlight why we have rejected the contingent-fee model in favor of the lodestar model"). The lodestar approach is an accepted method of fee calculation in the Second Circuit. *Goldberger,* 209 F.3d at 50 ("[w]e choose to follow our own precedents, which clearly establish that the lodestar approach is an accepted but not exclusive methodology in common fund cases"). Even if the Firm only provided the substantial injunctive relief it earned here after nearly a decade of work—without consideration of the monetary payments to the New York Class, without consideration of the vouchers which have a potential value in the tens of millions, without consideration of the hundreds of hours devoted to addressing Class Members' questions and concerns, and without the atypical investigation that Class Counsel conducted both before and after filing the first pleading—the Firm would deserve at least its so-called lodestar fees.

### C.  The *Goldberger* Factors All Support Class Counsel's Fee Request.

The six *Goldberger* factors favor approval of Class Counsel's fee application. Class Counsel prosecuted this action for eight and a half years after an initial months-long investigation. The litigation was complex and Class Counsel undertook significant risk in prosecuting this action. Class Counsel has obtained excellent results for the Class, its requested fee is reasonable in relation to the settlement, public policy favors approval of its requested fee, and its requested fee is reasonable under both lodestar

and percentage of recovery analyses.  Class Counsel's fee application should be approved.

### 1.  The Time and Labor Expended by Class Counsel.

Class Counsel's work to date has been exhaustive.  Since 2007, Class Counsel has reviewed and analyzed document productions by IJL totaling several thousand pages; maintained a growing database of over 200 IJL customers potentially affected by this litigation (who still seek counsel and direction from Class Counsel every single week); conducted an in-depth investigation of the corporate structure of IJL, including promulgating discovery demands on IJL's majority investors; litigated the action to the verge of trial; and, after nearly eight months of negotiations, successfully arrived at a settlement.  (Balestriere Decl. ¶ 59.)

Class Counsel is in regular communication with over 200 current and former IJL customers.  (Balestriere Decl. ¶ 67; Affidavit of Lisa Bruno, dated Jan. 6, 2016, Ex. F; Affidavit of Brad Berkowitz, dated Jan. 6, 2016, Ex. G; Affidavit of Melissa McGurk, dated Mar. 18, 2016, Ex. I; Affidavit of Sema Tekinay, dated Mar. 21, 2016, Ex. J; Affidavit of Tatyana Shchiglik, dated Mar. 21, 2016, Ex. K; Affidavit of Barbara Rose Aglietti, dated Mar. 22, 2016, Ex. L.)  These customers contacted Class Counsel after learning about the class action through the press, from friends and family, or from other sources.  (Balestriere Decl. ¶ 68.)  Class Counsel conducts a basic intake when contacted by such customers, gathering contact information, information about their experiences with IJL, and answering any questions concerning the status of the class action or its claims.  (Balestriere Decl. ¶ 69.)   At their request, Class Counsel then adds these

individuals to an electronic mailing list, which is used to provide regular updates to potential class members.  (Balestriere Decl. ¶ 70.)

Class Counsel's dedication to this action weighs heavily in favor of approval of its reasonable requested fee.

### 2.   The Magnitude and Complexities of the Litigation.

The magnitude and complexities of this case support awarding Class Counsel's requested fee.  *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) (finding this factor supported $18 million fee request where class counsel had to "research[ ] and evaluate[ ] novel and complex claims and areas of law").  This lengthy litigation was complex, involving interviews with former employees and customers, out-of-state depositions, and a nation-wide fraud.

Class Counsel also faced complex legal issues.  For example, in 2010 it became necessary for Class Representative Brad Berkowitz to intervene as a named plaintiff. IJL raised a timeliness defense to Berkowitz's intervention, arguing, in part, that no named plaintiff ever had a live claim.  IJL's timeliness defense was only defeated after Class Counsel argued for the application of *American Pipe* tolling, a factor initially discounted in the Report and Recommendation made by Magistrate Judge Fox. *Rodriguez v. It's Just Lunch, Intern.*, 07 CIV. 9227, 2013 WL 1749590, at *3 (S.D.N.Y. Apr. 23, 2013), *appeal withdrawn* (July 11, 2013) ("This miscalculation stems from Judge Fox's reluctance to consider the effect of so-called *American Pipe* tolling.") (citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974)).

