# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CHRISTINE RODRIGUEZ, SANDRA BURGA, KAREN MALAK, JAMES TORTORA, LISA BRUNO, JANEEN CAMERON, KAREN McBRIDE, ANDREW WOOLF,** and **BRAD BERKOWITZ,** individually, and for all others similarly situated,<br><br>     Plaintiffs,<br><br>  -against-<br><br>**IT'S JUST LUNCH INTERNATIONAL, IT'S JUST LUNCH, INC., HARRY and SALLY, INC, RIVERSIDE COMPANY, LOREN SCHLACHET, IJL NEW YORK CITY FRANCHISE, IJL ORANGE COUNTY FRANCHISE, IJL CHICAGO FRANCHISE, IJL PALM BEACH FRANCHISE, IJL DENVER FRANCHISE, IJL AUSTIN FRANCHISE, IJL LOS ANGELES-CENTURY CITY FRANCHISE,** and **DOES 1-136**,<br><br>     Defendants. | Index No.: 07-CV-9227 (SHS)(SN)<br><br>**SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS** |

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (the "Agreement") is entered into as of the last date of any signatures below by and among:

(a) It's Just Lunch International, Inc., IJL Midwest Denver LLC, and FGH Associates LLC s/h/a IJL Austin Franchise (collectively referred to as "IJL")

(b) Representative Plaintiffs, James Tortora, Lisa Bruno, Janeen Cameron, Karen Malak-Rocush, and Brad Berkowitz, individually and as representatives of the Plaintiff Settlement Classes, as defined below.

## RECITALS

**A.** This action was commenced in the United States District Court for the Southern District of New York (the "Court") against IJL on October 15, 2007, under the case caption *E. Packman, individually and for all others similarly situated, v. It's Just Lunch International, It's Just Lunch, Inc., and Harry and Sally, Inc.*, No. 07-CIV-9227, and has the current case caption indicated above (the "Action"). After pre-filing investigation for months and initial motions regarding the pleadings, Representative Plaintiffs eventually filed a Third Amended Complaint (the "Complaint") asserting causes of action for fraud and unjust enrichment, alleging, among other things, that IJL fraudulently misrepresented its services in order to induce individuals to retain its services. Brad Berkowitz, Representative Plaintiff for the New York Class, alleges in a separate cause of action in the Complaint that IJL charged for its services in an amount violating New York General Business Law § 349 and was unjustly enriched thereby.

**B.** IJL denies the material allegations of the Complaint and denies all liability with respect to the facts and claims alleged in the Action. Nevertheless, without admitting or conceding liability, IJL now desires to settle the Action on the terms and conditions set forth in this Agreement to avoid the burden, expense, and uncertainty of continuing litigation, and to put to rest the Released Claims, including all claims that were or could have been brought in the Action or in similar litigation based on the facts alleged in the Action, by all members of the National Class and the New York Class.

**C.** Class Counsel, as defined below, believe that the claims of the Representative Plaintiffs and the Settlement Classes, as defined below, are strong and that class certification is appropriate. Class Counsel have analyzed and evaluated the merits of the parties' contentions, the impact of this Agreement on the members of the Settlement Classes, the risks of continued litigation and the difficulty of potential judgment enforcement given the financial circumstances of IJL, details

of which shall be revealed to the Court *in camera*.  Based on that analysis and evaluation, and recognizing the risks of continued litigation and the likelihood that the Action, if not settled now, may be protracted and will further delay any relief to the Classes, Representative Plaintiffs and Class Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate, and equitable, and that a settlement of the Action on the terms described herein is in the best interests of the Settlement Classes.

**D.**   In particular, Class Counsel note the following features of the proposed settlement which Class Counsel believes is the absolute best result which could be achieved:

   **a.**   IJL Committing Itself to Honoring Clients' Most Important Preferences: As part of the Settlement, IJL is committing to a pledge on its website and in its client agreements stating that it will honor certain preferences of its clients with regards to what Class Counsel has learned after eight years of investigation and litigation are perhaps the most important preferences to clients: whether or not potential matches have children; the ages of potential matches; and the religious affiliation (or lack thereof) of potential matches.   Anyone, including Class Members, who wishes to take advantage of IJL's services will have the reassurance of this new commitment.

   **b.**   Public Commitment to The Pledge: IJL will add a pledge to its website and its client agreements which will provide the specifics of IJL's commitment with respect to honoring the client preferences addressed above.

   **c.**   Vouchers to All Class Members: All class members who want them shall have a voucher for at least one date (with more details on who gets one or more below), with each voucher valued in the hundreds of dollars.

   **d.**   Limited Transfer Rights for the Vouchers: Acknowledging that some Class Members may not wish to use the vouchers, any who do not want to use the vouchers themselves may transfer them one time to non-Class Members under conditions described below, with each transferee, like any Class Member, obtaining value in the hundreds of dollars.

   **e.**   Additional $100 Payment to New York Class Members: All New York Class Members will receive not only the benefits of IJL's new commitment and the vouchers, but an additional $100 in direct payments to the New York Class Members.

   **f.**   All Costs Paid by IJL:  All costs of this action, including Class Counsel's

attorney's fees and the cost of administering this settlement, shall be paid by IJL from a settlement fund established for this litigation.

NOW, THEREFORE, in consideration of the covenants and agreements set forth in this Agreement, Representative Plaintiffs, on behalf of themselves and the Settlement Classes, and IJL, through their undersigned counsel, agree to the following settlement, subject to Court approval, under the following terms and conditions.

## I.   DEFINITIONS

**1.01**   "Class Members" means members of the Settlement Classes.

**1.02**   "Claims Administrator" means Heffler Claims Group ("Heffler").

**1.03**   "Distribution Date" means a date sixty (60) Days from the date of the Final Approval Order as defined below.

**1.04**   "Eligible Claimant" means a Class Member who complies fully with the claims submission requirements set forth in Paragraph 4.04 below, including the requirement of timely and complete submission of a claim form, if needed.

**1.05**   **Fairness Hearing.**   "Fairness Hearing" shall mean the hearing to be conducted by the Court at least ninety (90) days after the date of Preliminary Approval, as defined below, to ensure that the settlement embodied by this Agreement satisfies the fairness, reasonableness, and adequacy requirements of Fed. R. Civ. P. 23(e).

**1.06**   **Final Approval Order**.   "Final Approval Order" shall mean the order of the Court that approves this Settlement Agreement and makes such other final rulings as are contemplated by this Settlement Agreement, which may or may not include approving payment of Incentive Awards and Class Counsel's Fees and Expenses, and which shall be mutually prepared and agreed upon by the Parties.  The Final Approval Order is at the Court's discretion.

**1.07**    "Final Approval" means that all of the following have occurred:

(a)   The Court has entered the Settlement Order and Final Judgment;

(b)   The Court has made its final award of attorney's fees, costs, expenses, and Representative Plaintiffs service awards, if any; and

**1.08    Effective Date**.  "Effective Date" shall mean the date following the entry of the Final Approval Order on which the time for any appeal expires, or the date on which any appeals from the Final Approval Order are finally decided or terminated, whichever date is later.

**1.09**    "Monetary Fund" means the monetary portion of the Settlement Fund, as defined in paragraph 1.19, paid by IJL pursuant to the terms set forth in paragraph 2.02.

**1.10**    "National Class" means all individuals who signed a membership contract with IJL or one of its franchisees and purchased the services of IJL or one of its franchisees on or after the accrual date of class claims based on the statute of limitations for common law fraud associated with their state of residence at the time of the execution of the contract as detailed in Exhibit A through the date of Preliminary Approval as defined below, other than those individuals who received full refunds of their membership fees and those who signed releases of any claims in favor of IJL and/or a franchisee.

**1.11**    "New York Class" means all individuals who became IJL clients in New York and who, on or after October 15, 2001, paid more than $1,000 for a year's worth of IJL services at the time of initial contracting through the date of Preliminary Approval as defined below, other than those individuals who received full refunds of their membership fees and those who signed releases of any claims in favor of IJL and/or a New York franchisee.

**1.12**    "Parties" means the Representative Plaintiffs and IJL.

**1.13**    "Plaintiffs" means Representative Plaintiffs and Class Members.

**1.14**    "Preliminary Approval" means the Court's entry of an order substantially in the form of Exhibit B to this Agreement, preliminarily approving the terms and conditions of this Agreement, including the manner of providing notice to the Settlement Classes.

**1.15**    "Released Claims" means any and all claims, rights (including rights to restitution or reimbursement), demands, actions, causes of action, suits, liens, damages, attorney's fees, obligations, contracts, liabilities, agreements, costs, expenses or losses of any nature, whether known or unknown, direct or indirect, matured or unmatured, contingent or absolute, existing or potential, suspected or unsuspected, equitable or legal, and whether under federal statutory law, federal common law or federal regulation, or the statutes, constitutions, regulations, ordinances, common law, or any other law of any and all states or their subdivisions, parishes or municipalities including but

not limited to the District of Columbia that arise out of or relate in any way to any of the claims asserted in the Complaint in the Action or the facts or circumstances relating to such claims, including, without limitation, any claim that IJL's performance under its contracts with members of the Settlement Classes or IJL's conduct in connection with the marketing of its services was unlawful, deceptive, misleading, fraudulent, inadequate, improper, negligent, grossly negligent, or breached any federal, state or local consumer fraud or similar laws. For the avoidance of doubt, this release does not extend to claims having no relationship with the claims or facts in this litigation, by way of example only, alleged personal injury resulting from a visit to an IJL office. In addition, with respect to Representative Plaintiffs only, "Released Claims" includes all claims arising, or that could arise in the future, out of any conduct or omissions occurring to the date of Preliminary Approval that might be attributable to IJL.

1.16   "Released Parties" means IJL, and its affiliates, parents, direct and indirect subsidiaries, franchisees, agents, insurers, and any company or companies under common control with any of them, and each of its or their respective predecessors, successors, past and present officers, directors, employees, agents, servants, accountants, attorneys, advisors, shareholders, representatives, partners, vendors, issuers, insurance carriers, and assigns, or anyone acting on their behalf including, without limitation, the following former and present owners of IJL and its franchises: IJL Holding Company, It's Just Lunch Holdings LLC, It's Just Lunch, Inc. IJL US LLC, IJL Advertising LLC, IJL Chas Holdings LLC, IJL NUS LLC, IJL Everest LLC, The Riverside Company, Riverside Micro Cap Fund 1, Loren Schachlet, Alan Peyrat, Bela Schwartz, Stewart Kohl, Riverside Partners, LLC, Alan Weiss, IJL Birmingham LLC, IJL Nashville, LLC, IJL Raleigh LLC, Amy Brinkman, Alley Jahandideh, IJL SF LLC, IJL SV LLC, Anna Andersen, A & Y Enterprises, LLC, Betty Sinclair, JuJube LLC, JuJube WA LLC, Bill Hoffpauir, Keil Gauger and Alan Freemen, FGH Associates, Blant Hurt, Blossom Ventures Inc., Bradley Osgood and Trevor Hall, IJL Will Do Too LLC, Brandee Kramer IJL Silicon Valley LLC, Brennan Adams, Dual Scorpion Enterprises, Brian Jones, Can Do International LLC, Bridget McCoy, BMC LLC, Cameron David, Cameron David LLC, Chiara Di Muzio, Pockets of Excellence LLC, Christine Hobson, Tee to Green II LLC, Christine McLean, Cameron David LLC, Cindy Herington, CA Herington LLC, Cindy Taylor, ZCT Company, Corinne Christenson and James Christenson, Havenwood Court, LLC, Dana Hartmann-Butts, IJL Arizona LLC, Daniel Armstrong, Daniel Dolan,  Andrea McGinty, IJL Orange County LLC, IJL San Diego LLC, IJL Washington Inc., Everest Group LLC, IJL Minneapolis Inc., IJL New York LLC, IJL Buffalo LLC, IJL Cincinnati LLC, IJL Cleveland LLC, Daniel Rimer, Lucille Rimer, Dantri Inc., David Cameron, David Partridge, JDDM Management Inc., David Zeng,

Zeng Group LLC, Denise Lafferty, Life & Laughs, Inc., Desiree Checki, Mark Polakowski, Abicus Inc., Duane Sibole, D.S.E. LLC, Holland Edward Toles III, IJL4 Company, Elise Daniel, EAD LLC, Erin Bajek and Jason Fitch, IJL Los Angeles, Inc., Ernie Russell and Shadra Russell, Kali K Inc., Felicia O'Day, Lunch 4 U Inc., Glen Anderson, Kelly Anderson, IJL Group, LLC, Glenda Cole, Glencole Enterprises LLC, Heather Hill, Reservations for Two, Irene LaCota, James T. Irwin III, Jere Pittner, Double J Ventures LLC, Jan Zimmerman, JZ Direct LLC, Jason Pratt, Cynergi Marketing Corp., Jeff Powell, JKJ Enterprises Inc., Jeffrey Ruben, IJL-Louisville Inc., Jennifer Donnelly, J. Donnelly Inc., Jennifer Pannucci, Jennifer Reid, IJL Washington Inc., Jennifer Rose, Get Connected, Inc., Jerry Tylman, Victoria Crum, Mimi Finkel, Jessica Strickland, Gray Sky Inc., Joan Griffin, David Hughes, IJL NM LLC, IJL Tucson LLC, Joanne Bloomfield, Island Park Enterprises LLC, John A. Pouliot, Tonya L. Pouliot, Pouliot's 2 Inc., John Quinn, Pamela Joyce Osgood, IJL NCP LLC, John Tlapek, Blanton LLC, Julie Zadoo, Steel Skies Enterprises, Platinum Dunes, Kameran Ritzhaupt, IJL Oklahoma Inc. Karen Faust, Faust Enterprises, Katherine Gragg, Across the Room LLC, Kathy Merwald, Kelly Alston, Alston & Associates LLC, Ken Marr, Lunch & Meets Inc. Kim Lawson and Derek Butts, Two Become One Inc., Kimberlee Brandt, KJB Enterprises, Ltd., Laura Culver, IJL Buffalo Inc., Leslie Lessig, Triple L Ventures, Linda Grandlund, Grandlund Partners, LLC, Linda Markt, Linda Markt LLC, Linda Zaleski, IJL Central PA LLC, Lisa Lahoste, Get Together LLC, Lisa Pirosanto, IJL Services, Inc., Lisa Purdum and Steve Purdum, IJL Orange County Inc., IJL San Diego Inc., Loriann Landaburu, Ty Windfeldt, A Perfect Match LLC, Lynn M. Pofer, Lynne Adams, LWL, LLC, Mark and Debra McNeal, McMatch Inc., Mark Frankovic, Cincinnati Snack & Beverage Inc., Mark Manlin, Paula Komar, Dyquem LLC, Mark Nichols, IJL III LLC, Marty Kelly, Polar Bear Inc., Mary Frank, Fourus LLC, Matthew Kleinman, Merit Ventures, Inc., Megan Mitsch, Abicus Inc., Michele Mendez and Cathy Loe, Menloe Inc., Michelle Brown, MBrown Inc., Michelle Kruskamp, M Renee Inc., Nicole Nance and Linda Honey, DE Destiny LLC, Niki McDowell, Three Pronged Forks LLC, Nishat Alibhai, NNA Holdings—San Antonio LLC, Pamela Lanier, Rachelle Inc., Loraine Inc., Patrick Smith, Paula Komar, Cleveland IJL, Randy Argotsinger, Beechwood Investments Inc. Robert Drum and Millie Kay Drum and RJM Inc., Robert Vandor, Jill Vandor, Harry & Sally Inc., Robin Meierowitz, Roxanne Brogan, Strike a Match Inc., Sara Darling, IJL Midwest LLC, IJL Midwest Cleveland LLC, IJL Midwest Denver LLC, IJL Midwest Milwaukee LLC and IJL Midwest Chicago LLC, Scottie Johnson, Shiawase Inc., Seth Houlton and Allie Houlton, ACH 14 LLC, Shalene DeMarco, South Carolina IJL LLC, Steve Green and Tena Green, IJL HR, INC., Steve Misotti, The J.E.D. Group, Inc., The Estate of Pamela Joyce Osgood, IJL Will-Do LLC, IJL Will Do Inc. Houston, Timothy Carter and Michelle Carter, TMC LLC, Tom Kaifesh and Lisa Kaifesh, Trinity Flood, The Trinity LLC,

Victoria Crum and Jerry Tylman, IJL 500 LLC, William Geist, MacGraw and O'Neal Ltd., William Sparks and Christina Sparks, Anglo Amec Inc..

1.17 "Representative Plaintiffs" means James Tortora, Lisa Bruno, Janeen Cameron, Karen Malak-Rocush, and Brad Berkowitz.

1.18 "Settlement Classes" means all members of the National Class and the New York Class.

1.19 "Settlement Fund" means the amount necessary for all payments and other relief under this Agreement including the vouchers addressed in paragraph 2.04.

1.20 "Settlement Order and Final Judgment" means an order and judgment entered by the Court approving this Agreement as final and binding on the Parties, Class Members, and Released Parties.

1.21 Other capitalized terms have the meanings ascribed to them elsewhere in this Agreement.

1.22 The plural of any defined term includes the singular and the singular of any defined term includes the plural, as the case may be.

## II. GENERAL TERMS OF SETTLEMENT

2.01 **Settlement Administration.** Administration of the settlement will be handled by Heffler Claims Group, a company that specializes in class action notices, claims administration, and other significant services related to class actions and mass tort actions. Heffler will disseminate notice to the members of the Classes using the means described in Section III below. Heffler will also assist with receiving and paying claims and generating reports on the claims process. The costs of settlement administration shall be paid from the Monetary Fund. IJL and/or Heffler shall administer the settlement and shall provide to Class Counsel upon request reports concerning the claims process. The Parties will cooperate with Heffler with respect to the administration.

