RECEIVED
MAR 29 2016
CHAMBERS OF
JUDGE SIDNEY H. STEIN
U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/29/16

D+7

Rodriguez, et al. v. It's Just Lunch, et al.
United States District Court for the Southern District of New York
Rodriguez, et al. v. It's Just Lunch, et al.,
Southern District of New York, No. 07-CV-9227 (SHS)(SN)

Re: NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

Subject: OBJECTION TO SETTLEMENT

## AFFIDAVIT of THOMAS E. SELCK

BEFORE ME, the undersigned authority, personally appeared Thomas E. (Tom) Selck who, being duly sworn, states:

### TO THE COURT:

1. I am a legal Florida resident and reside at 3510 21st Avenue SW, Naples, 34117. This was my address on August 18, 2005.

2. I am 77 years of age. In 2005 my age was 66.

3. On or about August 18, 2005, I relied on the representations made by It's Just Lunch (IJL) and entered into a service Agreement for $1,300 relying on the presentation of services. This amount was paid in full at the time of signing. A true and correct copy of the Agreement is attached hereto. On August 18, 2005 IJL, in writing, promised the following:
    a. Matched introductions to single women with like interests, background and financial condition similar to mine.
    b. Introductions were to be scheduled at simple lunches at local restaurants.

    c. Post luncheon interviews would be conducted and the resulting comments shared.

    d. Meetings would be scheduled until such time as a mutual match was made.

4. Three such lunch encounters were arranged by IJL. In each case the women were neither social equals, nor compatible. Each lunch resulted in an expense of more than $100. None of the candidates was a college graduate, two were working semi-successfully selling real estate, and none had any interest whatsoever relating to mine. In one case the candidate was married.

5. When displeasure was expressed, IJL simply stopped working on my behalf. My $1,600 investment was a joke and I asked for my money returned. This was flatly denied by IJL.

6. The proposed settlement between the litigants is a continuation of the IJL fraud and amounts to just 6% of my expenses.

7. Upon failure to perform, the IJL Contract promises to refund the service fee, less $200, and this should be the amount of the settlement. IJL did not and would not perform their services as agreed.

8. My circumstances have changed over the past 10 years and "free encounters" holds no interest. Restitution should be made by IJL to claimants if future encounters are not needed. I believe this is tantamount to putting breasts on a boar.

    a. If such free encounters would be made, how would the candidate be selected? What process would follow? Would the candidate simply be one of the many looking for a free lunch?

    b. For this sort of settlement offer to be reasonable, some parameters need to be established for matching. None are proposed.

    c. The free encounters offer is useless to those injured by IJL.

9. Inasmuch as the proposed settlement for breach of contract inures to the benefit of IJL, I question the motives and compensation of plaintiff's counsil in this matter. Clearly, IJL has breached its contract with a great many and a settlement that is financially fair to the injured is call for. The injured parties here are taking a bath when a shower would be more just.
   a. As an injured party, I respectfully request that this case me sent down for renegotiation in accordance with the fairness that is required. Those injured should receive no less that 50% of their investment, the remainder amount being charged to the injured for being foolish enough to have ever entered into such a high-pressure agreement with IJL in the first place.
   b. It is apparent that more than half of the early IJL members were defrauded by inducement. The written promises made by IJL were neither kept nor honored.

10. By signing this Affidavit, I swear and affirm that:
    a. All of the above is true and correct.
    b. I did not receive any benefit whatsoever from any of IJL's activities on my behalf.
    c. IJL did not perform in accordance with the terms of the signed Agreement.
    d. I met my full obligations and duty under the Agreement

[This space purposely left blank]

**FURTHER, THE AFFIANT SAYETH NAUGHT.**

_____
Thomas E. Selck

3.23.2016
Date

| STATE OF FLORIDA | ) |
|---|---|
| | ) ss |
| COUNTY OF COLLIER | ) |

The foregoing instrument was acknowledged before me this ___23___ day of ___MARCH___, 2016 by ___THOMAS E. SELCK___ who is <u>personally known</u> to me or who has produced _____ as identification and who did/did not take an oath.

