Anna St. John
COMPETITIVE ENTERPRISE INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1899 L Street NW, 12th Floor
Washington, DC 20036
Phone: (917) 327-2392
Email: anna.stjohn@cei.org

*Attorney for Objector Michael James Barton*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CHRISTINE RODRIGUEZ, SANDRA BURGA, KAREN MALAK, JAMES TORTORA, LISA BRUNO, JANEEN CAMERON, KAREN McBRIDE, ANDREW WOOLF,** and **BRAD BERKOWITZ**, individually, and for all others similarly situated,<br><br>                              Plaintiffs,<br><br>     -against-<br><br>**IT'S JUST LUNCH INTERNATIONAL, IT'S JUST LUNCH, INC., HARRY and SALLY, INC, RIVERSIDE COMPANY, LOREN SCHLACHET, IJL NEW YORK CITY FRANCHISE, IJL ORANGE COUNTY FRANCHISE, IJL CHICAGO FRANCHISE, IJL PALM BEACH FRANCHISE, IJL DENVER FRANCHISE, IJL AUSTIN FRANCHISE, IJL LOS ANGELES-CENTURY CITY FRANCHISE,** and **DOES 1-136**,<br><br>                              Defendants. | Index No. 07-CV-9227 (SHS)(SN)<br><br>**OBJECTION OF MICHAEL JAMES BARTON TO THE PROPOSED CLASS ACTION SETTLEMENT** |

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES............................................................................................ ii

INTRODUCTION ...........................................................................................................1

ARGUMENT ...................................................................................................................2

I.     Objector Michael James Barton is a member of the National Class, and intends to appear
       through counsel at the fairness hearing. ........................................................................2

II.    A court owes a fiduciary duty to unnamed class members. ...........................................4

III.   The classes were not adequately represented where they were represented by the same
       counsel and one class recovers $100 per member and the other recovers $0 per member. ......5

IV.    Even if the classes are certifiable, the settlement is not fair; a settlement that provides
       virtually no consideration to class members for their claim release but pays millions in
       attorneys' fees cannot be approved. ...........................................................................10

       A.     The settlement's change in prospective business practices and provision of date
              coupons confer virtually no benefit on the classes and the cash allocated to the New
              York Class is proportionally *de minimis*. ...........................................................11

       B.     The settlements afford preferential treatment to class counsel. ...................................15

V.     In the alternative, if the Court approves the settlement, the Court should not award
       attorneys' fees until the coupon redemption rate is known........................................18

VI.    Class notice is defective because class counsel fails to inform the class that it reserves the
       right to seek more in attorneys' fees and costs than disclosed and that funds may be
       distributed to *cy pres* recipients, the identity of which are also not disclosed...........................23

       CONCLUSION................................................................................................25

# TABLE OF AUTHORITIES

Cases

*In re Agent Orange Prods. Liab. Litig.*,
    818 F.2d 216 (2d Cir. 1987) ..................................................................................5

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................... 4, 6, 7, 9

*In re Aqua Dots Prod. Liab. Litig.*,
    654 F.3d 748 (7th Cir. 2011) ..............................................................................18

*In re Baby Prods. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) ....................................................................... 14, 17

*Barnes v. The American Tobacco Co.*,
    161 F.3d 127 (3d Cir. 1998) ................................................................................6

*Barney v. Holzer Clinic*,
    110 F.3d 1207 (6th Cir. 1997) .............................................................................6

*In re Bluetooth Headset Litig.*,
    654 F.3d 935 (9th Cir. 2011) .............................................................10, 12, 16, 17

*Boucher v. Syracuse Univ.*,
    164 F.3d 113 (2d Cir. 1999) ...................................................................... 1, 6, 7

*Brown v. Sega Amusements, U.S.A., Inc.*,
    No. 13 Civ. 7558, 2015 U.S. Dist. LEXIS 28442 (S.D.N.Y. Mar. 9, 2015) ..............................16

*Burns v. United States R.R. Retirement Bd.*,
    701 F.2d 189 (D.C. Cir. 1983) ............................................................................6

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
    504 F.3d 229 (2d Cir. 2007) ..............................................................................19

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) .............................................................................4, 19

*City of Pontiac Gen. Empls. Ret. Sys. v. Lockheed Martin*,
    954 F. Supp. 2d 276 (S.D.N.Y. 2013) ......................................................... 16, 22

*In re Cmty. Bank of N. Va.*,
    418 F.3d 277 (3d Cir. 2005) ................................................................................8, 18

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ........................................................................... 6

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) ...................................................................... 10, 24

*Drimmer v. WD-40 Co.*,
    No. 06-cv-900, 2007 U.S. Dist. LEXIS 62582 (S.D. Cal. Aug. 24, 2007) ................................... 8

*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013) .....................................................................passim

*Dugan v. Lloyds TSB Bank*,
    No. C 12-02549, 2013 U.S. Dist. LEXIS 56617 (N.D. Cal. Apr. 19, 2013) ............................... 8

*Etter v. Thetford Corp.*,
    No. 8:13-81, Dkt. 221 (C.D. Cal. Oct. 14, 2014) ...........................................................18

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) ...................................................................... 5, 14, 17

*In re Excess Value Ins. Coverage Litig.*,
    598 F. Supp. 2d 380 (S.D.N.Y. 2005) ...........................................................16, 19, 22

*Felix v. Northstar Location Servs.*,
    290 F.R.D. 397 (W.D.N.Y. 2013) ......................................................................12

*Fosmire v. Progressive Max Ins. Co.*,
    277 F.R.D. 625 (W.D. Wash. 2011) ....................................................................8

*Fouks v. Red Wing Hotel Corp.*,
    No. 12-CV-2160, 2013 U.S. Dist. LEXIS 165588 (D. Minn. Nov. 21, 2013)................... 20, 22

*Gallego v. Northland Group Inc.*,
    814 F.3d 123 (2d Cir. 2016) ...........................................................................18

*In re Gen. Motors Corp. Engine Interchange Litig.*,
    594 F.3d 1106 (7th Cir. 1979)..........................................................................6

In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,
  55 F.3d 768 (3d Cir. 1995) ...................................................................7, 16

In re Global Crossing Secs. & ERISA Litig.,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................4

Goldberger Integrated Resources, Inc.,
  209 F.3d 43 (2d Cir. 2000) ...........................................................4, 10, 19

Grant v. Bethlehem Steel Corp.,
  823 F.2d 20 (2d Cir. 1987) ...........................................................4

Grigsby v. N. Mississippi Med. Ctr., Inc.,
  586 F.2d 457 (5th Cir. 1978) ...........................................................6

Hege v. Aegon USA, LLC,
  780 F. Supp. 2d 416 (D.S.C. 2011) ...........................................................23

In re Holocaust Victims Assets Litig.,
  424 F.3d 132 (2d Cir. 2005) ...........................................................24

Howell v. JBI, Inc.,
  298 F.R.D. 649 (D. Nev. 2014) ...........................................................17, 23

In re HP Inkjet Printer Litig.,
  716 F.3d 1173 (9th Cir. 2013) ...........................................................passim

In re Initial Pub. Offerings Sec. Litig.,
  471 F.3d 24 (2d Cir. 2006) ...........................................................5

Ira Holtzman, CPA v. Turza,
  728 F.3d 682 (7th Cir. 2013) ...........................................................24

In re Katrina Canal Breaches Litig.,
  628 F.3d 185 (5th Cir. 2010) ...........................................................17

Key v. Gillette Co.,
  782 F.2d 5 (1st Cir. 1986) ...........................................................6

Lightfoot v. District of Columbia,
  355 F. Supp. 2d 414 (D.D.C. 2005) ...........................................................23

*In re Literary Works in Elec. Databases Copyright Litig.,*
   654 F.3d 242 (2d Cir. 2011) ............................................................ 6, 8, 9

*In re MagSafe Apple Power Adapter Litig.,*
   571 Fed. Appx. 560 (9th Cir. 2014) ...........................................................14

*In the Matter of Mexico Money Transfer Litig.,*
   267 F.3d 743 (7th Cir. 2001)...................................................................15

*Masters v. Wilhelmina Model Agency, Inc.,*
   473 F.3d 423 (2d Cir. 2007) ...................................................................24

