John Balestriere
Jon Norinsberg
Stefan Savic
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:    (212) 374-5401
Facsimile:    (212) 208-2613
john.balestriere@balestrierefariello.com
jon.norinsberg@balestrierefariello.com
stefan.savic@balestrierefariello.com
*Attorneys for Plaintiffs and the Classes*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**CHRISTINE RODRIGUEZ, SANDRA BURGA, KAREN MALAK, JAMES TORTORA, LISA BRUNO, JANEEN CAMERON, KAREN McBRIDE, ANDREW WOOLF,** and **BRAD BERKOWITZ,** individually, and for all others similarly situated,

Plaintiffs,

–against–

**IT'S JUST LUNCH INTERNATIONAL, IT'S JUST LUNCH, INC., HARRY and SALLY, INC, RIVERSIDE COMPANY, LOREN SCHLACHET, IJL NEW YORK CITY FRANCHISE, IJL ORANGE COUNTY FRANCHISE, IJL CHICAGO FRANCHISE, IJL PALM BEACH FRANCHISE, IJL DENVER FRANCHISE, IJL AUSTIN FRANCHISE, IJL LOS ANGELES-CENTURY CITY FRANCHISE,** and **DOES 1-136,**

Defendants.

Index No.: 07-CV-9227 (SHS)(SN)

**PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO OBJECTIONS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ..................................................................................................................... 4

I.   THE CLASS HAS RESPONDED VERY POSITIVELY TO THE SETTLEMENT. ......... 4

    A.   There Has Been a Very Low Number of Objections Even Though Class Members Feel Very Passionately About Their Situation. .......................................................... 5

    B.   The Claims Forms' Redemption Rate Gives Inference to a Fair Settlement ............ 7

    C.   The Attorneys General Were Fully Informed of the Settlement Terms Pursuant to the Class Action Fairness Act, and Several Attorneys General Had Post-Notice Communications with Class Counsel, But No Attorney General Submitted an Objection to the Settlement. ..................................................................................... 8

II.  THE COURT SHOULD OVERRULE THE OBJECTION SUBMITTED BY THE "CENTER FOR CLASS ACTION FAIRNESS". ................................................................ 9

    A.   There Is No Conflict of Interest in Having Class Counsel Representing the New York Class—Where Class Members Are All Part of the National Class, But Also Have a Statutory Consumer Fraud Claim—and the National Class as the Interests of the Two Classes Are Aligned. ................................................................ 10

    B.   The Requested Fees Are Reasonable and Proportionate to the Value that the Class Counsel Brought to the Class Members. .......................................................... 11

        1.   Class Counsel's Fees Request Based on a Lodestar Multiplier of 1.0 (With No Benefit for The Risk Taken by Class Counsel for Nearly a Decade) Is Well Within the Range of Attorney's Fees Deemed Reasonable by the Court. ....... 11

        2.   The Lodestar Method Is An Appropriate Method in Determining Attorney's Fees. ............................................................................................................... 11

    C.   The Class Members Received the Best Notice Practicable. .................................... 13

        1.   The Notice Does Inform Class Members that Class Counsel Reserves the Right to Seek Additional Fees, Contrary to CCAF's Assertions. ...................... 13

        2.   Failure to Identify the Cy Pres Recipient in the Notice, Which Class Counsel Actually Does Do In the Papers in Final Support of Settlement, Does Not Affect the Reasonableness of the Notice. ........................................................ 15

III. THE COURT SHOULD OVERRULE THE OBJECTION SUBMITTED BY THE LEEBER OBJECTORS, WHOSE COUNSEL HERE ALREADY SETTLED CLAIMS AGAINST IJL ON AN INDIVIDUAL LEVEL. ............................................................. 16

    A. The Settlement Terms Do Not Give Preference to Class Members Based on Geographical Preferences—All Members of One Class Receive the Same Relief. 17

    B. Monitoring Defendants' Post-Lawsuit Conduct Simply Is Not a Necessary Element of a Fair Settlement, But the Settlement Here Anyway Provides for a Significant Disincentive to IJL to Engage in Misconduct. ........................................ 18

IV. THE COURT SHOULD OVERRULE THE REMAINING PRO SE OBJECTIONS. .... 19

    A. Due to the Financial Circumstances of IJL, It Was Not Possible to Procure a Substantial Monetary Award Beyond the Amount Already Obtained by Class Counsel Through Settlement.......................................................................................... 20

    B. The Difference in Awards Between the New York Class and National Class Is Warranted, As the Court Certified Separated New York Statutory Claims. ........ 21

    C. The Voucher Award is Useful and Provides Value to the Classes, as Seen by Not Only the Popularity of IJL, But the Relatively High Redemption Rate of Claims Vouchers After Only Two Months. ............................................................................... 21

        1. The Redemption Rate Shows the Interest in the Vouchers.............................. 22

        2. The Fact that IJL Continues to Enroll Members Every Week Shows That There Is a Demand for Dates, as Long as Fairly Provided, as the Settlement Requires............................................................................................................................ 22

        3. The Vouchers Are Not a Marketing Tool for IJL At All, As Anyone Who Uses the Voucher is Either a Class Member, or Has Otherwise Already Signed Up for IJL. ................................................................................................................................ 23

        4. Class Members Who Are Now In a Relationship Can Transfer the Voucher to a Non-Class Member. ......................................................................................... 23

        5. Class Members and Non-Class Members Have Demonstrated That They Want to Use IJL's Services. ...................................................................................... 23

    D. Class Counsel's Application for Lodestar Fees is Reasonable. ............................... 24

    E. Objectors' Understandable Complaints Regarding Their Experiences With IJL Support the Settlement As Many of Such Complaints Regard the Three Match Characteristics at the Heart of the Injunctive Relief. ................................................. 24

