USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/6/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTINE RODRIGUEZ, individually and for all others similarly situated, ET AL.,

      Plaintiffs,

-against-

IT'S JUST LUNCH INTERNATIONAL, ET AL.,

      Defendants.

---

07-cv-9227 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

Defendants move to decertify both classes in this action for failure to maintain compliance with Fed. R. Civ. P. 23(b)(3)'s predominance requirement as interpreted by the United States Supreme Court in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). For the reasons set forth below, the motion for decertification is denied, but the class definitions will be amended in order to bring them into conformity with Rule 23 and the relevant case law and to enable this action to proceed to trial.

I. BACKGROUND

Plaintiffs are dissatisfied customers of defendants' allegedly fraudulent dating service ("It's Just Lunch" or "IJL"). This opinion assumes familiarity with the factual background and procedural history of the case as set forth in the Court's previous opinions, cited below. In brief: plaintiffs filed this action on October 15, 2007. The Court subsequently granted in part and denied in part defendants' motion to dismiss the first amended complaint, (Order, Doc. 48), as well as defendants' motion to dismiss the second amended complaint, (Order, Doc. 90). After discovery closed in December 2010, (*see* Order, Doc. 127), the Court denied plaintiffs' motion for partial summary judgment and granted in part and denied in part defendants' cross-motion for partial summary judgment. *Rodriguez v. It's Just Lunch, Int'l*, No. 07-CV-9227, 2013 WL 1749590, at *2–3 (S.D.N.Y. Apr. 23, 2013) ("2013 Summ. J.").

Defendants sought to appeal from that summary judgment ruling, (Notice of Appeal, Doc. 168), but subsequently voluntarily withdrew the appeal, (*see* Mandate, Doc. 183).

In the aftermath of these rulings, plaintiffs' third and final amended complaint asserts three claims: (1) deceptive business practices in violation of New York General Business Law ("GBL") Section 349, (2) fraud, and (3) unjust enrichment. (3AC, Doc. 169 ¶¶ 226–239.) The fraud claim centers on alleged misrepresentations by defendants as to the nature and quality of the services plaintiffs purchased, while the GBL and unjust enrichment claims focus on defendants' allegedly deceptive practices in evasion of GBL Section 394–c's limits on fees for dating services.

In May, 2014, the Court certified two classes pursuant to Fed. R. Civ. P. 23(b)(3): a "National Class" consisting of "all individuals who signed a membership contract with IJL and purchased IJL's services on or after October 15, 2001" and a "New York Class" consisting of "all individuals who became IJL clients in New York and who, on or after October 15, 2001, paid more than $1,000 for a year's worth of IJL services." *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 143, 149 (S.D.N.Y. 2014) ("2014 Class Cert."). Though plaintiffs originally sought relief on a variety of claims, the Court granted certification of the National Class on only one – fraud – and of the New York Class on two claims – common law unjust enrichment and deceptive business practices in violation of New York General Business Law Section 349. The U.S. Court of Appeals for the Second Circuit denied defendants' motion for leave to appeal from that decision. (Second Mandate, Doc. 214.)

With the valuable assistance of Magistrate Judge Netburn, class counsel and defendants subsequently agreed to settle the case and the Court later granted preliminary approval of a revised settlement agreement on January 25, 2016. (*See* Preliminary Approval Order, Doc. 258.) The settlement administrator sent out class notices by mail and email in February and March 2016. (Hamer Decl., Doc. 323 ¶¶ 9–10.) A fairness hearing was held on April 26, 2016, at which witnesses testified for both sides. (*See* Fairness Hearing Tr., Doc. 362.) However, the Court ultimately denied final approval of the settlement on grounds of substantive

2

unfairness. This ruling rested in large part on the fact that the only relief the settlement would have provided to members of the National Class was the promise of vouchers for additional dates – vouchers that it was clear many class members did not want, because they were dissatisfied with defendants' services or were no longer desirous of dating at all. (Order, Doc. 342; Tr., Doc. 355 at 9–26.) The underlying premise of this action is that defendants defrauded the class members, so why would they wish to engage IJL's services once again?

In subsequent submissions, defendants raised a series of compelling arguments as to the incalculability of classwide damages – objections to which plaintiffs offered no convincing answer at the time. (*See* Letters, Docs. 366–373.) On the basis of these arguments, defendants sought leave to file a motion for decertification. (Defs.' Apr. 28 Letter, Doc. 368 at 2.) The Court granted that leave, (Order, Doc. 382), and defendants have filed this motion to decertify both the National and New York Classes, (Notice of Mot., Doc. 386).

