John G. Balestriere
Jon L. Norinsberg
Matthew W. Schmidt
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:     (212) 374-5421
Facsimile:     (212) 208-2613
john.balestriere@balestrierefariello.com
jon.norinsberg@balestrierefariello.com
matthew.schmidt@balestrierefariello.com
*Attorneys for Plaintiffs and the Classes*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CHRISTINE RODRIGUEZ, SANDRA BURGA, KAREN MALAK, JAMES TORTORA, LISA BRUNO, JANEEN CAMERON, KAREN McBRIDE, ANDREW WOOLF,** and **BRAD BERKOWITZ,** individually, and for all others similarly situated,<br><br>Plaintiffs,<br><br>–against–<br><br>**IT'S JUST LUNCH INTERNATIONAL, IT'S JUST LUNCH, INC., HARRY and SALLY, INC, RIVERSIDE COMPANY, LOREN SCHLACHET, IJL NEW YORK CITY FRANCHISE, IJL ORANGE COUNTY FRANCHISE, IJL CHICAGO FRANCHISE, IJL PALM BEACH FRANCHISE, IJL DENVER FRANCHISE, IJL AUSTIN FRANCHISE, IJL LOS ANGELES-CENTURY CITY FRANCHISE,** and **DOES 1-136,**<br><br>Defendants. | Case No.: 07-CV-9227 (SHS)(SN)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

I.    PROCEDURAL HISTORY ...................................................................................... 3

II.   SUMMARY OF SETTLEMENT TERMS ............................................................... 5

      A.    The Settlement Fund: Paying All Costs of the Settlement and Litigation, and
            Providing Direct Payments to the National Class and the New York Class ..... 6

      B.    Injunctive Relief: Ensuring IJL Publicly Meets its Commitments ...................... 7

      C.    Voucher Relief: Providing Dates Worth Tens of Millions of Dollars to Class
            Members and Transferees ........................................................................................ 8

      D.    Releases ....................................................................................................................... 8

      E.    Attorneys' Fees, Litigation Costs, and Service Awards ...................................... 9

      F.    Settlement Claims Administrator ........................................................................ 10

III.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL .............................. 11

      A.    The Settlement Is Fair, Reasonable, and Adequate, and the Best Recovery
            Possible Given IJL's Financial Condition ........................................................... 12

            1.    Litigation Through Trial Would Be Lengthy, Complex, and Costly
                  (First *Grinnell* Factor) ................................................................................... 13

            2.    The Reaction of the Classes Has Been Positive (Second *Grinnell* Factor) 14

            3.    After More Than Twelve Years of Investigation and Litigation,
                  Discovery is Complete, Allowing the Parties to Resolve the Case With
                  a Full Understanding of the Issues (Third *Grinnell* Factor) ..................... 15

            4.    Plaintiffs Face a Real Risk of No Recovery at All if the Action Proceeds
                  (Fourth and Fifth *Grinnell* Factors) ........................................................... 18

            5.    Maintaining the Classes Through Trial Would Be Risky (Sixth *Grinnell*
                  Factor) ................................................................................................................ 19

6.    The Settlement Secures a Recovery Many Times Greater Than What Could Be Obtained in the Bankruptcy or Other Enforcement Proceedings that Would Follow Trial (Seventh *Grinnell* Factor) ............. 20

7.    The Settlement Represents a Substantial Recovery in Light of the Best Possible Recovery and the Risks of Continued Litigation (Eighth and Ninth *Grinnell* Factors) .................................................................. 21

B.   The Notice Plan and Distribution Process Are Appropriate, Justifying Preliminary Approval ............................................................................... 22

CONCLUSION ............................................................................................................. 24

**TABLE OF AUTHORITIES**

**Cases**

*Aboud v. Charles Schwab & Co., Inc.*,
    14 CIV. 2712 PAC, 2014 WL 5794655 (S.D.N.Y. Nov. 4, 2014) ............................... 16

*Authors Guild v. Google, Inc.*,
    770 F. Supp. 2d 666 (S.D.N.Y. 2011) .......................................................... 20

*Capsolas v. Pasta Res. Inc.*,
    No. 10 Civ. 5595, 2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) .................................... 10

*Charron v. Pinnacle Group N.Y. LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012) .......................................................... 13

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ............................................................... passim

*Clark v. Ecolab, Inc.*,
    No. 07-CIV-8623 (PAC), 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ................... 11

*Gilliam v. Addics Rehab. Ctr. Fund*,
    No. 05 Civ. 3452(RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ........................ 10

*In re Bear Stearns Companies, Inc. Sec., Derivative, and ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012) .......................................................... 15

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
    No. 05 Civ 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .................... 13, 20

*In re Michael Milken and Assoc. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ............................................................... 23

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................. 14

*In re Paineweber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................... 18, 22

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06 CIV. 13761 (CM), 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ..................... 19

*In re Traffic Exec. Ass'n,*
    627 F.2d 631 (2d Cir. 1980) .......................................................................... 11

*In re Warfarin Sodium Antitrust Litig.,*
    391 F.3d 516 (3d Cir. 2004) .......................................................................... 15

*Lizondro-Garcia v. Kefi LLC,*
    300 F.R.D 169 (S.D.N.Y. 2014) ................................................................... 11

*Matheson v. T-Bone Rest, LLC,*
    No. 09 Civ 4214 (DAB), 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ............... 16, 17

