John G. Balestriere
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:   (212) 374-5401
Facsimile:    (212) 208-2613
john.balestriere@balestrierefariello.com
*Attorneys for Plaintiffs and the Classes*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CHRISTINE RODRIGUEZ, SANDRA BURGA, KAREN MALAK, JAMES TORTORA, LISA BRUNO, JANEEN CAMERON, KAREN McBRIDE, ANDREW WOOLF,** and **BRAD BERKOWITZ,** individually, and for all others similarly situated,<br><br>              Plaintiffs,<br><br>       –against–<br><br>**IT'S JUST LUNCH INTERNATIONAL, IT'S JUST LUNCH, INC., HARRY and SALLY, INC, RIVERSIDE COMPANY, LOREN SCHLACHET, IJL NEW YORK CITY FRANCHISE, IJL ORANGE COUNTY FRANCHISE, IJL CHICAGO FRANCHISE, IJL PALM BEACH FRANCHISE, IJL DENVER FRANCHISE, IJL AUSTIN FRANCHISE, IJL LOS ANGELES-CENTURY CITY FRANCHISE,** and **DOES 1-136**,<br><br>              Defendants. | Case No.: 07-CV-9227 (SHS)(SN)<br><br>**DECLARATION OF JOHN G. BALESTRIERE IN SUPPORT OF PLAINTIFFS' MOTION FOR FEES** |

I, John G. Balestriere, under penalty of perjury, declare the following:

1. I am a member of the bar of this Court and am one of the attorneys of record for the Classes. I make this Declaration based on my personal knowledge and review of my files. I have been assigned to this matter since Balestriere Fariello (the "Firm" or "Class Counsel") first began investigation into IJL in July 2007.[1]

2. I submit this Declaration in support of Plaintiffs' Motion for Fees.

### *Class Counsel's Investigation Background and Practices*

3. Class Counsel has years of extensive investigation and trial experience, including in each of the areas of law relevant to this case.

4. Class Counsel is not an established class action firm, but, instead, was barely more than two years old when this dispute began, with only three staff members at the time.

5. While Class Counsel continues to handle class actions, the Firm's focus is on business disputes (representing both defendants and plaintiffs in federal and state courts in New York and throughout the United States, as well as in domestic and international arbitrations), as well as false claims matters and investigations.

### *Class Representatives and Their Efforts*

6. All five Class Representatives have been involved in this action since, at latest, November 2009.

---

[1] All terms are as defined in Plaintiffs' Motion for Preliminary Approval dated June 27, 2019, unless otherwise defined.

7. Since each Class Representative engaged the Firm, staff at the Firm have had at least monthly communication with each Class Representative, as well as in-office meetings, many conference calls during and since settlement, and numerous individual calls over the last ten years.

8. Class Counsel sent at least 1,000 emails to the Class Representatives throughout the litigation and had numerous phone calls and meetings with the Class Representatives.

*The Value of the Settlement*

9. The vouchers have significant value. If, for example, only 10,000 current clients of IJL use the voucher (just over 6% of the National Class), then, the value of the vouchers in total will be $4,500,000. Combined with the $4,750,000 Monetary Fund, Class Counsel's fee would be well under 20% of the monetary value of the settlement—in fact under 17%—in addition to far reaching injunctive relief (the precise benefit of which, like all injunctive relief in class actions, is difficult to value in dollars, but which will prevent the fraud at issue here from going forward).

10. The terms in the Settlement Agreement are more favorable to the Classes than if Class Counsel had pursued only monetary awards. The $4.75 million to be paid by IJL would not have been available after a trial given IJL's financial situation. Even if it were, and the $4.75 million was split up among the 161,937 members of the National Class—and subtracting the anticipated costs of $250,000 for settlement administration and the $428,000 which the New York Class shall receive—Class Members would only receive about $25.14 each.

11. Even taking out the administration and New York Class payments results in $29.33 per class member, less than 2% of the $1,500 cost of membership many Class members paid.

12. Given the poor financial condition of the Company—as disclosed confidentially during settlement discussions and mediation, and supported by documents which my colleagues and I reviewed during settlement discussions—if the Classes had proceeded to trial, what limited funds the Company had likely would have been devoted to defense of the action.

13. I have every reason to believe that if the matter continued to trial Class members would receive no value at all and IJL would have ceased providing services.

### *Efforts of Class Counsel*

14. On March 28, 2016, Class Counsel submitted its First Motion for Attorneys' Fees after receiving Preliminary Approval of its Settlement Agreement on January 25, 2016. (Dkt. Nos. 257, 258, 282, 283.)

