# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

CHRISTINE RODRIQUEZ, et al.,

                        **Plaintiffs,**

           -against-

IT'S JUST LUNCH INTERNATIONAL, et al.,

                        **Defendants.**

---------------------------------------------------------------X

**07-CV-09227 (SN)**

**OPINION AND ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _ 3/2/2020

**SARAH NETBURN, United States Magistrate Judge:**

Plaintiffs in this class action suit bring claims against It's Just Lunch International ("IJL"), It's Just Lunch, Inc.; Harry and Sally, Inc.; It's Just Lunch New York City Franchise; It's Just Lunch Orange County Franchise; It's Just Lunch Chicago Franchise; It's Just Lunch Palm Beach Franchise; It's Just Lunch Denver Franchise; It's Just Lunch Austin Franchise; It's Just Lunch Los Angeles-Century City Franchise; and Does 1-136 (together, "Defendants"). The claims include common law fraudulent inducement and misrepresentation, common law unjust enrichment, and deceptive acts or practices under New York State law, N.Y. Gen. Bus. Law § 349 ("G.B.L. § 349"). This litigation began in October 2007. The Court certified a national fraud class (the "National Class") and a class for the G.B.L. § 349 and unjust enrichment claims (the "New York Class," and together with the National Class, the "Classes") in May 2014. After nearly 12 years of litigation that included the resolution of multiple dispositive motions, full discovery, class certification motions, and months of settlement negotiations, including multiple settlement conferences conducted by the Court, all parties reached an agreement and on June 27, 2019, submitted a proposed settlement agreement (the "Settlement"). The Court preliminarily

approved the Settlement and held a fairness hearing on December 10, 2019. The Court now

grants final approval of the Settlement, including service awards to the remaining named class

plaintiffs: James Tortora, Janeen Cameron, Lisa Bruno, Brad Berkowitz, and Karen Malak-

Rocush. Also before the Court is Plaintiffs' motion for class counsel's attorneys' fees. For the

reasons that follow, the Court GRANTS Plaintiffs' motion for attorneys' fees.

## BACKGROUND[1]

I. **Litigation History**

Plaintiffs in this class action are former or current customers of Defendants' allegedly

fraudulent matchmaking services. This litigation began in October 2007. The Hon. Sidney A.

Stein granted in part and denied in part defendants' motion to dismiss the first amended

complaint (see ECF No. 48) and Defendants' motion to dismiss the second amended complaint

(see ECF No. 49). Judge Stein also denied Plaintiffs' motion for partial summary judgment, and

granted in part and denied in part Defendants' cross-motion for summary judgment. Plaintiffs

filed a third amended complaint, alleging: (1) deceptive business practices in violation G.B.L.

§ 349, (2) common law fraud, and (3) common law unjust enrichment. See ECF No. 169.

In May 2014, the Court certified two classes pursuant to Fed. R. Civ. P. 23(b)(3): a

National Class consisting of "all individuals who signed a membership contract with IJL and

purchased IJL's services on or after October 15, 2001," and a New York Class consisting of "all

individuals who became IJL clients in New York and who, on or after October 15, 2001, paid

---

[1] This case has been pending for over 12 years. The facts underlying this litigation and a description of Plaintiffs' claims are set forth in detail in Rodriguez v. It's Just Lunch Int'l, 07-cv-9227 (SHS) (KNF), 2012 WL 1224129, at *1 (S.D.N.Y. Apr. 6, 2012), report and rec. adopted in part, rejected in part, 2013 WL 1749590 (S.D.N.Y. Apr. 23, 2013), familiarity with which is assumed. The Court draws relevant background and procedural facts from the Court's previous Orders and Opinions, Plaintiffs' memorandum of law in support of preliminary approval of the settlement agreement (ECF No. 443) and supporting declarations (ECF No. 444), as well as Plaintiffs' memorandum of law in support of their motion for attorneys' fees (ECF No. 450) and supporting declarations (ECF Nos. 451, 474).

more than $1,000 for a year's worth of IJL services." <u>Rodriguez v. It's Just Lunch, Int'l</u>, 300 F.R.D. 125, 143, 149 (S.D.N.Y. 2014). Though Plaintiffs originally sought relief for all potential class members on a variety of claims, the Court granted certification of the National Class on the fraud claim only, and the New York Class on the common law unjust enrichment and statutory deceptive business practices (G.B.L. § 349) claims only. The Court of Appeals later denied Defendants' motion for leave to appeal that decision and Judge Stein subsequently denied Defendants' motion for class decertification.

Counsel for the National Class and the New York Class ("Class Counsel") and Defendants agreed to settle this case after participating in a settlement conference held before the Court in September 2015. The Court later granted preliminary approval of a revised settlement agreement on January 25, 2016, but ultimately declined to grant final approval of the settlement due to a lack of substantive fairness. The parties continued to litigate the matter and appeared for a second settlement conference on February 11, 2019, at which time the parties reached a revised settlement agreement. The Court granted preliminary approval of the Settlement on September 11, 2019, and held a fairness hearing on December 10, 2019.