Class Counsel also had to defend against two motions to dismiss (Dkt. Nos. 33, 59), prosecute both New York specific and national claims, locate defendants in multiple states in order to affect service of process, conduct an extensive investigation into IJL's business practices, and litigate summary judgment proceedings that lasted from May 19, 2010, until May 30, 2013 (Dkt. Nos. 101, 107). The complexities and magnitude of this action weigh in favor of approval of the requested fee.

### 3. The Risk of Litigation.

Class Counsel commenced this action despite significant risks. The risk of litigation is generally given great weight in evaluating the reasonableness of a fee award. *Goldberger*, 209 F.3d at 54 ("We have historically labeled the risk of success as 'perhaps the foremost' factor to be considered in determining whether to award an enhancement.") (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 235 (2d Cir. 1987)). The risk incurred by Class Counsel weighs heavily in favor of approval of the Fee.

### a. Risks of Establishing Liability.

Class Counsel undertook this action aware of the difficulty of establishing liability. Class action lawsuits are inherently complex and especially risky. *Shapiro*, 2014 WL 1224666, at *21 ("It is well settled that class actions are notoriously complex and difficult to litigate."). After litigating two motions to dismiss, a motion, cross-motion, and supplemental cross-motion for summary judgment, and achieving certification of the Class on May 14, 2014, Class Counsel still cannot be certain of establishing liability on Plaintiffs' claims. IJL continues to vigorously dispute liability —

as they have done for the past eight-and-a-half years—and Plaintiffs admittedly face risk by bringing a fraud claim on a class-wide basis.  Reliance, a necessary element of fraud, is inherently difficult to prove, and especially difficult in the class action context. *Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002) (noting that the element of reliance on misrepresentations can be difficult to prove in class actions); *see also Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 435 (4th Cir. 2003) ("the reliance element of . . . fraud and negligent misrepresentation claims [is] not readily susceptible to class-wide proof . . . .") (internal quotation marks and citation omitted).  The risks that Class Counsel willingly accepted weigh in favor of approval of the requested fee.

### b.  Risks to Counsel.

Class Counsel took significant risks by prosecuting this years-long class action. Class Counsel undertook this matter on a contingent basis.  Class Members were not asked to pay Class Counsel's attorney's fees or others costs, unlike counsel for IJL, who were compensated throughout the litigation.  And Class Counsel is not an established class action firm, but, instead, was barely more than two years old when this dispute began, with only three staff members at the time.  (Balestriere Decl. ¶ 4.)  Class Counsel has received no compensation or reimbursement of costs whatsoever for the last nearly nine years of this litigation, and success was never guaranteed.  Both the litigation risks and the financial risks assumed by Class Counsel were enormous.  As this Court observed, "[t]here are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever . . . ."  *In re Flag Telecom Holdings, Ltd. Securities Litigation*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *27 (S.D.N.Y.

Nov. 8, 2010) (quoting *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695CM, 2007 WL 4115808, at *6 (S.D.N.Y. Nov. 7, 2007)).  The simple age of this matter shows how risky of a litigation it has been.

Class Counsel's litigation risk is measured at the time the case is filed. *Goldberger*, 209 F.3d at 55 ("It is well-established that litigation risk must be measured as of when the case is filed.); *DiFilippo v. Morizio*, 759 F.2d. 231, 234 (2d. Cir. 1985) ("[T]he analysis [of counsel's risk] should not have been based upon the hindsight afforded by the actual results in the case.  Rather, it should have been an *ex ante* determination of whether the chance of a substantial judgment was sufficiently great when the case was brought . . . .").  In initiating this action, Class Counsel—again, in late 2007 a firm with only three staff members—knew it might never receive compensation for its work and understood the risks of bringing a fraud claim on a class-wide basis against a non-major company.  Class Counsel risked never getting beyond the class certification stage and proceeded anyway.  Class Counsel's reasonable fee application should be approved.

### 4.  The Quality of Representation.

Class Counsel has extensive experience representing clients in complex litigation, and is highly reputable and skilled.  One of the two primary senior lawyers on the matter, John Balestriere, "is an experienced litigator who would generally command a high billing rate." *Sanchez v. MTV Networks*, 2012 WL 2094047, at *3 (S.D.N.Y. June 11, 2012) *aff'd,* 525 F. App'x 4 (2d Cir. 2013).  The other primary senior lawyer, Jon L. Norinsberg, is an experienced litigation attorney as Judge Robert W. Sweet recently noted in approving him as co-lead class counsel. *Stinson v. City of New York*, 282 F.R.D.

360, 371 (S.D.N.Y. 2012) (Norinsberg is "competent and experienced in federal class action and federal civil rights litigation.").