2.02 **Monetary Fund.** No later than thirty (30) days after Final Approval, IJL will place $4.75 million in a trust bank account established and managed by Heffler. $200,000 of the $4.75 million will be placed in that same trust account no later than thirty (30) days after the Preliminary Approval. Interest earned by the Monetary Fund shall become part of the Monetary Fund. In the event that there are any funds remaining in the Monetary Fund held in that account after all payments hereunder have been made to Class Counsel, the

Representative Plaintiffs, Heffler, and the Eligible Claimants, Heffler shall distribute the balance in that bank account as a charitable donation to a 501(c)(3) certified charity as agreed upon by the Parties with the approval of the Court.

**2.03** **New York Class Payments.** Each member of the New York Class who has not opted out of the Settlement will receive an award of $100 from the Monetary Fund, to be paid no later than 60 days following Final Approval, in addition to the consideration each such member is receiving as a member of the National Class. Members of the New York Class will not need to submit any form to receive their monetary award, but shall receive such award after the notice is distributed, mailed to the same address gathered from IJL's records and to which the Notices of Settlement were mailed.

**2.04** **Vouchers.** Each member of the National and New York Classes who has not opted out of the Settlement shall, upon submission of the claims form, the link to which will be distributed with the Class Notice described in paragraph 3.02, be entitled to receive one voucher redeemable for at least one free date arranged by IJL in the manner of its ordinary services and in compliance with the provisions of this agreement concerning modification of services. A single voucher has an estimated value of $450, but can be valued at a higher price depending on the membership plan provided at a given geographical location. The types of membership plans available at each location vary. When a voucher is redeemed, the voucher will be redeemable for one date. However, if the voucher is redeemed at the following locations, the voucher holder will receive two dates. The locations where a voucher will be redeemable for two dates are: Austin/San Antonio, Cleveland (including Akron, Canton, Massillon, and Youngstown), Houston, Milwaukee (including Madison, Marquette, and Wausau), and Seattle (including Bellevue). The vouchers will be valid for 120 days following the date of issuance and will not require any Class Member to pay for the services provided by the voucher. Upon redemption of the voucher, the voucher holder will be required to execute the form of contract for the IJL location where the voucher is redeemed. There is no requirement to pay any consideration. Individual terms and conditions will apply and may vary for each IJL location. The voucher holder must submit the voucher to IJL within the 120 days, but the dates need not be arranged within the 120 days period and IJL reserves the right to manage its inflow by arranging dates within a one (1) year period after submission. If the dates offered by the voucher have not been provided by IJL within the one year period, the voucher shall remain valid until the dates have been provided unless IJL is unable to fulfill all matches due to circumstances beyond IJL's control, such as client criteria modifications, client's request to discontinue dating, or client refusing

matches within client's original criteria at the time the voucher was submitted for redemption. When redeeming a voucher, a Class Member may submit to IJL different or modified criteria than submitted when the Class Member originally purchased a membership with IJL. If within one (1) year after redemption of a voucher IJL is unable to fulfill all matches due to such circumstances, IJL will be deemed to have fulfilled its obligations under the terms of the voucher and voucher contract. IJL reserves the right to refuse to honor the voucher for any person for whom it is unable to provide matches in the market for which that person seeks matches. Every three (3) months, IJL shall submit to Class Counsel a report detailing the number of vouchers redeemed and unfulfilled by IJL. The report will categorize unfulfilled vouchers by the type of issue encountered that prevented IJL from providing the services for a voucher was redeemed. Vouchers may be transferred to non-Class Members redeemable for at least one free date depending on the level of service offered in the office through which the voucher is redeemed. The transferee will only be entitled to receive the free date in conjunction with a current It's Just Lunch membership, previously purchased or purchased at the time of redemption, and the value per date will vary depending on the level of membership the transferee purchases. Only a single one-time transfer will be permitted, to a transferee to be identified in writing to IJL along with presentation of the original voucher. If a transferee does not purchase or does not already have an IJL membership, IJL shall have no responsibility to provide services to the transferee or as to the voucher in question. Some It's Just Lunch offices are independently owned and operated, and types and levels of membership will vary at each location. Each voucher has an estimated value of approximately $450. The parties estimate the relief provided by the vouchers has a value of approximately $60 million to the settlement classes. Under no circumstances may vouchers be transferred for any cash or other consideration. If IJL becomes aware that any consideration has been paid for the transfer of a voucher, it reserves the right to refuse to honor the voucher and to refuse to provide any services to the person to whom the voucher was issued. The vouchers shall state that they may not be transferred for any consideration. If IJL determines that a voucher has been transferred for consideration, the transferor Class Member shall be liable to IJL for liquidated damages of $450. IJL will use reasonable best efforts to induce its franchisees that are not parties to the Action or to this Agreement (the "Non-party Franchisees") to honor vouchers presented to them by Class Members or qualified transferees to the extent that they refuse to do so, provided that (i) such efforts shall not obligate IJL to reimburse any Non-party Franchisees for the costs incurred in connection with honoring the vouchers and (ii) IJL is not required to incur any other or additional financial or other obligations beyond those set forth in this Agreement, including without limitation any obligation to file suit against any Non-party

Franchisees to compel compliance with any of the terms of this Agreement.

**2.05    Injunctive Relief.**  As part of the Settlement, IJL is assuring its clients publicly that it will adhere to the pledge on its website and adopt a new contract provision.  The Settlement shall ensure that going forward IJL shall adhere to its pledge as described below and will honor Client preferences as to age, parental status, and religious status as will be set forth in all new Client agreements.  To bring about these changes, IJL shall modify its existing website and contracts no later than thirty (30) days following Preliminary Approval pursuant to the following terms.

**2.05(a) New Website Pledge.**  IJL shall add to the homepage of its website http://www.itsjustlunch.com/ a statement of its Pledge concerning its policies stating in substantially the following form:

Our Pledge to You, Our Client:

We treat you as a person, not a website profile.

It's Just Lunch recognizes that each of our clients is unique, and that their attributes, experiences and life goals shape the type of relationship they are looking for.  As such, we are committed to working with our clients to understand their needs and provide a successful, fun and productive IJL Dating Experience.

The It's Just Lunch team is dedicated to you, and this is our commitment to our clients:

- To guide you through the It's Just Lunch dating process so you can have a fun, successful dating experience.
- To understand your relationship goals and work closely with you to achieve them.
- To work with you to identify and provide you with the types of matches that could be right for you.  We will honor your preferences for age, religion, and parental status as we personally select your matches.
- To only take on those clients we believe we can successfully match—we don't take everyone on as an It's Just Lunch Client.
- To quickly respond to your questions and needs.
- To communicate with you in an open, honest way.
- To treat you in a caring, sincere, empathetic, and professional manner.

- To maintain the highest ethical, personal and professional standards possible and follow all applicable laws.

We will be measured both personally and professionally by our dedication to providing each and every one of our clients with the best matchmaking service possible!

In short, if we take you on as a client, we guarantee you will go out on dates!

The pledge and the obligations undertaken thereunder by IJL shall remain in effect for a period of at least three (3) years from the date of Final Approval, unless IJL substantially changes its business model such that it is no longer offering clients dates in substantially the same fashion as it does at present. IJL reserves the right to modify the pledge language during the three year period providing that the pledge continues to provide the references set forth above to age, religion and parental status.

**2.05(b) New Contractual Obligations of IJL.** IJL shall include in its contract a new, specific commitment to honor client preferences related to age, religion, and parental status when IJL provides matches to members. When joining IJL, clients may specify, and IJL will honor, preferences for matches who fall within (1) a declared age range, (2) and/or identify with a specific religious tradition or identify as non-religious, and/or (3) those with or without children.

Clients may agree to waive these preferences for specific matches, allowing IJL to arrange dates with persons who may not be within the client's preferred age range, religion, or parental status, and will make an addition to its contracts in substantially the following form: "All Date Introductions will be within the criteria provided by Client at the time of join with respect to age, religion and parental status. If IJL presents a Date Introduction that is outside of the Client's criteria with respect to age, religion and parental status, Client may agree to accept the Date Introduction at Client's discretion.

As is the case under current IJL contracts, IJL does not guarantee the accuracy of the information concerning its members, as this information is accepted by IJL as supplied by the members. The contractual commitment undertaken by IJL as set forth above shall be reflected in all its new contracts within thirty (30) days of the Preliminary Approval, and shall remain in effect for a period of at least three (3) years from the date of Final Approval, unless IJL substantially changes its business model such that it is no longer offering clients dates in substantially the same fashion as it does at present.

**2.06    Payment of Fees, Costs and Expenses, and Service Awards.**

(a)    No later than sixty (60) days after Preliminary Approval, Class Counsel will apply to the Court for an award of attorney's fees, costs and expenses, and for Representative Plaintiffs' service awards.  The total amount at such time sought for attorney's fees, costs, and expenses will not exceed the actual attorney's fees and expenses incurred by Class Counsel (i.e., a "lodestar" with a multiplier of 1.0) through the time of such application.  As of December 31, 2015, such attorney's fees and expenses incurred since initial investigation in 2007 and throughout all litigation was approximately $3,637,333.83 (such amount not including eventual costs of Notice distribution and claim administration).

(b)    The amount sought as a Service Award or Incentive Payment for each of the Representative Plaintiffs will not exceed $10,000 (ten thousand dollars).

(c)    If after all payments have been made pursuant to the Final Approval Order, including any initial payment to Class Counsel, as well as payments to the Representative Plaintiffs, Heffler, and the Eligible Claimants, Class Counsel shall have the opportunity to seek an order from the Court for further fees from any amounts remaining in the Monetary Fund.

## III.    SETTLEMENT APPROVAL AND CLASS NOTICE

**3.01    Preliminary Approval.**  Within thirty (30) days of the complete execution of this Agreement, Representative Plaintiffs will move for an order in the form of Exhibit B ("Preliminary Approval Order"), which approves notice to the Class of the proposed settlement of the Action in the form of Exhibit C, and sets a hearing date to consider objections, if any, to the settlement and to enter the Settlement Order and Final Judgment.

**3.02    Class Notice**.  The Parties will request that the Preliminary Approval Order direct that, within thirty (30) days of entry of the Preliminary Approval Order, Heffler shall provide notice of the proposed settlement to Class Members by email or first-class mail, as set forth below.  If the Preliminary Approval Order is issued on or before January 16, 2016, Heffler shall provide notice on February 16, 2016.  Contact information for members of the Classes obtained from client records will be provided by IJL to Heffler within ten (10) days of the date of the Preliminary Approval Order and shared with Class Counsel upon request.

**3.03    Email Notice.**  Heffler will provide notice via email to Class Members for whom it can reasonably locate email addresses in the client records provided by IJL.  Heffler will provide one follow-up notice to the email address of each Class Member who does not respond to the initial notice and who has a valid email address.  Heffler will provide delivery tracking services to determine whether emails were viewed by recipients.  Although there is no simple way to track whether or not the emails were delivered into the mailbox, Heffler will use a small transparent tracking image embedded into the email to record whether or not the email notice has been opened by the recipient.  This technology is not foolproof, as emails read on mobile devices or through services that block images may not accurately indicate actual opens, but it will provide a good estimation of how many Class Members received the email notice.  The email notice will contain text substantially in the form of Exhibit C.  The email notice will contain a link to the website referred to in Paragraph 3.07.

**3.04    Notice by First Class Mail.**  Heffler will provide notice via first class mail to those Class Members with no ascertainable email address, with apparently invalid email addresses, and those who appear to have received an email but may not have viewed the message after about a week.  Heffler will provide a second follow-up notice via mail if the first mailing is returned.  To help ensure delivery, Heffler will cross-check addresses obtained from IJL's client information databases with the United States Postal Service's National Change of Address Database.

**3.05    Notice by Newspaper or Magazine Advertisement.**  A one-time notice to Class Members will be submitted in the *L.A. Times*.

**3.06    Toll-Free Phones and Email Systems.**  Class Counsel and Heffler will create a toll-free telephone line (844-245-3771) available to Class Members and an email address dedicated to Class Member inquiries.  The telephone system will provide an automated notice of the relevant information contained in notice materials, as well as allow the potential Class Members to speak directly with a representative.  Class Counsel and Heffler Claims Group will collaborate to monitor the email system.  The telephone line and email system will be live prior to distribution of notice materials and will be included on all notice materials.

**3.07    Web Page Posting.**  IJL, Class Counsel, and Heffler will work together to create a website for Class Members seeking information on the class action, provided that IJL shall not have any financial obligations in connection with setting up or operating said website.  The URL for the website shall be "www.ijlclassaction.com" if that URL is available or shall be similar to that

name if unavailable. The website shall include a downloadable copy of a notice and claim form, substantially in the form of Exhibit D and Exhibit E, respectively. The internet address of the web page shall be included prominently on the email notice described in paragraph 3.03. The web page shall be active and accessible beginning on the date on which the transmittal of notice commences through the Distribution Date. Upon agreement between Class Counsel and IJL that the Agreement has been fully performed, the website shall be terminated and the ownership of the URL therefor shall be transferred to IJL for no consideration.

**3.08  Submission of Exclusion Request and Objections.** Plaintiffs will request that the Preliminary Approval Order direct that Class Members be allowed seventy-five (75) days from the date of entry of the Preliminary Approval Order or, if the Preliminary Approval Order is issued on or before January 16, 2016, forty-five (45) days from date Heffler provides the notice (the "Opt-Out Period"), to request exclusion from the Class or to submit objections to the proposed settlement (the "Objection Date"). The notice will direct that any Class Members' exclusion request ("Request for Exclusion") or objection ("Objection"), if any, be sent to Heffler, which will provide periodic updates on the Requests for Exclusion and Objections to both IJL and Class Counsel. Any re-sending of email notice will not extend the time for members of the Classes to submit a Request for Exclusion or to submit Objections.

The Parties will request that the Court enter an order requiring any Class Member who wishes to be heard orally at the Fairness Hearing, or who wishes for any objection to be considered, to file a written notice of Objection by the Objection Date, as well as a notice of intention to appear at the Fairness Hearing. To state a valid Objection to the Settlement, an objecting Class Member must provide the following information in his or her written objection: (i) full name, current address, and current telephone number; (ii) documentation sufficient to establish membership in the Class; (iii) a statement of the position(s) the objector wishes to assert, including the factual and legal grounds for the position; and (iv) provide copies of any other documents that the objector wishes to submit in support of his/her/its position. Finally, subject to approval of the Court, any objecting Class Member may appear, in person or by counsel, at the Fairness Hearing held by the Court, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable, or object to any petitions for attorney's fees, Incentive Awards, and reimbursement of reasonable litigation costs and expenses. The objecting Class Member must file with the Clerk of the Court and serve upon all counsel designated in the Class Notice, a notice of intention to appear at the Fairness Hearing ("Notice of Intention to Appear") by the Objection Date or on such other date that may be set forth in

the Class Notice. The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Class Member (or his/her/its counsel) will present to the Court in connection with the Fairness Hearing.

The agreed-upon procedures and requirements for filing objections in connection with the Fairness Hearing are intended to ensure the efficient administration of justice and the orderly presentation of any Class Member's objection to the Agreement, in accordance with the due process rights of all Class Members. The Preliminary Approval Order and Class Notice will require all Class Members who have any objections to file such notice of objection or request to be heard with the Court, and serve by mail or hand delivery such notice of objection or request to be heard upon Class Counsel and Defendant's Counsel at the addresses set forth in the Class Notice, by no later than the Objection Date. The Preliminary Approval Order will further provide that objectors who fail to properly or timely file their objections with the Court, along with the required information and documentation set forth above, or to serve them as provided above, may not be heard during the Fairness Hearing, their objections may be waived and their objections may not be considered by the Court, at the Court's discretion.

In the event of an appeal of the Final Approval Order, Class Counsel agrees that it will be solely responsible for defending the Court's Final Approval Order on appeal at their own cost. IJL will make a filing either joining and/or not opposing Class Counsel's defense of the Final Approval Order. However, if the appeal only relates to the Court's order approving Class Counsel's attorney's fees and/or costs or Incentive Awards, it will be up to IJL in its sole discretion whether to join such appeals or to defend the Court's Final Approval Order. IJL will not oppose if Class Counsel's attorney's fees and/or costs or Incentive Awards were agreed to pursuant to paragraph 2.06(a) herein. Any fees and/or costs incurred by Class Counsel in such appeals, including fees and/or costs incurred to settle any claims by objectors, are the sole responsibility of Class Counsel. Class Counsel may not seek to recover such fees and/or costs from IJL unless (i) IJL is the sole party appealing the Court's award with respect to Class Counsel's attorney's fees and/or costs, and (ii) IJL is unsuccessful in such an appeal (i.e., the appeal does not result in an order or decision of the Court of Appeal or of the Court that reduces the attorney's fees or costs awarded to Class Counsel).

**3.09    Termination of Agreement.**  IJL may withdraw or terminate this Settlement Agreement prior to the Fairness Hearing if more than four percent (4%) of National Class Members have submitted valid and timely Requests for Exclusion.   For purposes of determining whether the conditions for

withdrawal or termination of the Settlement Agreement have occurred, copies of all Requests for Exclusion timely received, together with copies of all written revocations of Requests for Exclusion, shall be delivered to IJL's counsel within three (3) days of receipt by the Claim Administrator and, in any event, no later than ten (10) Court days before the Fairness Hearing.  In the event of a withdrawal from this Agreement in accordance with the terms of this paragraph, this Agreement shall become null and void and of no further force and effect.  IJL reserves the right to contest the claims asserted by Plaintiffs and the Class Members in the event the Agreement becomes null and void including, but not limited, to contest the propriety of the Action proceeding as a class action and the Court's order certifying the National Class and the New York Class, and IJL contests and denies that any class is suitable for certification as a class under the law of any jurisdiction.  In the event the Court does not enter a Final Approval Order or the Final Approval Order is reversed as a result of an appeal or vacated by the Court for any reason, the Parties agree to use their best efforts to cure any defects identified by the Court or an appellate court including by amendment to the Agreement and execution of a new settlement agreement.  If, despite their best efforts, the Parties cannot cure such defects, this Agreement, including the release provisions thereof, is canceled, and no term or provision of the Agreement or of the negotiations thereof shall have any effect and shall not be admissible in evidence for any purpose or used for any purpose in the Action, and the Parties shall be restored to their prior rights and positions as if the Agreement had not been executed.