_____
Notary Public

TIMOTHY J. COTTER
MY COMMISSION # FF 118621
EXPIRES: June 1, 2018
Bonded Thru Notary Public Underwriters

Timothy J. Cotter
Printed Name of Notary
My Commission Expires:

#4

# ATTACHMENT

**IT'S JUST LUNCH!**
**1415 Panther Lane**
**Naples, FL 34109**

Name _Tom Selleck_  Telephone:  Home 
Address _3570 31st Ave S.W._  Work
_Naples, FL 34117_  Driver's License

Contractual Agreement made on this date _8-18-05_ between "It's Just Lunch!", hereinafter referred to as IJL, and _Tom Selleck_ hereinafter referred to as Client. IJL agrees to provide to Client services according to the type of membership as described below:

Client guarantees all information supplied to IJL to be true. If any information is found to be false, Client's membership may be terminated by IJL at its sole discretion without any refund. Client understands that IJL does not run background checks on any applicant/member.

IJL does not guarantee the accuracy of the information concerning its members, as this information is accepted by IJL as provided by applicants/members. Client agrees to hold IJL harmless against any type of action or recourse pertaining to information, misinformation, or absence of information regarding any and all members. Client further agrees to hold IJL harmless, both directly and vicariously, for the behavior or action(s) by any member.

If IJL determines at any time that it is unable (notwithstanding its best efforts) to provide Client with the agreed upon number of introductions under Client's membership, then IJL may elect--again, at its sole discretion--to refund all remaining monies to the Client on a pro-rated basis, less a Two Hundred Dollar ($200.00) interview processing charge. IJL may terminate a membership if one (1) or more written or oral complaints of inappropriate behavior are made against Client by another IJL member or IJL's representatives. Termination is solely at IJL's discretion and no refund will be made.

IJL introduces members based on the judgment of IJL's employees who may take into account the general criteria and guidelines specified by its members. Client acknowledges and agrees that s/he will be matched with other IJL members in Naples, Ft. Myers, and Sarasota.

Client shall be solely responsible for his/her interaction with other IJL members. IJL makes no guarantees or warranties with respect to these introductions. Client has no legal recourse against IJL and/or IJL's representatives regarding these personal interactions.

Client may not assign or transfer this Agreement. Client may transfer his/her membership to another IJL affiliated office upon payment of a $200 fee to, and acceptance by, the other IJL affiliated office.

This Agreement and the IJL profile questionnaire represent the entire agreement between Client and IJL--no other agreements, oral or written, by any party shall in any way affect this Agreement. This Agreement is governed in accordance with the laws of the State of Florida. This Agreement may not be terminated except in accordance with the terms hereof and any claim or dispute shall be on an individual basis only. Refunds are made by IJL only as provided hereunder or if IJL breaches its obligations hereunder. Under no circumstances shall IJL be liable for any punitive or consequential damages relating to this Agreement or the performance thereof. In the event of litigation arising out of or relating to any part of this Agreement, the prevailing party shall be entitled to recover its reasonably attorneys fees and costs, including fees and costs incurred associated with any appeals.

Any provision which a court of law shall determine to be void or invalid shall not affect any other provisions, and all other provisions will continue in full force without any invalidation.

Client guarantees at this time that s/he does not work or consult for another matchmaking/dating/introduction company. Client further agrees to notify IJL if and when s/he commences to work or consult for another matchmaking/dating/introduction company by no later than one week.

Client may obtain a refund within three business days of the execution of this Agreement. After this time period has elapsed, a refund may be granted solely at the discretion of IJL. IJL may terminate this agreement if client defaults on any payment or term of this Agreement. In such event, all payments are non-refundable. IJL retains the right to refuse to renew this Agreement for any reason.

If Client's payment is made via credit card, Client agrees that s/he will not stop payment at any time for any reason. If Client does stop payment, IJL is entitled to collect from the Client all incurred fees and costs related to the collection of the cancelled payment.

Client agrees to the above terms and enrolls as a member under the following membership:

*1300.00*
**Premier Membership: ~~$1,500~~ for 12 months or 14 dates, whichever occurs later.**
*August 2005 PROMOTION*
An additional two (2) weeks and/or one (1) additional date will be added for each new member that Client refers to IJL. Client may place membership on hold at any time for a period of up to one (1) year (cumulatively), at which time Client's membership expires regardless of time or dates remaining.

PAID$ *1,300.00* on *8-18-05*

CHK 1002

Credit Card: *[signature]*                8·18·5

Client's Signature         Date

Exp Date:
*[signature]* 8-18-05

IJL Representative's Signature    Date

Revised 7/1/05

6