*Mba v. World Airways,*
   369 Fed. Appx. 194 (2d Cir. 2010) ...........................................................19

*McDaniel v. County of Schenectady,*
   595 F.3d 411 (2d Cir. 2010) ...................................................................19

*Melong v. Micronesian Claims Comm'n,*
   643 F.2d 10 (D.C. Cir. 1980) ...................................................................8

*In re Mercury Interactive Corp. Sec. Litig.,*
   618 F.3d 988 (9th Cir. 2010)..................................................................4, 5

*Moody v. Sears Roebuck & Co.,*
   664 S.E.2d 569 (N.C. App. 2008) .............................................................21

*Mullane v. Central Hanover Bank & Trust Co.,*
   339 U.S. 306, (1950).....................................................................2, 23, 24

*Ortiz v. Chop't Creative Salad Co. LLC,*
   89 F. Supp. 3d 573 (S.D.N.Y. 2015)..........................................................22

*Ortiz v. Fibreboard Corp.,*
   527 U.S. 815 (1999)..........................................................................6, 9

*Palamara v. Kings Family Rests.,*
   No. 07-317, 2008 WL 1818453 (W.D. Pa. Apr. 22, 2008) ...............................21

*Pearson v. NBTY, Inc.,*
   772 F.3d 778 (7th Cir. 2014).................................................10, 12, 16, 17

*Petrovic v. Amoco Oil Co.,*
    200 F.3d 1140 (8th Cir. 1999).............................................................................................6, 7

*Plummer v. Chemical Bank,*
    668 F.2d 654 (2d Cir. 1982) ...............................................................................................5

*Polar Int'l Brokerage Corp. v. Reeve,*
    187 F.R.D. 108 (S.D.N.Y. 1999) ............................................................................... 11, 18

*Radcliffe v. Experian Info. Sols.,*
    715 F.3d 1157 (9th Cir. 2013)...........................................................................................18

*In re Razorfish, Inc. Secs. Litig.,*
    143 F. Supp. 2d 304 (S.D.N.Y. 2001)...............................................................................18

*Redman v. RadioShack Corp.,*
    768 F.3d 622 (7th Cir. 2014).....................................................................................passim

*Reed v. Continental Guest Servs. Corp.,*
    No. 10 Civ. 5642, 2011 U.S. Dist. LEXIS 36814 (S.D.N.Y. Apr. 4, 2011) ...................... 13, 15

*Richardson v. L'Oreal USA, Inc.,*
    991 F. Supp. 2d 181 (D.D.C. Nov. 6, 2013)........................................................................3

*Smith v. Sprint Communs. Co. L.P.,*
    387 F.3d 612 (7th Cir. 2004)..............................................................................................8

*Sobel v. Hertz,* No. 3:06-CV-00545,
    2011 U.S. Dist. LEXIS 68984 (D. Nev. June 27, 2011) ..................................... 20, 22

*In re Sw. Airlines Voucher Litig.,*
    799 F.3d 701 (7th Cir. 2015)...........................................................................................20

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003)..............................................................................................9

*Strougo v. Bassini,*
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)...............................................................................19

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
    463 F.3d 646 (7th Cir. 2006)..................................................................................... 12, 15

*Tasion Comms., Inc. v. Ubiquiti Networks, Inc.,*
    308 F.R.D. 630 (N.D. Cal. 2015) ................................................................8

*Thomas v. Magnachip Semiconductor,*
    No. 14-cv-1160, 2016 U.S. Dist. LEXIS 47914, at *26-*27 (N.D. Cal. Apr. 7, 2016) ...........24

Rules and Statutes

28 U.S.C. § 1711, note § 2(a)(3) ........................................................................20

28 U.S.C. § 1711, note § 2(a)(3)(A) ....................................................................21

Class Action Fairness Act of 2005, 28 U.S.C. § 1712................................................passim

Fed. R. Civ. P. 23(a)................................................................................5, 6

Fed. R. Civ. P. 23(a)(4) .......................................................................5, 10, 18

Fed. R. Civ. P. 23(c)(1) ...............................................................................6

Fed. R. Civ. P. 23(e)..........................................................................passim

Fed. R. Civ. P. 23(g)(4) ...............................................................................6

Fed. R. Civ. P. 23(h) .........................................................................2, 20, 25

Other Authorities

American Law Institute,
    *Principles of the Law of Aggregate Litigation* § 3.05(c) (2010) ..............................5

Brunet, Edward
    *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors,*
    2003 U. CHI. LEGAL F. 403 (2003)...........................................................4

Fitzpatrick, Brian T.
    *The End of Objector Blackmail?,*
    62 VAND. L. REV. 1623 (2009) .................................................................4

Karlsgodt, Paul & Chohan, Raj
    *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval,*
    BNA: CLASS ACTION LITIG. REPORT (Aug. 12, 2011).........................................4

Leslie, Christopher R.,
   *A Market-Based Approach to Coupon Settlements in Antitrust and Consumer Class Action*
   *Litigation,*
   49 UCLA L. REV. 991 (2002)..................................................................................................15

Liptak, Adam
   *When Lawyers Cut Their Clients Out of the Deal,*
   N.Y. TIMES, Aug. 13, 2013, at A12..........................................................................................3

Miller, Geoffrey P. & Singer, Lori S.
   *Nonpecuniary Class Action Settlements,*
   60 L. & CONTEMP. PROBS. 97 (1997) .....................................................................................15

Notes of Advisory Committee on 2003 Amendments to Rule 23(h) ...........................................23

Parloff, Roger,
   *Should Plaintiffs Lawyers Get 94% of a Class Action Settlement?,*
   FORTUNE, Dec. 15, 2015............................................................................................................3

Pew Research Center,
   *Rising Share of Never-Married Adults, Growing Gender Gap,* Sept. 23, 2014 .....................14

S.Rep. No. 109-14 (2005)...........................................................................................................20

Silver, Charles,
   *Due Process and the Lodestar Method,*
   74 TULANE L. REV. 1809 (2000) ..............................................................................................18

Tharin, James & Blockovich, Brian,
   *Coupons and the Class Action Fairness Act,*
   18 GEO. J. LEGAL ETHICS 1443, 1445 (2005) .........................................................................22

U.S. Census Bureau,
   *America's Families and Living Arrangements: 2015* ............................................................14

Wright, Charles Alan, *et al.,*
   18A *Federal Practice and Procedure* § 1796.6 (3d ed. 2005).................................................23

# INTRODUCTION

Plaintiffs seek approval of a settlement that ultimately pays class counsel millions more than the classes and leaves the vast majority of class members with only worthless coupons. This is fundamentally unfair and unreasonable under Rule 23 and the Class Action Fairness Act. The $74 million "high end" value of the settlement claimed by class counsel is almost exclusively derived from the purported value of vouchers for date-matching services by It's Just Lunch ("IJL")—an absurd and near-valueless form of relief for classes spanning more than a decade and with members who have no use for the vouchers because, among other reasons, they are now married or in other committed relationships. Class counsel nevertheless asks for its full lodestar plus expenses—an excessive 76% of the $4.75 million demonstrable constructive common fund—without providing the Court with information legally required to determine the benefit to the class and proportionately reasonable fees. National class member Michael James Barton objects to the proposed settlement and class counsel's application for an award of attorneys' fees and costs on multiple independent grounds.

First, the proposed settlement reveals conflicts of interest among the New York and National classes. Under the proposed settlement, New York class members recover $100 in monetary relief while National class members recover $0. The two classes were in competition for the cash portion of the settlement; however, due to the single-counsel representation provided to the classes, each class did not have counsel advocating for its interests. The Court has an ongoing duty to monitor the adequacy of representation. *See Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999). The sharp divergence in recovery by the two classes reveals representation by both counsel and the class representatives was inadequate. As a result, the National Class should be decertified in the absence of separate representation by counsel.

Second, the settlement should be rejected on Rule 23(e) fairness grounds based on the extreme disproportion between the minimal "benefit" to the class and the $3.6 million in cash that class counsel seeks for itself. Class members obtain no benefit from the injunction that alters the *future* business

practices of IJL; a "voucher," or coupon, for matching services by IJL is unlikely to benefit most class members at all, much less at a retail value of $450, and, in any event, under federal law, the value of the *redeemed* vouchers is the proper measure of class benefit. That leaves only the $204,100 monetary recovery by the estimated 153,649 total class members (reserved entirely for the approximately 2,000 New York class members); it does not warrant $3.6 million in attorneys' fees.