CONCLUSION.......................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
No. 07 CIV. 2207 JGK, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ................................. 8

*Boyle v. Giral*,
820 A.2d 561 (D.C. 2003) ..................................................................................................... 10

*Browning v. Yahoo! Inc.*,
No. C04-01463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) .............................. 12

*Chaikin v. Lululemon USA Inc.*,
No. 12-CV-02481 GPC, 2014 WL 1245461 (S.D. Cal. Mar. 17, 2014) ........................... 12

*Churchill Vill., L.L.C. v. Gen. Elec.*
361 F.3d 566 (9th Cir. 2004) .................................................................................................. 6

*City of Livonia Employees' Ret. Sys. v. Wyeth*,
No. 07 CIV. 10329 RJS, 2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013) .............................. 9

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ..................................................................................................... 5

*Dennis v. Kellogg Co.*,
697 F.3d 858 (9th Cir. 2012) ................................................................................................ 16

*Dennis v. Kellogg Co.*,
No. 09-cv-1786, 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ........................................... 9

*Dunphy et al. v. It's Just Lunch, Inc.*,
Case No. L00836514, Bergen County Court in New Jersey .......................................... 16

*Foos v. Ann, Inc.*,
No. 11-CV-2794 L MDD, 2013 WL 5352969 (S.D. Cal. Sep. 24, 2013) ......................... 12

*Gallego v. Northland Group Inc.*,
814 F.3d 123 (2d Cir. 2016) .................................................................................................... 3

*Grannan v. Alliant Law Group, P.C.*,
2012 WL 216522 (N.D. Cal. Jan. 24, 2012) ........................................................................ 9

*In re Baby Products Antitrust Litig.,*
   708 F.3d 163 (3d Cir. 2013) ................................................................. 15

*In re Citigroup Inc. Bond Litigation,*
   988 F. Supp. 2d 371 (S.D.N.Y. 2013) .................................................. 11

*In re Citigroup Inc. Sec. Litig.,*
   965 F. Supp. 2d 369 (S.D.N.Y. 2013) .................................................... 9

*In re Literary Works in Elec. Databases Copyright Litig.,*
   654 F.3d 242 (2d Cir. 2011) ................................................................. 10

*In re Pet Food Products Liab. Litig.,*
   629 F.3d 333 (3d Cir. 2010) ................................................................. 10

*In re Polyurethane Foam Antitrust Litig.,*
   No. 1:10 MD 2196, 2016 WL 320182, (N.D. Ohio Jan. 27, 2016) .................................... 16

*In re Southwest Airlines Voucher Litig.,*
   No. 11 C 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ............................................ 6

*In re Visa Check/Mastermoney Antitrust Litig.,*
   297 F. Supp. 2d 503 (E.D.N.Y. 2003) ................................................... 5

*In re Vitamin C Antitrust Litig.,*
   No. 06-MD-1738 BMC JO, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ....................... 16

*Lane v. Facebook, Inc.,*
   696 F.3d 811 (9th Cir. 2012) *cert. denied*, 134 S. Ct. 8, 187 L. Ed. 2d 392 (2013) ............... 8

*Petrovic v. Amoco Oil Co.,*
   200 F.3d 1140 (8th Cir. 1999) ................................................................ 6

## Statutes

28 U.S.C. § 1715 ............................................................................. 8

## PRELIMINARY STATEMENT[1]

The Court should approve the Settlement as it is the best resolution available and its benefits far exceed any that the classes could receive after a successful trial. The objections do not warrant denial of the Settlement, accomplished through the work of Class Counsel over nearly nine years, and finalized over two years with the help of Magistrate Judge Sarah Netburn to create the best settlement available for the classes. The Court should grant final approval of the Settlement.

This Settlement is the complete opposite of a hasty settlement that is put together in conjunction with Defendants' counsel to obtain the highest payout for Class Counsel and release Defendants from liability. To the contrary, while Class Counsel was always open to a resolution and multiple times suggested a settlement, which Defendants' counsel always rejected, Class Counsel did not begin to negotiate settlement until *seven years* into this action, and only after Plaintiffs prevailed on IJL's attempt to appeal the order granting class certification (after prevailing against IJL on motions regarding the pleadings, summary judgment, and after full discovery). Following class certification and IJL's unsuccessful appeal attempt, IJL disclosed its financial documents making it clear that prevailing at trial would lead to zero benefit for the classes. It was only then that the Parties began settlement negotiations. Subsequently, the Parties participated in mediation before Magistrate Judge Sarah Netburn, who assisted the Parties in coming to the preliminary agreement about the terms that would lead to Settlement that provides the best possible result for all Class Members.

[1] All terms are defined as they were defined in the Motion for Preliminary Approval, except those terms that are redefined for the Court's convenience.

Class Counsel appreciates the important role that objectors can play in the class settlement approval process. But none of the objections lodged here, the majority of which are based on the complaint that only a complete refund would be satisfactory (which virtually never happens in any litigation, let alone class action litigation), should be allowed to deprive the Settlement Class Members of the benefits they are entitled to receive under the Settlement. As of the date of this filing, and with two months still remaining until the claims submission deadline, 6,313 Class Members have already submitted their claims (over 4.1% of Class Members). The monetary value already procured for the class calculated today based on those who have already submitted their claims, would have a value of more than $7,590,800.