II. DISCUSSION

A. <u>Legal Standard</u>

1. <u>Class Decertification</u>

By the familiar dictates of Rule 23, class action plaintiffs must demonstrate compliance with all four requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – and at least one of the three provisions of Rule 23(b). Both the National Class and the New York Class were certified pursuant to Rule 23(b)(3), which requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

"[C]ertifications are not frozen once made." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1202 n.9 (2013). Rule 23(c)(1)(C) specifically provides that class certification orders "may be altered or amended before final judgment." In fact, "the district court has the affirmative duty of monitoring its class decisions," *Mazzei v. Money Store*, 829 F.3d 260,

266 (2d Cir. 2016) (internal quotation omitted), and must "'reassess . . . class rulings as the case develops'" in order to "ensure continued compliance with Rule 23's requirements," *Amara v. CIGNA Corp.*, 775 F.3d 510, 520 (2d Cir. 2014) (omission in original) (quoting *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999)). A class certification decision is "inherently tentative," *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.11 (1978), and "actual, not presumed, conformance with Rule 23[] remains . . . indispensable" to the continued maintenance of a class action, *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

"In opposing [a] decertification motion," as in the original class certification analysis, plaintiffs "retain[] the burden to demonstrate that these requirements were satisfied" by a preponderance of the evidence. *Mazzei*, 829 F.3d at 270.[1] As always, compliance with Rule 23 must be measured using a "rigorous analysis" that may "entail some overlap with the merits" of the underlying claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). After conducting this analysis, the Court "may decertify a class if it appears that the requirements of Rule 23 are not in fact met," *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 572 (2d Cir. 1982), because "the reasons for granting class certification no longer exist or never existed," *Mental Disability Law Clinic v. Hogan*, No. 06-CV-6320, 2008 WL 4104460, at *17 (E.D.N.Y. Aug. 28, 2008). In addition, short of wholesale decertification, "the Court remains free to define, redefine, [or] subclass . . . as appropriate in response to the progression of the case from assertion to facts." *Freeland v. AT & T Corp.*, 238 F.R.D. 130, 142 (S.D.N.Y. 2006) (internal quotation omitted).

---

[1] Plaintiffs cite a few district court cases that would instead place the burden on defendants to show that a class must be decertified or limited, *e.g.*, *Gordon v. Hunt*, 117 F.R.D. 58, 61 (S.D.N.Y. 1987), or that "compelling reasons" exist to revisit an earlier class certification ruling, *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 169 (S.D.N.Y. 2011) (internal quotation omitted). But this nonbinding authority is contradicted both by contemporaneous district court decisions, *e.g.*, *In re Credit Suisse First Boston Corp. (Lantronix, Inc.) Analyst Sec. Litig.*, 250 F.R.D. 137, 140 (S.D.N.Y. 2008); *see also* 1 McLaughlin on Class Actions § 3:6 (14th ed. 2017 update) ("Courts are not in complete agreement on which party bears the burden of proof on a motion to decertify a class."), and – more importantly – by the Second Circuit's recent clarification in *Mazzei v. Money Store*, 829 F.3d at 270, that the burden remains with the plaintiffs to show continued compliance with Rule 23 on a motion for decertification.

## 2. Predominance

Defendants' decertification motion focuses on the predominance requirement of Rule 23(b)(3). This provision "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). A court assessing predominance must determine whether "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and these particular issues are more substantial than the issues subject only to individualized proof." *Langan v. Johnson & Johnson Consumer Cos.*, No. 17-1605, 2018 WL 3542624, at *6 (2d Cir. July 24, 2018) (internal quotation omitted).

Predominance does not require that every last element of a claim be susceptible of classwide proof. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1196 (2013). In particular, "the fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification," although "it is nonetheless a factor that we must consider in deciding whether issues susceptible to generalized proof 'outweigh' individual issues." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

Here, however, plaintiffs strenuously maintain that damages *are* provable on a classwide basis.[2] For that to be so, plaintiffs must present a "model for determining classwide damages" that will "actually measure damages that result from the class's asserted theory of injury." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015) (citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013)). Accordingly, the Court must "examine the proposed damages methodology at the certification stage to ensure that it is consistent with the classwide theory of liability and capable of measurement on a classwide basis." *In re U.S.*

---

[2] Plaintiffs fail to offer, in the alternative, any serious proposal explaining how the Court could manage the individualized damages claims of approximately 153,000 National Class members – or even the 2,000 or so New York Class members. *Cf. In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141, 145 (2d Cir. 2001) (identifying potentially available options).