*McMahon v. Olivier Cheng Catering and Events, LLC,*
    No. 08 Civ. 8713 (PGG), 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ...................... 18

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,*
    No. 06 Civ. 4270(PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ...................... 10

*Morris v. Affinity Health Plan, Inc.,,*
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................................................. 15

*Sewell v. Bovis Lend Lease, Inc.,*
    No. 09 Civ 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ................................ 10

*Shapiro v. JP Morgan Chase & Co.,*
    11 Civ. 8331(CM), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .............................. 22

*Strougo v. Bassini,*
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) ............................................................. 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d 96 (2d Cir. 2005) .......................................................................... 11

*Zeltser v. Merrill Lynch & Co.,*
    No. 13 Civ. 1531, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ................................ 9

**Statutes**

New York General Business Law § 349 ........................................................... 4, 16

New York General Business Law § 394-c ....................................................... 3, 17

**Other Authorities**

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ....... 11

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................ 23

## PRELIMINARY STATEMENT

After nearly twelve years of investigation and contentious litigation that included multiple dispositive motions, full discovery with depositions taken across the nation, class certification of a New York Class and a National Class (collectively, the "Classes"), and years of settlement negotiations, including mediation sessions conducted by the Honorable Sarah Netburn, Plaintiffs have reached a settlement (the "Settlement") with all Defendants (collectively, "IJL"). After multiple in-person discussions with the Court to address any issues the Court had with proposed settlement terms and notices, Plaintiffs now move for preliminary approval of the class action settlement, almost certainly representing the very best resolution for the Classes that could be obtained given not only the complexity of this action, but the financial state of IJL.

The proposed settlement agreement (the "Settlement Agreement"), the result of arms-length negotiations by counsel brokered by your Honor (the "Settlement Negotiations") and further revisions and clarifications pursuant to this Court's instructions and comments following the settlement conference held on February 22, 2019, and the teleconference held on May 29, 2019, provides significant benefits for the Classes as well as future customers of IJL. The proposed Settlement is well within the range of possible final approval and the Court should grant preliminary approval and allow notice to the Classes to proceed.

One overwhelming fact alone warrants approval of the Settlement: due to IJL's financial condition, the Settlement provides enormously more value to past and future IJL customers than any result the Classes could obtain at trial. Indeed, after trial, the

Classes very likely would not receive anything at all. The total value of the Settlement is in the tens of millions of dollars—a multiple of the sum Defendants have available for cash disbursement. Under the Settlement, the Classes definitely obtain compensation, future customers of IJL can continue to seek the services they want from IJL, IJL continues to employ its staff, and IJL provides a service the public wants but with additional protections in place for consumers.

The Settlement provides significant injunctive and monetary relief, including:

(1) The creation of a $4.75 million non-reversionary cash settlement fund (the "Monetary Fund") to pay for the costs of obtaining this Settlement as well as cash payment to the National Class Members and New York Class Members;

(2) A program through which IJL will distribute a choice of cash disbursement or valuable vouchers to National Class Members, with a total value of up to $65 million;

(3) Alterations to IJL customer contracts with specific guaranteed characteristics, and a new commitment to honor the clients' most important preferences; and

(4) Alterations to IJL's website and contracts to include a quality-of-services pledge with specific requirements, making the company vulnerable to investigation by states' attorneys general or subject to future private litigation if IJL does not abide by its commitments.

Given IJL's financial condition, the Settlement represents the best possible outcome for the Classes and is substantially better for class members than any outcome that could have been achieved at trial. If the action continued to trial, it would almost inevitably require additional complex litigation, including bankruptcy court and judgment enforcement proceedings. The cost of such proceedings would likely result in IJL going out of business, its employees losing their jobs, customers who want the service

IJL can provide being unable to obtain such service, and the Classes receiving no recovery at all.

Plaintiffs and Class Counsel respectfully request that the Court enter an order: (1) granting preliminary approval of the proposed Settlement; (2) approving the parties' proposed notice program and forms of notice; (3) directing that notice of the Settlement be given to the Classes; and (4) setting a date for a final approval hearing to determine whether the proposed Settlement is fair, reasonable, and adequate, and the appropriate amounts to award in attorneys' fees, reimbursement of expenses, and service awards. The Settlement provides relatively quick relief for thousands of IJL customers (and at least hundreds, if not thousands, of future customers) who have been waiting for a resolution for years. Respectfully, this Court should approve the Settlement.

## I.   PROCEDURAL HISTORY

After their counsel started an investigation in July 2007, Plaintiffs initiated this action on October 15, 2007. (Complaint, Dkt. No. 1.) Since that time Plaintiffs have filed three amended complaints (in August 2008 (Amended Complaint, Dkt. No. 30), April 2009 (Second Amended Complaint, Dkt. No. 49), and April 2013 (Third Amended Complaint, Dkt. No. 169)). Plaintiffs initiated this action to stop IJL's systematic misrepresentations about its services and excessive fees charged in violation of the common law and New York General Business Law § 394-c ("G.B.L. § 394"), which prohibits dating services from using contracts requiring payment of more than $1,000.00.