15. On March 28, 2016, I submitted a Declaration in support of the First Motion for Fees which documented Class Counsel's efforts through the date of filing. I re-affirm all representations made therein. In the interests of brevity, I respectfully direct the Court to my declaration dated March 28, 2016 for the full discussion of Class Counsel's colossal efforts through that date. (Dkt. No. 283.)

### *Efforts of Class Counsel Following First Motion for Fees*

16. After Class Counsel's first motion for ees was filed on March 28, 2016, Class Counsel sought final approval of its settlement. (Dkt. No. 319.) Class Counsel's

motion for final approval and motion for fees were denied on March 10, 2017. (Dkt. No. 342.) Thereafter, Class Counsel returned to its diligent litigation strategy and prepared for trial. Class Counsel moved for joinder of The Riverside Company, IJL's parent company and now funder of the Settlement, as a defendant. (Dkt. No. 348.) Class Counsel filed a motion and reply brief and attended oral argument of the motion. (Dkt. Nos. 348, 359, 362.) After Class Counsel's motion for joinder was denied, Class Counsel began its pre-trial preparations and submissions including letters documenting the Class's damages, and a motion in limine. (Dkt. Nos. 361, 366, 383, 379.)

17. Thereafter, IJL moved to decertify both the National Class and the New York Class. (Dkt. No. 386.) Class Counsel successfully opposed IJL's motion after oral argument and maintained both classes. (Dkt. Nos. 395, 402, 405.) Had Class Counsel failed to oppose IJL's motion, the entire case would have failed, nearly nine years after its commencement.

18. Thereafter, Class Counsel once again ramped up its preparations for trial. A pre-trial conference was held with Class Counsel in attendance, and a pre-trial schedule set. (Dkt. Nos. 415, 419.) Class Counsel also attended and meaningfully negotiated the present settlement at a settlement conference held before the Honorable Sarah Netburn. (Dkt. Nos. 422, 426.) Based on the efforts of Class Counsel and the guidance of Judge Netburn, the settlement conference resulted in the Settlement now before the court. After months of negotiation, Class Counsel filed its Second Motion for Preliminary Approval of Settlement. (Dkt. No. 442.) Class Counsel has now coordinated

with the claims administrator and provided notice to the Classes of the proposed settlement.

19.     Over the course of representation, Class Counsel has devoted over 10,100 hours of service generating over $4,200,000 in fees for the zealous prosecution of this case. Over the course of over twelve years, Class Counsel has written 50 Letters to the Court, litigated 45 Motions, attended more than 20 Court conferences, and successfully negotiated two proposed settlements. The present Settlement represents the optimal result that could be achieved for the Classes, and based on its representation of the Classes, over the course of over twelve years, Class Counsel has earned its Fee.

### *Class Counsel's Correspondence with the Claims Administrator*

20.     Class Counsel first corresponded with the Heffler Claims Group ("Heffler"), a class action administration company with over 50 years of experience, on May 18, 2014, anticipating the necessity of administration services.

21.     Since that time, Class Counsel has exchanged more than 900 emails with Heffler, held numerous phone conferences, and had two in-person meetings to develop a plan for the notice of certification, settlement, and the distribution of benefits to the Class.

22.     The anticipated cost of Heffler's services for settlement administration is $250,000, which will be paid from the Monetary Fund.

23.     The costs of administering the Settlement will be paid to Heffler from the Monetary Fund, and the final cost will be determined when all benefits have been distributed.

24. Since the Court preliminarily approved settlement on September 11, 2019, Class Counsel and Heffler had nearly daily communication regarding all details of the settlement and notice.

*Class Counsel's Efforts and Calculated Hours*

25. Since 2007, Class Counsel has:

- Reviewed and analyzed thousands of pages of documents produced by IJL;
- Taken and defended 19 depositions;
- Conducted more than 30 formal interviews of Class Members and IJL employees;
- Spoken with more than 330 Class Members;
- Maintained a growing database of over 330 IJL customers potentially affected by this litigation (who still seek counsel and direction from Class Counsel virtually every single week);
- Conducted an in-depth investigation of the corporate structure of IJL, including promulgating discovery demands on IJL's majority investors;
- Litigated 45 motions;
- Written 50 letters to the Court;
- Attended more than 20 Court conferences;
- Negotiated an initial settlement that ultimately was denied by the Court at the final Fairness Hearing;
- Litigated the action to the verge of trial; and
- Negotiated a second successful settlement.

26. Class Counsel lawyers and staff have devoted more than 10,100 hours on this matter over a period of 127 months from 2007 through November 2019, generating roughly $4,200,000 in fees for its representation of the Classes.

27. The hours spent by Class Counsel on this matter were calculated from daily time records consistently maintained by Class Counsel lawyers and staff throughout the entirety of this litigation.