II.     **Terms of the Final Settlement**

The Settlement is the result of arms-length negotiations by experienced counsel, achieved as the result of multiple settlement conferences held before the Court. The Settlement also incorporates revisions and clarifications pursuant to the Court's instructions and comments following the February 2019 Settlement Conference and a teleconference held on May 29, 2019.

The Settlement provides the Classes injunctive and monetary relief. First, the Settlement creates a program through which IJL will distribute either a cash disbursement or a voucher for IJL services to National Class members, and a cash disbursement to New York Class members.

The Settlement creates a $4.75 million monetary fund that covers: (1) awards to members of the National Class who elect to receive a cash award (rather than a voucher) and who do not opt out; (2) cash awards to members of the New York Class who do not opt out; (3) the cost of settlement administration; (4) any Court-approved service payments; and (5) any Court-approved attorneys' fees and expenses. All members of the National Class who did not opt out and elected to receive a cash award will receive a minimum award of $14.44 and a maximum award of an amount based on the number of National Class members who ultimately submitted claim forms, to be paid no later than 60 days following final approval of the Settlement. All members of the National Class who did not opt out and who submitted valid claim forms selecting to receive a voucher for services will receive a voucher entitling them to one free date arranged by IJL. The vouchers are transferable on a one-time basis to non-class members who sign a membership contract with IJL or who already have a membership contract. The dates will be arranged in the ordinary manner of IJL's services subject to the modifications set forth in the Settlement.

All members of the New York Class who did not opt out will receive an award of $200, to be paid no later than 60 days following approval of the Settlement. Following final distributions to members of the Classes and the Plaintiffs, final payment to the claims administrator, and payment to Class Counsel, any remaining money in the common fund is to be divided equally amongst the National Class. Individuals who are members of both Classes will receive $200 plus the amount ultimately allocated to individual National Class members. Any amount remaining in the common fund following all distributions is to be dispersed as a charitable donation to a 501(c)(3) certified charity as agreed upon by the parties.

The Settlement also requires IJL to alter its customer contracts to include specific characteristics, including a new commitment to honor client preferences related to age, religion,

and parental status when providing matches to members. Additionally, the Settlement requires

IJL to alter its website and contracts to include an explicit quality-of-services pledge.

Members of the Classes who did not timely opt out will release IJL and the "Released

Parties" (as defined in the Settlement) from initiating, asserting, or prosecuting any claims

related to or arising from the same nucleus of operative facts that form the basis of this action.

## DISCUSSION

### I.     Approval of the Final Settlement

The settlement of claims brought by a certified class is subject to court approval after

reasonable notice and a hearing. See Fed. R. Civ P. 23(e). A court will approve a settlement if it

is "fair, adequate, and reasonable, and not a product of collusion." Wal-Mart Stores, Inc. v. Visa

U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005) ("Wal-Mart") (internal quotation marks omitted).

This determination falls within the Court's sound discretion. See Joel A. v. Giuliani, 218 F.3d

132, 139 (2d Cir. 2000). In exercising such discretion, a court should be mindful of the "strong

judicial policy in favor of settlements, particularly in the class action context." Wal-Mart, 396

F.3d at 116 (internal quotation marks omitted). Moreover, "[c]lass action suits readily lend

themselves to compromise because of the difficulties of proof, the uncertainties of the outcome,

and the typical length of the litigation." In re Luxottica Group S.p.A. Sec. Litig., 233 F.R.D. 306,

310 (E.D.N.Y. 2006); see also Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982) ("There

are weighty justifications, such as the reduction of litigation and related expenses, for the general

policy favoring the settlement of litigation."). A "presumption of fairness, adequacy, and

reasonableness may attach to a class settlement reached in arm's-length negotiations between

experienced, capable counsel after meaningful discovery." Wal-Mart, 396 F.3d at 116 (internal

quotation marks omitted).

**A. The Settlement is Procedurally Fair**

A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations. See In re Veeco Instrum. Sec. Litig., 05-mdl-01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("A proposed class action settlement enjoys a strong presumption that it is fair, reasonable and adequate if . . . it was the product of arm's-length negotiations conducted by capable counsel, well-experienced in class action litigation . . ..") (internal citations omitted); Wal-Mart, 396 F.3d at 116. Where "[c]ounsel for plaintiff[s] is able and experienced, particularly in the specific area with which these actions are concerned," counsel's "judgment is entitled to great weight." In re Michael Milken & Assocs. Sec. Litig., 150 F.R.D. 57, 68 (S.D.N.Y. 1993) (citation omitted).