However, the quality of legal representation is best measured by the result obtained, *Goldberger*, 209 F.3d at 55; *In re Citigroup Inc. Bond Litig.*, No. 08 Civ. 9522 (SHS), 2013 WL 6697822, at *8 (S.D.N.Y. Dec. 19, 2013), and Class Counsel achieved the best settlement possible, securing an amount greater than what could have been obtained at trial.   Additionally, the settlement Class Counsel negotiated ensures that Class Members will receive relatively quick relief after enduring years of litigation, which also attests to the quality of Class Counsel's representation, as an "indication of the quality of the result achieved is the fact that the Settlement will provide compensation to the [victims] expeditiously." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004).   Both the result achieved and the Class Counsel's extensive experience in complex civil litigation show that Classes received a superb quality of representation over the past nine years in this case.

The quality of opposing counsel is also an important factor for the Court to consider when evaluating the quality of Class Counsel. *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002).   In this matter, opposing counsel, partners Peter Shapiro and Bari Klein and their colleagues, were from the prominent firm Lewis Brisbois Bisgaard & Smith LLP.   Lewis Brisbois, established in 1979, has over 900 attorneys at 40 offices in 26 states.   (Pages from Lewis Brisbois Website, Ex. M.)   It is without doubt that Class Counsel is both experienced and reputable, and achieved an outstanding settlement considering the high quality and extensive resources of IJL's

counsel.  Class Counsel's Fee should be approved.

### 5.  The Requested Fee in Relation to the Settlement.

Class Counsel requests a reasonable fee in relation to the total value created by the Settlement Agreement.  The requested fee of approximately $3.6 million is about 5% of the value created by the Settlement and at the lower end of the range typically awarded for recoveries of this size.  *See, e.g., Shapiro*, 2014 WL 1224666, at *19 ("[A] review of district court decisions in this Circuit applying the *Goldberger* factors place a reasonable percentage-of-the-fund range between 10% and 30%."); *see also In re Bisys Sec. Litig.*, No. 04-CIV-3840 JSR, 2007 WL 2049726, at *2-3 (S.D.N.Y. July 16, 2007) (30% of $65.87 million settlement).  Even if, for example, only 10,000 current clients of IJL were to use the voucher, then the vouchers would be worth $4,500,000 and Class Counsel's fee would still be under 40% of the non-injunctive relief value obtained by the efforts of the Firm.  (Balestriere Decl. ¶ 9.)  Class Counsel's requested Fee is reasonable.

### 6.  Public Policy Considerations.

Public policy considerations weigh in favor of Class Counsel's requested Fee. The Second Circuit has repeatedly recognized that private attorneys should be encouraged to undertake the risks required to represent those who would otherwise be unprotected.  *See Goldberger*, 209 F.3d at 51 ("There is also commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest."); *In re Worldcom Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is

necessary to provide appropriate financial incentives."). "Private attorneys should be encouraged to take the risks required to represent those who would not otherwise be protected from socially undesirable activities . . . ." *Maley*, 186 F. Supp. 2d. at 374. This Court's decision will send a message to class action plaintiff and defense counsel. If the Court grants the fee application, class action lawyers will be encouraged to stick with a tough case, or one with a defendant who fights at every turn and never is willing to settle, for years knowing that if they achieve a good result they will be rewarded for it. If the Court denies or reduces the application for Class Counsel's fee—which, again, is the multiplier-less lodestar of the Firm's fees over a nine-year period—it will disincentive other plaintiffs' counsel against going the distance. Instead, it will encourage other counsel to settle early and obtain less relief for their class, rather than incur greater risks in search for a better recovery.

Additionally, Class Counsel has achieved a settlement that benefits the public at large. *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 487 (S.D.N.Y. 1998). ("Certain factors are particularly relevant in in evaluating attorney's fee awards: (1) the amount of work done; (2) the risk incurred; (3) the difficulty or complexity of the case; (4) the benefit to the class, and (5) *the benefit to the public*.") (emphasis added). The Settlement Agreement reforms the practices of a company offering an in-demand service by forcing it to guarantee that it will honor clients' preferences both publicly and in its contracts, avoids forcing IJL into bankruptcy and endangering the livelihood of its employees, and provides valuable relief to the Class. Class Counsel deserves compensation for its efforts.