**3.10**   **Entry of Final Judgment.**  Plaintiffs will request that the Court (a) grant Final Approval and (b) enter judgment in accordance with this Agreement, approving the Agreement as fair, reasonable, and adequate, and binding on all Class Members who have not excluded themselves, ordering that the Claim Payments be paid to Eligible Claimants (as set forth in Section IV), ordering the attorney's fees, costs, expenses, and Representative Plaintiffs' service awards be paid in the amount approved by the Court, approving the form of notice provided by IJL, dismissing the Action with prejudice, and barring Class members from bringing claims within the scope of the Released Claims.

**3.11**   **Reporting.**  Within sixty (60) days of Heffler's completion of the distribution of payments in Section IV below, and Heffler's report to IJL of said completion, IJL will provide the Court and Class Counsel a report verifying its compliance with this Agreement to the date of the report.

## IV.    DISTRIBUTION OF PAYMENTS AND VOUCHERS

**4.01    Responsibility for Distributions.**  Heffler will be responsible for making all distributions required under this Agreement.  IJL and Heffler will have authority to make all decisions reasonably necessary for the orderly implementation and administration of the Agreement and the distribution of all payments and vouchers prescribed in this Agreement.  Subject to the dispute resolution provisions of paragraph 4.07 below, neither IJL nor Heffler will have any liability for any settlement administration decision made in good faith and not inconsistent with the express terms of this Agreement.

**4.02    Responsibility for Distribution of Vouchers.**  Heffler will make vouchers available for download via its website, with each member of the class providing proof of eligibility by completing a claims form substantially in the form of Exhibit E.  Heffler will provide IJL and Class Counsel with weekly reports concerning the number of vouchers downloaded from its website during the time period for which vouchers can be redeemed as set forth hereinabove and shall report further as to the names of the Class Members who have completed the necessary paperwork and obtained vouchers.

**4.03    Distribution of Fees, Costs, Expenses, and Service Awards.**  No later than thirty (30) days after the date of Final Approval, IJL and/or Heffler Claims shall distribute attorney's fees, costs, expenses, and Representative Plaintiff service awards in an amount approved by the Court by a check or wire transfer (at the claim administrator's option) made payable to Balestriere Fariello.  IJL's obligations with respect to any fees, costs or payments to Class Counsel (or to any counsel not included in the definition of Class Counsel but claiming some right to fees as a result of the resolution of the Action) or any Representative Plaintiff will be fully and forever discharged upon their payment to Balestriere Fariello pursuant to this paragraph.  Other than IJL's obligation to cause payment of the attorney's fees, costs, expenses, and Representative Plaintiff service awards in an amount approved by the Court, IJL will have no further obligations to Class Counsel or the Representative Plaintiffs except to the extent the Representative Plaintiffs are entitled to a Claim Payment and vouchers.

**4.04    Submission of Claims for Eligibility for Distribution.**  To be eligible for distribution of any voucher pursuant to this Agreement, Class Members must submit a completed claim form, substantially in the form attached as Exhibit E.  Class Members must submit completed claim forms over the Internet or to the mailing address set forth on the class notice by a date specified in the notice, which shall be no less than sixty (60) days following Final Approval.

**4.05**   **Class Action Fairness Act Notification.**  Within ten (10) days of submission of the Settlement for Preliminary Approval as set forth in paragraph 3.01 or such other time as may be required by law or by the Court, IJL and/or Heffler will provide notice of the settlement to the appropriate federal and state authorities pursuant to 28 U.S.C. § 1715.

**4.06**   **Notification of Eligible Claimants.**  At the time of the payment by check, members of the New York Class will be notified that the check represents their payment under the Agreement.  At the time of the distribution of the vouchers, Eligible Claimants within the Settlement Classes will be notified that the vouchers represent their compensation under the Agreement.  The notifications will inform the recipient about the dispute resolution process described in Paragraph 4.07.

**4.07**   **Resolution of Questions or Disputes.**  Heffler will determine and verify eligibility for, and amount of, any payment to a Class Member.  IJL will determine and verify eligibility for voucher distribution.  If a Class Member has a question or dispute about his or her eligibility for payment or the amount he or she is entitled to be paid under this Agreement, he or she may contact the claims administrator via the website established pursuant to paragraph 3.07.  Heffler or IJL will review each such email, check for any mistakes in the Class Member's eligibility for payment or vouchers, and respond to the Class Member within a reasonable time.  Heffler or IJL will forward to Class Counsel any questions or disputes from Class Members as well as any responses to such questions or disputes.  If a claim dispute is not resolved through this process, it will be subject to investigation and discovery to the extent the Court directs or allows.

## V.   RELEASES

**5.01**   **Sole and Exclusive Remedy.**  This settlement shall be the sole and exclusive remedy for any and all Released Claims against the Released Parties.  Each Class Member shall be barred from initiating, asserting, or prosecuting the Released Claims.

**5.02**   **Class Release to IJL and the Released Parties.**  Effective upon Final Approval, Representative Plaintiffs, for themselves and as the representatives of the Settlement Classes, and on behalf of each Class Member who has not timely opted out and each of their respective agents, successors, heirs, assigns, and any other person who can claim by or through them in any manner, shall have fully, finally and forever irrevocably released, relinquished, and forever discharged with prejudice all Released Claims (as defined in Paragraph 1.15) against the Released Parties (as defined in

paragraph 1.16). Plaintiffs and Class Members expressly waive and relinquish all Released Claims or causes of action to the fullest extent permitted by law. Plaintiffs and the Class Members recognize that, even if they later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry of the Final Approval Order and accompanying Judgment, Plaintiffs and the Class Members fully, finally, and forever settle and release any and all of the Released Claims. The Parties acknowledge that the foregoing waiver and release was bargained for and is a material element of the Agreement. Plaintiffs and the Class Members covenant further not to file suit in derogation of this Agreement and the release provisions thereof. Plaintiffs and the Class Members shall be permanently barred from initiating, asserting, or prosecuting any and all released claims against IJL and the Released Parties to the extent the claims being asserted are released and barred by this Agreement, provided, however, that this Class Release shall not extend to any Non-party Franchisee that is not a party to this Action to the extent that such Non-party Franchisee fails to honor a voucher presented to it pursuant to the terms of this Agreement.

## VI.    CONFIRMATORY INFORMATION

**6.01    Affirmation of Accuracy.**  IJL represents and warrants that its responses to Representative Plaintiffs' pre-settlement inquiries are true and accurate based upon IJL's investigation of the matters asserted herein.

## VII.    MISCELLANEOUS PROVISIONS

**7.01    Settlement Purpose of Agreement.**  This Agreement is for settlement purposes only, and neither the fact of, nor any provision contained in this Agreement or its attachments, not any action taken hereunder shall constitute, be construed as, or be admissible in evidence as, any admission of the validity of any claim, defense or any fact alleged by any of the Parties in the Action or in any proceeding or subsequently filed action or any wrongdoing, fault, violation of law, or liability of any kind on the part of any party, or admission of any party of any claim, defense or allegation made in the Action or any other action. If the Court should for any reason fail to approve this Agreement substantially in the form agreed upon by the Parties, decline to enter the Settlement Order and Judgment, or impose any condition to approval of the settlement to which the Parties do not consent, or if the Settlement Order and Judgment is reversed on appeal or rendered void, than (a) this agreement shall be considered null and void, (b) neither this Agreement nor any related negotiations shall be of any force or effect, and (c) all Parties to this Agreement shall stand in the same position, without

prejudice, as if the Agreement has been neither entered into nor filed with the Court.  Invalidation of any portion of this Agreement shall invalidate this Agreement in its entirety unless the Parties agree in writing that the remaining provisions shall remain in full force and effect.

7.02    **Cooperation.**  The Parties and their counsel will cooperate fully in the process of seeking settlement approval.  IJL shall have no obligation to alter the terms of the settlement to respond to any objections, without regard to the nature or source of the objection.  Class Counsel warrant and agree that they will take all steps necessary to obtain and implement Final Approval of this Agreement, to minimize the number of opt-outs from the settlement, to defend the Settlement Order and Final Judgment through all stages of any appeals that may be taken, to give IJL full and final peace from further prosecution of the Released Claims, and to give Class Members the benefits they enjoy under this Agreement.

7.03    **Governing Law.**  This Agreement is intended to, and shall be governed by, the laws of the State of New York, without regard to its rules regarding conflicts of laws.

7.04    **Entire Agreement.**  The terms and conditions set forth in this Agreement constitute the complete and exclusive statement of the agreement between the Parties relating to the subject matter of this Agreement, superseding all previous negotiations and understandings, whether oral or in writing, express or implied, and may not be contradicted by evidence of any prior or contemporaneous agreement.  Any modification of the Agreement that may adversely affect Class Members' substantive rights must be in writing and signed by the Representative Plaintiffs and IJL; any modification of the Agreement must be in writing and signed by Class Counsel and IJL.

7.05    **Construction of Agreement.**  Counsel for all Parties participated in and considered the terms and drafts of this Agreement, and have mutually agreed to the terms and drafting of this Agreement, after extensive negotiations.  The Agreement shall be construed according to the fair intent of the language taken as a whole, and not for or against any party.

7.06    **Binding Effect.**  This Agreement shall be binding upon and inure the benefit of the Parties hereto and their respective heirs, successors and assigns.

7.07    **Waiver.**  The waiver by one party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

**7.08**    **Effectiveness of Agreement; Counterparts.**  This Agreement shall become effective upon its execution by all of the persons for whom signature spaces have been provided below.  The Parties and their counsel may execute this agreement in counterparts (any one or all of which may be facsimile or email copies), and execution in counterparts shall have the same force and effect as if all signatories had signed the same document.

**7.09**    **Use and Retention of Information.**  The personally identifying information concerning any and all Eligible Claimants including their names, addresses and corresponding Distribution Payments, and any claim forms submitted under Paragraph 4.02 may be used only for purposes of implementing this Agreement.

**7.10**    **Continuing Jurisdiction.**  The Court shall retain exclusive and continuing jurisdiction over this Agreement and over all Parties and Class Members to interpret, effectuate, enforce, and implement this Agreement including, but not limited, to orders enjoining Class Members from prosecuting the Released Claims after the Agreement has been fully performed.  The Court shall have exclusive jurisdiction to resolve any disputes involving or pertaining to this Agreement, subject to the dispute resolution mechanism set forth in paragraph 4.07.

**7.11**    **Authority.**  Each individual who executes this Agreement represents and warrants that he or she has authority to enter into this Agreement on behalf of the party for which that individual signs including but not limited to the authority of Class Counsel to execute and perform this Agreement on behalf of Plaintiffs and the National Class and the New York Class subject to the approval of the Court.

**7.12**    **Assignment; Third Party Beneficiaries.**  None of the rights, commitments, or obligations recognized under this Agreement may be assigned by any member of the Settlement Classes without the express written consent of the Parties.   The representations, warranties, covenants, and agreements contained in this Agreement are for the sole benefit of the Parties and shall not be construed to confer any right or to afford any remedy to any other person.

**7.13**    **Communications.**   Any non-privileged and non-work-product-protected communications to the Parties relating to this Agreement shall be sent to Balestriere Fariello, on behalf of Plaintiffs and the Class, and to Lewis Brisbois Bisgaard & Smith LLP, attention: Peter T. Shapiro, on behalf of IJL.

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

Brad Berkowitz
Representative Plaintiff for the New York Class
Dated: 1/12/16

_____

Lisa Bruno
Representative Plaintiff for the National Class
Dated:

_____

Janeen Cameron
Representative Plaintiff for the National Class
Dated:

_____

Karen Malak-Rocush
Representative Plaintiff for the National Class
Dated:

_____

James Tortora
Representative Plaintiff for the National Class
Dated:

It's Just Lunch International, Inc.

_____

By: Melissa Brown, CEO
Dated:

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

_____
Brad Berkowitz
Representative Plaintiff for the New York Class
Dated:

_____
Lisa Bruno
Representative Plaintiff for the National Class
Dated:

_____
Janeen Cameron
Representative Plaintiff for the National Class
Dated:

_____
Karen Malak-Rocush
Representative Plaintiff for the National Class
Dated:

_____
James Tortora
Representative Plaintiff for the National Class
Dated:

It's Just Lunch International, Inc.

_____
By: Melissa Brown, CEO
Dated:

4835-4310-7369.1

23

IN WITNESS HEREOF the undersigned, being duly authorized, have caused Agreement to be executed on the dates shown below.

_____

Brad Berkowitz
Representative Plaintiff for the New York Class
Dated:

_____

Lisa Bruno
Representative Plaintiff for the National Class
Dated:

_____

Janeen Cameron
Representative Plaintiff for the National Class
Dated:

_____

Karen Malak-Rocush
Representative Plaintiff for the National Class
Dated:

_____

James Tortora
Representative Plaintiff for the National Class
Dated:

It's Just Lunch International, Inc.

_____

By:  Melissa Brown, CEO
Dated:

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

_____
Brad Berkowitz
Representative Plaintiff for the New York Class
Dated:


_____
Lisa Bruno
Representative Plaintiff for the National Class
Dated:


_____
Janeen Cameron
Representative Plaintiff for the National Class
Dated:


_____
Karen Malak-Rocush
Representative Plaintiff for the National Class
Dated: 1/13/2016


_____
James Tortora
Representative Plaintiff for the National Class
Dated:


It's Just Lunch International, Inc.


_____
By:  Melissa Brown, CEO
Dated:

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

_____
Brad Berkowitz
Representative Plaintiff for the New York Class
Dated:


_____
Lisa Bruno
Representative Plaintiff for the National Class
Dated:


_____
Janeen Cameron
Representative Plaintiff for the National Class
Dated:


_____
Karen Malak-Rocush
Representative Plaintiff for the National Class
Dated:

_____
James Tortora
Representative Plaintiff for the National Class
Dated:


It's Just Lunch International, Inc.


_____
By:  Melissa Brown, CEO
Dated:

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

_____

Brad Berkowitz
Representative Plaintiff for the New York Class
Dated:


_____

Lisa Bruno
Representative Plaintiff for the National Class
Dated:


_____

Janeen Cameron
Representative Plaintiff for the National Class
Dated:


_____

Karen Malak-Rocush
Representative Plaintiff for the National Class
Dated:


_____

James Tortora
Representative Plaintiff for the National Class
Dated:


It's Just Lunch International, Inc.

_____

By:  Melissa Brown, CEO
Dated:  1/14/2016

IJL Midwest Denver LLC

By: _____ , President
Dated: 1/13/16

FGH Associates LLC

By: _____ , President
Dated:

IJL Midwest Denver LLC

By: _____ , President
Dated:

FGH Associates LLC

By: _Bill Hoffman_____ , President
Dated: 1-13-16

# Exhibit A

## STATE STATUTES OF LIMITATIONS ON COMMON LAW FRAUD CLAIMS

| State Where Contract Was Signed | Earliest Qualifying Date |
|---|---|
| Alabama | October 15, 2005 |
| Alaska | October 15, 2005 |
| Arizona | October 15, 2004 |
| Arkansas | October 15, 2004 |
| California | October 15, 2004 |
| Colorado | October 15, 2004 |
| Connecticut | October 15, 2004 |
| Delaware | October 15, 2004 |
| District of Columbia | October 15, 2004 |
| Florida | October 15, 2003 |
| Georgia | October 15, 2003 |
| Hawaii | October 15, 2001 |
| Idaho | October 15, 2004 |
| Illinois | October 15, 2002 |
| Indiana | October 15, 2001 |
| Iowa | October 15, 2002 |
| Kansas | October 15, 2005 |
| Kentucky | October 15, 2002 |
| Louisiana | October 15, 2006 |
| Maine | October 15, 2001 |
| Maryland | October 15, 2004 |
| Massachusetts | October 15, 2004 |
| Michigan | October 15, 2001 |
| Minnesota | October 15, 2001 |
| Mississippi | October 15, 2004 |

| State Where Contract Was Signed | Earliest Qualifying Date |
| --- | --- |
| Missouri | October 15, 2001 |
| Montana | October 15, 2005 |
| Nebraska | October 15, 2003 |
| Nevada | October 15, 2004 |
| New Hampshire | October 15, 2004 |
| New Jersey | October 15, 2001 |
| New Mexico | October 15, 2003 |
| New York | October 15, 2001 |
| North Carolina | October 15, 2004 |
| North Dakota | October 15, 2001 |
| Ohio | October 15, 2003 |
| Oklahoma | October 15, 2005 |
| Oregon | October 15, 2005 |
| Pennsylvania | October 15, 2005 |
| Rhode Island | October 15, 2001 |
| South Carolina | October 15, 2004 |
| South Dakota | October 15, 2001 |
| Tennessee | October 15, 2004 |
| Texas | October 15, 2003 |
| Utah | October 15, 2004 |
| Vermont | October 15, 2001 |
| Virginia | October 15, 2005 |
| Washington | October 15, 2004 |
| West Virginia | October 15, 2005 |
| Wisconsin | October 15, 2001 |
| Wyoming | October 15, 2003 |

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CHRISTINE RODRIGUEZ, SANDRA BURGA, KAREN MALAK, JAMES TORTORA, LISA BRUNO, JANEEN CAMERON, KAREN McBRIDE, ANDREW WOOLF,** and **BRAD BERKOWITZ,** individually, and for all others similarly situated, | Index No.: 07-CV-9227 (SHS)(SN) |
| Plaintiffs, | **[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |
| –against– | |
| **IT'S JUST LUNCH INTERNATIONAL, IT'S JUST LUNCH, INC., HARRY and SALLY, INC, RIVERSIDE COMPANY, LOREN SCHLACHET, IJL NEW YORK CITY FRANCHISE, IJL ORANGE COUNTY FRANCHISE, IJL CHICAGO FRANCHISE, IJL PALM BEACH FRANCHISE, IJL DENVER FRANCHISE, IJL AUSTIN FRANCHISE, IJL LOS ANGELES-CENTURY CITY FRANCHISE,** and **DOES 1-136**, | |
| Defendants. | |

The Plaintiffs' Motion for Preliminary Approval of Settlement (the "Motion") came before this Court on January 13, 2016. The Court, having considered the proposed Settlement Agreement and the exhibits attached thereto (hereafter, collectively, the "Settlement Agreement"), having considered the Motion and supporting documents, and good cause appearing, HEREBY ORDERS THE FOLLOWING:

1.      Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court grants preliminary approval of the Settlement as set forth in the Settlement Agreement, solely for purposes of implementing the Parties' Settlement Agreement, and finds the terms to be within the range of reasonableness of a settlement that ultimately could be granted approval by the Court at the end of the final Fairness Hearing.  The Settlement Agreement is the result of arm's-length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues in this case in particular.