Third, if the Court nevertheless approves the settlement, the Court should defer consideration of class counsel's motion for a Rule 23(h) award until the redemption rate of the vouchers made available to class members is known. Under the Class Action Fairness Act of 2005, 28 U.S.C. § 1712 ("CAFA"), any settlement involving a coupon (or "voucher") component requires the court to consider the value of redeemed coupons in awarding attorneys' fees—whether the court uses the lodestar or percentage of recovery method of determining fees. *See In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1175-76 (9th Cir. 2013).

Finally, notice to the class is constitutionally defective because it failed to inform class members that class counsel has the right to request more fees after the initial round of fees, costs, and incentive payments are made and that any remaining settlement funds will be distributed to third-party *cy pres* recipients, the identity of which are not disclosed. Without this information, class members were deprived of information constitutionally necessary and upon which they may have based a decision to object or opt out. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

## ARGUMENT

### I.    Objector Michael James Barton is a member of the National Class, and intends to appear through counsel at the fairness hearing.

Objector Michael James Barton signed a membership contract with IJL or one of its franchisees and purchased the services of IJL or one of its franchisees in or around March 2009. Declaration of Michael James Barton ("Barton Decl.") ¶ 3. He was a resident of Texas at the time he executed his membership contract with IJL or one of its franchisees. *Id.* He has not received a full refund of the membership fees that he paid to IJL; nor has he signed a release of any claims in favor

of IJL and/or a franchisee of IJL. *Id.* Barton therefore is a member of the settlement class with standing to object to the settlement. Fed. R. Civ. P. 23(e)(5). Barton's address is 2800 Post Oak Blvd. #4100, Houston, TX 77056, and his telephone number is (713) 234-6535. Barton Decl. ¶ 2.

The Competitive Enterprise Institute's Center for Class Action Fairness ("CCAF"), through attorney Anna St. John, represents Barton *pro bono*. St. John gives notice of her intent to appear at the fairness hearing, where she wishes to discuss matters raised in this Objection. Barton does not intend to call any witnesses at the fairness hearing, but reserves the right to make use of all documents entered on to the docket by any settling party or objector. Barton reserves the right to cross-examine any witnesses who testify at the hearing in support of final approval.

CCAF, which was founded in 2009 and became part of the non-profit Competitive Enterprise Institute on October 1, 2015, litigates on behalf of class members, which it represents *pro bono*, against unfair class-action procedures and settlements. *See, e.g.*, *In re Dry Max Pampers Litig.* ("*Pampers*"), 724 F.3d 713, 716-17 (6th Cir. 2013) (describing CCAF's client's objections as "numerous, detailed, and substantive") (reversing settlement approval and certification); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 205 (D.D.C. Nov. 6, 2013) (describing CCAF's client's objection as "comprehensive and sophisticated" and noting that "[o]ne good objector may be worth many frivolous objectors in ascertaining the fairness of a settlement") (rejecting settlement approval and certification); Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013, at A12 (calling CCAF's president "[t]he leading critic of abusive class-action settlements"); *see also* Roger Parloff, *Should Plaintiffs Lawyers Get 94% of a Class Action Settlement?*, FORTUNE, Dec. 15, 2015 (calling CCAF's founder "the nation's most relentless warrior against class-action fee abuse"). *See* Declaration of Theodore H. Frank ("Frank Decl.") ¶¶ 3, 6-9.

Because it has been CCAF's experience that class action attorneys often employ *ad hominem* attacks in attempting to discredit objections, it is perhaps relevant to distinguish CCAF's mission from the agenda of those who are termed "professional objectors." A "professional objector" is a specific legal term referring to for-profit attorneys who attempt or threaten to disrupt a settlement unless

plaintiffs' attorneys buy them off with a share of the attorneys' fees. Some courts presume that such objectors' legal arguments are not made in good faith. Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 437 n.150 (2003). This is not CCAF's *modus operandi*. Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: CLASS ACTION LITIG. REPORT (Aug. 12, 2011) (distinguishing CCAF from professional objectors). CCAF refuses to engage in *quid pro quo* settlements, does not extort attorneys, and has never withdrawn an objection in exchange for payment. Instead, it is funded entirely through charitable donations and court-awarded attorneys' fees. *See generally* Frank Decl.

Nonetheless, to preempt any possibility of a false and unjustifiable accusation of objecting in bad faith and seeking to extort class counsel, Barton is willing to stipulate to an injunction prohibiting him from accepting compensation in exchange for the settlement of this objection. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (suggesting inalienability of objections as solution to objector blackmail problem). Barton brings this objection through CCAF in good faith to protect the interests of the class. Barton Decl. ¶ 9.

## II.   A court owes a fiduciary duty to unnamed class members.

In evaluating a proposed settlement "[t]he Court must eschew any rubber stamp approval in favor of an independent evaluation" of the settlement. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds by Goldberger Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000). In making this evaluation, a "district court ha[s] a fiduciary responsibility to the silent class members," *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987), and must act "with a jealous regard" for the rights and interests of such absent class members, *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994-95 (9th Cir. 2010) (internal quotation and citation omitted). The fiduciary role is necessary "because inherent in any class action is the potential for conflicting interests among the class representatives, class counsel, and absent class members." *In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (internal quotation marks omitted). *See also Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997) ("Rule 23(e) … protects unnamed class members 'from unjust or

unfair settlements.'"); *Plummer v. Chemical Bank*, 668 F.2d 654, 658 (2d Cir. 1982) (through its oversight responsibility, the court assumes a derivative fiduciary obligation to the class).

"[I]n class-action settlements the district court cannot rely on the adversarial process to protect the interests of the persons most affected by the litigation—namely, the class. Instead, the law relies upon the fiduciary obligations of the class representatives and, especially, class counsel, to protect those interests. And that means the courts must carefully scrutinize whether those fiduciary obligations have been met." *Pampers*, 724 F.3d at 718 (internal quotation omitted). *See also Mercury Interactive*, 618 F.3d at 994 ("the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage," when counsel's "interest in getting paid the most for its work representing the class [is] at odds with the class' interest in securing the largest possible recovery for its members." (internal quotation and citation omitted)). While class counsel and the defendant have an incentive to bargain over the size of the settlement, similar incentives do not govern their critical decisions about how to divvy it up—including the allocation to counsel's own fees. "The concern is not necessarily in isolating instances of major abuse, but rather is for those situations, short of actual abuse, in which the client's interests are somewhat encroached upon by the attorney's interests." *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 216, 224 (2d Cir. 1987) (internal quotation marks omitted). "From the selfish standpoint of class counsel and the defendant, … the optimal settlement is one modest in overall amount but heavily tilted toward attorneys' fees." *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014). Therefore, "[i]n reviewing a proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable." American Law Institute, *Principles of the Law of Aggregate Litigation* ("*ALI Principles*") § 3.05(c) (2010). The moving party has the burden of proving the fairness of a settlement allocation. *Id.*

## III.   The classes were not adequately represented where they were represented by the same counsel and one class recovers $100 per member and the other recovers $0 per member.

Adequacy of representation is a prerequisite to the certification of any class action. Fed. R. Civ. P. 23(a)(4); *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). Adequate

representation requires "structural assurance of fair and adequate representation for the diverse groups and individuals affected" in a class action. *Amchem*, 521 U.S. at 627. To eliminate conflicts among such diverse groups, each class or subclass must have "separate representation to eliminate conflicting interests of counsel." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999). "Only the creation of subclasses, *and the advocacy of an attorney representing each subclass*, can ensure that the interests of that particular subgroup are in fact adequately represented." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 252 (2d Cir. 2011) (emphasis added). Thus, "'[a]dequacy is twofold: the proposed class representative [and counsel] must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Id.* at 249 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)); *see also* Fed. R. Civ. P. 23(g)(4) ("Class counsel must fairly and adequately represent the interests of the class.").