No Attorneys General objected to the Settlement. Only two objections were filed through counsel. One was filed by the law firm of PinilisHalpern, LLC ("Leeber Objection") which filed a putative class action of its own in late 2014, but settled the claims against Defendants on an individual level. The other came through a misnomered organization, the "Center for Class Action Fairness" ("CCAF"), owned by Theodore Frank, and which is devoted to objecting to class action settlements. Both of those objections involve various factual inaccuracies, and are otherwise meritless. The Leeber Objection challenges the settlement by purporting that it favors "local" class members—which it does not—and for failing to provide a "monitoring provision" assuring that IJL does not "does not continue its deceptive practices well into the future." While no such monitoring provision is a necessary element of a fair settlement, the Settlement Agreement provides for an amendment of IJL's contracts, and for a

public pledge promising to honor their client's most commonly complained of preferences, both of which make it far easier for a private plaintiff or attorney general to bring an action for simple breach of contract (rather than a tough to prove fraud claim) if IJL violates it new, public commitments.

Frank, through CCAF, challenges the notices arguing that they do not inform the Class Members of the Class Counsel's right to seek further fees—even though the notice does so—and of the identity of the *cy pres* recipient. Notices that are silent about the residual *cy pres* recipient's identity, which the Parties do recommend to the Court in their final approval papers, do not deprive class members of their due process rights. CCAF further objects to the value of the settlement, entirely overlooking the fact that it is the best settlement possible under the circumstances, and argues, again wrongly, that Class Counsel could not adequately represent both classes because of a conflict of interests. Finally, Frank challenges Class Counsel's requested fees, ignoring its nearly decade-long efforts to hold Defendants liable entirely on a contingency fee basis and while assuming a very real risk that it would never be compensated for its work. The Settlement is the exact opposite of one where "the intended result . . . was 'mass indifference, a few profiteers, and a quick fee to clever lawyers.'" (CCAF Br., Dkt. No. 304, 18 (quoting *Gallego v. Northland Group Inc.*, 814 F.3d 123 (2d Cir. 2016)). Both professional objections should be overruled.

Plaintiffs respectfully request that all objections be overruled, and the Settlement be approved as fair, reasonable, and adequate. Class Counsel has obtained the best

possible outcome for the classes given all factors—especially the financial situation of IJL—and the Court should grant final approval of the Settlement.

<u>**ARGUMENT**</u>

**I.     THE CLASS HAS RESPONDED VERY POSITIVELY TO THE SETTLEMENT.**

Over the years, Class Counsel has stayed in regular contact with more than three hundred class members, providing them with at least monthly updates about filings, settlement, and other developments, and responding promptly to all email and phone inquiries. Class Counsel has provided far more attention to Class Members during a far longer time period than is the norm. (Declaration of John G. Balestriere in Support of the Motion for Fees, Dkt. No. 283 ("Balestriere Motion for Fees Decl.") ¶ 59.) While many of those members were pleased to learn that the case is finally nearing its conclusion after nine years of litigation, some of them were disappointed, just as the Plaintiffs were, that IJL could not sustain a settlement that would fully reimburse all of its members.

This is a peculiar case in that the allegations of Defendants' misconduct touch upon the most intimate and private aspects of people's lives, leading many to disappointment, frustration, and, by some accounts, long-lasting depression. Numerous "objections" that, instead of objecting to the result, point to the wrong that those class members suffered reflect the anger that many Class Members feel towards IJL. The large majority of the objections indicated that nothing short of the refund would constitute satisfactory outcome. This frustration is completely understandable. But in

light of IJL's financial situation, and simply how litigation works, that outcome is simply unachievable—not after a trial and not if the Settlement fails.

Notwithstanding the way that IJL's conduct personally affected its clients, many have signed up for the claims vouchers and expressed their intent either to personally use the voucher or transfer it, but, if the Settlement is approved, under a new IJL that makes specific commitments earned by the Settlement. The ideal outcome, in a world where IJL could sustain any judgment that Plaintiffs could have obtained against it, would involve full compensation of all the Class Members for what they went through. But this Settlement is the best one possible under the actual circumstances.

### A. There Has Been a Very Low Number of Objections Even Though Class Members Feel Very Passionately About Their Situation.

The proportionately very low number of objections and opt-out members weighs in favor of the Settlement. The Class Members' reaction to a proposed settlement is a factor in determining whether the settlement is fair, adequate, and reasonable. Courts often infer that a settlement is fair, adequate, and reasonable when few class members object to it. *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003) ("[A] certain number of objections are to be expected in a class action with an extensive notice campaign and a potentially large number of class members. If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement") (citation omitted). *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86–87 (2d Cir. 2001) (where 27,883 notices were sent to class members [approximately one sixth of the Classes here], but only 72 class members requested exclusion from the settlement and only 18 class members objected, court stated that

"this small number of objections weigh[s] in favor of the settlement"); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) ("[F]ewer than 4 percent of the class members objected to the settlement [as opposed to a tiny fraction of 1% here], significantly fewer than the number of objectors to other settlements that have been approved."); *In re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (finding that the "low level of opposition" amounting to 0.01% of the class [whereas it is 0.002% here] "supports the reasonableness of the settlement"); *Churchill Vill., L.L.C. v. Gen. Elec.* 361 F.3d 566, 577 (9th Cir. 2004) (approving a settlement with 45 objections and 500 opt-outs from a 90,000-person class (0.05% and 0.56% of the class, respectively)).

Here, as of April 11, 2016, the deadline for both objections and submission of opt-out forms, only 41 Class Members filed or mailed to Class Counsel objections and comments to the Settlement[2] while 175 opted out of the settlement. This amounts to 0.0027% of total class members who objected and 0.11% of the total number who opted out. Courts across the country, as well as within this Circuit, find this type of response to weigh in favor of a settlement. That is especially the case here, where IJL's clients are very passionate about the way they were mistreated by IJL, and as the majority of the objections and comments note simply cannot be satisfied by any possible result. The low number of opt-outs and objections gives inference to a fair settlement.

---

[2] This total includes the objection of Joan Durkin (Dkt. Nos. 265, 292) although she opted out of the Settlement and cannot object.