5

*Foodservice Pricing Litig.*, 729 F.3d 108, 123 n.8 (2d Cir. 2013); *see also Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015) ("[T]he plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." (internal quotation omitted)); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir. 2001) (requiring plaintiffs to show, "based on methodology that was not fatally flawed, that the requirements of Rule 23 were met"). Proceeding to trial on the basis of a "vague inquiry into damages," without any "meaningful means of estimating" the injuries to class members, is prohibited. *McLaughlin*, 522 F.3d at 229–30.[3]

## B. Motion to Decertify the National Class

The National Class brings claims for fraud pursuant to the laws of all the respective states in which defendants allegedly made misrepresentations to each class member. *See* 2014 Class Cert. at 135, 149. The parties agree that each state applies one of two measures of damages for fraud. Some states apply the "benefit of the bargain" rule, which awards prevailing plaintiffs the difference between the hypothetical value of the services promised and the actual value received. Others apply the simpler "out of pocket" rule, which awards the difference between the consideration paid and the actual value received. And a third category of states permits the application of whichever of these two measures allows for the largest recovery that can be proven with reasonable certainty. (*See* Pls.' June 30 Letter, Doc. 383 at 3; Defs.' Mem., Doc. 391 at 5–7; Argument Tr. at 8.)

Defendants raise a variety of objections that they argue defeat predominance and require decertification of the National Class. As explained below, some of these arguments have merit, but modification – not decertification – of the National Class will suffice to remedy its ills and allow it to proceed to trial.

---

[3] The Second Circuit has warned that an inaccurate and excessive measure of class damages not only transgresses the bounds of Rule 23, but also "offends the Rules Enabling Act" by allowing Rule 23 to enlarge the substantive rights of plaintiffs. *McLaughlin*, 522 F.3d at 231; *see also Seijas v. Republic of Argentina*, 606 F.3d 53, 58–59 (2d Cir. 2010).

6

### 1. Plaintiffs Present a Viable Model of National Class Damages Only Under the Out-of-Pocket Rule.

Plaintiffs propose to present two distinct models of National Class damages to the jury. The gravamen of their complaint is that defendants promised "personalized, sophisticated, thoughtful matchmaking services," when in fact IJL's customers were simply "arbitrarily thrown together" for dates, *"at random."* (3AC ¶¶ 1, 11; Argument Tr. at 5.) By plaintiffs' lights, either (1) defendants' dating service was entirely worthless, entitling class members to a full refund of their membership fees; or (2) the value of the "arbitrary grouping" of customers provided by defendants' perfunctory matchmaking was both greater than zero and uniform across all members of the class, and hence may easily be subtracted from the fees paid to compute each class member's recovery. (Pls.' Opp'n Mem., Doc. 395 at 11–13.)

#### a. Plaintiffs May Seek "Full Refund" Out-of-Pocket Damages.

In the first instance, plaintiffs seek "repayment of the entire membership price paid by each class member," because they allege that defendants' services were "worthless" and thus that all class members received the same actual value: zero. (Pls.' Opp'n Mem. at 1–2.) They will be permitted to argue that as a method of computing damages for class members in states that apply the "out of pocket" measure of damages.

For class members in states that apply the out-of-pocket rule, this "full refund" theory does present a workable model of classwide damages that is "directly linked with their underlying theory of classwide liability," *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 123 n.8 (2d Cir. 2013), as required to proceed to trial on damages. Defendants vigorously contest the value of the services provided, but that argument "goes to the proof of the merits of plaintiffs' claims," not their amenability to certification. *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 408 (S.D.N.Y. 2015) (internal quotation omitted). "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1191 (2013). At this stage, "[m]erits questions may be considered to the extent –

but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195.