After discovery was complete, Plaintiffs' Motion for Class Certification was fully briefed on October 4, 2013 (Motion for Class Certification, Dkt. Nos. 184, 186, 191), and,

on May 14, 2014, this Court certified a national fraud class and a New York Class for G.B.L. § 349 and unjust enrichment. (Certification Order, Dkt. No. 199.) Along with years of discovery that took place across the nation, the parties also litigated two motions to dismiss (Motions to Dismiss, Dkt. Nos. 33, 59), a motion, cross-motion, and supplemental cross-motion for summary judgment (Motions for Summary Judgment, Dkt. Nos. 101, 107, 138), a motion to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure (Motion to Intervene, Dkt. No. 118), a motion for reconsideration (Motion for Reconsideration, Dkt. No. 171), a prior motion for preliminary approval (Motion for Preliminary Approval, Dkt. No. 257), a motion for final approval (Motion for Final Approval, Dkt. No. 318), a motion to join an additional Defendant (Motion to Join Defendant, Dkt. No. 348), and a motion to decertify the Classes (Motion to Decertify the Classes, Dkt. No. 386).

Class Counsel maintains monthly contact with what is now over 300 potential Class Members and receives nearly weekly inquiries from wronged IJL customers who believe they qualify as class members. (Declaration of John G. Balestriere ("Balestriere Decl.") ¶ 2.) As of May 2019, Class Counsel had exchanged over six thousand emails with potential class members in addition to well over five hundred phone calls with current and former IJL customers interested in the class action. (*Id.*)  Class Counsel maintains a record of all potential class members who have expressed an interest in being updated on the status of the class action as the litigation proceeds. (*Id.*)

Class Counsel has conducted an extensive investigation during this long-running litigation. In total, nineteen individuals were deposed, both in New York and out-of-state.

In the course of investigating Plaintiffs' claims, Class Counsel also conducted dozens of formal interviews with IJL customers and employees, and had in-person and phone interviews with many dozens more Class Members. Throughout this action, Class Counsel has communicated with no fewer than 330 potential class members with information relevant to Plaintiffs' claims. (Balestriere Decl. ¶ 4.) Class Counsel refers the Court to the many thousands of pages of documents produced in this litigation, where Class Counsel exchanged more than a thousand emails with class members, witnesses, adversary counsel, and others in prosecution of this action, attest to the complexity and contentiousness of this litigation, and the sheer effort and determination of Class Counsel over the better part of a decade.

## II.    SUMMARY OF SETTLEMENT TERMS

The terms of the Settlement listed above are summarized more thoroughly here and in detail below:

> (1) a $4.75 million fund will be created to cover all litigation costs and awards, all members of the National class who do not opt out and who elect to receive a monetary award will receive a minimum amount of $14.44 and a maximum award of an undetermined amount depending on the number of members who submit claim forms for a cash payment and all members of the New York Class who do not opt out will receive an award of $200 (Settlement Agreement and Release of Claims ("Settlement Agreement") attached to the Balestriere Decl., Exhibit 1[1] §§ 2.03 and 2.04(a); Short-Form Notice of Proposed Class Action Settlement ("Short-Form Notice"), Ex. 2 at 1–2; Long-Form Notice of Proposed Class Action Settlement ("Long-Form Notice"), Ex. 3 at 8, 11);

> (2) members of the National Class who do not opt out and who submit valid claims forms will have a choice between a monetary award from the fund

---

[1] All exhibits referenced herein are attached to the Balestriere Decl. unless otherwise noted. All exhibits are referred to herein as "Ex. X".

described above or vouchers entitling them to receive one free date arranged by IJL (Settlement Agreement, Ex. 1 § 2.04(b); Short-Form Notice, Ex. 2 at 1–2; Long-Form Notice, Ex. 3 at 8);

(3) IJL will add a customer pledge to its website and modify its contracts to include a commitment to honor the client's specified preferences for matches (Settlement Agreement, Ex. 1 § 2.05; Short-Form Notice, Ex. 2 at 1; Long-Form Notice, Ex. 3 at 8);

(4) members of the Classes who do not timely opt out release IJL and the Released Parties (Settlement Agreement, Ex. 1 § 1.16) from any claims related to or arising from contracts between members of the Classes and IJL or claims arising from the facts that form the basis of this action (Settlement Agreement, Ex. 1 § 5.02; Short-Form Notice, Ex. 2 at 1–2; Long-Form Notice, Ex. 3 at 9–10, 13);

(5) Class Counsel will apply for an award of attorneys' fees and expenses, and will move for a service fee of $12,000 for each Plaintiff (Settlement Agreement, Ex. 1 §§ 2.06(b), 4.03; Short-Form Notice, Ex. 2 at 2; Long-Form Notice, Ex. 3 at 12); and

(6) Class Counsel and IJL have agreed to engage the services of Heffler Claims Group (the "Claims Administrator") to handle the administration of benefits (Settlement Agreement, Ex. 1 § 2.01; Short-Form Notice, Ex. 2 at 2; Long-Form Notice, Ex. 3 at 11).