28. It is the Firm's policy for hours to be entered daily, and no later than the next business day after hours are devoted to a matter. Moreover, the vast majority of

the Firm's clients in its dozens of matters are businesses or individuals who are billed by the Firm by the hour and who receive invoices on a monthly basis. Maintenance of accurate hours on a daily basis is an important aspect of the Firm's management.

29. All time spent on this litigation—by a relatively small law firm, which has many paying clients to devote time to—was necessary and was not duplicative.

30. The lodestar was calculated by multiplying Class Counsel's hours by their current hourly rates, except mine, as my rate was calculated at my one-time rate of $690 per hour. I now have a standard rate of $1,300 per hour which I bill to commercial clients. However, in the interest of conservatism, in this fee application the Firm decided to use $690 per hour, as this rate was confirmed by the Southern District of New York in a 2010 business dispute. *Sanchez v. MTV Networks*, 2012 WL 2094047, at *3 (S.D.N.Y. June 11, 2012) *aff'd,* 525 F. App'x 4 (2d Cir. 2013) (Judge Thomas Griesa acknowledged that John "Balestriere is an experienced litigator who would generally command a high billing rate").

31. Using this rate throughout the years instead of steadily increasing rates means that Class Counsel is asking for more than $150,000 less than it would have had my rate continued to increase as it has for other matters handled by the Firm.

### *Class Counsel's Communication with Class Members*

32. Class Counsel is in regular communication with over 330 current and former IJL customers. This contact is at least monthly, but often much more frequent than that.

33. These customers contacted Class Counsel after learning about the class action through the press, from friends and family, or from other sources.

34. Class Counsel conducts a basic intake when contacted by such customers, gathering contact information, evidence about their experiences with IJL, and answering any questions concerning the status of the class action or its claims.

35. At their request, Class Counsel then adds these individuals to an electronic mailing list, which is used to provide at least monthly updates to potential class members.

36. From the initial investigation of this action through the date of the filing of this Motion, Class Counsel has exchanged approximately 6,000 emails and hundreds of phone calls with Class Members.

37. Throughout Class Counsel's communication with Class Members, Class Members have repeatedly told Class Counsel the feature they most want from IJL is a match of a specific age range, a specific religious status, and parental status.

38. Class Counsel has continued to communicate extensively with Class Members following preliminary approval.

39. Since the Notices of Settlement were sent to Class Members on October 11, 2019, Class Counsel attorneys and staff have spent hours each week corresponding with Class Members via email and telephone calls.

*Class Counsel's Rates and Hours Billed*

40. Although a total of 83 staff members contributed to our efforts over more than twelve years, a relatively small number of staff members constituted the vast

majority of time and fees in this matter. We always had the option of putting staffers on our paying clients' matters but chose to assign staffers to assist their colleagues as needed when the case demanded it, in particular when making a filing or when preparing for or conducting a deposition. The table attached as Exhibit E shows the 24 attorneys or staff members who devoted over 50 hours on this case over the past twelve years. The time of these staff members—approximately a third of all of those who worked on the matter—constitute about 94% of the time spent and billed on this case. Further, the 15 attorneys or staff members who worked over 100 hours on this matter over the past twelve years constitute nearly 87% of the time spent.

### *Class Counsel's Expenses*

41. Over the course of this action, Class Counsel incurred $27,483.82 in taxable expenses and $31,343.83 in other reasonable expenses, totaling $58,827.65 in out-of-pocket expenses.

### *Exhibits*

42. Attached hereto as Exhibit A is a true and correct copy of the Settlement Agreement and Release of Claims, and its attached exhibits. (Dkt. No. 445-1.)

43. Attached hereto as Exhibit B is a true and correct copy of pages from the Lewis Brisbois website (lewisbrisbois.com) as accessed November 11, 2019.

44. Attached hereto as Exhibit C is a true and correct copy of the affidavit of Marc Natale, dated November 11, 2019.

45. Attached hereto as Exhibit D is a true and correct copy of an itemized billing sheet for Class Counsel through November 8, 2019.

46. Attached hereto as Exhibit E is a true and correct copy of the rates of the attorneys and staff who worked more than 50 hours on this matter through November 8, 2019.

47. Attached hereto as Exhibit F is a true and correct copy of an itemized taxable expense sheet for Class Counsel through November 8, 2019.

48. Attached hereto as Exhibit G is a true and correct copy of an itemized expense sheet of other reasonable and necessary expenditures made by Class Counsel, broken down into appropriate categories, during the prosecution of this action through November 8, 2019.

Dated: New York, New York
      November 12, 2019

Respectfully submitted,

_____
John G. Balestriere
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:   (212) 374-5401
Facsimile:   (212) 208-2613
john.balestriere@balestrierefariello.com
*Attorneys for Plaintiffs and the Classes*