This presumption of fairness and adequacy applies here because the Settlement was reached by highly experienced, fully informed counsel after extensive arm's-length negotiations, including negotiations undertaken with the Court's assistance. After more than a decade of litigation, the parties participated in a settlement conference with the Court on February 11, 2019. Following that conference, the parties continued to work together with supervision from the Court, including a telephone conference held on May 29, 2019, to reach an ultimate agreement. The parties submitted a proposed settlement agreement for approval on June 27, 2019. Accordingly, the Settlement is procedurally fair, and this strongly supports approval.

**B. The Settlement is Substantively Fair**

Courts in this Circuit determine whether a proposed settlement is fair under Rule 23(e) by considering various factors, including: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing

damages; (6) the risks of maintaining the class action through trial; (7) the ability of the

defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund

in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund

to a possible recovery in light of all the attendant risks of litigation. See City of Detroit v.

Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) ("Grinnell") (internal citations omitted),

abrogated on other grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000).

### 1. Complexity, Expense and Likely Duration of the Litigation

With over 12 years of litigation history involving numerous claims and two classes

comprising more than 175,000 members, this is a complex case. Although significant amounts of

time, energy, and financial resources have already gone into resolving this case, continued

litigation would include a fact-intensive trial to determine Plaintiffs' unjust enrichment and fraud

claims. Judgment obtained—if any—could require additional proceedings to enforce, given the

parties' representations about Defendant IJL's financial health. There is also a possibility that

one or more Defendants would appeal any judgment obtained such that any ultimate recovery

could be years away. Accordingly, the first element of the Grinnell test supports approval of the

Settlement.

### 2. The Classes' Reaction to the Settlement

The second factor the Court considers is the reaction of the Classes to the Settlement.

Favorable reception by the Classes weighs strongly in favor of finding a Settlement fair and

supports judicial approval. See In re Bear Stearns Companies, Inc. Sec., Derivative, and ERISA

Litig., 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012) ("It is well settled that the reaction of the class

to the settlement is perhaps the most significant factor to be weighed in considering its

adequacy." (internal quotation marks and citation omitted)); Grinnell, 495 F.2d at 462. In

evaluating the second <u>Grinnell</u> factor, courts consider both the number of class members who opt out of the settlement as well as the number of objectors relative to the overall class and the bases of those objections. <u>See</u> <u>In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.</u>, 246 F.R.D. 156, 168 (S.D.N.Y. 2007); <u>Chatelain v. Prudential-Bache Sec., Inc.</u>, 805 F. Supp. 209, 213 (S.D.N.Y. 1992).

Following the Court's preliminary approval, the parties provided members of the Classes with adequate notice of the proposed settlement and instructions to members of the Classes on how to object to the proposed settlement or opt out. The claims administrator contacted approximately 140,000 members of the Classes by mail, email or both. 11,181 Class members filed claims, 60 members timely opted out of the class action, and 21 people objected.[2] <u>See</u> ECF No. 474-4, at 6, 20-22. National Class member Michael James Barton was represented by counsel and, through counsel, objected and appeared at the Fairness Hearing.

First, the extremely low number of objectors as a percentage of the Classes strongly supports approval of the Settlement. Of the estimated 140,000 members contacted by the claims administrator, the 21 objectors represent a fraction of 1% of the Classes. Regardless of the substance of the objections, courts in this Circuit have found that such a small proportion of dissenting class members weighs in favor of approving a settlement. For example, the Court of Appeals in <u>D'Amato v. Deutsche Bank</u>, 236 F.3d 78, 86–87 (2d Cir. 2001), notes several cases in which less than one percent of large classes had objected to proposed settlements and the settlements were properly approved. Similarly, the Court of Appeals has upheld the approval of settlements involving a significantly higher proportion of objections. <u>See</u> <u>Grant v. Bethlehem</u>

---

[2] The Court received 18 written objections, timely filed by November 25, 2019. The Court received 3 untimely written objections, which were initially sent directly to Class Counsel and later provided to the Court. See ECF Nos. 474-1, 474-2, 474-3.

Steel Corporation, 823 F.2d 20, 24 (2d Cir. 1987) (approving a settlement despite "opposition" from 36% of the class because there is "no reason why a settlement cannot be considered fair despite opposition . . . [of] significantly less than half of the class"). As such, other courts in this Circuit have approved settlements to which larger percentages of class members have objected than in the present case. See United States v. City of New York, 07-cv-2067 (NGG)(RLM), 2015 WL 1063403, at *14 (E.D.N.Y. Mar. 11, 2015) (weighing reaction of class in favor of final approval where "only 6.7% of eligible claimants (98 out of 1,470) . . . objected"); Collins v. Olin Corporation, 03-cv-945 (CFD), 2010 WL 1677764, at *4 (D. Conn. Apr. 21, 2010) (approving settlement where more than eleven percent of the class members objected); In re Lloyd's America Trade Fund Litigation, 96-cv-1262 (RWS), 2002 WL 31663577, at *23 (S.D.N.Y. Nov. 26, 2002) (approving settlement; 18% of class members submitting objections was a "relatively low number" of objections), aff'd sub nom. Adams v. Rose, 03-7011, 2003 WL 21982207 (2d Cir. 2003). Accordingly, the Court may approve the proposed settlement as procedurally and substantively fair despite the number of objections raised.