### D. The Fee Is Reasonable Under Both the Lodestar and Percentage-Of-Recovery Methods.

#### 1. The Lodestar Method: the Hourly Rates and Fees Were Reasonable in This Nearly Nine-Year Old Action.

Class Counsel's Fee is reasonable under both the lodestar and percentage-of-recovery methods.   Under the lodestar method, "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Goldberger*, 209 F.3d at 47.   "Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." *Id*.   The time and labor expended by Class Counsel entitles it to the requested fee.   Class Counsel has been diligently pursuing this litigation since 2007.   Class Counsel spent thousands of hours developing Plaintiffs' and the Class' case against IJL.   During this time, Class Counsel lawyers and staff have devoted roughly 7,500 hours on this matter over a period of 102 months through December 31, 2015, and over 500 more hours in 2016.   (Balestriere Decl. ¶ 60.)   The hours spent by Class Counsel on this litigation were calculated from daily time records consistently and contemporaneously maintained by Class Counsel lawyers and staff throughout the entirety of this litigation.   (Affidavit of Marc Natale, dated Mar. 24, 2016, Ex. N; Balestriere Decl. ¶ 62.)   All time spent on this litigation was necessary and was not duplicative.   (Balestriere Decl. ¶ 64.)   The lodestar was calculated by multiplying Class Counsel's hours by their current hourly rates, except that of John Balestriere, whose rate was calculated at his prior rate of $690 per hour as such rate has

been approved by another Southern District Judge.  (Balestriere Decl. ¶ 65.)

The use of current as opposed to historical rates compensates for inflation, delay in payment, and lost use of funds.  *Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589 n.10 (S.D.N.Y. 2008).  In addition, counsel's rates reflect the competitive market rates for national cases involving complex litigation as well as the reputation, experience, and success of the lawyers and firms involved.  *Cf. Telik*, 576 F. Supp. 2d at 589 ("The current hourly rates of the partners litigating this action on behalf of the Class, who performed the vast majority of the partner-level work on this matter, range from $700 to $750.  Those rates fall within the norm of the rates charged by those attorney's common adversaries in the defense bar.") (citation omitted).

Class Counsel's lodestar is reasonable.  Indeed, a fee greater than the lodestar would also be reasonable.  Courts routinely award large fees when attorneys have invested a substantial amount of time and effort on a wholly contingent basis, thereby assuming considerable risk.  *See Shapiro*, 2014 WL 1224666, at *24.  In such cases, "[c]ourts regularly award lodestar multipliers from 2 to 6 times lodestar."  *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012).  Some courts have awarded multipliers as high as 8 or even more.  *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013).  "Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District."  *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *17 n.7 (S.D.N.Y. July 27, 2007).  Nevertheless, Class Counsel does not seek a lodestar increase before all aspects of the Settlement have been

executed. The lodestar method adequately demonstrates the reasonableness Class Counsel's requested Fee.

> ### 2. The Percentage-of-Recovery Method: the Fee Request Is Reasonable Based on the Up to $69 Million Voucher Settlement and the $4.75 Million Cash Recovery.

The percentage-of-recovery approach confirms that Class Counsel's Fee is reasonable. Under the percentage method, "The court sets some percentage of the recovery as a fee. In determining what percentage to award, courts have looked to the same 'less objective' factors that are used to determine the multiplier for the lodestar." *Goldberger*, 209 F.3d at 47 (citation omitted). "The trend in [the Second] Circuit is toward the percentage method, which 'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (citation omitted).

Even 15%—more than double Class Counsel's Fee—is at the lower end of the range typically awarded for non-"megafund" settlements. In *Board of Trustees v. JPMorgan Chase Bank, N.A.*, No. 09 Civ. 686 (SAS), 2012 WL 2064907 (S.D.N.Y. June 7, 2012), the court awarded a 25-percent fee, stating that "[t]his fee is well within the standard range for fee awards given under *Goldberger*." *Id*. at *2; *see also Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007) (affirming award of 30 percent); *Shapiro*, 2014 WL 1224666, at *19 ("[A] review of district court decisions in this Circuit applying the *Goldberger* factors place a reasonable percentage-of-the fund range between 10% and

30%."); *Telik*, 576 F. Supp. 2d at 578 n.8 (awarding a 25-percent fee, stating that it was "well within the range of fees approved by courts in this Circuit and elsewhere, under the percentage and the lodestar/multiplier approaches," and collecting multiple decisions awarding fees of 30 percent or higher). Class Counsel's requested Fee is reasonable pursuant to the percentage-of-recovery method.