2.      A final fairness hearing on the question of whether the proposed Settlement should be finally approved as fair, reasonable, and adequate is scheduled in this Court, located at 500 Pearl Street, Room 23A, New York, New York, 10007, on _____, 2016 at _____.

3.      The motion for award of attorney's fees, expenses, and class representative service award shall be filed within 60 days from the date of this Order, on _____, 2016.

4.      The Court approves, as to form and content, the Short-Form-Notice of Proposed Class Action Settlement ("Short-Form Notice"), Settlement Claim Form ("Claim Form"), and the downloadable Long-Form Notice of Proposed Class Action Settlement ("Long-Form Notice"), attached as exhibits to the Settlement Agreement.

5.      The Short-Form Notice will be distributed as set forth in the Settlement Agreement no later than 30 days after the date of this Order (the "Notice Date").

6.      The deadline for objections to the terms of the Settlement Agreement and

the deadline for a member of one of the classes bound by the Settlement Agreement ("Class Members") to opt out ("Opt-Out Period") will be 75 days after the date of this Order, on _____, 2016.

7.     On or before the Notice Date, the downloadable Claim Form and Long-Form Notice will be made available on the website established under the Settlement Agreement for administration of the class action.

8.     The Court finds that the forms of notice and methods of giving notice to Class Members regarding the pendency of the action and of this Settlement, constitute the best notice practicable under the circumstances and constitute valid, due, and sufficient notice to all members.

9.     The Court further approves the procedures for Class Members to participate in, opt out of, or object to the Settlement, as set forth in the Settlement Agreement and the various forms of notice.

10.    To validly object to the Settlement Agreement, an objecting Class Member must provide the following information in the written objection: (i) the objecting Class Member's full name, current address, and current telephone number; (ii) documentation sufficient to establish membership in the Class; (iii) a statement of the position(s) the objecting Class Member wishes to assert, including the factual and legal grounds for the position; (iv) provide copies of any other documents that the objector wishes to submit in support of his or her position; (v) whether the objecting Class Member intends to appear at the Fairness Hearing with or without separate counsel; and (vi) if the objecting Class Member intends to appear at the Fairness Hearing with

separate counsel, the identities of all attorneys who will separately represent the objecting Class Member.

11.     The procedures and requirements for filing objections in connection with the Fairness Hearing are intended to ensure the efficient administration of justice and the orderly presentation of any Class Member's objection to the Settlement Agreement, in accordance with the due process rights of all Class Members.

12.     Pending the Fairness Hearing, all proceedings in this action, other than proceedings necessary to carry out or enforce the terms and conditions of the Settlement Agreement and this Order, are stayed.

13.     Counsel for the parties are hereby authorized to use all reasonable procedures in connection with the administration of the Settlement which are not materially inconsistent with either this Order of the terms of the Settlement Agreement.

14.     To facilitate administration of the Settlement pending final approval, the Court hereby enjoins all Class Members from filing or prosecuting any claims, suits, or administrative proceedings regarding claims released by the Settlement unless and until such Class Members have filed valid requests for exclusion with the Claims Administrator and the time for filing claims with the Claims Administrator has elapsed.

15.     The Court orders the following Implementation Schedule for further

proceedings:

| Event | Timing |
|---|---|
| Notice Date: (i) last day for Defendants or claims administrator to email and/or mail class notice to class members; (ii) last day to make settlement website, including downloadable claim form and Long-Form Notice, available to the public | 30 days after the date of this Order, on _____, 2016 |
| Last day for class counsel to file motion for award of attorney's fees and expenses, and class representative service award. | 60 days after the date of this Order, on _____, 2016 |
| Close of Opt-Out Period: (i) last day for class members to request exclusion; (ii) last day for class members to submit objections. | 75 days after the date of this Order, on _____, 2016 |
| Fairness Hearing | At least 90 days after the date of this Order, on _____, 2016 at _____ |

IT IS SO ORDERED.

Date:_____, 2016

_____
Hon. Sidney H. Stein
United States District Judge

# Exhibit C

United States District Court for the Southern District of New York
*Rodriguez et al. v. It's Just Lunch et al.*, Southern District of New York, No. 07-CV-9227 (SHS)(SN)

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

**If you signed a membership contract and joined It's Just Lunch on or after October 15, 2001 and if you did not obtain a complete refund of any membership fees paid or sign any releases of any claims in favor of IJL and/or a franchisee, please read this notice carefully. A proposed class action settlement may affect your rights.**

*A judge of the Southern District of New York authorized this Notice.*
*This is not a solicitation from a lawyer.*

Under the proposed settlement, It's Just Lunch has agreed to provide certain benefits to Class Members, including but not limited to vouchers with a value of approximately $450, subject to the limitations described more fully in the detailed notice of the proposed settlement, accessible online at www.ijlclassaction.com, or available by calling the Claims Administrator toll free at 844-245-3771. If you receive notice of this Settlement, you may obtain vouchers by submitting a claim form at www.ijlclassaction.com following Final Judicial Approval of the Settlement.

### TERMS OF THE SETTLEMENT

The terms of the Settlement are as listed below:

- IJL is committing to a client pledge on its website and in its client agreements to include a commitment to honor certain specified preferences of its clients for matches;
- Members of both the New York Class and the National Class who do not opt out and who submit valid Claims Forms will receive vouchers entitling them to receive one free date arranged by IJL, except at certain locations identified below at which clients will receive two free dates;
- A $4.75 million fund will be created to cover costs and awards, and all members of the New York Class who do not opt out will receive an award of $100;
- Members of the Class who do not timely opt out release IJL and the Released Parties from any claims related to or arising from contracts between members of the Class and IJL or claims arising from the facts that form the basis of this action;
- Class Counsel will apply for an award of attorney's fees and expenses, respectfully reserves the right to seek additional fees following the final distribution, and will move for a service fee of $10,000 for each Plaintiff, all of which will be paid by IJL from the fund being created;
- Class Counsel and IJL have agreed to engage the services of Heffler Claims Group to handle the administration of benefits.

**QUESTIONS? VISIT WWW.IJLCLASSACTION.COM**
**OR CALL TOLL FREE AT 844-245-3771**

## CLASS DEFINITIONS AND AWARDS

The certified class includes all clients who have signed a membership contract and joined It's Just Lunch on or after October 15, 2001, if the clients did not obtain a refund of their payments to It's Just Lunch (the "National Claim") and if they fall within certain time limits set by law. There are approximately 130,000 members in this class. Each eligible Class Member who submits a valid claim form by _____, 2016  (an "Eligible Claimant"), will receive a voucher that provides It's Just Lunch's matching services for one date, provided It's Just Lunch can identify a match for the Eligible Claimant. If the voucher is redeemed at the following locations, the voucher holder will receive two dates: Austin/San Antonio, Cleveland (including Akron, Canton, Massillon, and Youngstown), Houston, Milwaukee (including Madison, Marquette, and Wausau), and Seattle (including Bellevue). When redeeming a voucher, a Class Member may submit to IJL different or modified criteria than submitted when the Class Member originally purchased a membership with IJL. The vouchers will be made available to Eligible Claimants via download from the website www.ijlclassaction.com. An Eligible Claimant who does not wish to utilize the voucher from IJL may transfer the voucher to a non-Class Member who is already a member of IJL or who purchases a membership with IJL.

The certified class also includes all clients in the State of New York who signed a membership contract with It's Just Lunch on or after October 15, 2001 and who paid more than $1,000 for a year's worth of services at the time of initial contracting and who did not obtain a refund of the amounts paid to It's Just Lunch (the "New York Claim"). There are approximately 2,000 members in this New York-specific class. In addition to a voucher, each eligible Class Member who purchased a year's worth of It's Just Lunch's services for greater than $1,000 in New York at the time of initial contracting (a "New York Eligible Claimant") will receive a direct payment of $100 from It's Just Lunch. A New York Eligible Claimant does not need to submit a claim form to receive payment but does need to submit a claim form to receive a voucher.

## YOU HAVE THE RIGHT TO OPT OUT

You have the right to ask to be excluded from the Settlement. If you do not want the benefits of this Settlement, and you want to keep any right you may have to pursue your own lawsuit against It's Just Lunch if you choose, then you must take steps to remove yourself from the Class. This is called excluding yourself and is sometimes referred to as "opting out" of the Class. To exclude yourself from the Settlement, you must send a signed letter by mail stating that you want to "exclude yourself" or "opt out" of the It's Just Lunch Settlement. Please be sure to include your name, address, telephone number, and your signature. Alternatively, you may complete the Opt Out Form available on the website www.ijlclassaction.com. You cannot exclude yourself by phone, fax, or email, and must mail your exclusion or opt out request postmarked no later than _____, 2016 to Rodriguez v. It's Just Lunch c/o Heffler Claims Group, P.O. Box 60072, Philadelphia, Pennsylvania, 19102-0072.

**You must act on or before _____, 2016** to request exclusion from the settlement or object to the proposed settlement. **If you do not request exclusion from the settlement before _____, 2016 then you will be deemed to have released It's Just Lunch from all claims described in the detailed notice.**

## <u>YOU HAVE THE RIGHT TO OBJECT</u>

You have the right to tell the Court if you have an objection to the Settlement and the right to ask to speak in Court about the fairness of the Settlement.  You can do this only if you do not exclude yourself.

The Court will hold a Fairness Hearing on _____, 2016 at _____ at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl St., Rm. 23A, New York, New York 10007-1312.  At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate.  If you believe the proposed Settlement terms are unfair or inadequate, you may object to the Settlement, either personally or through an attorney at your own expense, by filing a written objection with the Court, and mailing a copy of that objection to Class Counsel and Defense Counsel at the below addresses.  All objections must be signed and must include your name, address, telephone number and the name of the Action, *Rodriguez et al. v. It's Just Lunch et al.*, No. 07-CV-9227 (SHS)(SN).  All objections must be filed with the Court and postmarked to Class Counsel and Defense Counsel no later than _____, 2016.  Your objection should clearly explain why you object and whether you intend to appear at the hearing.

Where to mail your written objections:

| Court | Class Counsel | Defense Counsel |
|---|---|---|
| Clerk of Court<br>Daniel Patrick Moynihan<br>United States Courthouse<br>500 Pearl St.<br>New York, New York<br>10007-1312 | Balestriere Fariello<br>It's Just Lunch Class Action<br>225 Broadway, 29th Floor<br>New York, New York 10007 | Peter Shapiro<br>Lewis Brisbois Bisgaard &<br>Smith LLP<br>77 Water Street, Suite 2100<br>New York, New York 10005 |

If there are any such objections, the Court will consider them at the Fairness Hearing. The Court will also listen to people who have asked to speak at the hearing and who do speak. You are welcome to attend the hearing at your own expense, but do not have to come, regardless of whether or not you submit an objection.

You can obtain the detailed notice of the proposed settlement, including further descriptions of your legal rights and how to opt out or object by visiting the settlement website: www.ijlclassaction.com or calling the Claims Administrator toll free at 844-245-3771.  You may also obtain more information by contacting Class Counsel, Balestriere Fariello, at 212-374-5400.

Exhibit D

United States District Court for the Southern District of New York
*Rodriguez et al. v. It's Just Lunch et al.*, Southern District of New York, No. 07-CV-9227 (SHS)(SN)

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

**If you signed a membership contract and joined It's Just Lunch on or after October 15, 2001 and if you did not obtain a complete refund of any membership fees paid or sign any releases of any claims in favor of IJL and/or a franchisee, please read this notice carefully. A proposed class action settlement may affect your rights.**

*A judge of the Southern District of New York authorized this Notice.*
*This is not a solicitation from a lawyer.*

- Certain clients of It's Just Lunch ("Plaintiffs") have filed a lawsuit against It's Just Lunch and certain affiliated companies (collectively, "It's Just Lunch" or "IJL"). Plaintiffs did not file a lawsuit against all affiliates of It's Just Lunch and some It's Just Lunch franchises were not named in the action. The Plaintiffs allege that, in charging greater than $1,000 for one year's worth of services in New York, It's Just Lunch has (i) committed deceptive or unfair practices in violation of New York General Business Law §§ 349 and 394-c on or after October 15, 2001; and (ii) unjustly enriched itself by charging clients greater than $1,000 in New York. The Plaintiffs also allege that It's Just Lunch fraudulently induced clients who joined on or after October 15, 2001 into signing a membership contract.

- It's Just Lunch denies all of the Plaintiffs' allegations and denies any wrongdoing.

- The certified class includes all clients who have signed a membership contract and joined It's Just Lunch on or after October 15, 2001, if the clients did not obtain a refund of their payments to It's Just Lunch (the "National Claim") and if they fall within certain time limits set by law.

- The certified class also includes all clients in the State of New York who signed a membership contract with It's Just Lunch on or after October 15, 2001 and who paid more than $1,000 for a year's worth of services at the time of initial contracting and who did not obtain a refund of the amounts paid to It's Just Lunch (the "New York Claim").

- Not all clients will have both the National Claim and the New York Claim as defined above.

- Your legal rights are affected whether you act or don't act. Please read this Notice carefully, continued on the following pages.

**QUESTIONS? VISIT WWW.IJLCLASSACTION.COM**
**OR CALL TOLL FREE AT 844-245-3771**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM TO OBTAIN VOUCHERS ISSUED UNDER SETTLEMENT** | The only way to get a voucher under the Settlement is to submit a valid Claim Form as described below.  The benefits of the Settlement are outlined in Questions 7-8 of this notice. |
| **EXCLUDE YOURSELF** | You have the right to ask to be excluded from the Settlement.  If you do so, you will not be entitled to any payment under the Settlement, but you may pursue your own lawsuit against It's Just Lunch if you so choose.  This is further explained in Questions 12-15 below. |
| **OBJECT** | You have the right to tell the Court if you have an objection to the Settlement.  You can do this only if you don't exclude yourself.  This is further explained in Questions 18-19 below. |
| **GO TO THE HEARING** | You have the right to ask to speak in Court about the fairness of the Settlement.  You can do this only if you don't exclude yourself and if you submit a written objection to the Settlement with the Court before the date of the hearing regarding final approval of the Settlement.  This is further explained in Questions 20-22 below. |
| **DO NOTHING** | If you do nothing, you will not receive a voucher and will give up your rights to assert any claims with respect to the issues raised in this action against It's Just Lunch.  You may receive payment, but only if you have a New York Claim. |

- This Notice explains your legal rights and options—**and the deadlines to exercise them**.

- The Court must decide whether to approve the Settlement as part of the process described in this Notice.  Benefits of the Settlement will only be made if the court approves the Settlement.

## WHAT THIS NOTICE CONTAINS

### Table of Contents

Basic Information ........................................................................................................4

1. Why Did I Get A Notice? ....................................................................................4

2. What Is The Lawsuit About? ...............................................................................4

3. Why Is There A Settlement? ...............................................................................4

Who Is In The Settlement? ............................................................................................5

4. How Do I Know If I Am Part Of The Settlement? ...............................................5

5. Who Is Not Included In The Class? .....................................................................7

**QUESTIONS? VISIT WWW.IJLCLASSACTION.COM**
**OR CALL TOLL FREE AT 844-245-3771**

6.  I Am Still Not Sure If I Am Included. .................................................................7

The Settlement Benefits—What You Get ...................................................................7

7.  What Does The Settlement Provide? ................................................................7

8.  What Can I Get From The Settlement? ............................................................8

How You Get Benefits If You Are Eligible: ...............................................................8

Submitting A Claim Form ...........................................................................................8

9.  How Can I Get Benefits If I Am Eligible? .......................................................8

10. When Would I Get My Benefits? .....................................................................9

11. What Am I Giving Up If I Remain In The Class? ............................................9

Excluding Yourself From The Settlement ..................................................................10

12. How Do I Get Out Of The Settlement? ..........................................................10

13. What Is The Effect If I Exclude Myself From This Settlement? ...................10

14. If I Don't Exclude Myself, Can I Sue Defendant For The Same Thing Later? ...................10

15. If I Exclude Myself, Can I Get A Payment Or Voucher From This Settlement? ...............10

The Lawyers Representing You ..................................................................................11

16. Do I Have A Lawyer In The Case? .................................................................11

17. How Will The Lawyers Be Paid? ...................................................................11

Objecting To The Settlement .....................................................................................11

18. How Do I Tell The Court If I Don't Like The Settlement? ............................11

19. What's The Difference Between Objecting And Excluding Myself From This Settlement? ......12

The Court's Fairness Hearing .....................................................................................12

20. When And Where Will The Court Decide Whether To Approve The Settlement? ...........12

21. Do I Have To Come To The Hearing? ............................................................12

22. May I Speak At The Hearing? ........................................................................12

If You Do Nothing ......................................................................................................13

23. What Happens If I Do Nothing At All? ..........................................................13

Getting More Information ...........................................................................................13

24. Are There More Details About The Settlement? ............................................13

25. How Do I Get More Information? ...................................................................13

**QUESTIONS? VISIT WWW.IJLCLASSACTION.COM**
**OR CALL TOLL FREE AT 844-245-3771**

| BASIC INFORMATION |
|---|

## 1. WHY DID I GET A NOTICE?

You received a notice by email if It's Just Lunch's records show that you are a potential Class Member and if the records included the email address to which the notice was sent. The email notice referred you to an informational website which included this more detailed Notice. You received a notice by mail if It's Just Lunch's records show that you are potential Class Member and if the records do not include a valid email address, but do include a mailing address.