"A district court has a duty to assure that a class once certified continues to be certifiable under Fed. R. Civ. P. 23(a)." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1145 (8th Cir. 1999). Thus, "under Rule 23(c)(1), courts are 'required to reassess their class rulings as the case develops.'" *Boucher*, 164 F.3d at 118 (quoting *Barnes v. The American Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998)); *see also Barney v. Holzer Clinic*, 110 F.3d 1207, 1214 (6th Cir. 1997) (duty to assess adequacy of representation "does not end with the initial certification; as long as the court retains jurisdiction over the case 'it must continue carefully to scrutinize the adequacy of representation and withdraw certification if such representation is not furnished'" (quoting *Grigsby v. N. Mississippi Med. Ctr., Inc.*, 586 F.2d 457, 462 (5th Cir. 1978)); *accord Key v. Gillette Co.*, 782 F.2d 5, 7 (1st Cir. 1986); *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.3d 1106, 1124 (7th Cir. 1979); *Burns v. United States R.R. Retirement Bd.*, 701 F.2d 189, 191-92 (D.C. Cir. 1983) ("The original definition and certification … may require alteration or amendment as the case unfolds.") (Ruth Bader Ginsburg, J.). A court must reconsider a ruling certifying a class if, for instance, a subsequent development creates a conflict of interest that prevents the (a)(4) adequacy requirement from being met. *Boucher*, 164 F.3d at 118-19; *Petrovic*, 200 F.3d at 1145.

Such a development requires reconsideration of class certification here. The terms of the settlement agreement evidence deep conflicts of interest between the New York Class and the National Class. *See Amchem*, 521 U.S. at 619-20 (inspection of settlement terms when evaluating adequacy "altogether proper"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995) ("*GM Trucks*") (conflicts can sometimes be discerned from "the very terms of th[e] settlement"). The most obvious conflict is the allocation of the cash component of the settlement. Of the $4.75 million fund, $204,100 will be distributed to the classes. That entire $204,100 will be distributed to New York class members; members of the National Class will not receive a penny. Despite this difference in compensation, the *same* release provision applies to both New York and National class members. Both classes are releasing *all* of their claims and rights under state and federal law that arise out of or relate to the claims asserted in the litigation, "including, without limitation, any claim that IJL's performance under its contracts with members of the Settlement Classes or IJL's conduct in connection with the marketing of its services was unlawful, deceptive, misleading … or breached any federal, state or local consumer fraud or similar laws." Settlement ¶ 1.15; *id.* ¶¶ 5.01-5.02. In exchange for this broad release, counsel negotiated $100 in additional monetary compensation for the New York Class but left the National Class with $0.[1]

Class counsel may try to justify the stark difference in monetary relief on the grounds that the New York Class has stronger claims, the release of which justifies greater recovery. As evidence, class counsel may point to the Court's denial of its motion to certify a national class for unjust enrichment claims or may undertake the Herculean labor of trying to show that New York overwhelmingly has the most consumer-favorable unjust enrichment laws of any state in the country. Such arguments fail as a matter of law for two main reasons.

First, because the unjust enrichment claims for the National Class could not be certified, they should not be released by the settlement. Instead, "[u]ncertified issues and claims may be pursued on

---

[1] Other "relief" afforded under the settlement—date vouchers and a "pledge" respecting future conduct by IJL—is awarded equally to the two classes.

an individual basis and may *not* be included in any class settlement." *Dugan v. Lloyds TSB Bank*, No. C 12-02549, 2013 U.S. Dist. LEXIS 56617, at *8 (N.D. Cal. Apr. 19, 2013) (emphasis in original) (referring to state and international law variation in claims that counsel proposed including for certification). The fact that the proposed settlement releases the unjust enrichment claims of the National Class, and for $0 no less, illustrates the inadequacy of class counsel and the National class representatives. *See, e.g.*, *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 307-08 (3d Cir. 2005) ("question[ing] whether the absent class members' interests were sufficiently pursued by class counsel" where claims that were not pursued were released in settlement and noting that such "may suggest that class counsel subrogated their duty to the class in favor of the enormous class-action fee offered by defendants"); *Drimmer v. WD-40 Co.*, No. 06-cv-900, 2007 U.S. Dist. LEXIS 62582, at *7 (S.D. Cal. Aug. 24, 2007) ("A class representative is not an adequate representative when the class representative abandons particular remedies to the detriment of the class." (internal quotation marks omitted)); *cf. also Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 634 (W.D. Wash. 2011) (claim splitting rendered class representative inadequate); *Tasion Comms., Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 641-42 (N.D. Cal. 2015) (denying certification due to adequacy problem where plaintiffs had abandoned certain damage theories for purposes of making certification more likely).

Second, while it ultimately may or may not be true that the New York unjust enrichment claims generally are worth more than other state-law unjust enrichment claims such that their release commands a greater settlement value, the proper valuation should have been tested through arms-length negotiation by counsel separately representing each class.[2] The enormous divergence in

---

[2] If it is the case that New York and non-New York claims are of wildly divergent value, that is further reason that the classes cannot be represented by the same counsel. *See Smith v. Sprint Communs. Co. L.P.*, 387 F.3d 612, 614 (7th Cir. 2004) (vacating nationwide settlement class on (a)(4) grounds where state law differed); *Melong v. Micronesian Claims Comm'n*, 643 F.2d 10 (D.C. Cir. 1980) (affirming denial of certification of a class that attempted to consolidate in a single class those with strong and weak claims). Moreover, *Literary Works* did not dispute that the subclasses in that case had claims of differing value, or even find that one subclass's claims were being undervalued: the structural deficiency was reason enough by itself to reject the settlement. 654 F.3d at 254.

---

recovery here raises red flags. *Staton v. Boeing Co.*, 327 F.3d 938, 962 (9th Cir. 2003) (court must examine whether settlement "raise[s] any flags regarding favoritism for some members of the class over others[, including whether] certain groups of class members [are] treated more favorably than others for purposes of future relief"). Just as in *Literary Works*, here, "[a]ny improvement in the compensation of, for example, [New York] claims would result in a commensurate decrease in the recovery available for [the National Class's] claims." 654 F.3d at 252. As such, counsel for the two classes necessarily faced a conflict in trying to maximize recovery for both.

Because of the inherent conflict between the New York and National classes over how the same pot of relief is allocated, the same counsel could not adequately represent those competing interests to the settlement proceeds. Each class required counsel whose sole duty was to represent and advocate on its behalf. Instead, in the settlement negotiations, class counsel was "obligated to advance the collective interests of the class, rather than those of a subset of class members"; entirely absent was "the advocacy of an attorney representing each subclass" or subgroup as required by Rule 23 to "ensure the interests of that particular subgroup are in fact adequately represented." *Literary Works*, 654 F.3d at 252.

*Amchem* involved a comparable conflict. There, the proposed class encompassed members who had already manifested asbestos-related injuries, *i.e.*, those with present claims, and those with who had been exposed to asbestos but did not show signs of injury, *i.e.*, those with only potential future claims. Thus, the "two subgroups … had competing interests in the distribution of a settlement whose terms reflected 'essential allocation decisions designed to confine compensation and to limit defendants' liability.'" *Literary Works* , 654 F.2d at 250 (quoting *Amchem*, 521 U.S. at 627). As a result, "the adversity among subgroups require[d] that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups." *Amchem*, 521 U.S. at 627 (internal quotations omitted). *See also Ortiz*, 527 U.S. at 857 (groups holding claims of significantly different value had conflicting interests that should have been addressed with "reclassification with separate counsel"). Just as in

*Amchem* and *Ortiz,* the adequacy requirement of Rule 23(a)(4) was not met here, where there was no "structural assurance of  fair and adequate representation for the diverse groups and individuals affected." *Amchem*, 521 U.S. at 627.

While the inadequacy of representation present here may not have been apparent at the time the Court certified the National and New York classes, the Court has a duty now to decertify the National Class in light of the conflicts made clear by the terms of the proposed settlement agreement.