### B. The Claims Forms' Redemption Rate Gives Inference to a Fair Settlement.

The claims administrator, Heffler Claims Group, LLC ("Heffler"), received the Class List, which contained the names, mailing addresses (if available) and e-mail addresses (if available) of 153,649 Class Members. All 153,649 Class Members contained in the Class List were processed, standardized and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. After NCOA processing, a total of 115,341 contained an email address and mailing address and a total of 33,505 contained a mailing address only. (Heffler Decl. ¶¶ 8-11.) Heffler sent email notices to 115,341 of those settlement Class Members for whom IJL had provided email addresses. (Heffler Decl. ¶ 9.) Heffler also mailed notice to Class Members for whom Heffler had a mailing address but no email or whose email was returned undeliverable and could not be resent. (Heffler Decl. ¶ 10.) To reach Settlement Class Members who could not be notified directly, Heffler supplemented the direct email and mail program with publication notice, publishing a summary of the settlement in *LA Times*, as approved by the Court. (Heffler ¶ 6.)

The claims submission period ends on June 25, 2016. (Order Granting Preliminary Approval, dated Jan. 25. 2016, Dkt. No. 258.) As of April 14, 2016, the Class Members have submitted a total of 6,313 timely claims. (Heffler Decl. ¶ 18.) Only 41 Class Members objected to the settlement (Declaration of John G. Balestriere ("Balestriere Decl.") ¶ 22) and only 175 requested to be excluded. (Heffler Decl. ¶ 13.) The redemption rate infers approval by the Class.

C. **The Attorneys General Were Fully Informed of the Settlement Terms Pursuant to the Class Action Fairness Act, and Several Attorneys General Had Post-Notice Communications with Class Counsel, But No Attorney General Submitted an Objection to the Settlement.**

No attorney general or state agency objected to the settlement. On January 22, 2016, Class Counsel caused the notice to be sent to all appropriate Federal and State Attorneys General pursuant to the Class Action Fairness Act. 28 U.S.C. § 1715. (Balestriere Decl. ¶ 11.) On February 19, 2016, after multiple email exchanges with government lawyers, Class Counsel and Defendants' counsel had a conference call lasting over an hour with a number of these federal and state officials to discuss the nature of the action and the terms of the Settlement. (Balestriere Decl. ¶ 12.) Class Counsel and Defendants' counsel had further email communications with various states' officials discussing settlement terms including the nature of the release provision, attorney's fees, and administration costs. (Balestriere Decl. ¶ 13.) Attorneys general across the country are familiar with the terms of this Settlement. But not one determined that the terms of the Settlement warranted an objection. (Balestriere Decl. ¶ 14.)

That no U.S. or state attorney general has objected also strongly supports final approval of the parties' agreement. *See Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 CIV. 2207 JGK, 2010 WL 3119374, *5 (S.D.N.Y. Aug. 6, 2010) (approving requested fee award, noting "no opposition" to the award by "52 attorneys general" after CAFA notice); *Lane v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir. 2012) *cert. denied*, 134 S. Ct. 8, 187 L. Ed. 2d 392 (2013) (in approving settlement consisting exclusively of cy pres distribution, Court noted that no government agencies had voiced objections to the settlement); *Grannan v.*

*Alliant Law Grp*., P.C., No. C10-02803 HRL, 2012 WL 216522, at *8 (N.D. Cal. Jan. 24, 2012) (in approving settlement, court stated that CAFA notice was intended to "provide an opportunity for comment or objection by [governmental] entities.). The lack of objections from any government agency is further indicative that the Settlement is fair.

## II.   THE COURT SHOULD OVERRULE THE OBJECTION SUBMITTED BY THE "CENTER FOR CLASS ACTION FAIRNESS".

The lengthiest objection was submitted by an entity which calls itself the Center for Class Action Fairness (the "CCAF Objection") founded and run by Theodore Frank ("Frank"). Frank, as his declaration makes plain, is a frequent objector to class actions either through CCAF, or even in his individual capacity, having filed dozens of objections in class actions across the country, including several in this Court. *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 396 (S.D.N.Y. 2013); *City of Livonia Employees' Ret. Sys. v. Wyeth*, No. 07 CIV. 10329 RJS, 2013 WL 4399015, at *5 (S.D.N.Y. Aug. 7, 2013) (calling objection to attorneys' fees filed by Frank's client "overstated and meritless" and "does not seem grounded in the facts of this case, but in her and her attorney's objection to class actions generally . . . . [Frank's client] evinces a misguided yet fervent focus" to reduce class counsel's fees, which the court "rejects as entirely unreasonable" and "dogmatic"). "[W]hen assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first." *Dennis v. Kellogg Co.*, No. 09-cv-1786, 2013 WL 6055326, at *4 (S.D. Cal. Nov. 14, 2013), *appeal dismissed* (May 15, 2014). But one need not consider Frank's

agenda and motives behind CCAF's objections in finding that CCAF's objection come well short of robbing thousands of Class Members of their benefits.

> **A. There Is No Conflict of Interest in Having Class Counsel Representing the New York Class—Where Class Members Are All Part of the National Class, But Also Have a Statutory Consumer Fraud Claim—and the National Class as the Interests of the Two Classes Are Aligned.**

Class Counsel provided adequate representation simultaneously to both the New York Class and the National Class. Class Members have been damaged by Defendants' same deceptive practices. In addition, the members of the New York Class had certified claims for statutory violations, a fact that CCAF conveniently entirely omits, and unjust enrichment. Moreover, as the Court noted in the Class Certification Order (Dkt. No. 199), "[n]ot every conflict among subgroups of a class will prevent class certification—the conflict must be 'fundamental' to violate Rule 23(a)(4)." (citing *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011)). There is no such conflict here.