Here, plaintiffs are entitled to maintain a class seeking out-of-pocket damages returning the consideration paid (the cost of membership fees) minus the actual value plaintiffs claim they received, which is zero. In other words, the class members may seek to recover the full membership fees they paid to defendants as damages. Plaintiffs "will succeed or fail on this theory based on whether they are able to prove [defendants' service] is worthless." *In re Scotts EZ Seed*, 304 F.R.D. at 408; *see also, e.g., Korolshteyn v. Costco Wholesale Corp.*, No. 15-CV-709, 2017 WL 1020391, at *6 n.2 (S.D. Cal. Mar. 16, 2017) ("If Plaintiff cannot prove that the statements on the labels were false and that Gingko biloba has no benefit to memory or otherwise, the class claims will fail. . . . However, [this] fails to reveal a flaw that may defeat predominance . . . ."); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 671 (C.D. Cal. 2014) ("Plaintiffs' damages theory – predicated on the notion that class members are entitled to full restitution for products with no value – is consistent with Plaintiffs' liability theory."). Plaintiffs claim they were promised personalized, customized matchmaking services and received nothing in return except a valueless, "arbitrary grouping" of individuals for dates.

A full refund is not, however, a tenable model of damages under the benefit-of-the-bargain rule. Plaintiffs contend that "it does not matter which rule for measuring damages is used" on their full-refund theory of liability. (Pls.' Opp'n Mem. at 12 n.7.) But this argument ignores one half of the benefit-of-the-bargain formula, as outlined above. Plaintiffs have not even attempted to quantify the hypothetical value of the services promised – or to explain how a jury could do so. Whatever the actual value received by class members, there is no way to calculate benefit-of-the-bargain damages without knowing the minuend from which that value is to be subtracted – namely, the value of the services promised. In truth, the issue here is not whether plaintiffs' proposed methodology for classwide damages is "fatally flawed." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir. 2001). Rather, the more fundamental problem is that plaintiffs propose "no damages model at all"

that is linked to their theory of liability under the benefit-of-the-bargain rule. *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 552 (C.D. Cal. 2014).[4]

### b. Plaintiffs Fail to Present Any Viable "Partial Refund" Damages Model.

Alternatively, plaintiffs argue that even if defendants' service did provide class members with some "minimal" benefit, its value was uniform across the class. (Pls.' Opp'n Mem. at 2.) In that case, plaintiffs contend they should be permitted to seek to recover the amount by which the fees for those services were "overpriced" in comparison to the actual value delivered. (*Id.* at 13 & n.2.)

Plaintiffs may be right in theory that the "arbitrary grouping" provided by defendants' dating service held a uniform nonzero value for all class members. But they provide no method to calculate that value and hence no tenable "partial refund" model of classwide damages. Plaintiffs suggest obscurely that "[t]he jury can look to other similar services, for example any of the popular online dating applications, for comparative pricing of such similar arbitrary screening services." (Pls.' Opp'n Mem. at 2.) Such hand-waving, unsupported by any evidence in the record, offends the Supreme Court's instruction in *Comcast Corp. v. Behrend* that "a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." 133 S. Ct. 1426, 1433 (2013).

"Courts routinely reject price premium methodologies under *Comcast* when the proposed methodologies do not attempt to isolate the premium due only to the allegedly misleading

---

[4] At oral argument, plaintiffs attempted to cure this deficiency by suggesting in passing that "we would put to the jury . . . that our class members valued [defendants' services] at what they paid. Meaning they paid a certain amount, . . . that's at least some estimate of what the value was that the plaintiff ascribed to the service they believed they were purchasing." (Argument Tr. at 10.) This conclusory reference to "some estimate," unsupported by any authority and entirely absent from plaintiffs' motion papers, cannot meet plaintiffs' burden to show a viable damages model under Rule 23(b)(3) and *Comcast*.

marketing statement." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413 (S.D.N.Y. 2015). Here, even the most meticulous comparison of defendants' prices to those of their competitors, standing alone, offers "no way of linking the price difference, if any, to the allegedly unlawful or deceptive [advertising] or controlling for other reasons why allegedly comparable products may have different prices." *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-2724, 2014 WL 2191901, at *23 (N.D. Cal. May 23, 2014). "Rather than answer the critical question why that price difference existed, or to what extent it was a result of [defendants'] actions," plaintiffs here simply "assumed that 100% of that price difference was attributable to [defendants'] alleged misrepresentations." *In re POM Wonderful LLC*, No. 10-ML-2199, 2014 WL 1225184, at *5 (C.D. Cal. Mar. 25, 2014); *see also Ault v. J.M. Smucker Co.*, 310 F.R.D. 59, 67 (S.D.N.Y. 2015) ("This methodology is not consistent with [Plaintiff's] liability case because it makes no attempt to calculate the amount that consumers actually overpaid due to [defendants' misrepresentations]." (first alteration in original) (internal quotation omitted)). Plaintiffs' gestures in the direction of a "partial refund" model do not satisfy the requirement that "a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury," under *Comcast* and its progeny. *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015).