### A. The Settlement Fund: Paying All Costs of the Settlement and Litigation, and Providing Direct Payments to the National Class and the New York Class

The Settlement creates a $4.75 million Monetary Fund that covers awards to members of the National Class who elect to receive a cash award (rather than a voucher) and who do not opt out, awards to members of the New York Class who do not opt out, the cost of settlement administration, any Court-approved service payments, and any Court-approved attorneys' fees and expenses. (Settlement Agreement, Ex. 1 § 2.02.) All members of the National Class who do not opt out and elect to receive a cash award will receive a minimum award of $14.44 and a maximum award of an undetermined amount

based on the number of National Class members who submit claim forms, to be paid no later than 60 days following final approval of the Settlement Agreement ("Final Approval"). All members of the New York Class who do not opt out will receive an award of $200, to be paid no later than 60 days following Final Approval. (Settlement Agreement, Ex. 1 §§ 1.06-1.07.)

Following final distributions to members of the Classes and the Plaintiffs, final payment to the Claims Administrator, and payment to Class Counsel, the remainder shall be divided equally amongst the National Class. Any amount remaining in the Monetary Fund following all distributions, if any, will be distributed as a charitable donation to a 501(c)(3) certified charity as agreed upon by the Parties.

## B. Injunctive Relief: Ensuring IJL Publicly Meets its Commitments

IJL will modify its contracts to include a specific commitment not previously included in any contracts or promotional materials to honor client preferences related to age, religion, and parental status when providing matches to members. (Settlement Agreement, Ex. 1 § 2.05.) Inappropriate matching of these important characteristics was the most common complaint communicated to Class Counsel by IJL's customers, with many customers complaining that IJL arranged dates between individuals who had characteristics directly contrary to expressed preferences, in particular, age, and religion. (Third Amended Complaint, Dkt. No. 169 ¶ 15.) Under the terms of the Settlement, IJL will add a pledge to its website detailing its commitments concerning the nature of the services it will provide, pledging to honor your "preferences as to age, parental status, and religious status." (Settlement Agreement, Ex. 1 § 2.05(a).) This commitment will also

be set forth in all new client agreements. (Settlement Agreement, Ex. 1 § 2.05; Short-Form

Notice, Ex.2 at 1; Long-Form Notice, Ex. 3 at 8, 9.)

The value of the injunctive relief provided herein should not be underestimated.

While relief directly benefitting the Classes is Class Counsel's primary concern, there is a

concern amongst members of the Classes regarding prevention of future fraud by IJL.

The injunctive relief agreed to herein provides benefit to all members of the Classes as

well as future consumers of IJL, thus preventing further harm to the general public.

### C.  Voucher Relief: Providing Dates Worth Tens of Millions of Dollars to Class Members and Transferees

All members of the National Class who do not opt out and who submit valid

Claims Forms electing to receive a voucher will receive vouchers entitling them to receive

one free date arranged by IJL. Each voucher has an estimated value of $450, yielding a

benefit to the 130,275 class members of potentially $60 million. IJL will distribute to each

class member a list of all IJL locations that will honor the vouchers and their respective

address. The vouchers will be transferable on a one-time basis to non-class members who

sign a membership contract with IJL or who already have a membership contract. The

dates will be arranged in the ordinary manner of IJL's services subject to the

modifications set forth in the Settlement. While each of the settlement options has its own

benefits, this option truly allows members of the National Class to receive the benefit

which they originally subscribed for.

### D.  Releases

Members of the Classes who do not timely opt out release IJL and the Released

Parties, as defined in the Settlement, from initiating, asserting, or prosecuting any claims related to or arising from the same nucleus of operative facts that form the basis of this action. (Settlement Agreement, Ex. 1 § 5.02; Short-Form Notice, Ex. 2 at 1; Long-Form Notice, Ex. 3 at 9–10, 12.)

### E.  Attorneys' Fees, Litigation Costs, and Service Awards

Prior to initiating this suit in the fall of 2007 and thereafter, Class Counsel conducted a full investigation, completed discovery (which included nineteen depositions in New York and throughout the country, including California, Maryland, Georgia, and Illinois), litigated dispositive motions, obtained class certification, and fully understood the action's strengths and weaknesses, and the risks of proceeding to trial. After nearly 12 years of active litigation, a multitude of fully briefed motions, settlement negotiations which lasted over two years, thousands of pages of emails, and countless hours of telephone conversations, Class Counsel respectfully will apply for an award of attorneys' fees greatly lower than the actual fees and expenses incurred by Class Counsel through the time of such application. (Settlement Agreement, Ex. 1 § 2.06.) At the time of the filing of this motion the amount of attorneys' fees and expenses thus far expended would be $4,289,084.25 for 10,071 hours of service provided over eleven-and-a-half years, yet Class Counsel applies for $1,500,000 in attorneys' fees. Class Counsel's application relies on multiple decisions in class action suits in the Southern District that have found fees in excess of 33% "reasonable and consistent with the norms of class litigation in this circuit." *Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 WL 4816134, at *8 (S.D.N.Y. Sept. 23, 2014) (awarding 33.3% of $6.9 million maximum settlement) (internal quotations

omitted); *see also Gilliam v. Addics Rehab. Ctr. Fund*, No. 05 Civ. 3452(RLE), 2008 WL 782596, at * 5 (S.D.N.Y. Mar. 24, 2008) (holding that class counsel's request for one-third of the Fund is reasonable and "consistent with the norms of class litigation in this circuit"); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012) (awarding 33.3% of $2.35 million settlement); *Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 4760910, at *8 (S.D.N.Y. Oct. 5, 2012) (awarding 33.3% of $5.25 million settlement); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270(PAC), 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3.265 million settlement); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) ("a fee of 33 1/3% of the settlement fund is reasonable.")