Objectors raised five principal objections to the terms of the Settlement. The first objection, expressed by 12 of the 21 objectors, is that the compensation available to each individual is too low to be fair. Specifically, nine objectors stated that the award per National Class member is inadequate; one objector states that the award per New York Class member is inadequate; and two objectors state that the overall Settlement amount is inadequate to compensate members of both Classes. Nearly every objector raising these concerns recounted a negative personal experience engaging Defendants' services. The complaints ranged from statements of dissatisfaction with customer experiences to characterizations of the business as a fraudulent "scam." To the extent objections were raised to the amount of the settlement because

they did not account for fraud or bad faith dealing, the Court overrules those objections as speculative and conclusory. See Vaccaro v. New Source Energy Partners L.P., 15-cv-8954 (KMW), 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) (citing In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 246 F.R.D. at 168).

As an alternative to the common fund amount provided for by the Settlement, some objectors argue that a fair Settlement should at least account for the full amount of fees paid by customers who received partial services or no services. Liability or damages at trial is far from certain, however. See Grinnell, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."). $4.75 million is an adequate settlement, particularly when considering the costs and risks Plaintiffs face in litigating this case. Objections to the amount of compensation assume that Plaintiffs' alleged losses and damages have already been proven. Moreover, any member of either class who believed he or she had a strong case and is likely to recover greater damages by pursing a suit individually had the right to opt out.

Relatedly, six objectors took issue with the availability of a voucher for IJL's dating services as an option for compensation to class members. These objectors cite dissatisfaction with the company's services and the company's past conduct to opine that the vouchers have little or no value. These objectors presumably believe that the proposed settlement should be approved only if the sole recompense available to members of the Classes is a cash award; however, the fact that individual class members may *choose* whether to receive cash *or* a voucher persuades the Court that the use of vouchers as one form of compensation does not require disapproval of the Settlement. Indeed, 88 class members elected to accept vouchers, suggesting that for some members, additional services are valuable. See also States of New York

& Maryland v. Nintendo of America, Inc., 775 F. Supp. 676, 682 (S.D.N.Y. 1991) (approving settlement where sole compensation was coupon for defendants' product in settlement and noting that other courts have approved compensation in the sole form of coupons).

The second concern, raised by four objectors, relates to the different treatment of New York Class members and National Class members. Under the Settlement, members of the New York Class are guaranteed $200.00, whereas the National Class members are each guaranteed only a minimum compensation of $14.44. While members of the New York class are guaranteed a higher minimum payment than National Class members under the Settlement, this objection does not weigh in favor of disapproval of the Settlement for two reasons. First, the New York Class payment is higher because New York law provides different rights to the New York Class members than to National Class members. The New York Class recovery reasonably reflects the relative strength of their strict liability claims. Relatedly, I do not find that there is any conflict in Class Counsel representing both Classes notwithstanding this disparity. Second, the claims administrator has calculated that, due to 11,093 National Class members filing claims selecting cash payments, cash payments to all National Class cash recipients will total approximately $262.23. See ECF No. 474-4, at 8. This recovery significantly mitigates any concern that the National Class members are treated unfairly.

The third concern, raised by two objectors, is that the amount of the proposed service awards for each of the named Plaintiffs is too high relative to the compensation available to other members of the Classes. The service award amount here—$12,000—is reasonable in light of the burdens imposed by participating as a named party in litigation that has continued more than 12 years for all but one of the named Plaintiffs. See Wright v. Stern, 553 F. Supp. 2d 337, 345

(S.D.N.Y. 2008) (approving service awards of $50,000 to 11 lead plaintiffs for participation in ten-year litigation).

The fourth concern, raised by a single objector, is that the notice provided to the class was inadequate because it failed to identify (1) the *cy pres* recipient of any remainder funds or (2) a process to object to future applications by Class Counsel for fees. Under Rule 23, the notice is only required to clearly and concisely state in plain, easily understood language (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Additionally, the structure of this Settlement makes it unlikely that funds will remain for redistribution to a *cy pres* recipient. The omitted information about a theoretical *cy pres* recipient was not material and therefore was not required in the notice. See In re American International Group, Incorporated Securities Litigation, 293 F.R.D. 459, 463 (S.D.N.Y. 2013) (noting that in this Circuit, "no [c]ourt . . . has ever made identifying the organization to receive the residual funds a condition precedent to a [s]ettlement approval.").