## VI.   CLASS COUNSEL'S EXPENSE REIMBURSEMENT REQUEST SHOULD ALSO BE APPROVED AS REASONABLE.

Class Counsel requests a reasonable reimbursement of $27,231.28 in taxable expenses and $24,751.33 in other reasonable expenses, totaling $51,982.61in expenses in addition to the award of attorney's fees.   (Balestriere Decl. ¶ 78.)   These expenses include deposition expenses, travel expenses, and costs for service of process.   "Courts typically allow counsel to recover their reasonable out-of-pocket expenses."   *Beckman*, 293 F.R.D. at 482.  The expenses advanced by counsel were reasonable and necessary to the litigation and should be reimbursed.  *See, e.g., In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012) (approving "sizable" cost reimbursement request where "Class Counsel have submitted declarations itemizing the incurred expenses, and all of the identified categories are of the type for which reimbursement is generally granted").  "Expenses incurred in litigating this case include such standard items as computer research fees, copying costs, postage, court fees, travel expenses, and professional fees paid to counsels' damages expert and accountant."  *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 144 (S.D.N.Y. 2008) (granting class counsel reimbursement in full out of the settlement fund); *see also*

*In re Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred—which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review—are the type for which 'the paying, arms' length market' reimburses attorneys.  For this reason, they are properly chargeable to the Settlement fund").

The taxable expenditures made by Class Counsel during the prosecution of this action are as follows:

| Date | Description | Cost |
|---|---|---|
| 10/11/2007 | U.S. Document Retrieval Service, Inc., Inv. No. 87685 | $87.46 |
| 10/15/2007 | Filing fee for Complaint | $350.00 |
| 09/09/2008 | N&H Invoice 26747: service on IJL, Inc. 2008-08-15, service on Harry and Sally 2008-08-15, service on IJL Intl. 2008-08-13, handling charges 2008-08-12. | $294.48 |
| 08/04/2009 | MFI Investigation Service Fee for Service of SAC, Inv. No. 3801 | $1,050.00 |
| 09/30/2010 – 10/01/2010 | Court Reporter for depositions of Angel Velasquez & Michele LePage & Julie Novotny | $2,935.85 |
| 09/30/2010 | Travel expenses for depositions of Angel Velasquez & Michele LePage & Julie Novotny | $588.94 |
| 10/05/2010 – 10/08/2010 | Court Reporter for depositions of Melissa Brown and Irene LaCota | $3,614.50 |
| 10/05/2010 – 10/08/2010 | Travel expenses for depositions of Melissa Brown and Irene LaCota | $2,860.99 |
| 10/08/2010 | Transcript for Janeen Cameron deposition | $563.90 |
| 10/11/2010 | Court Reporter for Dep of Nancy Epstein; Todd Olivas Reporting, Inv. No. 9760 | $1,566.50 |
| 10/27/2010 | Meridian Investigations: service of subpoenas and database searches | $1,749.60 |
| 10/29/2010 | Transcript for deposition of Jennifer Pannucci | $1,467.00 |
| 11/02/2010 | Transcript for deposition of Jill Vandor | $1,347.50 |
| 11/03/2010 | Transcript for deposition of Robert Vandor | $1,287.20 |
| 11/04/2010 | MFI Invoice for service of Riverside & Jones Day | $190.00 |
| 11/18/2010 | Transcript for deposition of Cami Craig | $801.31 |

| Date | Description | Cost |
|---|---|---|
| 12/02/2010 | Deposition of PJ Osgood; Todd Olivas Reporting, Inv. No. 9955 | $2,539.25 |
| 12/14/2010 | Deposition of Jennifer Foster; Todd Olivas Reporting, Inv. No. 10003 | $1,394.50 |
| 12/16/2010 | Deposition of Daniel Dolan; Todd Olivas Reporting, Inv. No. 10037 | $2,542.30 |
| **TOTAL** | | **$27,231.28** |

Other reasonable and necessary expenses are the following ones, broken into appropriate categories:

| Breakdown by Description | Total |
|---|---|
| Fees | $5.79 |
| Meals | $10,086.25 |
| PACER/Legal Research | $6,966.91 |
| Printing and Postage | $1,074.44 |
| Process Server | $539.68 |
| Telephone Charges | $48.42 |
| Transportation | $1,018.43 |
| Travel and Lodging | $5,011.41 |
| **TOTAL** | **$24,751.33** |

The requested total expense reimbursement is only about $509 per month over 102 months, a small amount given the number of depositions and necessary travel arrangements made for Class Counsel staff, class representatives, and class witnesses. Class Counsel's expense request should be approved.

## VII. THE REQUESTED SERVICE AWARDS FOR CLASS REPRESENTATIVES ARE REASONABLE UNDER THE CIRCUMSTANCES AND SHOULD BE APPROVED.