The Court ordered that a Notice be sent to you because you have the right to know about a proposed Settlement of the class action against It's Just Lunch and about your options, before the Court decides whether to approve the Settlement. If the Court approves the Settlement, It's Just Lunch or an administrator appointed by the Court will distribute the benefits allowed by the Settlement.

This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for the benefits, and how to get them. Please read this Notice carefully.

The United States District Court for the Southern District of New York has jurisdiction over this proposed Settlement. The people who sued are called the Plaintiffs and the companies they sued, collectively referred to as It's Just Lunch for the purposes of this Notice, are the Defendants.

## 2. WHAT IS THE LAWSUIT ABOUT?

A class action is a lawsuit in which the claims and rights of many people are decided in a single court proceeding. A representative plaintiff or plaintiffs, also known as a "class representative" or "class representatives," asserts claims on behalf of a group of similarly situated people.

In this case, Representative Plaintiffs filed a proposed class action against It's Just Lunch on October 15, 2007. The case is titled *Rodriguez et al. v. It's Just Lunch et al.*, No. 07-CV-9227 (SHS) (the "Action"). In the Action, Representative Plaintiffs claimed that that It's Just Lunch violated New York law and unjustly enriched itself by charging greater than $1,000 for one year's worth of its services in New York. The Plaintiffs also claimed that It's Just Lunch fraudulently induced clients into signing a membership contract.

It's Just Lunch denies all of the Plaintiffs' allegations and denies any wrongdoing. The Settlement is not an admission of wrongdoing.

## 3. WHY IS THERE A SETTLEMENT?

The Court did not decide in favor of Plaintiffs or It's Just Lunch. Instead, both sides agreed to a Settlement. The Settlement is the result of arm's-length negotiations between Plaintiffs and Defendants. Both sides agree that in light of the risks and expenses of continued litigation, this

Settlement is fair and appropriate under the circumstances.  That way, they avoid the cost and risks of a trial, and Settlement benefits go to the Class Members.

<table><tr><td>**WHO IS IN THE SETTLEMENT?**</td></tr></table>

To see if you may qualify for the benefits of the settlement, you first have to determine whether you are a Class Member.

### 4.   HOW DO I KNOW IF I AM PART OF THE SETTLEMENT?

For settlement purposes, the United States District Court has decided that everyone who fits one or both of the following categories is a Class Member: (i) all individuals who became clients of It's Just Lunch in New York and who, on or after October 15, 2001, paid more than $1,000 for a year's worth of services at the time of initial contracting; and (ii) all people who signed a membership contract with It's Just Lunch and purchased It's Just Lunch's services in one of the states listed below on or after that state's corresponding earliest qualifying date, provided the person did not receive a full refund and/or did not release his or her claims against It's Just Lunch or one of its franchisees.  The last qualifying date for all individuals is _____, 2016.  Anyone who became an IJL client after _____, 2016 is not a Class Member.

| State Where Contract Was Signed | Earliest Qualifying Date |
|---|---|
| Alabama | October 15, 2005 |
| Alaska | October 15, 2005 |
| Arizona | October 15, 2004 |
| Arkansas | October 15, 2004 |
| California | October 15, 2004 |
| Colorado | October 15, 2004 |
| Connecticut | October 15, 2004 |
| Delaware | October 15, 2004 |
| District of Columbia | October 15, 2004 |
| Florida | October 15, 2003 |
| Georgia | October 15, 2003 |
| Hawaii | October 15, 2001 |
| Idaho | October 15, 2004 |
| Illinois | October 15, 2002 |
| Indiana | October 15, 2001 |

| State Where Contract Was Signed | Earliest Qualifying Date |
|---|---|
| Iowa | October 15, 2002 |
| Kansas | October 15, 2005 |
| Kentucky | October 15, 2002 |
| Louisiana | October 15, 2006 |
| Maine | October 15, 2001 |
| Maryland | October 15, 2004 |
| Massachusetts | October 15, 2004 |
| Michigan | October 15, 2001 |
| Minnesota | October 15, 2001 |
| Mississippi | October 15, 2004 |
| Missouri | October 15, 2001 |
| Montana | October 15, 2005 |
| Nebraska | October 15, 2003 |
| Nevada | October 15, 2004 |
| New Hampshire | October 15, 2004 |
| New Jersey | October 15, 2001 |
| New Mexico | October 15, 2003 |
| New York | October 15, 2001 |
| North Carolina | October 15, 2004 |
| North Dakota | October 15, 2001 |
| Ohio | October 15, 2003 |
| Oklahoma | October 15, 2005 |
| Oregon | October 15, 2005 |
| Pennsylvania | October 15, 2005 |
| Rhode Island | October 15,2001 |
| South Carolina | October 15, 2004 |
| South Dakota | October 15, 2001 |
| Tennessee | October 15, 2004 |

| State Where Contract Was Signed | Earliest Qualifying Date |
|---|---|
| Texas | October 15, 2003 |
| Utah | October 15, 2004 |
| Vermont | October 15, 2001 |
| Virginia | October 15, 2005 |
| Washington | October 15, 2004 |
| West Virginia | October 15, 2005 |
| Wisconsin | October 15, 2001 |
| Wyoming | October 15, 2003 |

### 5.   WHO IS NOT INCLUDED IN THE CLASS?

The Class does not include anyone who became a client of It's Just Lunch and purchased It's Just Lunch's services before October 15, 2001.  The Class does not include anyone who has signed any releases of claims in favor of It's Just Lunch and/or any of the affiliated companies who are parties to this class action and/or who received a complete refund of the amounts paid to join It's Just Lunch.  The Class does not include anyone who does not fit at least one of the categories detailed in Question 4 above.

### 6.   I AM STILL NOT SURE IF I AM INCLUDED.

If you are still not sure whether you are included, you can contact the Claims Administrator through the website www.ijlclassaction.com.  Do not contact the Court.

| THE SETTLEMENT BENEFITS—WHAT YOU GET |
|---|

### 7.   WHAT DOES THE SETTLEMENT PROVIDE?

Each eligible Class Member who submits a valid claim form by _____, 2016 (60 days from the Fairness Hearing described in Question 20) (an "Eligible Claimant"), will receive a voucher that provides It's Just Lunch's matching services for one date, provided It's Just Lunch can identify a match for the Eligible Claimant.  However, if the voucher is redeemed at the following locations, the voucher holder will receive two dates: Austin/San Antonio, Cleveland (including Akron, Canton, Massillon, and Youngstown), Houston, Milwaukee (including Madison, Marquette, and Wausau), and Seattle (including Bellevue).  When redeeming a voucher, a Class Member may submit to IJL different or modified criteria than submitted when the Class Member originally purchased a membership with IJL.  The vouchers will be made available to Eligible Claimants via download from the website www.ijlclasssaction.com.  Vouchers are transferable to a non-Class Member for no payment or other consideration of any kind on a one-time basis, provided that the transferee is a member of IJL or purchases a new IJL membership.

In addition to a voucher, each eligible Class Member who purchased a year's worth of It's Just Lunch's services for greater than $1,000 in New York at the time of initial contracting (a "New York Eligible Claimant") will receive a payment of $100 from It's Just Lunch.  A New York Eligible Claimant does not need to submit a claim form to receive payment but does need to submit a claim form to receive a voucher.

Additionally, when joining It's Just Lunch, clients may specify, and It's Just Lunch must honor, preferences for matches who fall within a declared age range, and/or identify with a specific religious tradition or identify as non-religious, and/or those with or without children. Clients may agree to waive these preferences for specific matches, allowing It's Just Lunch to arrange dates with persons who may not be within the client's preferred age range, religion, or parental status.  It's Just Lunch has also agreed to provide clients with a quality of services pledge, displayed on IJL's website.

### 8.  WHAT CAN I GET FROM THE SETTLEMENT?

It's Just Lunch will provide the following to all Class Members:

- A voucher redeemable for It's Just Lunch's matching services for  one date, if It's Just Lunch can identify a match.  If the voucher is redeemed at the following locations, the voucher holder will receive two dates: Austin/San Antonio, Cleveland (including Akron, Canton, Massillon, and Youngstown), Houston, Milwaukee (including Madison, Marquette, and Wausau), and Seattle (including Bellevue). Class members can transfer their vouchers to non-Class Members for no consideration on a one time basis provided that the transferee is a member of IJL or purchases a membership with IJL.
- Changes to its business practices that address the practices complained of by the Class Representatives, including a pledge of quality and to honor certain preferences specified by its clients.

It's Just Lunch will additionally provide the following to New York Eligible Claimants:

- A $100 payment.

| HOW YOU GET BENEFITS IF YOU ARE ELIGIBLE: SUBMITTING A CLAIM FORM |
|---|

### 9.  HOW CAN I GET BENEFITS IF I AM ELIGIBLE?

To obtain a voucher, you must complete and submit a valid Claim Form.  Claims Forms can be submitted electronically at www.ijlclassaction.com or by downloading a Claim Form from the website and mailing your completed form to Rodriguez v. It's Just Lunch c/o Heffler Claims Group, P.O. Box 60072, Philadelphia, Pennsylvania, 19102-0072.  Read the instructions carefully, fill out the Claim form (answering all questions truthfully), and submit your form online no later than _____, 2016, or via mail postmarked by _____, 2016.  If you are a New York Eligible Claimant you do not need to submit a Claim Form to obtain payment, but you do need to submit a Claim Form to obtain a voucher.

**QUESTIONS? VISIT WWW.IJLCLASSACTION.COM**
**OR CALL TOLL FREE AT 844-245-3771**

8

**10. WHEN WOULD I GET MY BENEFITS?**

The Court will hold a hearing on _____, 2016 to decide whether to approve the Settlement.  If the Court approves the Settlement, after that there may be appeals.  It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  It also takes time for the Claim Forms to be processed.  Please be patient.

The proposed Settlement contemplates distributing benefits to Class Members 60 days from the date the Settlement becomes final.

**11. WHAT AM I GIVING UP IF I REMAIN IN THE CLASS?**

Unless you exclude yourself, you remain a Class Member, and that means that you can't sue, continue to sue, or be part of any other lawsuit against It's Just Lunch concerning the legal issues in this case.  If the Settlement is approved and becomes final and not subject to appeal, then you and all Class Members release all "Released Claims" against all "Released Parties."

"Released Claims" means any and all claims, rights (including rights to restitution or reimbursement), demands, actions, causes of action, suits, liens, damages, attorney's fees, obligations, contracts, liabilities, agreements, costs, expenses or losses of any nature, whether known or unknown, direct or indirect, matured or unmatured, contingent or absolute, existing or potential, suspected or unsuspected, equitable or legal, and whether under federal statutory law, federal common law or federal regulation, or the statutes, constitutions, regulations, ordinances, common law, or any other law of any and all states or their subdivisions, parishes or municipalities including but not limited to the District of Columbia that arise out of or relate in any way to the any of the claims asserted in the Complaint in the Action or the facts or circumstances relating to such claims, including, without limitation, any claim that IJL's performance under its contracts with members of the Settlement Classes or IJL's conduct in connection with the marketing of its services was unlawful, deceptive, misleading, fraudulent, inadequate, improper, negligent, grossly negligent, or breached any federal, state or local consumer fraud or similar laws.  For the avoidance of doubt, this release does not extend to claims having no relationship with the claims or facts in this litigation, by way of example only, alleged personal injury resulting from a visit to an IJL office.  In addition, with respect to Representative Plaintiffs only, "Released Claims" includes all claims arising, or that could arise in the future, out of any conduct or omissions occurring to the date of Preliminary Approval that might be attributable to IJL.

"Released Parties" means It's Just Lunch, and its affiliates, parents, direct and indirect subsidiaries, agents, insurers, and any company or companies under common control with any of them, and each of its franchisees or their respective predecessors, successors, past and present officers, directors, employees, agents, servants, accountants, attorneys, advisors, shareholders, representatives, partners, vendors, issuers, insurance carriers, and assigns, or anyone acting on their behalf.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want the benefits of this Settlement, and you want to keep any right you may have to sue or continue to sue the Released Parties on your own about the Released Claims, then you must take steps to remove yourself from the Class. This is called excluding yourself, and is sometimes referred to as "opting out" of the Class.

### 12. HOW DO I GET OUT OF THE SETTLEMENT?

To exclude yourself from the Settlement, you must send a signed letter by mail stating that you want to "exclude yourself" or "opt out" of the It's Just Lunch Settlement. Please be sure to include your name, address, telephone number, and your signature. Alternatively, you may complete the Opt Out Form available on the website www.ijlclassaction.com. You must mail your exclusion or opt out request postmarked no later than _____, 2016 to Rodriguez v. It's Just Lunch c/o Heffler Claims Group, P.O. Box 60072, Philadelphia, Pennsylvania, 19102-0072.

You cannot exclude yourself on the phone or by fax or email.

### 13. WHAT IS THE EFFECT IF I EXCLUDE MYSELF FROM THIS SETTLEMENT?

If you ask to be excluded, you will not receive payment or vouchers from this Settlement. If you engage It's Just Lunch's services, you will receive the benefit of the business practice changes that It's Just Lunch has agreed to implement as a result of this Settlement. If you ask to be excluded, you cannot object to the Settlement. You will not be legally bound by anything that happens in the Action. You may be able to sue (or continue to sue) It's Just Lunch in the future about the legal issues in this case.

### 14. IF I DON'T EXCLUDE MYSELF, CAN I SUE DEFENDANT FOR THE SAME THING LATER?

No. Unless you exclude yourself, you give up your right to sue It's Just Lunch and the other Released Parties for the claims that this Settlement resolves. You must exclude yourself from *this* Action to pursue your own lawsuit. Remember, your exclusion request must be postmarked on or before _____, 2016.

### 15. IF I EXCLUDE MYSELF, CAN I GET A PAYMENT OR VOUCHER FROM THIS SETTLEMENT?

No. If you exclude yourself, do not send in a Claim Form to ask for a voucher. If you are a New York Eligible Claimant and exclude yourself, you will not receive any payment. You may exercise any right you may have to sue, continue to sue, or be a part of a different lawsuit against It's Just Lunch and the other Released Parties.

**THE LAWYERS REPRESENTING YOU**

### 16. DO I HAVE A LAWYER IN THE CASE?

The Court appointed the law firm Balestriere Fariello to represent the Class Members. These lawyers are called Class Counsel.  You will not be charged for these lawyers' services. The Court will determine the amount of Class Counsel's fees and expenses, which will be paid from the funds provided for as part of the Settlement.

### 17. HOW WILL THE LAWYERS BE PAID?

Class Counsel will request from the Court an award of attorney's fees and expenses and for a service award for the Representative Plaintiffs.  The total amount sought for attorney's fees, costs, and expenses will not exceed $3,637,333.83.  The amount sought as a service award for the Representative Plaintiffs will not exceed $10,000.  If approved by the Court, Class Counsel will be paid from the fund created by It's Just Lunch as part of this Settlement (the "Monetary Fund") and managed by the Claims Administrator.  This Monetary Fund will be created when It's Just Lunch places $4.75 million in a trust bank account, and interest earned on this amount will become part of the fund.  In the event that there are any funds remaining in the Monetary Fund held in that account after all payments hereunder have been made to Class Counsel, the Representative Plaintiffs, Heffler, and the Eligible Claimants, Heffler shall distribute the balance in that bank account as a charitable donation to a 501(c)(3) certified charity as agreed upon by the Parties with the approval of the Court.  *You have the right to object to the requested fees and expenses and awards.*

Class Counsel will file their application for attorney's fees, expenses, and for the service award by no later than _____, 2016.  These papers will also be posted on the Settlement website (www.ijlclassaction.com).

**OBJECTING TO THE SETTLEMENT**

You can tell the Court that you don't agree with the Settlement or some part of it.

### 18. HOW DO I TELL THE COURT IF I DON'T LIKE THE SETTLEMENT?

If you believe the proposed Settlement is unfair or inadequate, you may object to the Settlement, either personally or through an attorney (at your own expense), by filing a written objection with the Court and mailing a copy of your written objection to Class Counsel and Defense Counsel at the addresses listed below.

All objections must be signed and must include your name, address, telephone number and the name of the Action, *Rodriguez et al. v. It's Just Lunch et al.*, No. 07-CV-9227 (SHS).  All objections must be filed with the Court and postmarked to Class Counsel and Defense Counsel no later than _____, 2016.  If you submit a timely objection, you may appear at your own expense at the Fairness Hearing, either personally or through an attorney.  Your objection

should clearly explain why you object to the proposed Settlement and must state whether you intend to appear at the Final Approval Hearing, either personally or through an attorney.