**IV.    Even if the classes are certifiable, the settlement is not fair; a settlement that provides virtually no consideration to class members for their claim release but pays millions in attorneys' fees cannot be approved.**

The potential for conflict between class counsel and its client—the unnamed class—is at its zenith during the settlement phase of a class action. Every dollar reserved to the class is a dollar that defendants will not want to pay class counsel, and defendants care only about the total amount they pay, not how it is allocated. This problem, inherent in the class action context, has been remarked on by numerous courts as underpinning the fiduciary role that courts must play in protecting the class. *See, e.g.*, *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 786-87 (7th Cir. 2014); *Pampers*, 724 F.3d at 718; *In re Bluetooth Headset Litig.*, 654 F.3d 935, 948 (9th Cir. 2011); *Goldberger*, 209 F.3d 43.

Due to the mutual self-interest of class counsel and defendant, the most common settlement defect is one of allocation. *See Pampers*, 724 F.3d at 717 ("the adversarial process—or … 'hard fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is *allocated* between the class representatives, class counsel, and unnamed class members" (emphasis in original)). Thus, although it is *necessary* that a settlement is at "arm's length" without express collusion between the settling parties, it is not *sufficient*. Courts "'must be particularly vigilant'" not only for explicit collusion, but also for more "'subtle signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations.'" *Pampers*, 724 F.3d at 718 (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)); *accord Pearson*, 772 F.3d at 787 (district courts must be "vigilant and realistic" in their review, nixing any "selfish deal" that "disserves" the class).

One such "subtle sign" is class counsel's attempt to create the illusion of valuable relief to class members in an effort to obtain approval of the settlement while capturing an excessive attorneys' fee award, even where the actual settlement value to the class is minimal. *See Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 119 (S.D.N.Y. 1999) (discussing conflicts of interest in class actions and "persuasive[]" view that "this problem has become even more exacerbated by the use of nonpecuniary settlements"). The settlement here illustrates such self-dealing: Class members give a broad release of claims to IJL in exchange for only a *date coupon* that will be useless to many class members and that cannot be transferred for *any* consideration without subjecting the class member to liquidated damages of $450, and a "*pledge*" by IJL that it will respect *future* customers' preferences regarding three specified characteristics in date matches. All the while, the settlement reserves only $204,100 from the $4.75 million cash fund for the class, and only for the small subset of New York class members. For this, class counsel is requesting a fee of their full lodestar of over $3.6 million and reserved the right to ask for more later. This grossly disproportionate settlement cannot pass the Rule 23(e) fairness analysis.

## A. The settlement's change in prospective business practices and provision of date coupons confer virtually no benefit on the classes and the cash allocated to the New York Class is proportionally *de minimis*.

The Settlement Agreement contains the following "features" as purported benefits to the classes: (i) a pledge in which IJL commits, for three years, to honor its clients' preferences regarding age, parental status, and religious affiliation in its matches; and (ii) a "voucher" for at least one date set up through IJL. Settlement Agmt. (Dkt. 257-2) at 3. Each of these items is virtually worthless to class members. Members of the New York class will receive an additional $100 payment—meaning that the approximately 153,649 members of the two classes will recover a meager $204,100 total. *Id.*

*First*, the "pledge" to honor future clients' preferences regarding certain characteristics for potential matches for 3 years cannot be considered class relief. The pledge is a prospective business practice that will benefit only those clients who do business with IJL in the future. "'The fairness of the settlement must be evaluated primarily based on how it *compensates class members'*—not on whether it provides relief to other people…." *Pampers*, 724 F.3d at 720 (quoting *Synfuel Techs., Inc. v. DHL*

*Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006)). "[F]uture purchasers are not members of the class, defined as … consumers who have purchased [the service]." *Pearson*, 772 F.3d at 786; *see also Felix v. Northstar Location Servs.*, 290 F.R.D. 397, 406-07 (W.D.N.Y. 2013) (prospective injunctive relief promise of no value to class members who only dealt with defendant in past transaction). These cases recognize that a class composed of people who have done business with defendants *in the past* is not served by prospective injunctive relief that can at most only benefit those who do business with defendants *in the future*. Even in the unlikely event that the injunctive relief imposes significant costs on defendants, this is not the measure of compensable value. *Bluetooth*, 654 F.3d at 944 ("[T]he standard [under Rule 23(e)] is not how much money a company spends on purported benefits, but the value of those benefits to the class." (internal quotation marks omitted)).

While injunctive relief may be appropriate in some class actions, the focus of the Rule 23(e) fairness inquiry is the benefit *to the class*.[3] The class members here receive nothing as a result of IJL's "pledge"—unless they happen also to be future clients of IJL. A class member will experience *no* benefit from IJL's commitment to match *other people* with dates who have (or do not have) the religious tradition, age, and parental status for which they indicated a preference (or aversion). Just as non-class members will experience this "benefit" only if they become clients of IJL, so, too, will class members experience this benefit only if they also are clients of IJL in the *future*. Class members receive no marginal benefit compared to non-class members and thus have received no consideration for the waiver of their claims from the "pledge."

It is not just class members for whom the benefit of IJL's pledge is nothing more than an illusion. It is also notable that to the extent IJL's "pledge" has any value, that value will presumably be reflected in the price IJL charges its clients. Any defendant forced to change business practices by prospective injunctive relief can simply make the economically rational decision to pass along the

---

[3] For example, a 23(b)(2) civil-rights claim may seek to change the future behavior of a governmental body or employer with respect to a class of individuals who have ongoing relationships with the defendant.

additional costs of such changes to its customers. IJL's commitment to provide better matching services will likely mean additional personnel time and may require additional marketing costs to increase the pool of potential dates to enable preferential matching. It is irrational to assume that those additional marginal costs will not be offset by an increase in price. *See Reed v. Continental Guest Servs. Corp.*, No. 10 Civ. 5642, 2011 U.S. Dist. LEXIS 36814, at *9 (S.D.N.Y. Apr. 4, 2011) (finding it "hard to judge the value" of settlement relief because the demand for such items "may be quite limited and [the defendant] can simply raise its prices to offset the revenue lost from any use of the discount codes"). Notably, the settlement does not prohibit such an offsetting price increase. As a result, the prospective injunctive relief is inherently illusory to future customers as well as current ones.

     *Second*, the value of the "date vouchers" offered to claimants under the settlement are of such minimal value to the class that they highlight how overwhelmingly the settlement benefits fall in favor of class counsel at the expense of the class. The settlement provides that each member of the National and New York classes who does not opt out and who submits a claim form will receive one voucher redeemable for at least one date arranged by IJL, with an estimated value of $450. Settlement Agmt. ¶ 2.04. Class counsel claims in its fee motion that these coupons are "transferable to non-class members," Mem. in Support of Class Counsel's Application for Award of Attorney's Fees (Dkt. 282) ("Fee Mem.") 4, but fails to mention the onerous conditions that make any transfer virtually impossible and certainly unlikely: (i) the voucher may not be transferred for cash or *any* other consideration; if it is, "the transferor Class Member shall be liable to IJL for liquidated damages of $450;" (ii) if "gifted" a voucher, no transferee can use the voucher unless he or she has (or gets) a current IJL membership and was identified in writing to IJL by the transferor; and (iii) the vouchers must be submitted to IJL within 120 days after issuance, Settlement ¶ 2.04.

     A vast number of class members are likely to have no use for or interest in the IJL date coupon. *See, e.g.*, Barton Decl. ¶ 8. Even the shortest class period spans nearly a decade, encompassing IJL clients who joined as early as October 2006. Settlement Agmt. Ex. A. In a country where a majority

of adults age 18 and over are married,[4] about 80 percent of those age 25 and over have been married at some time in their lives,[5] and class members actively were seeking a partner at the time they were clients of IJL, a large percentage of the class is likely now married or in a monogamous relationship. It also is likely that other class members have no interest in further utilizing IJL's services for any number of other reasons, including not wanting to be set up on dates by a company that may have defrauded them. Moreover, in the years since many class members were clients of IJL, the dating and matchmaking industry has undergone a huge transformation. Class members can now swipe through any number of potential matches on their smartphones and initiate direct contact anytime, anywhere.