A single firm representing multiple sub-classes is not per se a conflict of interest. *In re Pet Food Products Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010) ("It is not enough for objectors to point to differences in claims, allocation amounts, or state laws without identifying how such differences demonstrate a conflict of interest"). Courts have held that the same counsel can represent more than one class or subclass under the circumstances analogous to those in this case. In *Boyle v. Giral*, 820 A.2d 561 (D.C. 2003), the Court held that there was no conflict when the same counsel represented two classes, one of which received a monetary award while the other only received *cy pres* relief. In *Boyle*, the proposed settlement provided cash payments to the class comprised

of commercial purchasers, while the consumer class received no money. Intervenors objected to the settlement in part because class counsel had a conflict of interest in representing both the commercial class and the consumer class, but the court disagreed and approved the settlement. As in *Boyle*, Class Counsel adequately and vigorously represented both Classes here.

### B. The Requested Fees Are Reasonable and Proportionate to the Value that the Class Counsel Brought to the Class Members.

#### 1. Class Counsel's Fees Request Based on a Lodestar Multiplier of 1.0 (With No Benefit for The Risk Taken by Class Counsel for Nearly a Decade) Is Well Within the Range of Attorney's Fees Deemed Reasonable by the Court.

Class Counsel's request for so-called lodestar fees without a multiplier is well within the range of multipliers deemed reasonable within the Second Circuit. *See In re Citigroup Inc. Bond Litigation*, 988 F. Supp. 2d 371, 376 (S.D.N.Y. 2013) (in approving a multiplier of 1.34, this Court cited recent awards with multipliers of 0.7, 1.25, 2.3, and 2.8). A multiplier is typically applied to the lodestar figure to represent "the risk of litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id.* at 375 (internal citation omitted). Despite all the risk here Class Counsel seeks no lodestar multiplier at all.

#### 2. The Lodestar Method Is An Appropriate Method in Determining Attorney's Fees.

The lodestar method of determining attorney's fees is the proper method here, where the obtained relief includes a monetary fund, injunctive relief, and in-kind vouchers. Attorney's fees in settlements that provide for relief with an uncertain monetary value may be determined by the lodestar. *Foos v. Ann, Inc.*, No. 11-CV-2794 L

MDD, 2013 WL 5352969, at *3 (S.D. Cal. Sep. 24, 2013) ("[i]n class actions that provide for injunctive relief, courts frequently use a lodestar calculation because there is no way to gauge the net value or any percentage of the settlement.").

But even without considering the monetary fund, and without considering the injunctive relief, the lodestar method is appropriate here because the vouchers provided can be redeemed without any further expenses. In-kind services are distinguishable from the kind of relief offered in coupon settlements. *Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971, at *5 (N.D. Cal. Nov. 16, 2007) ("the in-kind relief offered in this case is not a 'coupon settlement' because it does not require class members to spend money in order to realize the settlement benefit."). Voucher settlements, such as this one, provide class members with a cash-equivalent. As here, the class members in voucher settlements do *not* need to make an additional purchase in order to benefit from the settlement. *Id.* Indeed, vouchers differ from coupons in that they operate like cash, and voucher settlements are therefore not subject to the restrictions placed on coupon settlements by 28 U.S.C. § 1712, as articulated by *Chaikin v. Lululemon*:

> Although courts have often blurred the distinction between "coupons" and "vouchers," the Court adopts the approach of the line of federal district court cases distinguishing credit vouchers, which require no additional purchase to redeem and therefore operate like cash, from coupons, which provide a discount or subsidy from a larger purchase and thus fall under the restrictions of section 1712(e).

*Chaikin v. Lululemon USA Inc.*, No. 12-CV-02481 GPC, 2014 WL 1245461, at *5 (S.D. Cal. Mar. 17, 2014).

Lodestar method is the appropriate method for compensating Class Counsel as the Settlement includes equitable relief, a monetary fund, and in-kind equivalent vouchers that courts have held differ from the coupon settlements prescribed by CAFA.

### C.  The Class Members Received the Best Notice Practicable.

Class Members received the best notice practicable through the distribution method approved by the Court. The Parties worked on the content and the distribution method of the notice diligently with Heffler with several inputs from the Court. All three times when the Parties appeared before the Court, the Court made suggested improvements to the Notices, all of which the Parties adopted. (Balestriere Decl. ¶ 15.) CCAF objects to the sufficiency of the notice on two grounds: that the notice is fatally defective because it does not inform the Class Members of the Class Counsel's right to seek further fees, and of the *cy pres* recipient's identity. The first is factually inaccurate; the second one is meritless.

### 1.  The Notice Does Inform Class Members that Class Counsel Reserves the Right to Seek Additional Fees, Contrary to CCAF's Assertions.

Class Counsel sought its lodestar without any multiplier and only for the time spent working on this case for the eight and a half years ending on December 31, 2015. Under the Settlement Agreement, Class Counsel reserves the rights to seek additional fees following the final distribution given the substantial continuing work by Class Counsel, and to provide some benefit to Class Counsel for all the risk incurred over a decade of work

The notice distributed to class members and published in the *LA Times* reflects this: "Class Counsel will apply for an award of attorney's fees and expenses,

respectfully reserves the right to seek additional fees following the final distribution, and will move for a service fee of $10,000 for each Plaintiff, all of which will be paid by IJL from the fund being created." (Exhibit C to the Heffler Decl.; Heffler Decl. ¶ 3.) Frank and his CCAF base their objection on a misrepresentation of what the notice includes.