Accordingly, because plaintiffs' full refund theory successfully models only out-of-pocket damages, while the partial refund theory fails under the rules for both the "out of pocket" states and the "benefit of the bargain" states, the National Class will be limited in scope to include members to whom defendants allegedly made misrepresentations only in those states that permit recovery of out-of-pocket damages for fraud.[5]

---

[5] Defendants have furnished a list of states applying each rule, (Defs.' Mem. at 6–7), which plaintiffs have endorsed, (Argument Tr. at 8). According to the parties, nine states – California, Delaware, Idaho, Minnesota, Mississippi, Nebraska, Nevada, New York and Oregon – apply the out-of-pocket rule exclusively, and an additional nine – Arkansas, Florida, Iowa, Kansas, Massachusetts, New Jersey, Texas, Vermont, and Wyoming – allow it as one possible measure of fraud damages. The National Class will therefore be limited to class members allegedly injured in these eighteen states.

## 2. The Class Period Will Terminate at the Date of the Original Class Certification.

Defendants raise a number of other asserted differences between class members that they claim independently defeat predominance. They argue that class members' claims will diverge based on changes in defendants' own business practices over the class period – sixteen years and counting – as well as variations between the practices of different It's Just Lunch franchises. (Defs.' Mem. at 14–17.)

At the root, these issues all grow out of one underlying problem: the open-ended nature of the class period defined in the Court's 2014 class certification decision, which defined the National Class to include "all individuals who signed a membership contract with IJL and purchased IJL's services *on or after* October 15, 2001." 2014 Class Cert. at 143 (emphasis added). Defendants claim that the obstacles they identify demand decertification of the National Class altogether. They are wrong. The defect of an open-ended class does not require decertification, for the problem may be solved by amending the class definition to close the class period at the date of class certification: May 14, 2014. Judge Engelmayer's opinion in *Hart v. Rick's NY Cabaret International, Inc.*, is instructive in this regard:

> [A]n open-ended end-date is untenable. It fails to take account of the possibility that material facts might change. And it denies the parties, after the close of fact discovery, a practical vehicle for exploring whether there have been material factual changes. Lack of clarity as to the end date of the class period also has the potential to confuse putative class members as to whether their interests will, or will not, be represented in the pending lawsuit.

No. 09-CV-3043, 2013 WL 11272536, at *5 (S.D.N.Y. Nov. 18, 2013).

The complications created by an open-ended class period may be characterized in several ways. Such a class may run into issues of ascertainability, which requires that a class definition "establish the definite boundaries of a readily identifiable class," *Brecher v. Republic of Argentina*, 806 F.3d 22, 25 (2d Cir. 2015); or it may become unmanageable, particularly with respect to Rule 23(b)(3)'s notice and opt-out requirements, as discussed in *Hart*. Another way to frame the issue is that the record will necessarily lack evidence that the requirements of

Rule 23 are met with regard to the portion of the class period that stretches beyond the close of discovery. *See In re Ikon Office Sols., Inc.*, 191 F.R.D. 457, 467 (E.D. Pa. 2000).

However these problems are conceived, the solution, as noted above, is for the Court to exercise its authority pursuant to Fed. R. Civ. P. 23(c)(1)(C) to modify the class definition to close the class period on a specific date. This option has been utilized by several other courts in the face of similar difficulties. *See, e.g., Hart*, 2013 WL 11272536, at *6 (open-ended class period amended to end at close of discovery); *Mazzei v. Money Store*, 829 F.3d 260, 265 (2d Cir. 2016) (original class period extending "to the present" was "later amended ... (for administrative purposes) to close on June 2, 2014"); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85 n.2 (S.D.N.Y. 2001); *Melgar v. CSk Auto, Inc.*, No. 13-CV-3769, 2015 WL 9303977, at *7 (N.D. Cal. Dec. 22, 2015), *aff'd*, 681 F. App'x 605 (9th Cir. 2017). Here, the class certification date is the most logical endpoint for the class period.