Excluding the substantial value of the vouchers available to all members of the National Class, Class Counsel's award would be approximately 31.5% of the Settlement Fund, and approximately 33% of what Class Counsel expended in attorneys' fees and expenditures over the past twelve years. Class Counsel will also move for an award of $12,000 in service fees for each named Plaintiff, who have been available to Class Counsel and provided many more hours of their time over nearly twelve years of litigation than ordinary class representatives.

### F.  Settlement Claims Administrator

Class Counsel and IJL have agreed to engage the services of Heffler Claims Group to oversee, coordinate, and handle the administration of the benefits agreed upon by the parties during the Settlement. (Settlement Agreement, Ex. 1 § 2.01.) The fee for the Claims Administrator's services will be paid from the Monetary Fund. (Settlement Agreement,

Ex. 1 § 2.02.) Class Counsel first contacted the Claims Administrator in May 2014, immediately after Class Certification, and has been working with them for over five years to plan for the administration of the benefits provided for by the Settlement Agreement.

## III.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL

The Settlement should be preliminarily approved as it is in the best interests of the Classes and meets the requirements for preliminary approval. The courts encourage class action settlements and public policy favors compromise. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks omitted); *id* at 117 ("The compromise of complex litigation is encouraged by the courts and favored by public policy") (quoting 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41, at 87 (4th ed. 2002)).

Preliminary approval requires only an "'initial evaluation' of the fairness of the proposed settlement." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D 169, 179 (S.D.N.Y. 2014). A Court should preliminarily approve a settlement if it finds "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *Lizondro-Garcia*, 300 F.R.D. at 179–80 (S.D.N.Y. 2014) (quoting *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980)). The Court should order notice of the settlement if, after a preliminary evaluation of the proposed settlement, the court determines that it "appears to fall within the range of possible approval." *Clark v. Ecolab, Inc.*, No. 07-CIV-8623 (PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (quoting *Newberg* § 11.25).

Preliminary approval is appropriate here. The Settlement provides for fair,

reasonable, and adequate relief under the circumstances, and Settlement Negotiations took place with a full understanding of the issues following full discovery. The risks of proceeding, including the difficulty of maintaining the Classes through trial, also weigh very heavily in favor of settlement. The Settlement secured for the Classes conveys benefits many times greater than what could be obtained at trial, if class members would even receive any benefits after trial. Moreover, the Settlement guarantees benefits from both IJL and a third-party with interest in IJL avoiding bankruptcy. Following the notice period, the Court will be able to evaluate the Settlement for Final Approval with the benefit of class members' input. The Court should grant Plaintiffs' motion for preliminary approval.

## A. The Settlement Is Fair, Reasonable, and Adequate, and the Best Recovery Possible Given IJL's Financial Condition

The proposed Settlement meets the requirements for approval, as it is fair, reasonable, and adequate under the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors are:

(1) The complexity, expense and likely duration of the litigation;
(2) The reaction of the class to the settlement;
(3) The stage of the proceedings and the amount of discovery completed;
(4) The risks of establishing liability;
(5) The risks of establishing damages;
(6) The risks of maintaining the class action through the trial;
(7) The ability of the defendants to withstand a greater judgment;
(8) The range of reasonableness of the settlement fund in light of the best possible recovery; and
(9) The range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 196 (S.D.N.Y. 2012). *Grinnell* lays out the standard for class action settlements in this Circuit. *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ 10240(CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) (noting, in reference to *Grinnell's* nine-factor test, that, "[t]he standards governing approval of class action settlements are well-established in this Circuit"). Although the *Grinnell* factors do not control in the context of preliminary approval, which is subject to a much less stringent test, an analysis of the Settlement under the *Grinnell* factors weighs in favor of preliminary and, ultimately, final approval.

### 1. Litigation Through Trial Would Be Lengthy, Complex, and Costly (First *Grinnell* Factor)

By reaching a settlement prior to trial, the Class avoids significant expense, delay, and, in this action more than most class matters, ensures recovery for the Classes that would not be possible after trial. Based on evidence and IJL's representations and disclosures concerning IJL's financial situation throughout Settlement Negotiations, it is plain that trial would likely result in no recovery whatsoever for the Classes, and almost certainly would not result in a better result for the Classes than the proposed Settlement. Even under the best circumstances, proceeding to trial would almost certainly entail additional complex litigation (including in the bankruptcy court) and judgment enforcement proceedings, incurring further expense and creating additional delay in an action where investigation began over twelve years ago. Indeed, after trial and bankruptcy court proceedings, IJL would very likely go out of business, its employees would lose their jobs, the public would lose the possibility of receiving a service which

the Classes' respective sizes show consumers want, and class members would get nothing of value whatsoever after over a decade of litigation.

The Settlement Agreement obviates the need for lengthy and complex trial and post-judgment proceedings. As noted by this Court, "class actions 'have a well-deserved reputation as being most complex.'" *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998). With over twelve years of litigation history, a New York Class and a National Class, multiple claims, and more than 100,000 class members, this case is exceptionally complex even within the realm of class actions. It would require a fact-intensive trial to determine fraud and any judgment obtained—if any—would likely require additional proceedings to enforce. No doubt, IJL would likely appeal a judgment, and any recovery ultimately obtained would likely be many years away and provide far less compensation for the Classes than what is provided for in the Settlement.