The final concern, raised by two objectors, relates to the amount of attorneys' fees relative to the overall Settlement amount. I address the reasonableness of Class Counsel's motion for attorneys' fees separately. But for purposes of settlement approval, I find that an award of less than one-third of the settlement fund to be fair relative to the interests of the Class members

Having reviewed each objection and any supporting documentation carefully, I find that the Classes' reactions overall are either neutral or weigh in favor of approval. While the objections received strongly express negative reactions to the terms of the Settlement, there is

not substantial opposition to the Settlement from the estimated 140,000 Class members who were contacted and did not object or opt out. Additionally, the substance of the objections—primarily, issues with the amount of the award or bad customer experiences with IJL—does not necessitate disapproval.

### 3. Stage of the Proceedings

"The stage of the proceedings and the amount of discovery completed at the time a settlement is reached is relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness." In re PaineWebber Ltd. Partnerships Litig., 171 F.R.D. at 126 (citing In re Michael Milken, 150 F.R.D. 46 at 55–56). Extensive discovery took place before the close of the discovery deadline and the commencement of settlement negotiations. The parties represent that they completed 19 depositions and "are in possession of voluminous documents produced during discovery." ECF No. 443, at 16. Moreover, between 2010 and 2013, the parties fully litigated two motions to dismiss and cross-motions for summary judgment. Therefore, counsel "has had sufficient information to act intelligently on behalf of the class[es]," Schwartz v. Novo Industri A/S, 119 F.R.D. 359, 362 (S.D.N.Y. 1988), and accordingly this third element of the Grinnell test weighs in favor of approval of the Settlement.

### 4. Risks of Establishing Liability

At trial, Plaintiffs would have to establish each element of their fraud claims, including "the hotly contested elements of falsity, materiality, scienter and reliance." In re PaineWebber Ltd. Partnerships Litig., 171 F.R.D. at 127 (internal quotation marks omitted). In any event, there can be no guarantee as to what a jury would conclude. Plaintiffs would face a substantial risk of

failing to establish liability should this litigation go to trial, and accordingly the fourth element of the Grinnell test supports approval of the Settlement.

### 5.   Risks of Establishing Damages

Even if Plaintiffs were to prevail on liability, they would still face substantial risks in proving damages at trial. For example, establishing damages would require Plaintiffs to show the actual value of Defendants' services—a difficult, though not impossible, undertaking. The Settlement also addresses the risk Plaintiffs may not recover damages should a favorable judgment require enforcement proceedings against the Defendants, at least some of whom are bankrupt or in financial peril. Additionally, damages are a matter for the jury, whose determinations can never be predicted with certainty. For all of these reasons, proving damages would be a lengthy, time-consuming and ultimately uncertain process, and accordingly this element of the Grinnell test weighs in favor of approval of the Settlement.

### 6.   Risks of Maintaining the Class Action Through Trial

In general, a court may exercise its discretion and re-evaluate class certification at any time. See In re Top Tankers, Inc. Sec. Litig., 06-cv-13761 (CM), 2008 WL 2944620, at *8 (S.D.N.Y. July 31, 2008) ("[C]ourts may exercise their discretion to re-evaluate the appropriateness of class certification at any time."). In this case, the Court granted certification of the two Classes on May 14, 2014, and the Court of Appeals denied Defendants' petition to appeal on July 10, 2014. Plaintiffs also defeated a motion for decertification in August 2018. As such, future decertification is highly unlikely. This factor does not weigh in favor of or against approval.

### 7. Defendants' Ability to Withstand a Greater Judgment

In assessing a proposed settlement, the court may also consider the defendants' ability to withstand a judgment greater than that secured by settlement. See Grinnell, 495 F.2d at 463. Although "the ability of defendants to pay more, on its own, does not render the settlement unfair," McBean v. City of New York, 233 F.R.D. 377, 388 (S.D.N.Y. 2006), "evidence that the defendant will not be able to pay a larger award at trial tends to weigh in favor of approval of a settlement," In re PaineWebber Ltd. Partnerships Litig., 171 F.R.D. at 129. Based on the parties' representations, a judgment at trial would likely require Plaintiffs to commence enforcement proceedings, including in bankruptcy court, due to Defendants' precarious financial position. Such a risk favors resolution through settlement. See In re EVCI Career Colleges Holding Corp. Sec. Litig., 05-cv-10240 (CM), 2007 WL 2230177, at *8 ("The risk that a successful prosecution will result in the bankruptcy of the defendant strongly weighs in favor of approval of a settlement." (citing Grinnell, 356 F. Supp. at 1389)). This factor also weighs in favor of approving the Settlement.