Class Counsel requests reasonable service awards for class representatives who

have been involved in this action for years longer than typical class representatives. "Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Beckman*, 293 F.R.D. at 483.  Here, Class Representatives provided Class Counsel with the information necessary to pursue a class action lawsuit and willingly made public details of their personal dating lives.  The class representatives knowingly disclosed that they had paid for dating assistance, an intimate detail that few people would willingly risk making a matter of public discourse (indeed, as noted, the initial plaintiff dropped out of the lawsuit rather than continue to prosecute it as a class representative).  Additionally, all Class Representatives have devoted a significant amount of time to the litigation, and over a period of at least seven years for each Class Representative.  Class Counsel corresponded at least monthly with all Class Representatives, emailing them hundreds of times, and having multiple in office meetings as well as conference calls and individual calls.

Under these circumstances, and especially in comparison to awards typically approved in other cases, the service awards of $10,000 are modest and should be approved.  *See, e.g.*, *McReynolds v. Richards-Cantave*, 588 F.3d 790, 796 (2d Cir. 2009) (affirming settlement under which three named plaintiffs received $15,000 and four received $10,000 while only injunctive relief and no damages were granted to the remainder of class members); *Beckman*, 293 F.R.D. at 483 (approving $7,500 and $5,000 service awards); *Morris*, 859 F. Supp. 2d at 624 (approving $7,500 service award).

All of the class representatives have devoted significant time to the prosecution of this action.  Tortora and Cameron flew into New York for depositions.  (Balestriere Decl. ¶ 34.)  Lisa Bruno and Brad Berkowitz appeared in-person for the all-day settlement negotiation mediated by Judge Netburn.  (Balestriere Decl. ¶ 48.)  James Tortora, Janeen Cameron, and Karen Malak-Rocush appeared by phone.  (Balestriere Decl. ¶ 48.)  Notably, Berkowitz's involvement was crucial to this action.  Berkowitz intervened after Rodriguez was dismissed from the action, thereby preserving the New York Class.  The requested service fees are reasonable and should be approved.

## VIII.   THE COURT SHOULD ALSO APPROVE PAYMENT OF ADMINISTRATIVE COSTS AND OTHER REASONABLY NECESSARY EXPENDITURES.

Class Counsel also requests the Court's approval for payment of administrative costs and other reasonably necessary expenditures.  The costs of administering the Settlement will be paid to Heffler from the Monetary Fund, and the final cost is anticipated to be $187,070 and will be determined when all benefits have been distributed.  (Balestriere Decl. ¶¶ 56-57.)  The Monetary Fund is expected easily to be sufficient to cover the costs of administration.  These items are reasonably necessary costs of suit or settlement and should be approved for payment from the Monetary Fund.  *In re Texaco, Inc. Shareholder Litig.*, 20 F. Supp. 2d 577, 583 (S.D.N.Y. 1998) ("Pursuant to this settlement, a common fund of $115 million was created to pay the monetary claims of all individual class members in the Roberts Action, in addition to the costs of suit, including attorney's fees and the costs of administering the plan of allocation . . . .")  The requested costs are, indeed, quite low for an action spanning over

eight-and-a-half years, and represent common and necessary litigation expenses.  Class Counsel's request for payment of expenditures and administrative costs should be approved.

## IX.   CONCLUSION

The Court should award Class Counsel $3,583,703.50 in attorney's fees and $51,982.61 for reimbursement of expenses incurred throughout the duration of this matter.  This Court should also approve service awards in the amount of $10,000 to each class representative, for a total of $50,000.  Lastly, the Court should approve payment of the remainder of the Monetary Fund in (i) payments to third parties for claims administration, mediation, bank, and accounting services in connection with the original and revised settlements and (ii) reserves for the claims dispute resolution process.  Class Counsel's fee application should be approved.

Dated:  March 28, 2016                         Respectfully submitted,
       New York, New York

                                     _____

                                     John Balestriere
                                     Jon Norinsberg
                                     Stefan Savic
                                     **BALESTRIERE FARIELLO**
                                     225 Broadway, 29th Floor
                                     New York, New York 10007
                                     Telephone:   (212) 374-5401
                                     Facsimile:    (212) 208-2613
                                     john.balestriere@balestrierefariello.com
                                     jon.norinsberg@balestrierefariello.com
                                     stefan.savic@balestrierefariello.com
                                     *Attorneys for Plaintiffs and the Classes*