Where to mail your written objections:

| Court | Class Counsel | Defense Counsel |
|---|---|---|
| Clerk of Court<br>Daniel Patrick Moynihan<br>United States Courthouse<br>500 Pearl St.<br>New York, New York 10007-1312 | Balestriere Fariello<br>It's Just Lunch Class Action<br>225 Broadway, 29th Floor<br>New York, New York 10007 | Peter Shapiro<br>Lewis Brisbois Bisgaard &<br>Smith LLP<br>77 Water Street, Suite 2100<br>New York, New York 10005 |

### 19. WHAT'S THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING MYSELF FROM THIS SETTLEMENT?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

### 20. WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

The Court will hold a Fairness Hearing on _____, 2016 at _____ at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl St., Rm. 23A, New York, New York 10007-1312. At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing and who do speak. The Court may also consider Class Counsel's application for attorney's fees and reimbursement of expenses and for the service award to Representative Plaintiff. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

### 21. DO I HAVE TO COME TO THE HEARING?

No. Class Counsel will answer questions the Court may have. You are welcome to come at your own expense. If you send an objection, you don't have to come to Court and talk about it. As long as your written objection is received on time, the Court will consider it.

### 22. MAY I SPEAK AT THE HEARING?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear" in "*Rodriguez et al. v. It's Just Lunch et al.*, No. 07-CV-9227 (SHS)." Be sure to include your name, address, telephone number, that you are a Class Member, and your signature. Your Notice of Intention to Appear must be received by the Clerk of the Court, Class Counsel, and Defense Counsel, at the three addresses

in Question 18, no later than _____, 2016.  You cannot speak at the hearing if you exclude yourself.

| IF YOU DO NOTHING |
|---|

### 23. WHAT HAPPENS IF I DO NOTHING AT ALL?

If you are an eligible Class Member and do nothing, you will not receive a voucher.  You must complete and submit a valid Claim Form to receive a voucher under the Settlement.  If you are a New York Eligible Claimant and do not exclude yourself, you will receive a payment.  If you do not exclude yourself as a Class Member, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against It's Just Lunch or any of the Released Parties about the legal issues in this case ever again.

| GETTING MORE INFORMATION |
|---|

### 24. ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?

This Notice summarizes the proposed Settlement.  More details appear in the Settlement Agreement (the "Agreement").  Copies of the Agreement and the pleadings and other documents relating to the Action are available at the Settlement website, www.ijlclassaction.com.  These documents are also on file at the United States District Court for the Southern District of New York and may be examined and copied at any time during regular office hours between 9:00 a.m. and 4:30 p.m.

### 25. HOW DO I GET MORE INFORMATION?

You can visit the Settlement website at www.ijlclassaction.com, where you will find the Claim Form and other information, including a copy of the Settlement Agreement.  You may also contact the Claims Administrator, Heffler Claims Group by phone toll free at 844-245-3771, or Class Counsel, Balestriere Fariello, at 212-374-5400.  *You should not direct questions to the Court.*

Dated:_____          By Order of the Court _____

CLERK OF THE COURT

# Exhibit E

# Settlement Claim Form
# www.ijlclassaction.com
## Online Claim Form

To receive any relief to which you are entitled, please complete this form online **no later than 11:59 p.m. on _____, 2016.** Forms submitted after this deadline will not be accepted.

Please provide all of the contact information listed below. Claim forms without complete contact information will be ineligible for payment.

First Name:_____     Last Name:_____

Address:_____

_____

City:_____     State:_____   Zip:_____

Country:_____     DOB: (YYYY/MM/DD):_____

Email:_____

If you received notice of the settlement by email or mail, please provide the Claim Control number from that notice:_____

**By submitting a claim form and seeking the benefits of the settlement, you certify that you believe all of the following statements to be true:**

1. I am or was a member of It's Just Lunch or one of its affiliated franchises.
2. I did not receive a full refund of the cost of my membership from any source.
3. I did not sign any releases of any claims in favor of IJL and/or a franchisee.

**I swear (or affirm) that the above statements are true and correct to the best of my knowledge under penalty of perjury.**

Signature:_____     Dated:_____

Exhibit B

Case 1:07-cv-09227-SHS Document 83-6 Filed 03/25/13 Page 62 of 114



## Attorney General
## Eric T. Schneiderman

ATTORNEY GENERAL

Home   » Media Center   » Press Releases   » July 6th 2007

## "it's Just Lunch" Dating Service Overcharged Customers; Settles With Attorney General Cuomo

ALBANY, NY (July 6, 2007) - Attorney General Andrew M. Cuomo announced today a settlement with the nationwide dating service It's Just Lunch International and its three New York State franchises for exceeding the limit a consumer can be charged for social referral services. The company will pay fines and costs to the state and reform its business practices.

"State laws limit how much a dating service may charge, and also require that consumers be provided with numerous other protections," said Attorney General In-Charge of the Buffalo Regional Office Russ Ippolito. "With this agreement, It's Just Lunch will change its business practices and offer fair contracts that clearly spell out rights to New York consumers."

Many of It's Just Lunch's clients paid $1,500 for two six-month contracts that were signed at the same time. The contracts ran consecutively and the Attorney General's Office found that this practice was merely a device for circumventing state law that limits the amount a consumer can be charged for a social referral services contract at $1,000 per year. The It's Just Lunch contracts also violated state law by prohibiting consumers from filing lawsuits against the company and by failing to include many consumer-friendly provisions, such as a guarantee of a specific number of social referrals per month.

The New York franchisees are located in New York City, Albany and Williamsville. They have agreed to stop exceeding the $1,000 statutory limit and make necessary changes to

New York City Press Office: (212) 416-8060

Albany Press Office: (518) 473-5525

nyag.pressoffice@ag.ny.gov

Twitter: @AGSchneiderman

**Featured Video - A.G. Schneiderman Announces Up To $20 Million To Rebuild And Reinvest In Communities Still Recovering From The Housing Crisis**

SHARE THIS:

**Featured Video - A.G. Schneiderman & D.A. Gascón Launch Nationwide "Secure Our Smartphones" Initiative**

Exhibit C

 # Info Call Script 

## Introduction: Build Credibility and Get Their Address

Hi, Good Morning! It's Just Lunch!

Oh, great, I can tell you all about us! I'm _____, I'm the Director, what's your name?

What I'm going to do is send you our newsletter. Our clients love it! We surveyed over 3,000 of our clients on dating trends and it's really fun to read! What's your last name? What's your address?

> **Women**
> So do you have friends that are dating through us, or who got married through us, or did you see us on Oprah or on The Today Show—How do you know about us?!

> **Men**
> So did you see the article in the Wall Street Journal or see us on CNBC—how do you know about us?!

(If the caller says that they heard about us through an advertisement, say: "Oh, I always like to ask because most of my clients come from referrals!")

OK, so do you know much about us?

## Part One: Make Them Feel Comfortable

Well, let me start by telling you a little bit about my clients...

Well, most of my clients have NEVER, EVER done this before but they call me because
- They are busy, working a lot of hours
- But don't want to date their clients or colleagues
- They're tired of their friends fixing them up
- They're just not interested in the bar scene
- Plus, it's _____...one of our busiest times of the year!

Just to give you an idea... I have over _____clients here in _____, and I think

4

CONFIDENTIAL-ATTORNEY EYES ONLY

BK 0034

that's why I'm so good at fixing up my clients, I have so many people to choose from!

## Part Two: Ask Questions and Get to Know Them/Learn Their Schedule

So, tell me a little about yourself, what do you do professionally?

Tell me a little more about your work.

What sort of hours do you work? What is a typical day like for you? Where is your office located?

How old are you?

Oh! I have lots of clients in their _____'s and _____'s! And most have college degrees and a lot have advanced degrees. They are all different professionals ranging from doctors, lawyers, bankers, people in publishing, marketing, business, journalism, fashion, architects... a really diverse group!

> Why are you thinking of doing something like this?

Are you dating much?

## Part Three: Paint the Picture

Ok the next step is that we get together for an hour. I'll look at my schedule in a minute and see if I can fit you in later today. And it's a full hour that is ALL about you. And what I do during that hour is I ask you a TON of questions::
- Your likes and dislikes
- People you've dated, what's worked
- Type of personality you like
- Type of person you find attractive
- Your profession, your hobbies
- ALL ABOUT YOU!

> Then, if I have the type of people you are looking for, I'll take you as a client. It's for one year, it's $1500 and you'll have at least 16 dates, but I'll be able to give you a better feel for how often you'll be going out after I meet you later today.

OK, now the fun part starts! Today is_____, we will call you _____ (tomorrow) with your first date! It will go something like this:

5

OK _____, your first date is Michael... He is ____ (age), a business executive ...and here's why I think you'll like him!

> I'll tell you a ton about his personality
> what he looks like
> why I think you'll find him attractive
> what his interests are
> why I think the two of you will have fun
> ... just why I see the two of you clicking!

So, you'll know a ton about him... just never last names or phone numbers!

Then, we'll figure out what works for both of you this week and we'll make the reservation at _____ on _____ (day) at 12:30 under both of your first names. Then, all you have to do is have fun!

Then, if you like each other, you can exchange business cards/phone numbers.

And the good news is that lots of my first dates lead to second dates... because we're really good at this!

And I think why it works so well for our clients is that after each date you call us with feedback. We love to hear how it went, how long you spent together, and all about what you thought. We get to know you better and better after each date!

## Part Four: Schedule Within 24 Hours

OK, _____ we're located at _____. Tell me what time you're thinking later today?

OK, just a couple of things:

> •Don't worry about bringing photos of your ex's: we'll talk all about that when we meet.
> •Bring your checkbook, we don't take credit cards.
> •And most importantly, please bring your daily planner or palm, so that if I have what you're looking for, we can get your first date scheduled!

**Checks Only ▲ OR ▼ Checks/Credit Cards**

> •Don't worry about bringing photos of your ex's: we'll talk all about that when we meet.
> •Bring your checkbook or your credit card - we take both.
> •And most importantly, please bring your daily planner or palm, so that if I have what you're looking for, we can get your first date scheduled!

I'm excited to meet you! I'll see you at _____... oh, just give me your phone number in case my client before you is running a little late.

6

BK 0036



**FIRST DATE UNIVERSITY**

# Taking Control
# in an Interview

There are three control points that are said verbatim in an interview to establish control. Below is an explanation of how to convey these three points. On your interview sheet you'll see a star(s) (∗) when you need to say one of the control points.

• Walk into Interview room and greet the client.
• Take the clipboard—read how the client heard about us.
• Ask the first couple of questions to break the ice:
  — "So, you heard about us through 'The San Diego Union Tribune'..."
    • Women: "Have you had any friends who have gotten married through us or are dating someone through us?"
    • Men: "Did you read the article about us that was in Forbes or the one in the Wall Street Journal?"
  — "Ok, have you ever done anything like this before?"
    • If they say no: "Oh, most of my clients have never done anything like this before! So you are in good company!"

At this point you will have reached the first star (∗) on your interview sheet so you now say the first control point to establish control.

---

### ∗ Control Point One

Ok, just so you know what we are going to do...I'm going to ask you a TON of questions...all about you, your likes, people you've dated, what you do in your free time.. just lots of questions all about you... and feel free to pop in at anytime to ask me anything! Then, if I have what you're looking for, I'll get you started today! If I don't, then we just hold off.... OKAY?
(POINT: THEY MUST SAY OK!!!!)

---

50

CONFIDENTIAL-ATTORNEY EYES ONLY

BK 0080

• Ask the client questions 2-14 on your interview sheet

At this point you will have reached the second star (∗∗) on your interview sheet so you now say the second control point to establish control.

---

### ∗∗ Control Point Two

Stop and flip over your clipboard. "Ok, so far I have 3-4 ideas for your first date... but first I want to make sure about one thing that's really important. I just want to make sure that you'll be comfortable with the feedback. You have to call me after each date and tell me what you thought... Will you be comfortable with that? (listen to their answer)

Ok, what I want to do next is go over the first sheet that you checked off... That will give me a really good idea of HOW MANY dates I'll have for you!!!

GO TO FIRST SHEET and review what they checked off.

---

CONFIDENTIAL-ATTORNEY EYES ONLY

BK 0081

- Confirm their phone numbers
  "What is the best phone number to reach you? Can I leave a detailed message on that phone number?"

- Lean toward the client and review their availability for this week for lunch.
  "OK, so when are you available for a lunch date this week?" Write it in.
  "OK, when can you meet for drinks this week?" Write it in.
  "I think I am going to start you with two people, so I need some dates for lunch or a drink NEXT week too." Write it in.

- Take the photo

Now you have come to the third star (∗∗∗) on your interview sheet so do control point three.

---

### ∗∗∗ Control Point Three

Reach over and grab your big stack of contracts on the clipboard. Do NOT EVER EVER let go of them. Do not call it a 'contract' or an 'agreement'. It's called a 'this'.

"OK, I always get the same questions about this!

The first thing is that you are guaranteed at least _____ dates.

The second thing is you can put your membership on hold for up to one year...let's say you decide after your 7th date that you really like Steve and just want to date him... we'll put you on hold...all you have to do is call me and let me know... we always get really excited when that happens and it happens every day!!!

And last, any of your friends that you refer, you get an extra date for each one.. that's where most of my clients come from, REFERRALS!

OK, just fill out this top part here, sign right here and make your check out to IJL for $_____...there's not tax or anything extra added.. You don't have to write out It's Just Lunch, you can just make it out to IJL. I also need your driver's license...I'm going to go get your welcome package and a list of our restaurants and I'll be right back!"

---

Come back in... make 2 copies of the contract. Put the copy in their package. You keep the original contract.

Tell the client that you are excited to pick their matches tomorrow. They will hear from the coordinator who will make all the arrangements for them. The client will talk to her a lot and she will take great care of them. Explain that we work as a team and the better

52

BK 0082



# Taking Control
# in an Interview



FIRST DATE UNIVERSITY

---

**✱ Control Point One:** Ok, just so you know what we are going to do...I'm going to ask you a TON of questions...all about you, your likes, people you've dated, what you do in your free time.. just lots of questions all about you... and feel free to pop in at anytime to ask me anything! Then, if I have what you're looking for, I'll get you started today! If I don't, then we just hold off.... OKAY? (POINT: THEY MUST SAY OK!!!!)

---

**✱✱ Control Point Two:** Stop and flip over your clipboard. "Ok, so far I have 3-4 ideas for your first date... but first I want to make sure about one thing that's really important. I just want to make sure that you'll be comfortable with the feedback. You have to call me after each date and tell me what you thought... Will you be comfortable with that? (listen to their answer)

Ok, what I want to do next is go over the first sheet that you checked off... That will give me a really good idea of HOW MANY dates I'll have for you!!!

GO TO FIRST SHEET and review what they checked off.

---

**✱✱✱ Control Point Three:** Reach over and grab your big stack of contracts on the clipboard. Do NOT EVER EVER let go of them. Do not call it a 'contract' or an 'agreement'. It's called a 'this'.

"OK, I always get the same questions about this!

The first thing is that you are guaranteed at least _____ dates.

The second thing is you can put your membership on hold for up to one year...let's say you decide after your 7th date that you really like Steve and just want to date him... we'll put you on hold...all you have to do is call me and let me know... we always get really excited when that happens and it happens every day!!!

And last, any of your friends that you refer, you get an extra date for each one.. that's where most of my clients come from, REFERRALS!

OK, just fill out this top part here, sign right here and make your check out to IJL for $_____...there's not tax or anything extra added.. You don't have to write out It's Just Lunch, you can just make it out to IJL. I also need your driver's license...I'm going to go get your welcome package and a list of our restaurants and I'll be right back!"

---

53

CONFIDENTIAL-ATTORNEY EYES ONLY

BK 0083

# Exhibit D

# BALESTRIERE
# FARIELLO

**JOHN G. BALESTRIERE**
BALESTRIERE FARIELLO
225 Broadway, Suite 2900
New York, NY 10007
Phone:  +1.212.374.5401
Cell:     +1.917.318.3844
Fax:      +1.212.208.2613
john.balestriere@balestriere.net
www.balestriere.net

April 30, 2010

***VIA FACSIMILE* 212-805-6712**
Hon. Kevin N. Fox
United States Magistrate Judge
United States Courthouse
500 Pearl Street, Room 540
New York, New York 10007

> Re:   *Rodriguez, et al v. It's Just Lunch Int'l, et al.*, Index No.: 07-CV-9227(SHS)(KNF)

Dear Honorable Fox:

I represent Plaintiffs and the Class in the above-referenced matter and write pursuant to the Court's order filed April 12, 2010 ("Order"), d irecting the parties to submit a joint letter to the Court proposing a schedule for the completion of all pretrial activities.  Since, unfortunately, a joint letter is not possible, I write on behalf of Plaintiffs alone proposing the schedule attached hereto as Attachment A.  I also write specifically regarding Plaintiffs' proposed motions for class certification and summary judgment.

## BACKGROUND

Since I know the Court wished to receive a joint letter, I detail here why I believe that it is not possible.  In an effort to fulfill the pretrial obligations, on April 7, 2010, Plaintiffs' counsel proposed a meet and confer with Defense counsel Bari Klein ("Klein") pursuant to Fed. R. Civ. P. 26(f) ("Rule 26(f)") to take place on April 28, 2010 ("Meeting"), at Klein's office.  Two days earlier on April 5, 2010, Plaintiffs' counsel sent to Klein a detailed pre-trial schedule that proposed specific dates pertaining to all necessary steps between service of initial disclosures and the start of trial, requesting that Klein send Defendants' proposed pretrial schedule prior to the Meeting in order to make the Rule 26(f) conference productive.  Klein did not send any counter dates prior to the Meeting.

Upon arrival at the Meeting, which Klein made clear she was only attending because she believed she had no choice, it became apparent that Klein was unwilling to negotiate a reasonable schedule.  Defendants' proposed schedule contains excessive, even absurd delays. For example, Defense counsel proposed depositions "be completed within 12 months from initial discovery," (See Defendants' Proposed Pretrial Schedule, attached hereto as Attachment B).  This proposed schedule would result in depositions ending in July 2011 – 15 months from now, and nearly four years from initiation of the action.  It



also failed to provide any firm counter dates to Plaintiffs' proposal. In a case already over two years old, Defendants want a delay that would presumably place a trial almost two years from now. This is not only biased, but completely unnecessary.