It is perhaps for this reason that the settling parties sought a schedule with the claims deadline two months after the fairness hearing and with the redemption deadline an additional 120 days later. *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 179 n.13 (3d Cir. 2013) (*"Baby Prods."*) (reversing settlement approval where parties set claims deadline after fairness hearing to prevent consideration of claims data); *Eubank*, 753 F.3d at 723 (faulting district court for approving settlement "before the deadline for filing claims"); *In re MagSafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560, 565 (9th Cir. 2014) (criticizing decision to "conduct[] fairness hearing before the claims-submission period closed"). The redeemed value of the date coupons is likely to show a value far lower than the $69 million estimate claimed by counsel because it will reflect widespread disinterest in the coupons by class members. Thus, the "high end" settlement value of $74 million claimed by class counsel is pure fiction. Class counsel's estimate assumes both a 100% claims rate and a 100% redemption rate of the date coupons. This calculation method reflects a notorious tradition of settling parties' using coupons to inflate the apparent value of their proposed settlement by claiming the coupons' nominal value is the

---

[4] *See* U.S. Census Bureau, *America's Families and Living Arrangements: 2015*, *available at* https://www.census.gov/hhes/families/data/marital.html.

[5] Pew Research Center, *Rising Share of Never-Married Adults, Growing Gender Gap*, Sept. 23, 2014, *available at* http://www.pewsocialtrends.org/2014/09/24/record-share-of-americans-have-never-married/st-2014-09-24-never-married-01/.

actual value to the class members. *See* Geoffrey P. Miller & Lori S. Singer, *Nonpecuniary Class Action Settlements*, 60 L. & CONTEMP. PROBS. 97, 108 (1997). The timeline proposed by the parties appears designed to prevent a comparison between the fee request and the actual claims made and coupons redeemed (and, thus, actual value of the settlement to the class) by class members and the Court.

"[C]oupon settlements 'raise suspicions' because 'coupons serve as a form of advertising for the defendants, and their effect can be offset (in whole or in part) by raising prices during the period before the coupons expire.'" *Reed*, 2011 U.S. Dist. LEXIS 36814, at *8 (S.D.N.Y. 2011) (quoting *In the Matter of Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001)). The use of coupons, or "vouchers," in settlements is disfavored because they often fail to disgorge illegal profits and instead force future business with the defendant. *See Synfuel*, 463 F.3d at 654; *infra* § V. Further, and perhaps most significantly, they "mask[] the relative payment of the class counsel as compared to the amount of money actually received by the class members." *HP Inkjet*, 716 F.3d 1173, 1179 (9th Cir. 2013) (*quoting* Christopher R. Leslie, *A Market-Based Approach to Coupon Settlements in Antitrust and Consumer Class Action Litigation*, 49 UCLA L. REV. 991, 1049 (2002)). It is because of "the well-documented problems associated with such settlements [that] Congress voiced its concern over coupon settlements when it amended the Class Action Fairness Act of 2005 to call for judicial scrutiny of attorneys' fee awards in coupon cases." *Reed*, 2011 U.S. Dist. LEXIS 36814, at *7.

Finally, the remaining "benefit" provided by the settlement is the $100 payment to New York class members. With approximately 2,000 class members, the New York Class obtains a benefit of a mere $204,100, while the National Class gets no monetary benefit, meaning that approximately 153,649 class members recover $204,100 total.

## B. The settlements afford preferential treatment to class counsel.

A class action settlement may not confer preferential treatment upon class counsel to the detriment of class members. When, as here, "counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded," a settlement is unfairly tilted toward class counsel. *Bluetooth*, 654 F.3d at 947; *GM Trucks*, 55 F.3d at

803 ("non-cash relief … is recognized as a prime indicator of suspect settlements"). "Such inequities in treatment make a settlement unfair"; neither class counsel nor the named representatives are entitled to disregard their "fiduciary responsibilities" and enrich themselves while leaving the class behind. *Pampers*, 724 F.3d at 718-21 (reversing settlement where class counsel received $2.73 million and absent class members were offered a money-back refund program with a likely small claims rate, prospective labeling changes, and a *cy pres* donation); *see also Pearson*, 772 F.3d 778 (rejecting settlement where class counsel received $1.9 million and absent class members recovered $865,284 through a claims process, meaningless injunctive relief and a *cy pres* donation). Settlements in which class counsel obtains a disproportionate percentage of the settlement must be rejected as unfair.

A fair settlement requires a fair allocation of the proceeds. "[T]he ratio that is relevant is the ratio of (1) the fee to (2) the fee plus what the class members received." *Pearson*, 772 F.3d at 781 (quoting *Redman*, 768 F.3d at 630). Here, the National Class receives only meaningless injunctive relief and a worthless coupon—the redemption rate of which is presently unknown; the New York Class receives only $100 more; and class counsel seeks $3.6 million in fees and expenses for themselves.

The result—class counsel getting 76% of the $4.75 million constructive common fund in fees and expenses—vastly outpaces "the increasingly used benchmark of 25%" deemed a reasonable recovery of a fund. *See City of Pontiac Gen. Empls. Ret. Sys. v. Lockheed Martin*, 954 F. Supp. 2d 276, 281 (S.D.N.Y. 2013). Instead, it is consistent with those settlements that courts have rejected as unfair because it is "anomalous and unacceptable for counsel to fare better than the Class." *In re Excess Value Ins. Coverage Litig.* ("*Excess Value*"), 598 F. Supp. 2d 380, 390 (S.D.N.Y. 2005). *See e.g., Brown v. Sega Amusements, U.S.A., Inc.*, No. 13 Civ. 7558, 2015 U.S. Dist. LEXIS 28442 (S.D.N.Y. Mar. 9, 2015) (rejecting settlement where class counsel sought 56% of the proceeds); *Eubank*, 753 F.3d at 727, 729 (ration of $11 million for the attorneys to $8.5 million to the class was so "one-sided[]" to "flunk[] the 'fairness' standard"); *Pearson*, 772 F.3d at 781 (69% fee is "outlandish"); *Pampers*, 724 F.3d 713 (vacating settlement where attorneys were allocated $2.7 million of the $3.1 million constructive common fund value); *Redman*, 768 F.3d at 630-62 (55%-67% fee allocation is unfair); *Bluetooth*, 654 F.3d at 945

(vacating approval where fees amounted to more than 83% of the constructive common fund); *Howell v. JBI, Inc.,* 298 F.R.D. 649, 658 (D. Nev. 2014) (denying settlement approval where class was only allotted 58.3% of the gross settlement).

In performing the disproportionality analysis, courts should compare the fees and the value of the funds *actually* available, rather than the amount *potentially* available. "[T]he actual benefit provided to the class is an important consideration when determining attorneys' fees." *Baby Prods.*, 708 F.3d at 179 n.13. To reach the appropriate ratio of the "increasingly common benchmark" of 25% here, the class benefit would have to be valued at $14.4 million. The burden of proving the quantum of benefit lies with the proponents of the settlement. *See Pampers*, 724 F.3d at 719; *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 195 (5th Cir. 2010) (proponents must show that the settlement "secures some adequate advantage for the class" (internal quotation marks omitted)). Given the paltry value of the date vouchers, for which the redemption value is presently unknown, and the future-focused injunctive relief, the proper measure is the "concrete and indisputable" constructive common fund of $4.75 million, of which class counsel seeks 77% in fees and expenses.

The constructive common fund structure is itself further indication of class counsel's prioritization of its own interests above that of the class. This settlement structure is inferior because the segregation of parts means that the court cannot remedy any allocation issues by reducing fee awards and/or named representative payments. *See Pearson*, 772 F.3d at 786; *Bluetooth*, 654 F.3d at 949. Here, any reduction in fees will be distributed to an unnamed third-party *cy pres* organization, while class counsel also reserves the right to seek additional fees from any funds remaining after the initial fee award, incentive payments, costs, and $200,000 for the New York Class have been paid. Settlement Agmt. ¶¶ 2.02, 2.06. Such an arrangement constitutes a red flag of a lawyer-driven settlement and begets a "strong presumption of … invalidity." *Pearson*, 772 F.3d at 787. In contrast, in a typical common fund settlement, the court can reduce the fees requested by class counsel and, when it does, the class will benefit from the surplus. When the class will not benefit from a reduction in the fee, a court generally has less incentive to scrutinize a fee award. *See* Charles Silver, *Due Process and the Lodestar*

*Method*, 74 TULANE L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack").