Since the preliminary approval of the settlement on January 25, 2016 (Order Granting Preliminary Approval, dated Jan. 25, 2016, Dkt. No. 258) and especially since the distribution of the notices on February 25, 2016, staff at Class Counsel have spent several hours, daily communicating with Class Members, either by phone or email, in addition to other necessary work done in advance of the fairness hearing. Class Counsel has devoted over 750 hours to managing the settlement and speaking to hundreds of Class Members between December 31, 2015, and the date of this filing, during which time Class Counsel had approximately 170 calls with Class Members, in addition to exchanging a large volume of emails with them. (Balestriere Decl. ¶ 18.) It is not only reasonable for the Class Counsel to seek additional fees, should it decide to do so, but it is in the public's interest. This Court should want to encourage Class Counsel to continue to do necessary work once making a motion for preliminary approval motion—including addressing ongoing client concerns—by permitting Class Counsel to seek fees for these important services it continues to provide to the Class. And the notice shows that Class Members had sufficient notice of Class Counsel's option to do so.

   **2. Failure to Identify the Cy Pres Recipient In the Notice, Which Class Counsel Actually Does Do In the Papers in Final Support of Settlement, Does Not Affect the Reasonableness of the Notice.**

The Parties identify the recipient of the remaining funds in the Plaintiffs' Motion for Final Approval as American Consumer Counsel. Pursuant to the terms of the Settlement and as provided in the notice, the choice of the residual *cy pres* recipient is to be approved by the Court before any distribution is made. No money will revert back to IJL after the distribution.

Notwithstanding this, CCAF argues that the notice is inadequate because it does not provide the class members with the identity of the *cy pres* recipient. However, the circuit courts have found that failing to identify the *cy pres* recipient in notices to the class members simply does not violate due process nor make the notice deficient. *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 173-75 (3d Cir. 2013) (holding that class settlement notice that did not identify *cy pres* recipients who would receive excess settlement funds did not violate due process, in consumers' antitrust class action against retailer alleging that they had paid allegedly inflated prices for baby products). The Third Circuit held that the class members' knowledge that there was possibility of *cy pres* award and that court would select among recipients proposed by parties at later date was adequate to allow any interested class member to keep apprised of *cy pres* recipient selection process.

It should not be a surprise that very recently CCAF objected on the identical grounds in a class action then pending in the Northern District of Ohio and lost. *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2016 WL 320182, at *12-14 (N.D.

Ohio Jan. 27, 2016) (appeal filed). The court there overruled the objection finding that class notices can be adequate even if silent about the identity of the *cy pres* recipient when, as here, the residual funds to be distributed *cy pres* are *de minimis*. CCAF cites to inapposite authority. In *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012), the court dealt with a pre-certified class that did not involve *residual cy pres*, holding the *cy pres* distribution improper because the recipient bore no relation with to the class of consumers or their claims. The courts in this Circuit refused to follow *Dennis*. *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 WL 5289514, at *9 (E.D.N.Y. Oct. 23, 2012) (approving settlement when the *cy pres* recipient was not identified at the time of approval). No moneys will revert to IJL if the Settlement is approved, and there was no lack of due process by not determining who the *cy pres* recipient will be before now.

### III.  THE COURT SHOULD OVERRULE THE OBJECTION SUBMITTED BY THE LEEBER OBJECTORS, WHOSE COUNSEL HERE ALREADY SETTLED CLAIMS AGAINST IJL ON AN INDIVIDUAL LEVEL.

Four Class Members (the "Leeber Objectors") filed their objections (the "Leeber Objection") through PinilisHalpern LLP. That law firm brought its own action against It's Just Lunch, but, unlike Class Counsel here, settled on an individual level within months for an undisclosed amount.[3] (*Dunphy et al. v. It's Just Lunch, Inc.*, Case No. L00836514, Bergen County Court in New Jersey). This objection (1) fails to rely on any legal authority, other than citing cases from across the country for general legal

---

[3] Although two of the four Leeber Objectors submitted declarations in support of the Leeber Objection (Declaration of Daniel Leeber, Dkt. Nos. 291-1, 297, 302, and Declaration of Susan Brady, Dkt. Nos. 291-3, 298, 301), the remaining two Class Members are mentioned nowhere in the brief except the signature page.

propositions pertaining to standards for motion to intervene and for approval of class action settlement, (2) relies on various misrepresented facts and flawed assumptions that the case has already been settled for more than a year,[4] and (3) proposes no manageable ways in which the Settlement can be improved to provide more value to the class members. The objection should be overruled.

### A. The Settlement Terms Do Not Give Preference to Class Members Based on Geographical Preferences—All Members of One Class Receive the Same Relief.

On May 14, 2014, the Court certified two classes: (1) the New York Class with the statutory claim for violation of New York General Business Law §§ 349 and 394-c, and unjust enrichment, and (2) the National Class with a common law fraud claim. The members of each class receive identical relief regardless of their geographical location; the New York Class has an additional claim. In light of their statutory claims specific to New York State, all members of the New York Class receive a check for $100. All members of the National Class receive a voucher.

The Leeber Objectors' main objection is based on the misconceived notion that the members of the same class receive different benefits in light of them being "local" class members. Memorandum of Law in Support of the Leeber Objection ("Leeber Br.") (Dkt. No. 303), 11.) Ignoring the notice, and all allegations regarding the New York Class, the Leeber Objection purports that the "reason for this discrepancy in treatment is not explained" (Leeber Br., 12)) and that "there is no explanation offered" as to why New York Class Members receive checks (Leeber Br., 11), and concludes that this is

---

[4] Class Counsel emailed William Pinilis, the attorney who signed the Leeber Objection, to discuss the various factual inaccuracies, but did not receive a response.

because New York Class Members are being "unfairly and improperly preferred over class members residing further away from this venue." (Leeber Br., 12, n.5.) As demonstrated in every document filed in support of the Settlement, these statements are simply wrong and show that the author spent no effort to familiarize himself with the terms and nature of the settlement. The objection should be overruled.