In this case, closing the class period at the original certification date avoids the thorny questions of geographical and temporal variation among class members raised by defendants in their motion to decertify, because the Court has already decided – on the basis of "the evidence to date" as of May 14, 2014 – that defendants' conduct from 2001 to 2014, across all franchise locations, was sufficiently cohesive to support class certification. 2014 Class Cert. at 130–36.

Accordingly, the Court will cut the Gordian knot by modifying the class period in the National Class definition to cover individuals who purchased defendants' services "on or after October 15, 2001, *up through and including May 14, 2014.*"[6]

---

[6] The New York class definition is also open-ended. *See* 2014 Class Cert. at 149 ("[A]ll individuals who became IJL clients in New York and who, on or after October 15, 2001, paid more than $1,000 for a year's worth of IJL services."). However, the specific business practices that are the subject of the state law claims apparently ended in 2006, and defendants signed a 2007 Assurance of Discontinuance promising the New York Attorney General not to renew them. (Doc. 188-1.) Plaintiffs do not allege that defendants have since broken that promise. (*See, e.g.*, 3AC ¶ 19.) Thus, as a practical matter, the universe of New York Class members is already a closed set. Nevertheless, for completeness's sake, the Court will also amend the state class definition to close on the original certification date in order to avoid the problems addressed here.

## C. Motion to Decertify the New York Class

The New York Class brings claims pursuant to the state's General Business Law and common law unjust enrichment. GBL Section 349 provides a private right of action for those injured by deceptive acts or practices in the conduct of business. As elaborated by the courts, a claim under this provision has three elements:

(1) the defendant's challenged acts or practices must have been directed at consumers,

(2) the acts or practices must have been misleading in a material way, and

(3) the plaintiff must have sustained injury as a result.

*Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007). The second element is satisfied when a defendant's conduct is "likely to mislead a reasonable consumer acting reasonably under the circumstances," *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995), but a "deceptive practice . . . need not reach the level of common-law fraud to be actionable under section 349," *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000). In this case, plaintiffs fulfill the requirement by alleging IJL's deceptive acts in violation of a separate GBL provision, Section 394–c, which prohibits charging more than $1,000 for social referral services. *See* 2013 Summ. J. at *2–3.

As to the common law unjust enrichment claim, "[t]o prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (internal quotation omitted).

Defendants' motion for decertification mounts three distinct attacks on the New York Class. As set forth below, the Court concludes that none of these arguments has merit and will allow the New York Class to proceed to trial as a class action on their GBL Section 349 claim and their unjust enrichment claim. The three challenges that defendants assert against the viability of the New York Class are as follows:

### 1. The Overcharge Above $1,000 per Year is a Viable Model of Damages for the New York Class.

Defendants contend that the New York Class shares the National Class's alleged infirmities with respect to individualized and indeterminable damages. (Defs.' Mem. at 24; Defs.' Reply Mem., Doc. 398 at 9.) But plaintiffs' prayer for state law relief does not seek full benefit-of-the-bargain or out-of-pocket damages. Instead, plaintiffs ask simply to recover only the portion of fees charged by defendants that exceeded the legal limit of $1,000 imposed by GBL Section 394-c(2). (Pls.' June 30 Letter at 4.) That overcharge itself constitutes the "injury as a result of the deceptive act," *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000), that plaintiffs claim to have suffered in violation of GBL Section 349, and the amount whose return is compelled by "equity and good conscience," *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006), pursuant to the doctrine of unjust enrichment.

Courts have recognized the amount of the illegal overcharges to be a legitimate measure of damages for both plaintiffs' Section 349 claim, *e.g.*, *In re Coordinated Title Ins. Cases*, 2 Misc. 3d 1007(A) (N.Y. Sup. Ct. Nassau Cnty. 2004); *see also Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 272 (S.D.N.Y. 2014), and plaintiffs' unjust enrichment claim, *see, e.g.*, *Partell v. Fid. Nat. Title Ins. Servs.*, No. 12-CV-376, 2012 WL 5288754 (W.D.N.Y. Oct. 24, 2012); *J.C. Penney Corp. v. Carousel Ctr. Co., L.P.*, 635 F. Supp. 2d 126, 131 (N.D.N.Y. 2008). And this measure yields a definite damages amount for each class member – generally either $300 or $500, according to plaintiffs – which can easily be calculated using defendants' records. (*See* Pls.' Apr. 28 Letter, Doc. 366 at 2.)