The Settlement provides the Classes with the best possible relief in a prompt and efficient manner. Costly and complex litigation is certain to arise if this action proceeds to trial where the Classes might end up with nothing. The Settlement provides fair and expedient closure. The first *Grinnell* factor weighs in favor of approval.

### 2.    The Reaction of the Classes Has Been Positive (Second *Grinnell* Factor)

While the Court should more fully analyze the second *Grinnell* factor following notice of the Settlement to the Classes, at this early stage in the process the response of the very involved lead Plaintiffs has been favorable and weighs in favor of approval. A favorable reaction to a proposed settlement is a crucial factor in considering approval. *In*

*re Bear Stearns Companies, Inc. Sec., Derivative, and ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012) ("'It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy'"). All named Plaintiffs—Brad Berkowitz, Lisa Bruno, Janeen Cameron, Karen Malak-Rocush, and James Tortora—have voiced their emphatic support of the Settlement and were involved in negotiation of the Settlement (Affidavit of Brad Berkowitz, Ex. 4.) The second *Grinnell* factor weighs in favor of preliminary approval.

### 3. After More Than Twelve Years of Investigation and Litigation, Discovery is Complete, Allowing the Parties to Resolve the Case With a Full Understanding of the Issues (Third *Grinnell* Factor)

The third *Grinnell* factor weighs in favor of approval, as the Settlement was negotiated with a full understanding of the facts and issues of this action. When evaluating the third *Grinnel* factor, the "pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)). Between 2010 and 2013, the parties fully litigated two motions to dismiss and a motion and cross-motions for summary judgment. IJL first moved to dismiss Plaintiffs' first amended complaint in September, 2008. (Motion to Dismiss, Dkt. No. 33.) Four months later, Magistrate Judge Kevin Fox submitted a Report and Recommendation advising that District Judge Sidney Stein grant IJL's motion with respect to all claims except for Plaintiffs' claim for unjust enrichment. (Report and Recommendation, Dkt. No. 43.) Judge Stein adopted the Magistrate Judge Fox's Report and Recommendation on March 12, 2009, and allowed Plaintiffs to file a second amended

complaint (Order, Dkt. No. 48), which they did on April 1, 2009 (Second Amended Complaint, Dkt. No. 49). IJL moved to dismiss the Second Amended Complaint on June 2, 2009 (IJL's Second Motion to Dismiss, Dkt. No. 59). On February 23, 2010, Magistrate Judge Fox issued a Report and Recommendation (Report and Recommendation, Dkt. No. 87), advising that IJL's Second Motion to Dismiss be granted as to all claims except for Plaintiffs' G.B.L. § 349 and unjust enrichment claims. Not following the Magistrate's recommendation, on March 30, 2010, Judge Stein held that Plaintiffs sufficiently pleaded claims for a violation of G.B.L. § 349 and unjust enrichment, as well as a claim for fraudulent inducement. (Order, Dkt. No. 90.) Class Counsel filed successful objections to Magistrate Judge Fox's rulings on the motion to dismiss and the motion to intervene as part of Class Counsel's successful efforts in  moving Plaintiffs' complaint through the pleadings stage, getting past two motions to dismiss, as well as a motion, cross-motion, and supplemental cross-motion for summary judgment—litigated over the course of nearly three years from May 2010 through April 2013—to preserve the New York Class claims and the fraud claim that allows IJL customers nationwide to obtain relief.

In addition to many months of litigating multiple motions, the Parties completed 19 depositions and are in possession of voluminous documents produced during discovery. Indeed, the Parties have engaged in significantly more discovery than many cases that have achieved final approval. *See, e.g., Aboud v. Charles Schwab & Co., Inc.*, 14 CIV. 2712(PAC), 2014 WL 5794655, at *1 (S.D.N.Y. Nov. 4, 2014) (final approval granted following an exchange of "informal discovery"); *Matheson v. T-Bone Rest, LLC,* No. 09 Civ. 4214 (DAB), 2011 WL 6268216, at *1 (S.D.N.Y. Dec. 13, 2011) (granting final approval

where parties engaged in informal discovery only and no depositions were taken). Class Counsel fully understands the strengths and weaknesses of the class action, as well as the probability and scope of a potential recovery at trial, and negotiated the Settlement accordingly.

In considering the benefits of settling, Class Counsel has considered potential claims by various cross-sections of the National Class including, but not limited to, claims analogous to the New York Class's claims but for residents of other states. Research and the realities of the time constraints of this litigation have Class Counsel to the belief that creation of additional Classes would not be beneficial at this juncture. Furthermore, the vast majority of other states' applicable laws analogous to G.B.L. § 394 have not been violated by Defendants' actions.

The New York Class stands to recover for both the violation of G.B.L. § 394 and IJL's alleged fraud against the National Class because there are additional and distinct violations alleged by the New York Class that are not applicable to the remainder of the National Class. Specifically, under New York law, it was a violation for IJL to charge over $1,000.00 for one year of dating services.  IJL deliberately attempted to circumvent this law by having New York clients execute two contracts simultaneously, each contract for less than $1,000.00 but the aggregate total exceeding the prohibited $1,000.00 amount. Thus, New York Class members have a separate and distinct damages claim based on Defendants' violation of G.B.L. § 394 , apart from the common law fraud claims which apply to all class members. Furthermore, the New York Class's claim is relatively straightforward to prove with no complicated issues regarding causation and damages.