### 8. Whether the Settlement Amount is in the Range of Reasonableness in Light of the Best Possible Recovery and all Attendant Risks of Litigation

The last two inquiries under Grinnell are whether the settlement is reasonable in view of (1) the best possible recovery and (2) the risks of litigating the case on the merits. The adequacy of the amount offered in a settlement must be judged not "in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." In re IMAX Sec. Litig., 283 F.R.D. 178, 191 (S.D.N.Y. 2012). Indeed, the Court need only determine whether the Settlement falls within a "range of reasonableness," In re PaineWebber Ltd. Partnerships Litig., 171 F.R.D. at 130 (citation omitted), which reflects "the uncertainties of law and fact in any particular case and the concomitant risks and costs

necessarily inherent in taking any litigation to completion . . .." <u>Wal-Mart</u>, 396 F.3d at 119 (internal quotation marks omitted). In light of the uncertainties and weaknesses in the Plaintiffs' case, namely establishing all elements of the fraud claim for the National Class and proving damages at trial, the common fund amount here—$4.75 million—is within the range of reasonableness and weighs in favor of approving the Settlement. In light of the foregoing, the Court finds that the Settlement is substantively fair under an evaluation of the <u>Grinnell</u> factors. Because the Settlement is also procedurally fair, the Court GRANTS final approval.

## II.     Class Counsel's Fees and Costs, and Named Plaintiffs' Service Awards

Plaintiffs move for an award of attorneys' fees and costs of $1.5 million. <u>See</u> ECF No. 449. Class Counsel argues that this amount is reasonable either under the lodestar method or based on the percentage of the fee method. Plaintiffs also move for a $12,000 service award for each of the lead Plaintiffs.

### A.  Class Counsel's Fees and Costs

### 1.  Method of Calculation

"Attorneys who create a common fund from which members of a class are compensated are entitled to 'a reasonable fee—set by the court—to be taken from the fund.'" <u>In re Bristol-Myers Squibb Sec. Litig.</u>, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) (quoting <u>Goldberger v. Integrated Resources, Inc.</u>, 209 F.3d 43, 47 (2d Cir. 2000)). Such a fee award directly depletes the amount by which the class benefits. Accordingly, the Court has a duty to award fees with moderation and a regard for the rights of those with an interest in the fund who are not before the Court. <u>See, e.g.</u>, <u>Burger v. CPC Intern., Inc.</u>, 76 F.R.D. 183, 188 (S.D.N.Y. 1977).

The Court of Appeals has sanctioned two methods—the lodestar method and percentage method—for calculating reasonable attorneys' fees in class actions. <u>Goldberger</u>, 209

F.3d at 50. The lodestar method entails "scrutiniz[ing] the fee petition to ascertain the number of hours reasonably billed to the class and then multipl[ying] that figure by an appropriate hourly rate." Id. at 47 (citing Savoie v. Merchants Bank, 166 F.3d 456, 460 (2d Cir. 1999)). The resulting lodestar may then be increased (or decreased) by applying a multiplier based on certain factors related to the litigation. Id. The second method is the far simpler "percentage method," by which the fee award is "some percentage of the fund created for the benefit of the class." Savoie, 166 F.3d at 460 (citing Blum v. Stenson, 465 U.S. 886, 900 n.16 (1984)). In determining what percentage of the fee to award, courts consider the same factors used to gauge the appropriate multiplier for the lodestar. Goldberger, 209 F.3d at 47. The resultant percentage is lowered frequently where the common fund is large in order to avoid a perceived windfall for plaintiffs' counsel. In re Bristol-Myers Squibb Sec. Litig., 361 F. Supp. 2d at 233. Here, Class Counsel argues that $1.5 million is reasonable whether considering their lodestar or a percentage of the fund, and considering the $4.75 million settlement fund and the substantial value of the injunctive relief.

The Court has discretion to award fees based on either the lodestar method or the percentage method. McDaniel v. County of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010). Courts in this Circuit routinely use the percentage method to compensate attorneys in common fund cases such as this. See Sukhnandan v. Royal Health Care of Long Island LLC, 12-cv-4216 (RLE), 2014 WL 3778173, at *9 (S.D.N.Y. July 31, 2014) (citing McDaniel, 595 F.3d at 417); Wal-Mart, 396 F.3d at 121. When utilizing the percentage method, courts often "cross-check" the adequacy of the resulting fee by applying the lodestar method. See Goldberger, 209 F.3d at 50. Under use of either method, the touchstone of the inquiry is whether the award is reasonable. See id. A court determines reasonability by evaluating: (1) counsel's time and labor;

(2) the litigation's complexities and magnitude; (3) the litigation risks; (4) quality of representation; (5) the relationship of the requested fee to the settlement; and (6) considerations of public policy. Id.

## 2. Reasonability Under the **Goldberger** Factors

### a. Counsel's Time and Labor

Class Counsel spent significant time and effort to achieve this Settlement. Over the course of its 12-year representation of Plaintiffs, Class Counsel worked more than 10,100 hours. See ECF No. 451 ("Balestriere Decl."), ¶ 19. Class Counsel estimates it has taken or defended 19 depositions, written 50 letters to the Court, litigated 45 motions, attended more than 20 court conferences, and successfully negotiated two proposed settlements. Id., ¶¶ 19, 25. Class Counsel has also worked diligently with the claims administrator to develop and implement a plan for the notice of certification and settlement as well as the distribution of benefits to the members of each class. Id., ¶¶ 20-21. Based on this work, Class Counsel estimates that its lodestar amount is approximately $4.2 million.