Despite our efforts to agree on dates, Klein was simply demanding unreasonable amounts of time and was unwilling to listen to how we have scheduled similar pretrial activities in the past. Klein stated that "[she did] not want to hear" how our firm had handled pretrial activities in other class actions our firm had previously handled. In order not to devote further party resources to an unproductive Meeting, we chose to leave.

## CLASS CERTIFICATION

In seeking to agree on dates for the motion for class certification ("Class Motion") which Plaintiffs intend to file, Defendants' counsel stated that she wished to complete depositions pertaining to both merit and pre-certification issues prior to Plaintiffs' filing of the Class Motion. Plaintiffs do not accept that it is necessary, and it is not common practice to proceed in this way. However, Plaintiffs are willing, at this time, and solely in an attempt to move this action forward, to hold off on filing the Class Motion in order to accommodate Klein's request. Thus, the proposed schedule omits dates pertaining to the Class Motion.

## SUMMARY JUDGMENT

Plaintiffs also intend to move for summary judgment pursuant to Fed. R. Civ. P. 56 ("Rule 56") on the claims for unjust enrichment and violation of New York General Business Law § 349. The parties were unable to agree upon a briefing schedule for the motion for summary judgment. Klein's only response to my request that she propose briefing dates for Plaintiffs' motion was that she intended to move pursuant to Rule 56 as well. The proposed briefing schedule conforms to the briefing schedule detailed in Rule 56(c)(1), which allows the opposing party 21 days to respond, and the moving party 14 days to reply.

Plaintiffs' counsel respectfully requests that the Court accept Plaintiffs' proposed schedule attached hereto as Attachment A, and enter an order directing all parties to abide by the terms of the schedule.

Respectfully submitted,

John G. Balestriere

cc:     Bari Klein, Esq. (via facsimile: 212-232-1399)
        Brandon Page (via email: brandon.page@balestriere.net)
        SaraAnn Bennett (via email: saraann.bennett@balestriere.net)

# Attachment A

# PLAINTIFFS' PROPOSED PRETRIAL SCHEDULE

## SUMMARY JUDGMENT

May 12, 2010       Plaintiffs' move for summary judgment
+ 3 weeks
June 2, 2010       Defendants' opposition brief due
+ 2 weeks
June 16, 2010      Plaintiffs' reply brief due

## DISCOVERY

| Date | Event |
|---|---|
| May 10, 2010 | Serve Initial Disclosures |
| May 26, 2010 | Serve initial discovery demands |
| June 30, 2010 | Responses to discovery demands due |
| August 6, 2010 | Expert disclosures; Depositions noticed |
| September 10, 2010 | Non-expert depositions to be concluded |
| October 6, 2010 | Expert depositions to be concluded |
| October 13, 2010 | Service of supplemental discovery demands |
| November 10, 2010 | Response to supplemental demands due |
| December 8, 2010 | Discovery to be completed |
| December 22, 2010 | Final motions for summary judgment to be filed |
| January 5, 2011 | Responses to final motions for summary judgment |
| January 7, 2011 | Filing of Pre-Trial Order |
| January 19, 2011 | Replies on summary judgment motions |
| February 9, 2011 | Oral arguments on summary judgment motions |
| March 23, 2011 | All pre-trial motions, including motions in limine, due |
| April 18, 2011 | Trial |

# Attachment B

| **DISCOVERY ACTIVITIES** | **COMPLETED DATE** |
|---|---|
| 1. Initial Pre-Discovery Disclosures pursuant to FRCP 26(a) | |
| 2. Requests to Produce | Within 75 days of Defendants Answer to Plaintiff's Second Amended Complaint. |
| 3. Depositions | To be completed within 12 months from initial discovery. |
| 4. Interrogatories | In accordance with Federal Rule of Civil Procedure 33 and the applicable Local Rules, Interrogatories may be served during any phase of discovery. |
| 5. Written and/or Oral discovery of non-party witnesses (excluding expert witnesses) | In accordance with Federal Rule of Civil Procedure written and/or oral discovery may be conducted during any phase of discovery. |
| 6. Admissions | In accordance with Federal Rule of Civil Procedure 36 and the applicable Local Rules, Interrogatories may be served during any phase of discovery. |
| 7. Confidentiality Agreements regarding the disclosure of IJL and/or Harry and Sally materials, documents, recordings, etc. to allow free flow of such information between parties involved in the case subject to the Court's approval | May 10, 2010 |
| 8. Class Certification(s) | |
| 9. Supplemental Discovery Demands | In accordance with Federal Rule of Civil Procedure written and/or oral discovery may be conducted during any phase of discovery. |
| 10. Expert Discovery | To be conducted in phases following the conclusion of non-expert discovery. |
| 11. Expert Disclosure and reports required under Rule 26(a) | Due at least 60 days prior to any trial date or the date the case is to be ready for trial or, if evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Fed. R. Civ. P. 26(a)(2)(b), within 30 days after the disclosure made by the other party. |

# Exhibit E



**JOHN BALESTRIERE**
BALESTRIERE FARIELLO
225 Broadway, 29th Floor
New York, New York 10007
T: +1-212-374-5401
F: +1-212-208-2613
john.balestriere@balestrierefariello.com
www.balestrierefariello.com

July 31, 2014


**SENT VIA EMAIL (peter.shapiro@lewisbrisbois.com)**
Peter Shapiro
Lewis, Brisbois, Bisgaard, & Smith, LLP
77 Water Street, Suite 2100
New York, NY 10005

   Re: *Rodriguez, et al v. It's Just Lunch International, et al.,*
     Index No.: 07-CV-9227 (SHS)(KNF)

Peter:

  I write to follow up on our request for updated financial information which we sought on July 3, 2014, and to seek updated disclosures of other information directly relevant to our upcoming mediation and general settlement negotiation.

  On July 3, we sought IJL's financial statements for the period between 2010 and 2014 as part of Defendants obligation to supplement its disclosures under Fed. R. Civ. P. 26(e).  On July 23, you noted that you had to follow up with your client, but we have not heard from you since then.  This information is directly pertinent to the ongoing settlement negotiation, as well as for the trial, so we ask that you promptly advise on the status of this production.

  Moreover, we request that IJL provide the number of New York customers who joined IJL since 2001, as well as specifically the number of such joins for the period between October 15, 2001, and July 11, 2007, which is when the New York Franchises signed Assurances of Discontinuance with the Attorney General of the State of New York.

  You have indicated that the updated member joins information that you provided on June 13, 2014, did not exclude members who cancelled or received refunds. Please provide the updated cancellation and refund information so that we can accurately determine the Class size and the damages to the Class.  Plaintiffs are entitled to this information and need it to adequately evaluate their position and prepare for the mediation conference and the trial.



We are also waiting to hear from you regarding your availability for a settlement discussion on August 12 at 4pm, as well as whether you would agree to do so in person. On July 23, you indicated that you would follow up with your client about this.  Judge Netburn's July 16, 2014, Order encouraged the parties to engage in good-faith negotiations prior to the mediation and we believe that it would be beneficial to know each other's positions prior to September 15.  Please advise if the August 12 date for a settlement discussion works and whether you are amendable to do so in person.

Sincerely,

John G. Balestriere

cc:     Philip Menchaca (via e-mail: philip.menchaca@balestrierefariello.com
         Jon Norinsberg, Esq. (via e-mail: jon.norinsberg@balestrierefariello.com)
         Stefan Savic, Esq. (via e-mail: stefan.savic@balestrierefariello.com)

# Exhibit F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTINE RODRIGUEZ, SANDRA
BURGA, KAREN MALAK, JAMES
TORTORA, LISA BRUNO, JANEEN
CAMERON, KAREN McBRIDE,
ANDREW WOOLF, and BRAD
BERKOWITZ, individually, and for all
others similarly situated,

Index No.: 07-CV-9227 (SHS)(SN)

**AFFIDAVIT OF LISA BRUNO**

Plaintiffs,

-against-

IT'S JUST LUNCH INTERNATIONAL,
IT'S JUST LUNCH, INC., HARRY and
SALLY, INC, RIVERSIDE COMPANY,
LOREN SCHLACHET, IJL NEW YORK
CITY FRANCHISE, IJL ORANGE
COUNTY FRANCHISE, IJL CHICAGO
FRANCHISE, IJL PALM BEACH
FRANCHISE, IJL DENVER FRANCHISE,
IJL AUSTIN FRANCHISE, IJL LOS
ANGELES-CENTURY CITY FRANCHISE,
and DOES 1-136,

Defendants.

---

I, the undersigned Lisa Bruno, being sworn, state as follows:

1. I am a resident of New York, New York and a named Plaintiff in this action.

2. Since I was engaged as a named plaintiff, I have been in very frequent communication with Balestriere Fariello regarding the filings and developments in this more than eight-year old action. Such communications include multiple in-person

meetings, conference calls with other Named Plaintiffs, phone calls with individual staff at Balestriere Fariello, and numerous emails from November 2009 through the present.

3.    I have been receiving regular updates and opportunities to provide my comments and approval throughout the settlement negotiations. I also attended and participated in the mediation session with Magistrate Judge Sarah Netburn on September 14, 2014.

4.    Through Settlement Negotiations starting in May 2014 up until the present, I have approved working versions of the Settlement Agreement and Release of Claims (the "Settlement Agreement").

5.    Based on my communications with Balestriere over the years, my participation in mediation, and my review of the Settlement Agreement, I believe the settlement terms detailed in the signed Settlement Agreement represent the best possible outcome of this action.

Dated: New York, New York
       January 5, 2016

Lisa Bruno

Sworn to before me on January 6 , 2016

Notary Public

KEVIN COOPER
Notary Public, State of New York
No. 01CO6025508
Qualified in Kings County
Commission Expires May 24, 2019

# Exhibit G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTINE RODRIGUEZ, SANDRA
BURGA, KAREN MALAK, JAMES
TORTORA, LISA BRUNO, JANEEN
CAMERON, KAREN McBRIDE,
ANDREW WOOLF, and BRAD
BERKOWITZ, individually, and for all
others similarly situated,

               Plaintiffs,

    -against-

IT'S JUST LUNCH INTERNATIONAL,
IT'S JUST LUNCH, INC., HARRY and
SALLY, INC, RIVERSIDE COMPANY,
LOREN SCHLACHET, IJL NEW YORK
CITY FRANCHISE, IJL ORANGE
COUNTY FRANCHISE, IJL CHICAGO
FRANCHISE, IJL PALM BEACH
FRANCHISE, IJL DENVER FRANCHISE,
IJL AUSTIN FRANCHISE, IJL LOS
ANGELES-CENTURY CITY FRANCHISE,
and DOES 1-136,

               Defendants.

Index No.: 07-CV-9227 (SHS)(SN)

**AFFIDAVIT OF BRAD BERKOWITZ**

I, the undersigned Brad Berkowitz, being sworn, state as follows:

1.    I am a named Plaintiff in this action and the class representative for the New York Class.

2.    Throughout the duration of my time as a named plaintiff, I have been in very frequent communication with Balestriere Fariello, which has provided me with timely updates as to the developments in this matter.  Such communications include

multiple in-person meetings, multiple conference calls with other Named Plaintiffs, multiple phone calls with individual staff at Balestriere Fariello, and numerous emails from March 2008 to the present.

3.      I attended and participated in the mediation session that took place on September 14, 2014, with Magistrate Judge Sarah Netburn.

4.      I have reviewed and approved working drafts of the Settlement Agreement and Release of Claims ("Settlement Agreement") throughout the Settlement Negotiations starting in May 2014 up until the present.

5.      Based on my review of the Settlement Agreement, my participation in mediation, and my communications with Balestriere Fariello throughout the duration of my time as a named plaintiff, the Settlement Agreement appears to be the best possible outcome for the Class in this action.  It is also my understanding that the terms of the settlement are significantly more favorable than any outcome that the Classes could have achieved after a trial in light of the Defendants' financial situation and difficulty of enforcing any potential judgment.

Dated: ~~New York, New York~~ PALM BEACH FLORIDA
       ~~January 5,~~ 2016
       January 6

                                              _____
                                              Brad Berkowitz


Sworn to before me on _January 6_, 2016

_____
Notary Public

CARLOS SANCHEZ
Notary Public - State of Florida
My Comm. Expires Jun 14, 2016
Commission # EE 208383

# Exhibit H

# About

## The Pioneer in Claims Administration

Heffler Claims Group ("Heffler") is the pioneer in class action and mass tort settlement administration, with more than 45 years experience in the management and administration of some of the most complex settlements in the country. Heffler began administering class actions and managing mass tort claims in the mid-1960s when demand for these services first emerged, and created many of the methods and procedures used throughout the industry today.

Heffler's founding partner Mr. Jacob Heffler – who started his career with the FBI's Bank Fraud Division under J. Edgar Hoover – was at the forefront of the claims administration field from the beginning. With his background and knowledge of forensic accounting, Mr. Heffler established a solid team of professionals with a unique perspective on the process and special expertise in law, accounting, tax and governmental rules and regulations.  From the beginning, Mr. Heffler recognized the importance of developing talent and building strong relationships with clients – a management philosophy that is still the cornerstone of the Heffler Claims Group today.

We continue to lead the way in legal notice and legal administrative services and maintain our status as an industry leader by continually evaluating and refining our technologies, processes and procedures to ensure we provide our clients with the most efficient and cost-effective services possible.

We have expertise in all aspects of settlement administration for antitrust, securities, employment, mass tort, consumer and government enforcement matters, but we also offer what other administrators lack – *personal service on each and every case from a leadership team that consists of the most experienced professionals in the industry*.

Learn more about the Heffler difference.

# Exhibit I

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**CHRISTINE RODRIGUEZ, SANDRA**
**BURGA, KAREN MALAK, JAMES**
**TORTORA, LISA BRUNO, JANEEN**
**CAMERON, KAREN McBRIDE,**
**ANDREW WOOLF,** and **BRAD**
**BERKOWITZ,** individually, and for all
others similarly situated,

                Plaintiffs,

    -against-

**IT'S JUST LUNCH INTERNATIONAL,**
**IT'S JUST LUNCH, INC., HARRY and**
**SALLY, INC, RIVERSIDE COMPANY,**
**LOREN SCHLACHET, IJL NEW YORK**
**CITY FRANCHISE, IJL ORANGE**
**COUNTY FRANCHISE, IJL CHICAGO**
**FRANCHISE, IJL PALM BEACH**
**FRANCHISE, IJL DENVER FRANCHISE,**
**IJL AUSTIN FRANCHISE, IJL LOS**
**ANGELES-CENTURY CITY FRANCHISE,**
and **DOES 1-136,**

                Defendants.

---

Index No.: 07-CV-9227 (SHS)(SN)

**AFFIDAVIT OF MELISSA MCGURK**

I, the undersigned Melissa McGurk, being sworn, state as follows:

1.    I am a resident of Pittsburgh, Pennsylvania and a class member in this action.

2.    I first communicated with Balestriere Fariello in April 2015 to inquire about this action to share my experience with It's Just Lunch.

3.      Since I first contacted Balestriere Fariello, the Firm has sent me regular updates on the status of the action.

4.      Balestriere Fariello was available and responded to all of my inquiries in a timely manner, within 24 to 48 hours.

5.      Aside from being kept up to date as to the status and developments in the action, I also received information regarding the terms of the Settlement Agreement and Release of Claims after that information was made public in late January 2016.

6.      Balestriere Fariello set up a webinar-style conference after the settlement material was filed inviting questions and concerns ahead of it.

7.      I participated in a webinar held by Balestriere Fariello on February 4, 2016.

8.      Balestriere Fariello remained available for questions following the webinar.

Dated: Pittsburgh, Pennsylvania
       March 18, 2016

_____
Melissa McGurk

Sworn to before me on _March 18_, 2016

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Katie M. Mancarino, Notary Public
Bethel Park Boro, Allegheny County
My Commission Expires Nov. 5, 2016
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

# Exhibit J

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**CHRISTINE RODRIGUEZ, SANDRA
BURGA, KAREN MALAK, JAMES
TORTORA, LISA BRUNO, JANEEN
CAMERON, KAREN McBRIDE,
ANDREW WOOLF,** and **BRAD
BERKOWITZ,** individually, and for all
others similarly situated,

Plaintiffs,

-against-

**IT'S JUST LUNCH INTERNATIONAL,
IT'S JUST LUNCH, INC., HARRY and
SALLY, INC, RIVERSIDE COMPANY,
LOREN SCHLACHET, IJL NEW YORK
CITY FRANCHISE, IJL ORANGE
COUNTY FRANCHISE, IJL CHICAGO
FRANCHISE, IJL PALM BEACH
FRANCHISE, IJL DENVER FRANCHISE,
IJL AUSTIN FRANCHISE, IJL LOS
ANGELES-CENTURY CITY FRANCHISE,**
and **DOES 1-136,**

Defendants.

Index No.: 07-CV-9227 (SHS)(SN)

**AFFIDAVIT OF SEMA TEKINAY**

---

I, the undersigned Sema Tekinay, being sworn, state as follows:

1.    I am a resident of New York, New York and a class member in this action.

2.    I first communicated with Balestriere Fariello in December 2015 to inquire about this action to share my experience with It's Just Lunch.

3.    Since I first contacted Balestriere Fariello, the Firm has sent me regular updates on the status of the action.

4.      Balestriere Fariello was available and timely responded to my inquiries.

5.      Aside from being kept up to date as to the status and developments in the action, I also received information regarding the terms of the Settlement Agreement and Release of Claims after that information was made public in late January 2016.