The settlement's disproportionate allocation evidences further the inadequacy of the classes' representation and is an unfair result that must be rejected. *See Gallego v. Northland Group Inc.*, 814 F.3d 123 (2d Cir. 2016) (affirming denial of certification where "the intended result of the settlement was 'mass indifference, a few profiteers, and a quick fee to clever lawyers.'" (quoting district court decision)); *Polar Int'l Brokerage Corp.*, 187 F.R.D. at 118-19 (finding representation inadequate where settlement "provid[ed] a nonpecuniary benefit of very little value … and a fairly substantial award of attorney's fees"); *In re Razorfish, Inc. Secs. Litig.*, 143 F. Supp. 2d 304, 311 (S.D.N.Y. 2001) ("an excessive compensation proposal can cast in doubt the ability of proposed lead counsel to adequately represent the class"); *In re Cmty. Bank of N. Va.*, 418 F.3d at 319 (district court not "able to fulfill its duty to scrutinize rigorously the fairness of the settlement" where it misunderstands appellants' challenge to the adequacy of class counsel's representation of absent class members). Moreover, because class representatives are permitting this settlement to go forward, while seeking $10,000 for themselves, they too do not meet the Rule 23(a)(4) standard for adequate representation. *See In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011). In short, "[c]onflicted representation provides an independent ground for reversing [a] settlement." *Etter v. Thetford Corp.*, No. 8:13-81, Dkt. 221 at 11 (C.D. Cal. Oct. 14, 2014) (quoting *Radcliffe v. Experian Info. Sols.*, 715 F.3d 1157, 1167 (9th Cir. 2013)).

## V.   In the alternative, if the Court approves the settlement, the Court should not award attorneys' fees until the coupon redemption rate is known.

The Court's fiduciary duty ascends a high summit in setting a fee award, when "'a court is to act as a fiduciary who must serve as a guardian of the rights of absent class members.'" *Mba v. World Airways*, 369 Fed. Appx. 194, 198 (2d Cir. 2010) (unpublished) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 249 (2d Cir. 2007) and *Grinnell Corp.*, 560 F.2d at 1099); *see also McDaniel v. County of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) ("[W]e underscore the importance of the district court's duty 'to act as a fiduciary who must serve as a

guardian of the rights of absent class members' and reaffirm the requirement of a 'searching assessment' regarding attorneys' fees 'that should properly be performed in each case.'" (quoting *Grinnell Corp.*, 560 F.2d at 1099, and *Goldberger*, 209 F.3d at 52)).

The heightened scrutiny is particularly appropriate where a settlement involves a coupon component, which necessitates application of the Class Action Fairness Act, 28 U.S.C. § 1712(a) ("CAFA"). CAFA requires that attorneys' fees attributable to the coupons to "be based on the value to class members of the coupons that are redeemed," *i.e.*, the value of coupons *actually used*, rather than the number of coupons issued. "When a settlement provides for coupon relief, either in whole or in part, any attorney's fee 'that is attributable to the award of coupons' must be calculated using the redemption value of the coupons." *HP Inkjet*, 716 F.3d at 1175-76 (citing CAFA).

Although CAFA allows attorneys' fees to be based on the lodestar method when there is a meaningful non-coupon component of the settlement, the coupon redemption rate is still critical to the court's analysis. This court has found that it is more appropriate to employ the percentage approach where the lodestar exceeds the value to the class of the coupons redeemed. *See, e.g.*, *Excess Value*, 598 F. Supp. 2d at 386 ("The lodestar approach is not appropriate … where, as here, the lodestar substantially exceeds the value to the class of the coupons redeemed."); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 262-63 (S.D.N.Y. 2003) (applying percentage approach where lodestar exceeded settlement value).

In any settlement, a "fundamental focus" in awarding fees is on the "result *actually* achieved for class members." Fed. R. Civ. P. 23(h) (emphasis added). "Where the parties have reached a coupon settlement, the actual monetary value of the coupons redeemed by the class is a prime consideration in th[e] assessment [of reasonable attorneys' fees]: it is an indispensable factor in evaluating the reasonableness of the lodestar figure, and it is determinative when calculating an award as a percentage of the recovery." *Fouks v. Red Wing Hotel Corp.*, No. 12-CV-2160, 2013 U.S. Dist. LEXIS 165588, at *19 (D. Minn. Nov. 21, 2013). "Because redemption rates have a direct and potentially devastating impact on the actual value received by the class, such lack of evidence prevents any reasoned

assessment of the settlement's actual value to the class." *Sobel v. Hertz*, No. 3:06-CV-00545, 2011 U.S. Dist. LEXIS 68984, at *36 (D. Nev. June 27, 2011); *see also Redman*, 768 F.3d at 634 ("What was inappropriate was an attempt to determine the ultimate value of the settlement before the redemption period ended without even an estimate by a qualified expert of what that ultimate value was likely to prove to be.").

The policy reasons for basing an attorneys' fee award on the redemption rate are clear: CAFA was enacted, in part, to target "abusive 'coupon settlements,' where defendants and class counsel agree to provide coupons of dubious value to the class members but to pay class counsel with cash." *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 705-06 (7th Cir. 2015) (citing S.Rep. No. 109-14, at 16-20 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 16-20); *see also* 28 U.S.C. § 1711, note § 2(a)(3) ("Class members often receive little or no benefit from class actions, and are sometimes harmed, such as where—(A) counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value."). Thus, regardless of the approach this Court applies, the Court should not award attorneys' fees until after the redemption rate is known.[6] *See HP Inkjet*, 716 F.3d at 1186 n.18 ("Even under the lodestar method, the district court must adjust the amount of any fees award to account for the degree of success class counsel attained. But a court cannot judge counsels' success without first calculating the value of the class relief. And in a coupon class action, the court cannot value the class relief without knowing the redemption value of the coupons." (internal citations and quotation omitted)); *Redman*, 768 F.3d at 635 (employing the lodestar approach "wouldn't make much

---

[6] Class counsel may point to *Southwest Airlines Voucher Litig.*, 799 F.3d 701, to argue that the redemption rate is not necessary to a Rule 23(h) award. However, in *Southwest*, the litigation itself involved coupons, specifically drink vouchers that the defendant had stopped honoring, and the settlement, in turn, awarded drink vouchers back to class members. The court emphasized that "the dominant feature of the settlement is that it provides class members with essentially complete relief," *i.e.*, replacement of the drink vouchers at the heart of the case. These unique facts were critical to the court's holding. Because the present litigation involves does not provide complete relief and involves costly dating services, the holding of *Southwest* is inapplicable.

difference—maybe it wouldn't make any—… [because] hours can't be given controlling weight in determining what share of the class action settlement pot should go to class counsel.").

Class counsel nevertheless has requested their full lodestar—$3,583,703.50—without this key piece of information.[7] Class counsel instead makes the legally irrelevant comparison that its fee request represents 4.9% of the "high end" estimate of $74 million class benefit, and argues that even if there are "only 10,000" coupon claimants, which they claim is "reasonable" "considering their recent membership purchases"—meaning in the last 10 or more years—the coupons would be worth $4.5 million, such that their fee request would still be under 40%. Fee Mem. at 2. Plaintiffs are encouraging this Court to violate 28 U.S.C. § 1712.

The problems with this argument are multi-fold. First, the valuation of the coupons at the face value rather than the redemption value is unsupportable because coupon redemption rates are famously low. See, e.g., 28 U.S.C. § 1711, note § 2(a)(3)(A). A claims rate of 10,000 in a class of 153,000 is almost certainly well above what the actual claims rate will be. See, e.g., Palamara v. Kings Family Rests., No. 07-317, 2008 WL 1818453, at *1-*3 (W.D. Pa. Apr. 22, 2008) ("approximately 165 class members" out of 291,000 "had obtained a voucher" under the settlement); Moody v. Sears Roebuck & Co., 664 S.E.2d 569, 572, 574 (N.C. App. 2008) (326 valid claims filed out of class of 750,000 to 1,500,000 members); James Tharin & Brian Blockovich, Coupons and the Class Action Fairness Act, 18 GEO. J. LEGAL ETHICS 1443, 1445 (2005) (citing examples). Second, there is no reason the Court should guess or assume what the claims rates will be. Under CAFA, it is proper for the Court to delay awarding attorneys' fees until after the redemption rate is known. Finally, 40% is an excessive recovery even in settlements, unlike this one, in which class members' recovery is generally favorable. See, e.g., Lockheed Martin, 954 F. Supp. 2d at 281 (25% is "benchmark"); Ortiz v. Chop't Creative Salad Co. LLC, 89 F. Supp. 3d 573, 598 (S.D.N.Y. 2015) (awarding 20% of fund).