> **B.** **Monitoring Defendants' Post-Lawsuit Conduct Simply Is Not a Necessary Element of a Fair Settlement, But the Settlement Here Anyway Provides for a Significant Disincentive to IJL to Engage in Misconduct.**

Leeber also contends that there is no device in place for monitoring whether IJL will fix its services. This, too, is wrong. The Parties scrupulously negotiated amendments to all of IJL's contracts to add guarantees that it would honor particular client preferences and even a public pledge on the homepage of its website. This will make it enormously easier for its clients, as well as the state agencies and other regulators, to hold IJL liable for a breach of contract if it acts in violation to its contractual and public obligations.

IJL will modify its contracts to include a specific commitment not previously included in any contracts or promotional materials to honor client preferences related to age, religion, and parental status when providing matches to members. (Settlement Agreement § 2.05(b) (Dkt. No. 257-2).) Inappropriate matching of these important characteristics was the most common complaint communicated to Class Counsel by IJL's customers, with many customers complaining that IJL arranged dates between individuals who had characteristics directly contrary to expressed preferences, in particular age, religion, and parental status. (Third Amended Complaint, Dkt. No. 169

¶ 15.) Under the terms of the Settlement, IJL will add a pledge to its website detailing its commitments concerning the nature of the services it will provide, pledging to "honor your preferences for age, religion, and parental status as we personally select your matches." (Settlement Agreement § 2.05(a) (Dkt. No. 257-2).) This commitment will also be set forth in all new client agreements. (Settlement Agreement § 2.05(b) (Dkt. No. 257-2); Short-Form Notice, 1-2 (Dkt. No. 257-3); Long-Form Notice, 1, 7-8 (Dkt. No. 257-4).) All of these changes provide significant protection to Class Members warranting overruling the Leeber Objections.

## IV.   THE COURT SHOULD OVERRULE THE REMAINING PRO SE OBJECTIONS.

The remaining objections to the Settlement respectfully should be overruled, and the Court should grant final approval of the Settlement. The 35 objections filed with the Court came directly from 33 Class Members and two outside attorneys. (Balestriere Decl. ¶ 16.) Class Counsel also received six letters from Class Members objecting to the Settlement who did not send that objection to the Court. (Balestriere Decl. ¶ 17.) Nearly all of the objections received by Class Counsel and the Court come from understandably emotionally-driven Class Members who trusted the most intimate aspects of their lives to a company that betrayed their trust. Class Counsel has handled approximately 170 calls since the notices were sent on February 25, and, like many of the people Class Counsel has spoken to, a number of the objectors expressed their desire to see IJL go out of business. (Balestriere Decl. ¶ 18.) While this frustration is completely understandable, the Class would receive no benefit from IJL being put out of business, and the purpose of class actions is not to increase the unemployed rolls or

further burden the bankruptcy courts. (Balestriere Decl. ¶ 19.) Instead of pursuing trial or a Settlement that would have forced IJL out of business, with its employees losing their jobs and customers who actually want IJL's service unable to obtain that service, Class Counsel fixed IJL's business practices through the injunctive relief terms of the Settlement that force IJL to commit to significant change that addresses some of the most frequent complaints heard by Class Members through the years.

### A. Due to the Financial Circumstances of IJL, It Was Not Possible to Procure a Substantial Monetary Award Beyond the Amount Already Obtained by Class Counsel Through Settlement

The Court should overrule objections from Class Members who only want a monetary award.[5] Due to IJL's poor financial condition, a monetary award for all Class Members simply would not have been possible. Magistrate Judge Netburn assisted Class Counsel in negotiating and obtaining the maximum amount from IJL, and it was only then that Class Counsel decided how to divide up the limited amount of money available. Had Class Counsel decided to proceed to trial, any judgment obtained against IJL would have caused the company to go into bankruptcy, and Class Members would have received nothing. Even without considering the costs of settlement administration and attorney's fees, IJL would still not have enough money. Because the financial status of IJL does not allow for substantial monetary awards to all Class Members, this Settlement provides the best possible outcome to Class Members, and the Court should grant final approval of the Settlement.

---

[5] The docket numbers of objections regarding this topic submitted to the Court are as follows: 261, 264, 273, 274, 275, 277, 281, 284, 287, 288, 289.

**B. The Difference in Awards Between the New York Class and National Class Is Warranted, As the Court Certified Separated New York Statutory Claims.**

The Court should overrule objections from Class Members who believe national Class Members should receive the same award as New York class members.[6] New York Class Members are part of a separate, certified class with distinct causes of action under New York General Business Law § 349, which IJL violated when it charged customers in New York over $1,000 for services provided within a one year period. As such, a New York Class Member is one who lives in New York and paid over $1,000 to IJL within a period of one year. In fact, because the New York Class is so specific, only a subset of Class Members who live in New York are considered New York Class Members; many New Yorkers are not part of the New York Class. As there is no national law that is similar to New York General Business Law § 349, the difference in awards between the New York Class and National Class is warranted because of IJL's violation of this specific New York law.

**C. The Voucher Award is Useful and Provides Value to the Classes, as Seen by Not Only the Popularity of IJL, But the Relatively High Redemption Rate of Claims Vouchers After Only Two Months.**

The Court should overrule objections from Class Members who believe that the voucher is unfair and of no use.[7] The vouchers create value for Class Members where IJL would not have been able to provide Class Members any other type of award due to its financial state. The vouchers are a way to create value for the Classes where there

---

[6] The docket numbers of objections regarding this topic submitted to the Court are as follows: 266, 277, in addition to the Leeber Objection and the CCAF Objection.