Accordingly, the proposed measures of damages for the two claims addressed to the New York Class – deceptive business practices under GBL Section 349 and common law unjust enrichment – remain suitable for resolution on a class basis compliant with Rule 23. *See Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 44–47 (E.D.N.Y. 2008); *Broder v. MBNA Corp.*, 281 A.D.2d 369, 371 (1st Dep't 2001).

## 2. Plaintiffs May Seek Damages Pursuant to GBL Section 349(h).

Plaintiffs also intend to ask the jury to impose treble damages for willful violations of the General Business Law pursuant to GBL Section 349(h). (Pls.' June 30 Letter at 4.) Defendants contend that treble damages are unavailable to class action plaintiffs, citing *Borden v. 400 E. 55th St. Assocs., L.P.*, 24 N.Y.3d 382 (2014). (Defs.' Mem. at 24; Defs.' Reply Mem. at 10.) *Borden* concerned a New York statute, C.P.L.R. Section 901(b), which prohibits class actions "to recover a penalty" imposed by statute. As interpreted by the New York Court of Appeals, Section 901(b) bars plaintiffs from bringing General Business Law claims as class actions in state court unless they waive their rights to recover statutory penalties, including treble damages pursuant to Section 349(h). *Borden*, 24 N.Y.3d at 394–95 (citing *Ridge Meadows Homeowners' Ass'n, Inc. v. Tara Dev. Co.*, 242 A.D.2d 947 (4th Dep't 1997); *Super Glue Corp. v. Avis Rent A Car Sys., Inc.*, 132 A.D.2d 604, 606 (2d Dep't 1987)).

Defendants' argument here runs headlong into the Supreme Court's holding in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), that C.P.L.R. Section 901(b) conflicts with Fed. R. Civ. P. 23 and hence does not apply to class actions in federal court. After *Shady Grove*, it is now well established that "statutory damages under section 349(h) are available on a class basis in federal court, even though they would be barred by section 901(b) if the same action were to proceed in state court." *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 502 (E.D.N.Y. 2017); *accord In re Scotts EZ Seed Litig.*, No. 12-CV-4727, 2017 WL 3396433, at *6 (S.D.N.Y. Aug. 8, 2017). No legal barrier prevents the New York class from seeking treble damages for its GBL claims in this federal class action.

## 3. The Court Will Not Revisit the Viability of the State Law Claims on the Merits.

Last, defendants take the present motion as an opportunity to relitigate the threshold viability of plaintiffs' state law claims in general, even on an individual basis. (Defs.' Mem. at 21 (unjust enrichment); *id.* at 23–24 (GBL).)

15

These contentions have nothing to do with class certification; they amount to a thinly veiled request that the Court reconsider its long-past refusal to dismiss plaintiffs' state law claims. The Court denied defendants' motion for partial summary judgment as to these claims in 2013, 2013 Summ. J. at *3, and reiterated its endorsement of plaintiffs' theories of liability in the 2014 certification order, 2014 Class Cert. at 144–47. The Court will not exhume these long-settled merits disputes.

III. CONCLUSION

For the foregoing reasons, it is HEREBY ORDERED THAT:

1. Defendants' Motion to Decertify the National and New York Classes (Doc. 386) is denied;

2. Pursuant to Fed. R. Civ. P. 23(c)(1(C), the certification of the National Class is amended to consist of all individuals who signed a membership contract with IJL in Arkansas, California, Delaware, Florida, Idaho, Iowa, Kansas, Massachusetts, Minnesota, Mississippi, Nebraska, Nevada, New Jersey, New York, Oregon, Texas, Vermont, or Wyoming, and purchased IJL's services on or after October 15, 2001, up through and including May 14, 2014;

3. As to the National Class, plaintiffs may present only their "full refund" damages model to the jury; i.e., they may argue that plaintiffs received nothing of value from IJL and are entitled to the return of their full membership fees;

4. Pursuant to Fed. R. Civ. P. 23(c)(1(C), the certification of the New York Class is amended to consist of all individuals who became IJL clients in New York and who, on or after October 15, 2001, up through and including May 14, 2014, paid more than $1,000 for a year's worth of IJL services; and

5. In keeping with Fed. R. Civ. P. 23(d)(1)(B), the parties shall submit to the Court, on or before August 17, 2018, a new proposed class notice to send to the members of the newly amended classes, along with an agreed-upon schedule for the delivery of these notices.

Dated: New York, New York
      August 6, 2018

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.