17

As the New York Class has an additional, distinct cause of action which is not available to the National Class, a separate recovery is required for equity. The third *Grinnell* factor weighs in favor of preliminary approval.

### 4. Plaintiffs Face a Real Risk of No Recovery at All if the Action Proceeds (Fourth and Fifth *Grinnell* Factors)

Although Plaintiffs believe their case is strong, it is subject to considerable risk, and the Settlement Agreement should be approved as it mitigates this risk. As noted by this Court, "[l]itigation inherently involves risks," (*In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd sub nom. In re PaineWebber Inc. Ltd. P'ships Litig.*, 117 F.3d 721 (2d Cir. 1997)), so "[o]ne purpose of a settlement is to avoid the uncertainty of a trial on the merits." *McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ. 8713 (PGG), 2010 WL 2399328, at *5 (S.D.N.Y. Mar. 3, 2010). At trial, Plaintiffs would have to demonstrate reliance through generalized proof in order to prevail on their fraud claim. Though Plaintiffs believe they could ultimately prevail based on IJL's uniform misrepresentations, proving reliance is an inherently risky endeavor. *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. at 128 ("the Class would face substantial risks of establishing liability should this litigation go to trial, and accordingly the fourth element of the *Grinnell* test supports approval of the proposed Settlement"). A settlement eliminates this high legal risk.

Settlement also addresses the risk of not adequately proving damages or recovering any damages. Establishing damages would require showing that all services provided were valueless or require an inquiry into the limited value of any service

provided. If damages were successfully established during trial, there would be even further expenses and delay in recovering those damages, as it would require pursuing IJL further into bankruptcy and force Class Counsel to enter enforcement proceedings to make any recovery. The resolution of liability issues, trial, the determination of damages, the inevitable appeals process, and, in this matter, judgment enforcement and bankruptcy proceedings, are inherently uncertain in terms of duration and outcome. The Settlement avoids these uncertainties while providing real value to the Classes. The fourth and fifth *Grinnell* factors weigh in favor of preliminary approval.

### 5.  Maintaining the Classes Through Trial Would Be Risky (Sixth *Grinnell* Factor)

The Settlement should receive preliminary, and final, approval, as the Plaintiffs risk decertification of the class action if they go to trial. *In re Top Tankers, Inc. Sec. Litig.*, No. 06 CIV. 13761(CM), 2008 WL 2944620, at *8 (S.D.N.Y. July 31, 2008) ("courts may exercise their discretion to re-evaluate the appropriateness of class certification at any time"). The Court granted certification to this action on May 14, 2014, and the Second Circuit denied IJL's petition to appeal on July 10, 2014, noting that "an immediate appeal is unwarranted." (Appellate Order, dated Jul. 10, 2014, Dkt. No. 214.) However, at trial, Plaintiffs' fraud claim could present a challenge to maintaining the Classes, as demonstrating fraud on a class-wide basis is an inherently risky endeavor and would require a demonstration of reliance. Given the uniform misrepresentations that underlie Plaintiffs' allegations, Class Counsel believes that ultimately the Classes would be maintained, but recognizes that such an outcome is far from certain. Class Counsel's

belief is bolstered by the resolution of Defendants' Motion to Decertify the Classes (Motion to Decertify the Classes, Dkt. No. 386). Nevertheless, even affording a presumption of truth to Class Counsel's belief in the maintainability of the Classes, this factor should not be an obstacle to preliminary approval as "[t]he weight given to any particular factor varies based on the facts and circumstances of the case." *Authors Guild v. Google, Inc.*, 770 F. Supp. 2d 666, 674 (S.D.N.Y. 2011). The risks of maintaining certification through trial weighs in favor of preliminary approval.

> **6.    The Settlement Secures a Recovery Many Times Greater Than What Could Be Obtained in the Bankruptcy or Other Enforcement Proceedings that Would Follow Trial (Seventh *Grinnell* Factor)**

The Settlement Agreement secures the best possible recovery for the Classes and includes a guaranteed monetary recovery from a third-party when trial would likely result in pushing IJL further into bankruptcy. Based on the evidence and IJL's representations, a judgment at trial would undoubtedly require Class Counsel to commence enforcement proceedings, including in bankruptcy court. Such a risk—the one involved with trying a complex nation-wide fraud trial, and the subsequent enforcement of potential judgment through the inevitable bankruptcy court proceedings in which the Class Members would have to fight for priority for whichever minimal assets would be available—strongly favors resolution through settlement. *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *8 ("[t]he risk that a successful prosecution will result in the bankruptcy of the defendant strongly weighs in favor of approval of a settlement").

Based on the evidence provided by IJL and its counsel's in-Court representations,

the Settlement represents a significantly greater recovery than Plaintiffs could obtain after a trial because after trial and bankruptcy proceedings class members would likely get no recovery whatsoever. If any judgment was successfully obtained at trial, it would not alter the business practices that gave rise to this action or provide the approximately $60 million worth of voucher relief that the Settlement offers to members of the Class. Any judgment obtained at trial would simply create further delay in an already years-long litigation and incur further legal expenses without any certainty of ultimate recovery. In contrast, the Settlement provides relatively quick relief to class members, addresses the core concerns that prompted Plaintiffs to file this action by changing the way IJL conducts its business, guarantees cash payment to the New York Class, and provides the option for cash payment or valuable vouchers to the National Class. The seventh *Grinnell* factor weighs heavily in favor of preliminary approval. The Court should grant preliminary approval as the Settlement represents a significant recovery compared to IJL resources and secures greater relief for class members than what could be obtained at trial.