### b. Complexity and Magnitude of the Litigation

"The size and difficulty of the issues in a case are significant factors to be considered in making a fee award." Sukhnandan, 2014 WL 3778173, at *10. The magnitude and complexities of this case support awarding Class Counsel's fee. Here, for example, Class Counsel litigated class certification, and successfully defended the Classes against a motion for decertification. Class Counsel successfully moved for Plaintiff Brad Berkowitz to intervene, in order to preserve the New York Class, once plaintiff Christina Rodriguez was dismissed from the case. Class Counsel also conducted a thorough investigation into Defendants' business practices, engaged in extensive motion practice, and communicated with hundreds of class members and numerous

defendants in multiple states, among other efforts. The complexity and magnitude of the case weighs in favor of approving an award of $1.5 million.

### c. The Litigation Risks

In outlining the risks of litigation in support of their fee request, Class Counsel generally repeats the arguments used to support the Settlement. As discussed above, this litigation entailed many litigation risks from Plaintiffs' perspective. Class Counsel points to the ongoing risk of class decertification, the difficulty in proving the common law fraud claims at trial, the risk of recovering an adequate amount of damages at trial, and the extensive litigation without guarantee of any payment to Class Counsel as each demonstrating the degree of litigation risk Class Counsel bore in this case. Class Counsel has provided some arguments that are applicable to most class actions (*e.g.*, the risk of judgment-proof defendants, the risk of decertification). But the uncertainty of proving liability on the fraud and unjust enrichment claims created a relative contingency risk unique to this case. These risks and the 12 years spent litigating the claims, justify the award sought.

### d. Quality of Representation

"To determine the quality of the representation, courts review, among other things, the recovery obtained and the background of the lawyers involved in the lawsuit." Taft v. Ackermans, 02-cv-7951 (PKL), 2007 WL 414493, *1 (S.D.N.Y. Jan. 31, 2007) (internal quotation marks omitted). Class Counsel, led by John Balestriere and Jon Norinsberg, are highly skilled and have extensive experience representing clients in complex litigation, including in each area of law relevant to this case. See Balestriere Decl., ¶ 3; see also Sanchez v. MTV Networks, 10-cv-7854 (TPG), 2012 WL 2094047, at *3 (S.D.N.Y. June 11, 2012) ("Balestriere is an experienced litigator who would generally command a high billing rate."), aff'd, 525 F.

App'x 4 (2d Cir. 2013); <u>Stinson v. City of New York</u>, 282 F.R.D. 360, 371 (S.D.N.Y. 2012) ("[Norinsberg is] competent and experienced in federal class action and federal civil rights litigation. [He] is a civil rights attorney with nearly twenty years of civil litigation experience, including civil rights litigation . . .."). Opposing counsel is also highly qualified, well-resourced, and reputable, as demonstrated by their diligent and sustained litigation of this case for the past 12 years. The final settlement outcome, resulting in hundreds of dollars in cash payments to the more than 11,000 members who filed claims, also indicates the quality of representation of Class Counsel.

### e. Requested Fee in Relationship to the Settlement

Under the Settlement, members of the National Class have the choice between obtaining either a cash award, drawn from a common fund of $4.75 million, or a transferrable voucher that may be redeemed for IJL services. As part of the Settlement, ILJ must also make several material changes to its business practices, including changes to its advertising and written materials. Class Counsel estimates the total value of the monetary and injunctive benefits obtained by the Settlement at $77 million. Based on this calculation, Class Counsel argues it seeks less than 2% of the Settlement's total value.

Any value to the Settlement purportedly added by policies changes and the option for National Class members to accept vouchers must be carefully analyzed. <u>See, e.g.</u>, Fed. R. Civ. Pro. 23(h) 2003 advisory committee's note ("Settlements involving non-monetary provisions for class members . . . deserve careful scrutiny to ensure that these provisions have actual value to the class."). Throughout the course of this litigation, there have been significant indications that a voucher award would result in a low redemption rate by members of the National Class. This case's core claims suggest that former IJL customers no longer desire IJL's services (for

instance, due to members' prior bad experiences with the company or present disinterest in dating). To that end, Judge Stein previously denied final settlement of an award where the benefit to National Class members would have consisted exclusively of vouchers and injunctive relief without the option of a cash award. Furthermore, the value of the vouchers to the National Class must account for the actual redemption rate, which is much lower than even Class Counsel's hypothetical estimates made in its arguments in support of fees: only 88 National Class members (of a total 11,181 who filed claims) selected vouchers. See ECF No. 474-4, at 8. While Class Counsel claims that vouchers are worth $450 each, there is no support in the record for that amount. But even accepting that estimate, the value of the claimed vouchers would only be $39,600. Accordingly, for the purpose of determining reasonable fees, I value the Settlement at $4.75, the amount of the common fund from which cash awards are allocated.