Dated: New York, New York
      March 21, 2016

_Sema Vekin_

Sema Tekinay

Sworn to before me on _March 21_, 2016

_____
Notary Public

Notary Public State of Florida
Judy Storck
My Commission FF 191189
Expires 02/19/2019

# Exhibit K

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**CHRISTINE RODRIGUEZ, SANDRA BURGA, KAREN MALAK, JAMES TORTORA, LISA BRUNO, JANEEN CAMERON, KAREN McBRIDE, ANDREW WOOLF,** and **BRAD BERKOWITZ,** individually, and for all others similarly situated,

Plaintiffs,

-against-

**IT'S JUST LUNCH INTERNATIONAL, IT'S JUST LUNCH, INC., HARRY and SALLY, INC, RIVERSIDE COMPANY, LOREN SCHLACHET, IJL NEW YORK CITY FRANCHISE, IJL ORANGE COUNTY FRANCHISE, IJL CHICAGO FRANCHISE, IJL PALM BEACH FRANCHISE, IJL DENVER FRANCHISE, IJL AUSTIN FRANCHISE, IJL LOS ANGELES-CENTURY CITY FRANCHISE,** and **DOES 1-136,**

Defendants.

Index No.: 07-CV-9227 (SHS)(SN)

**AFFIDAVIT OF TATYANA SHCHIGLIK**

---

I, the undersigned Tatyana Shchiglik, being sworn, state as follows:

1.      I am a resident of Incline Village, Nevada and a class member in this action.

2.      I first communicated with Balestriere Fariello in September 2014 to inquire about this action to share my experience with It's Just Lunch.

3.      Since I first contacted Balestriere Fariello, the Firm has sent me regular updates on the status of the action.

4.      Balestriere Fariello was available and timely responded to my inquiries.

5.      Aside from being kept up to date as to the status and developments in the action, I also received information regarding the terms of the Settlement Agreement and Release of Claims after that information was made public in late January 2016.

6.      Balestriere Fariello set up a webinar-style conference after the settlement material was filed inviting questions and concerns ahead of it.

7.      I participated in a webinar held by Balestriere Fariello on February 4, 2016.

8.      Balestriere Fariello remained available for questions following the webinar.

Dated: March 21, 2016
        Incline Village, Nevada                    Tatyana Shchiglik

Sworn to before me on March , 21      , 2016

Notary Public

ELSIE PANIAGUA
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 9-10-2019
Certificate No: 16-1026-2

2

# Exhibit L

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**CHRISTINE RODRIGUEZ, SANDRA**
**BURGA, KAREN MALAK, JAMES**
**TORTORA, LISA BRUNO, JANEEN**
**CAMERON, KAREN McBRIDE,**
**ANDREW WOOLF,** and **BRAD**
**BERKOWITZ,** individually, and for all
others similarly situated,

           Plaintiffs,

  -against-

**IT'S JUST LUNCH INTERNATIONAL,**
**IT'S JUST LUNCH, INC., HARRY and**
**SALLY, INC, RIVERSIDE COMPANY,**
**LOREN SCHLACHET, IJL NEW YORK**
**CITY FRANCHISE, IJL ORANGE**
**COUNTY FRANCHISE, IJL CHICAGO**
**FRANCHISE, IJL PALM BEACH**
**FRANCHISE, IJL DENVER FRANCHISE,**
**IJL AUSTIN FRANCHISE, IJL LOS**
**ANGELES-CENTURY CITY FRANCHISE,**
and **DOES 1-136,**

           Defendants.

Index No.: 07-CV-9227 (SHS)(SN)

**AFFIDAVIT OF BARBARA ROSE**
**AGLIETTI**

---

I, the undersigned Barbara Rose Aglietti, being sworn, state as follows:

1.     I am a resident of Queens, New York and a class member in this action.

2.     I first communicated with Balestriere Fariello in April 2014 to inquire

about this action to share my experience with It's Just Lunch.

3.     Since I first contacted Balestriere Fariello, the Firm has sent me regular

updates on the status of the action.

4. Balestriere Fariello was available and timely responded to my inquiries.

5. Aside from being kept up to date as to the status and developments in the action, I also received information regarding the terms of the Settlement Agreement and Release of Claims after that information was made public in late January 2016.

Dated: New York, New York
      March 22, 2016

*Barbara Rose Aglietti*
Barbara Rose Aglietti

Sworn to before me on 23d of March 2016

*Walter G. Antognini*
Notary Public

WALTER G. ANTOGNINI
NOTARY PUBLIC, State of New York
No. 31-4715354
Qualified in New York County
Commission Expires ~~September 12, 2015~~ March 12, 2019

2

# Exhibit M



# About the Firm

## Sophisticated, multi-faceted and well-versed

Our national practice is sophisticated, multi-faceted and well-versed in current legal trends, while our individual state practices provide vast resources and knowledge of procedural and legal nuances. Lewis Brisbois offers legal practice in more than 35 specialties, and a multitude of sub-specialties associated with each practice area. Our attorneys have broad knowledge, expertise, and sensitivity to their clients' unique needs. Through interaction among its practice groups, Lewis Brisbois provides a wide range of legal services to each client with a continuity of representation over multiple disciplines. We have built longstanding relationships with corporate and institutional clients based on our ability to provide comprehensive service on a national scale.

At Lewis Brisbois, diversity is an integral part of our firm culture and our daily life. We accomplish diversity not by committee or initiative, but through the true and committed practice of hiring the best people for the job and consistently rewarding excellence. The success of these policies is reflected in the fact that Lewis Brisbois has repeatedly received national recognition for its commitment to embracing diversity. Lewis Brisbois is committed to hiring and retaining a diverse group of talented lawyers and staff, and demonstrates that commitment through non-discriminatory hiring, retention and promotion policies. The diversity of the firm's client base is matched by the diversity of our attorneys.

With offices from Los Angeles to New York, our attorneys reflect the communities in which they live. The firm's culture has fostered a diverse group of professionals committed to promoting the best interests of our clients, our communities and the legal profession. We are committed to supporting diversity through new and ongoing relationships with minority and women-owned businesses.

Lewis Brisbois is known for its commitment to principled advocacy, an unflinching work ethic, and unyielding recognition of our duty to provide the highest level of service to our clients, who choose us because we take the time to understand their business interests and philosophies. We have developed sophisticated proprietary risk evaluation and litigation management processes that many of our clients have incorporated into their business practices, and we help them manage and defend claims and litigation. As a result, they are avoiding and reducing losses that impact their bottom line.

Our practice includes pre-suit counseling and problem solving based on a structured and accurate analysis of likely outcome. We know our clients' objectives are often best served by a pre-suit resolution, and we are often judged by the advice and counsel we provide toward that end. However, when trial is the answer and in the client's best interest, no law firm in this country understands and better executes a trial strategy than Lewis Brisbois. We are truly client driven and result oriented.

# Lewis Brisbois Celebrates 35 Years



On April 1, 1979, Lewis Brisbois opened its doors in Los Angeles with seven attorneys and a spirit of fearless commitment to client service and attorney satisfaction. Now, 35 years later, with more than 900 attorneys and 31 offices from coast to coast, that commitment is stronger than ever. It continues to inspire us to do more, to reach higher and to work harder for our clients so that the legacy of service, reliability and success that began in 1979 will continue long into a bright future.

## Milestones In Lewis Brisbois' History

### April 1, 1979
The firm opens its doors as Lewis D'Amato Brisbois & Bisgaard.

Taking a big risk, founding partners Bob Lewis, Roy Brisbois, Chris Bisgaard, and Bob Smith struck out on their own and started their own firm with seven lawyers and a do-or-die attitude that laid the foundation for the future of their fledgling venture.

### July 1, 1982
Lewis D'Amato expands to Northern California, opening a second office in San Francisco.

After three years of diligent work and focused growth, the firm expanded into Northern California in order to better serve the ever-expanding needs of its ever-growing and diversifying client base.

### 1983–1993
Lewis D'Amato expands in California, opening offices in San Diego, Orange County, Sacramento, and San Bernardino.

Over the next decade, the firm's focus on client service and steady, controlled growth resulted in

further expansion in both Northern and Southern California as well as expansion into new areas of practice, including Construction and Labor & Employment.

## 1996

Lewis D'Amato enters the National Law Journal's NLJ 200 for the first time, ranking 172nd.

After more than 15 years, the firm completed the transition from an eager startup to a thriving established fixture in the California legal scene, gaining national recognition for its burgeoning size and reputation.

## July 15, 2002

The firm changes its name to Lewis Brisbois Bisgaard & Smith and opens its first office outside California in New York.

Realizing that a growing number of the firm's clients have their corporate and administrative roots on the east coast, the firm took another leap of faith, changing its name and opening its seventh office in New York City, which was also its first office outside California. Opening its doors with 2 attorneys in 2002, Lewis Brisbois' New York office is now the firm's second largest office with nearly 100 lawyers.

## 2004

Lewis Brisbois enters the National Law Journal's NLJ 100 for the first time, ranking 75th.

After expanding to the east coast, the firm's growth picked up its pace, resulting in recognition in both the press and among the firm's clients that Lewis Brisbois had its sights set on becoming a national full-service law firm.

## 2004–2012

Lewis Brisbois expands eastward, opening offices in Nevada, Arizona, Illinois, Texas, Louisiana, Florida, Georgia, West Virginia, New Jersey, Washington, and Southern California.

As Lewis Brisbois rounded its first quarter century, it transitioned from being a bi-coastal firm to having a truly nationwide presence, expanding throughout the Eastern seaboard, the Northern and Southern Midwest, and gaining ground in the Western United States.

## 2005

Lewis Brisbois is ranked as California's 5th largest law firm by California Lawyer.

As a national firm with its roots firmly in California, Lewis Brisbois continued to climb the rankings of the region's law firms, becoming a fixture among the state's largest and most established names.

## 2012 & 2013

Lewis Brisbois is ranked #1 by American Lawyer Media as the nation's most diverse law firm.

Following the philosophy that began with the firm's original seven attorneys of hiring the best people for the job regardless of any of the characteristics that designate someone as a minority, Lewis Brisbois has assembled the most diverse legal workforce in the country, while also maintaining a workplace characterized by cooperation, respect, and collaboration.

## 2013

Lewis Brisbois continues its nationwide expansion, opening offices in Colorado, Massachusetts, Rhode Island, Connecticut, and Washington D.C.

Continuing to fill in the blanks across the map, Lewis Brisbois' recent expansion has been as much practice-driven as it has been geographically driven. Moving into new territory including Indian Nations law and policy, gaming law, white collar criminal defense, and host of other new practices, Lewis Brisbois continues to grow, both in terms of its size and its menu of services.

## 2013

Lewis Brisbois is ranked by California Lawyer as the 2nd largest law firm in California and ranked by the National Law Journal as the 32nd largest law firm in the U.S.

Continuing its rise in the rankings, which was recently described by the Los Angeles Daily Journal as "meteoric," Lewis Brisbois is continuing along the path of steady, strategic growth with the focus ever on serving the needs of its clients in every way possible.

## 2014

Lewis Brisbois opens an office in Pennsylvania and expands the firm's practice into new areas including Life Sciences litigation and Data Privacy & Network Security.

Lewis Brisbois continued expanding its national reach by opening an office in Philadelphia. This office represents a unique opportunity for Lewis Brisbois to broaden its full service capabilities into the flourishing life sciences field and to expand its highly in demand data privacy practice.

## 2013 & 2014

Lewis Brisbois is recognized as the largest law firm in L.A. by the Los Angeles Business Journal and the Los Angeles Daily Journal.

At 35, Lewis Brisbois has come of age, proving that the hard work, dedication, and perseverance of a close-knit team are the building blocks of great success.

# Locations

With 40 offices in 26 states, each of our offices includes partners, associates and a professional staff dedicated to achieving our clients' objectives.



Locations
Phone
Fax

[Albuquerque](#)
505.828.3600
505.828.3900

[Atlanta](#)
404.348.8585
404.467.8845

[Baltimore](#)
410.858.4420
410.779.3910

[Boston](#)
857.313.3950
857.313.3951

[Charleston](#)
304.553.0166

304.343.1805

Chicago
312.345.1718
312.345.1778

Cleveland
216.344.9422
216.344.9421

Dallas
214.722.7100
214.722.7111

Denver
303.861.7760
303.861.7767

Fort Lauderdale
954.728.1280
954.728.1282

Fort Wright, KY
859.663.9830
859.663.9829

Hartford
860.748.4806
860.748.4857

Houston
713.659.6767
713.759.6830

Indian Wells
760.771.6363
760.771.6373

Kansas City, MO
816.299.4244
816.299.4245

Lafayette
337.326.5777
337.504.3341

Las Vegas
702.893.3383
702.366.9563

[Las Vegas (main)](#)
702.893.3383
702.893.3789

[Lawrenceburg, IN](#)
317.635.3468

[Los Angeles](#)
213.250.1800
213.250.7900

[Madison County, IL](#)
618.307.7290
618.692.6099

[New Orleans](#)
504.322.4100
504.754.7569

[New York](#)
212.232.1300
212.232.1399

[Newark](#)
973.577.6260
973.577.6261

[Orange County](#)
714.545.9200
714.850.1030

[Philadelphia](#)
215.977.4100
215.977.4101

[Phoenix](#)
602.385.1040
602.385.1051

[Pittsburgh](#)
412.567.5596
412.567.5494

[Portland](#)
971.712.2800
971.712.2801

[Providence](#)
401.406.3310
401.406.3312

Raleigh
919.821.4020
919.829.0055

Sacramento
916.564.5400
916.564.5444

San Bernardino
909.387.1130
909.387.1138

San Diego
619.233.1006
619.233.8627

San Francisco
415.362.2580
415.434.0882

Seattle
206.436.2020
206.436.2030

Tampa
813.739.1900
813.739.1919

Temecula
951.252.6150
951.252.6151

Tucson
520.399.6990
520.838.8618

Weirton, WV
304.224.2006
304.224.2263

Wichita
316.609.7900
316.462.5746

Exhibit N

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTINE RODRIGUEZ, SANDRA BURGA, KAREN MALAK, JAMES TORTORA, LISA BRUNO, JANEEN CAMERON, KAREN McBRIDE, ANDREW WOOLF, and BRAD BERKOWITZ, individually, and for all others similarly situated, | Index No.: 07-CV-9227 (SHS)(SN) |
| Plaintiffs, | AFFIDAVIT OF MARC J. NATALE IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF COSTS, SERVICE AWARDS, AND APPROVAL OF PAYMENT OF ADMINISTRATIVE COSTS |
| -against- | |
| IT'S JUST LUNCH INTERNATIONAL, IT'S JUST LUNCH, INC., HARRY and SALLY, INC, RIVERSIDE COMPANY, LOREN SCHLACHET, IJL NEW YORK CITY FRANCHISE, IJL ORANGE COUNTY FRANCHISE, IJL CHICAGO FRANCHISE, IJL PALM BEACH FRANCHISE, IJL DENVER FRANCHISE, IJL AUSTIN FRANCHISE, IJL LOS ANGELES-CENTURY CITY FRANCHISE, and DOES 1-136, | |
| Defendants. | |

I, Marc J. Natale, under penalty of perjury, declare the following:

1.      I am the Chief of Staff at the law firm Balestriere Fariello ("the Firm"), and I make this affidavit based on my personal knowledge and/or review of my files. I submit this affidavit in support of Class Counsel's Motion for Award of Attorney's Fees and Reimbursement of Costs, Service Awards, and Approval of Payment of Administrative Costs.

2.     As the Chief of Staff, I am responsible for establishing billing and time-entry procedures, as well as generating and submitting invoices for services rendered.  I am responsible for the maintenance of records related to the billing of the Firm's clients.

3.     The Firm's time records are made and kept in the regular course of the Firm's business.

4.     The Firm's time records are made at or about the time of the event being recorded.

5.     The Firm's time records are made by individuals acting within the course of regular business conduct.

### *Firm Billing Practices*

6.     Staff must record all time spent working on matters handled by the Firm ("Hours Entries") and must, on a daily basis, input their time into the Firm's electronic case management software.

7.     Attorneys may designate an individual with knowledge of the matters to record Hours Entries on his or her behalf, but all attorneys must personally review such Hours Entries on a daily basis to ensure accuracy.

8.     All hours recorded and accrued working on the Firm's matters during a day must be entered into the Firm's electronic case management software by 10:30 a.m. of the following workday.

9.     I review the Hours Entries of all staff every workday.

10.    All recorded hours must be accompanied by a description of the tasks worked on during such time and attributed to the specific matter for which those tasks were undertaken.

11.    When entering recorded hours into the Firm's electronic case management system, staff must review their Hours Entries to ensure they are accurate and complete.

12.    On a monthly basis, the Firm's staff again reviews Hours Entries for accuracy.

13.    All staff must follow this procedure regardless of whether the Firm shall bill on an hourly or some other (including contingency fee) basis.  In other words, from the perspective of staff entering their hours, how the Firm shall be paid is irrelevant to the procedure the staff person must follow to enter hours.

14.    I generate monthly invoices from the Hours Entries recorded by staff in the Firm's electronic case management software.

15.    Monthly invoices generated from staff Hours Entries are reviewed by a partner at the Firm to ensure accuracy and fair billing practices.  As with staff persons entering hours, partners follow this procedure regardless of how the Firm shall be paid.

16.    In matters where discounted billing rates have not been negotiated and where compensation is remunerated on an hourly basis, standardized staff billing rates apply.

17.    In matters where compensation is not remunerated on an hourly basis, invoices reflect the cost of services that would have accrued on an hourly basis at standard staff rates even though such charges may not be debited or billed in such a

manner.   This practice reflects the value of services rendered in matters where compensation due is not billed on an hourly basis.

Dated:  New York, New York
         March 24, 2016

                               Marc J. Natale

Sworn to before me on this
24 day of March 2016

TRACIE GOLDSMITH
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01GO6325054
Qualified in New York County
Commission Expires 05/18/2019