---

[7] Class counsel has further reserved the right to request even higher fees if any funds remain after their initial fee award, service awards, costs, and $200,000 to the New York class have been paid. Settlement Agmt. ¶ 2.02.

The facts of the settlement and fee request make a request for full lodestar particularly galling. The bulk of the settlement fund upon which class counsel justifies its request is comprised of the purported value of date coupons issued to class members who submit a claim. Settlement Agmt. ¶ 2.04. Of the purported $74 million value claimed by class counsel, $69 million is calculated from the vouchers. Fee Mem. at 3-4. The remainder of the estimated value comes from the $4.75 million cash fund. *Id.* The only monetary distribution to the class totals a mere $204,100. Despite onerous transfer and use restrictions on the vouchers, class counsel's $3.6 million request nevertheless treats these vouchers as though they are cash and unreasonably assumes claims *and* redemption rates of 100%— a plain violation of CAFA. "In other words, the class is being asked to 'settle,' yet Class Counsel has applied for fees as if it had won the case outright." *Sobel*, 2011 U.S. Dist. LEXIS 68984, at *44. While class counsel may claim that IJL's financial condition necessitates non-monetary relief for the class, Barton's objection is to the overwhelming *allocation* of the settlement funds to class counsel. Their disproportionate fee request is not justified.

That the settling parties refer to "vouchers" under the settlement rather than "coupons" does not change the applicability of CAFA. *See, e.g.,* *Sw. Airlines Voucher Litig.*, 799 F.3d at 706 (rejecting narrow definition of "coupon"); *Excess Value Ins.*, 598 F. Supp. 2d at 387 (applying CAFA to determine fees where settlement gave class members "vouchers"); *Fouks*, 2013 U.S. Dist. 165588, at *4 (CAFA applies to proposed settlement providing class members with "vouchers"); *HP Inkjet*, 716 F.3d at 1177 (discussing "perceived abuse" of "pay[ing] aggrieved class members in coupons or vouchers"). Whether termed a "voucher" or "coupon," holders are still required to consume more of the defendants' services in order to receive any benefit.

Deferring and staggering the fee award, an accepted judicial practice, will enable the Court to award fees based on redeemed vouchers, consistent with CAFA, and will ensure a fee award that is more appropriately proportionate to the actual class benefit. *See, e.g.,* Notes of Advisory Committee on 2003 Amendments to Rule 23(h) ("[I]t may be appropriate to defer some portion of the fee award until actual payouts to class members are known.").

**VI.   Class notice is defective because class counsel fails to inform the class that it reserves the right to seek more in attorneys' fees and costs than disclosed and that funds may be distributed to *cy pres* recipients, the identity of which are also not disclosed.**

It is "[a]n elementary and fundamental requirement of due process" that "notice [be] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

In the class notice, class counsel stated that the total amount it would seek for attorneys' fees, costs, and expenses "will not exceed $3,637,333.83." See Notice (Dkt. 257-2, Ex. D) at 11. While class counsel's request for fees and expenses totals just under the amount set forth in the notice, Fee Mem. at 40, the information in the notice is inconsistent with the settlement, where class counsel reserved the right to seek even more fees from any amounts remaining in the settlement fund after the initial fee, cost, and incentive payments are made. Settlement Agmt. ¶ 2.06(c). In light of the inaccuracy of the notice, it was constitutionally inadequate, and class counsel cannot seek a second round of fees. *Hege v. Aegon USA, LLC*, 780 F. Supp. 2d 416, 430 (D.S.C. 2011) ("due process does require that the notice not be materially misleading"); *Lightfoot v. District of Columbia*, 355 F. Supp. 2d 414, 427 (D.D.C. 2005) ("Inaccurate notice is equivalent to no notice at all"); 18A Charles Alan Wright *et al., Federal Practice and Procedure* § 1796.6 (3d ed. 2005) ("A proposed notice that is incomplete or erroneous or that fails to apprise the absent class members of their rights will be rejected as it would be ineffective to ensure due process.").

The settlement agreement further provides that after all of the attorneys' fees and expenses, incentive awards, and claims have been paid, any remaining funds will be distributed to a 501(c)(3) organization, "as agreed upon by the Parties with the approval of the Court." Settlement Agmt. ¶ 2.02. Neither the notice nor the settlement reveals the identity of the potential *cy pres* recipient(s) or provides any mechanism for class members to provide input on the selection of recipients or to receive notice of the recipients' identities once they are recommended to the Court. Because the identity of a *cy pres* recipient is material to the fairness of a settlement, class members and the court must be notified of any such recipients. *Dennis*, 697 F.3d 858; *see also Thomas v. Magnachip Semiconductor Inc.*, No. 14-cv-1160,

2016 U.S. Dist. LEXIS 47914, at *26-*27 (N.D. Cal. Apr. 7, 2016). To ensure that the settlement remains connected to the class members and their claims and to limit possible misuse of funds, any recipient of a *cy pres* award must qualify as the "*next best* compensation use" of class funds. *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) (quotation omitted and emphasis added by Second Circuit); *accord In re Holocaust Victims Assets Litig.*, 424 F.3d 132, 141 n.10 (2d Cir. 2005) ("[T]he unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated."). A settlement cannot be approved if the parties do not establish that the potential recipient has an appropriate connection to the class and their claims. *Dennis*, 697 F.3d at 867 (rejecting proposed settlement because "by failing to identify the *cy pres* recipients, the parties have restricted our ability to undertake the searching inquiry that our precedent requires"); *see also Ira Holtzman, CPA v. Turza*, 728 F.3d 682, 688-89 (7th Cir. 2013) (Easterbrook, J.). In an opt-out settlement such as this, providing the identity of potential *cy pres* recipients preserves the right of absent class members to distance themselves from causes or institutions that they would rather not support or to make a valid objection if there is an abuse of the *cy pres* mechanism, such as where the proposed recipient is related to class counsel or a defendant, or when there is a geographic incongruence between the class and recipient. *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011).

The constitutional requirement of *Mullane* is not met here because the class notice fails to inform class members of the full amount of attorneys' fees and costs that class counsel may seek and also fails to identify the recipient of any *cy pres* funds or even that class funds may be distributed to such a beneficiary. This information is material to a reasonable class member's evaluation of the settlement and determination of whether to object or opt out. As such, class members did not have sufficient information to determine whether or not to waive their rights to sue and consent to the settlement agreement. The notice therefore was constitutionally deficient.

## CONCLUSION

For the foregoing reasons, the Court should decertify the National class. If the Court does not decertify the class, it should deny approval of the proposed settlement. Even if the Court were to approve the settlement, it should defer awarding fees until the actual number of redeemed settlement vouchers is known, and then scale the Rule 23(h) award to reflect proportionality with the benefit actually realized by the class.

Dated: April 11, 2016

<div style="margin-left:40%">

/s/ *Anna St. John*
Anna St. John
COMPETITIVE ENTERPRISE INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1899 L Street NW, 12th Floor
Washington, DC 20036
Phone: (917) 327-2392
Email: anna.stjohn@cei.org

*Attorney for Objector Michael James Barton*

</div>

**Certificate of Service**

The undersigned certifies she electronically filed the foregoing Objection and associated declarations via the CM/ECF system for the Southern District of New York, thus sending the Objection and declarations to the Clerk of the Court and also effecting service on all attorneys registered for electronic filing. Additionally she caused to be served via first class mail a copy of this Objection and associated documents upon the following:

| Clerk of Court | Balestriere Fariello | Peter Shapiro |
|---|---|---|
| Daniel Patrick Moynihan | It's Just Lunch Class Action | Lewis Brisbois Bisgaard & Smith LLP |
| United States Courthouse | 225 Broadway, 29th Floor | 77 Water Street, Suite 2100 |
| 500 Pearl St. | New York, NY 10007 | New York, NY 10005 |
| New York, NY 10007-1312 | | |

Dated: April 11, 2016

/s/ *Anna St. John*
Anna St. John