[7] The docket numbers of objections regarding this topic submitted to the Court are as follows: 262, 272, 274, 275, 278, 285, 288, 289, 293.

was no money available, and the Parties came to these terms only with the assistance of Magistrate Judge Sarah Netburn after a full day of mediation.

### 1.   The Redemption Rate Shows the Interest in the Vouchers.

Class Members who object to the Settlement on the basis of their own interest and other Class Members' perceived interest in the vouchers are respectfully incorrect. Class Counsel has communicated with many Class Members since the notices were sent on February 25 who have expressed great interest in using the vouchers (Balestriere Decl. ¶ 20.) Both Class Counsel and Heffler have spent significant time responding to questions about how to submit claims forms for the vouchers, even walking Class Members through the process step by step. (Balestriere Decl. ¶ 21; Heffler Decl. ¶ 17.) The redemption rate alone shows that any disinterest of some Class Members is hardly uniform among all 153,549 Class Members. Indeed, as of the time of the filing of this brief, the Class Members have submitted a total of 6,313 timely claims. (Heffler Decl. ¶ 18.) Forty-one Class Members objected to the Settlement (Balestriere Decl. ¶ 22) and only 175 requested to opt out. (Heffler Decl. ¶ 13.)

### 2.   The Fact that IJL Continues to Enroll Members Every Week Shows That There Is a Demand for Dates, as Long as Fairly Provided, as the Settlement Requires.

IJL's enrollment numbers have remained steady over the last few years and, most notably, over the past few months since the terms of the Settlement were made public. (Balestriere Decl. ¶ 25.) The service IJL provides is a sought after, in demand service, as long as fairly provided as the Settlement requires. The demonstrated interest in IJL's services show that the vouchers are not useless but provide value to the Classes.

### 3. The Vouchers Are Not a Marketing Tool for IJL At All, As Anyone Who Uses the Voucher is Either a Class Member, or Has Otherwise Already Signed Up for IJL.

The Court should overrule the objections from Class Members who contend that vouchers are only a marketing tool for IJL. (Dkt. No. 289.) Not only will IJL not make any money from the vouchers, IJL incur costs from honoring the vouchers provided through the Settlement. (Balestriere Decl. ¶ 26.) Class Members do not have to pay anything to redeem the voucher.

### 4. Class Members Who Are Now In a Relationship Can Transfer the Voucher to a Non-Class Member.

The Court should overrule objections from Class Members who object because they are now in a relationship and cannot use the voucher themselves.[8] Class Members who are now in a relationship are able to transfer their voucher to non-Class Members. (Settlement Agreement § 2.04 (Dkt. No. 257-2); Balestriere Decl. ¶ 23.)

### 5. Class Members and Non-Class Members Have Demonstrated That They Want to Use IJL's Services.

The Court should overrule meritless objections from Class Members who claim that no one wishes to use IJL.[9] One of the Class Members who submitted a comment (Dkt. No. 276) noted: "I would just like to say that any judgement [sic] in regards to IJL should take into account the many, many satisfied customers who chose to use their service." Under the Settlement terms, IJL has made significant changes to its practices and made a commitment to address the most common complaints of Class Members.

---

[8] The docket numbers of objections regarding this topic submitted to the Court are as follows: 262, 274, 275, 277, 278, 286, 293.

[9] The docket numbers of objections regarding this topic submitted to the Court are as follows: 262, 272, 274, 275, 278, 285, 288, 289, 293.

As a result of this commitment, IJL has more incentive to follow through on its promise as the company is now more liable to individual actions or action by an attorney general. The vouchers indeed have value as they allow Class Members to obtain IJL's services under its new commitment

### D. Class Counsel's Application for Lodestar Fees is Reasonable.

The Court should overrule objections from Class Members asserting that Class Counsel's application for lodestar fees is unreasonable, without citing authority or provide much of a rationale.[10] The attorney's fees in the amount of $3,583,703.50 represent the lodestar amount of legal services provided to the Classes in the nearly nine years since initial investigation began. (Dkt. Nos. 279, 282-283.) Even considering the number of claims submitted to date, the value of only the vouchers part of the settlement is $2,840,000 with still two more months until the submission deadline. The proposed fee is reasonable under both lodestar and percentage-of-recovery analyses and it should be approved.

### E. Objectors' Understandable Complaints Regarding Their Experiences With IJL Support the Settlement As Many of Such Complaints Regard the Three Match Characteristics at the Heart of the Injunctive Relief.

At least 41 Class Members have submitted objections and comments to this Court[11] and to Class Counsel detailing their experiences with IJL, related to the client preferences regarding age, religion, and parental status. These objections and comments only provide further evidence of IJL's conduct, and make evident just how much the

---

[10] The docket numbers of letters and papers submitted to the Court are as follows: 265, 269, 284, 289, 316, in addition to the Leeber Objection and the CCAF Objection.
[11] The docket numbers of letters and papers submitted to the Court are as follows: 261-262, 264-266, 269, 272-278, 281, 284-289, 293, 300-317.

injunctive relief provided for in the Settlement was needed and will impact the future clients of IJL.

<u>CONCLUSION</u>

The Settlement is the best settlement possible under the circumstances and provides a far greater value than any result that Plaintiff could obtain following a successful trial and throughout bankruptcy proceedings. The Court should overrule the objections and grant final approval of this class action settlement in its entirety.

Dated:  April 15, 2016                Respectfully submitted,
     New York, New York

_____
John Balestriere
Jon Norinsberg
Stefan Savic
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:   (212) 374-5401
Facsimile:    (212) 208-2613
john.balestriere@balestrierefariello.com
jon.norinsberg@balestrierefariello.com
stefan.savic@balestrierefariello.com
*Attorneys for Plaintiffs and the Classes*