### 7. The Settlement Represents a Substantial Recovery in Light of the Best Possible Recovery and the Risks of Continued Litigation (Eighth and Ninth *Grinnell* Factors)

The Settlement Agreement is reasonable given the value it creates when considering the risks of continued litigation and the best possible recovery. In order to resolve this action, IJL has agreed to significant changes to their business practices, has agreed to pay a substantial amount of money, totaling $4.75 million, and has agreed to offer approximately $60 million worth of vouchers. The reasonableness of a settlement generally "is not susceptible of a mathematical equation yielding a particularized sum,

21

but turns on whether the settlement falls within a 'range of reasonableness.'" *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D at 130. Though a greater judgment could theoretically be obtained at trial, "there is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2.

Given IJL's financial situation, the Settlement Agreement provides for the greatest realistically obtainable benefit. *Shapiro v. JP Morgan Chase & Co.*, No. 11 Civ. 8331(CM), 2014 WL 1224666, at *12 (S.D.N.Y. Mar. 24, 2014) ("the reasonableness of the Settlement must be judged 'not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of *plaintiffs' case*'") (emphasis in original). Continued litigation would undoubtedly be risky, and the possibility of successfully recovering a judgment against IJL greater than what the Settlement provides is remote. The eighth and ninth *Grinnell* factors favor preliminary approval of the Settlement. The Court should enter an order of preliminary approval of the Settlement.

### B. The Notice Plan and Distribution Process Are Appropriate, Justifying Preliminary Approval

Class Counsel has created an appropriate notice and distribution of benefits plan, justifying preliminary approval. The proposed notices (Short-Form Notice, Ex. 2; Long-Form Notice, Ex. 3) comply with Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and provide sufficient notice of the issues and class members' rights under the Settlement. Rule 23 requires that the notice to the classes must include:

(i) The nature of the action;
(ii) The definition of the class certified;

(iii) The class claims, issues, or defenses;
(iv) That a class member may enter an appearance through an attorney if the member so desires;
(v) That the court will exclude from the class any member who requests exclusion;
(vi) The time and manner for requesting exclusion; and
(vii) The binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The proposed notice satisfies each of these requirements. The notice also describes the terms of the Settlement, the allegations giving rise to the class action, how the Settlement may affect class members' rights, and informs the classes about the specific date, time, and place of the final approval hearing. Notices have been approved when they provided only general information about a settlement. *In re Michael Milken and Assoc. Sec. Litig.,* 150 F.R.D. 57, 60 (S.D.N.Y. 1993) ("[n]ormally, settlement notices need only describe the terms of the settlement generally"). Here, the proposed notice provides detailed information that goes beyond the requirements set by Rule 23.

The Claims Administrator will handle the transmission of notices to class members within 30 days of preliminary approval. (Settlement Agreement, Ex. 1 § 3.02.) Short-Form Notice directs Class Members to a website containing a more detailed notice, which will also be emailed to those Class Members with ascertainable email addresses. Email delivery tracking will be used to determine whether Class Members opened the emails containing the notice, as well as instances of delivery failure. Information obtained from delivery tracking will guide the mailing campaign so that Class Members who did not receive notice of the Settlement by email will receive notice by mail. (Settlement Agreement, Ex. 1 § 3.03.) Those Class Members without ascertainable email addresses will receive mailed copies of the Short-Form Notice, using the United States Postal

Service's National Change of Address Database to verify the contact information of such class members. (Settlement Agreement, Ex. 1 § 3.04.) This Court has previously reviewed and approved this notice distribution procedure in anticipation of providing notice of certification.

Distribution of the benefits of Settlement will take place within 60 days of final approval. The Claims Administrator will deliver payments to members of the New York Class and make claims forms for either cash distribution or vouchers available to members of the National Class via the settlement website, www.ijlclassaction.com. The notice and distribution plan meets the requirements for preliminary approval.

## CONCLUSION

The Court should grant preliminary approval of the Settlement. The Settlement is the result of arm's-length negotiations between experienced counsel with full knowledge of the pertinent facts and issues. The Settlement not only provides significant benefits to the Classes and provides them relief without the delay and risk of trial, but it is near certainly the absolute best result the Classes could obtain from this action. Following trial and bankruptcy proceedings, Class Members would most likely receive nothing, and IJL would be out of business, its staff unemployed and the public not able to receive a service which clearly is in demand. Furthermore, Class Counsel has established an appropriate plan to give notice to the Classes and distribute benefits. Under a *Grinnell* analysis, the Settlement is reasonable and it should be preliminarily approved.

Dated: June 27, 2019                        Respectfully submitted,
      New York, New York

John G. Balestriere
Jon L. Norinsberg
Matthew W. Schmidt
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:    (212) 374-5421
Facsimile:     (212) 208-2613
john.balestriere@balestrierefariello.com
jon.norinsberg@balestrierefariello.com
matthew.schmidt@balestrierefariello.com
*Attorneys for Plaintiffs and the Classes*