Courts in this Circuit routinely grant fee applications based on the percentage method when the fee award is one-third of a common fund. See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (collecting cases). Assuming a valuation for the Settlement of $4.75 million, a fee of 31.5% of the fund is reasonable. While the percentage of the fee must be evaluated for reasonability in light of the circumstances of a particular case (i.e., a court should not find a percentage reasonable merely because it represents close to one-third of the common fund), I find there are additional factors supporting approval in this instance. For example, the length and complexity of this case, indicated in part by the low lodestar multiplier (detailed below), supports an award of 31.5% as reasonable.

### f. Considerations of Public Policy

Public policy considerations also weigh in favor of approval of Class Counsel's fee award. As recognized elsewhere, "private attorneys should be encouraged" to take the risks

required to represent those who would not otherwise be protected from socially undesirable activities, including fraud. Maley v. Del Glob. Techs. Corp., 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002). Here, Class Counsel zealously advocated for the Classes for 12 years without payment. Public policy considerations encouraging contingency arrangements in consumer fraud cases weigh in favor of finding the award sought to be reasonable.

### 2. Lodestar Method as a Reasonability Check

While the percentage fee award is an acceptable method by which to calculate attorneys' fees, the Court of Appeals has encouraged an analysis of counsel's lodestar as a cross-check on the reasonableness of the requested percentage. See Goldberger, 209 F.3d at 50 (citation omitted). Where the lodestar is "used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." Id.

Here, Class Counsel devoted over 10,100 hours to this case over nearly 12 years. Balestriere Decl., ¶ 19. According to Class Counsel, and based on the various hourly rates for the over 80 attorneys and staff who litigated the case, this yields a lodestar of approximately $4.2 million in fees. Id. The amount of the attorneys' fees requested under the percentage method, $1.5 million, therefore represents approximately .32 times the lodestar. This is well within the range of acceptable lodestar multipliers and well below the level at which courts reduce multipliers when awarding fees. See In re Veeco Instruments Inc. Sec. Litig., 07-mdl-01695 (CM), 2007 WL 4115808, at *4 (S.D.N.Y. Nov. 7, 2007) (approving 30% of a total $5.5 million all-cash recovery in a class action where the lodestar multiplier was .35 and collecting cases).

### 3. Lack of Objections to the Fee Request Further Demonstrates Its Reasonability

Of the more than 140,000 members of the two Classes, only two objected to the amount of attorneys' fees by written objection and appearance through counsel at the fairness hearing

held December 10, 2019. <u>See</u> ECF Nos. 454 ("Barton Resp."), 467 ("Luxenberg Letter"). As noted above, the relatively low number of objections weighs in favor of approving the attorneys' requested fees as reasonable. <u>See</u> <u>Sewell v. Bovis Lend Lease, Inc.</u>, 09-cv-6548 (RLE), 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012) ("While the lack of objections does not relieve the Court of its obligation to conduct an independent investigation into the reasonableness of the fee, it does lend support for approval of the award."). Mr. Barton objects to the attorneys' fees amount by arguing that, under the percentage method, Class Counsel's 31.5% request is "excessive" compared to other awards in this District. <u>See</u> Barton Resp. at 12. Mr. Barton suggests that an award of 25% of the fund is more reasonable. Ms. Luxenberg objects simply by stating the fee request is too high. <u>See generally</u>, Luxenberg Letter. While courts in this district routinely amend the percentage to lower fees when using the percentage method, I find that in this case, such modification is not warranted. Based on my evaluation of the fee request under the <u>Goldberger</u> factors, and having cross-checked the resulting fee by way of the lodestar method, I find that a total fee of $1.5 million to be paid out of the Settlement fund is reasonable and well within the range of awards granted under the percentage method for litigation of this nature. The objections of Mr. Barton and Ms. Luxenberg are not so compelling to justify a reduction.

For these reasons, Class Counsel's fee award is GRANTED. This amount includes both fees and costs, an award of which is reasonably supported in this case. <u>See</u> <u>In re Ind. Energy Holdings PLC Secs. Litig.</u>, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients.") (internal quotation marks omitted).

### B. Named Plaintiff Service Awards

The service awards of $12,000 are reasonable for Plaintiffs James Tortora, Janeen Cameron, Lisa Bruno, Brad Berkowitz, and Karen Malak-Rocush. These amounts shall be paid from the Settlement fund. Such service awards are common in class action cases and are important to compensate lead plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained. See Parker v. Jekyll & Hyde Entm't Holdings, LLC, 08-cv-7670 (BSJ)(JCF), 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts.").

## CONCLUSION

For these reasons, the Settlement is APPROVED. Plaintiffs' motion for Plaintiffs' service awards and attorneys' fees, inclusive of costs, is GRANTED. The Clerk of Court is respectfully directed to terminate docket entry 449 and close this case.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:      February 28, 2019
            New York, New York